IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TAMERLANE, LIMITED, et. al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05-677C |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, DISMISSING THE CLAIMS OF PARK TERRACE LIMITED AND MULLICA WEST LIMITED

In our moving brief, we established that the claims of plaintiffs Park Terrace Limited ("Park Terrace") and Mullica West Limited ("Mullica") , were barred by the statute of limitations, and that, therefore, the Court lacked jurisdiction to entertain these claims. Plaintiffs' response fails to demonstrate otherwise.

We demonstrated that the events constituting, according to the complaint, a breach of the Government's alleged contractual obligation to Park Terrace and Mullica, occurred 15 years before the commencement of this action. The alleged contractual obligation was to accept prepayment of loans made to plaintiffs by the Farmers Home Administration ("FmHA") pursuant to sections 515 and 521 of the Housing Act of 1949. According to the complaint, "certain of the plaintiffs have submitted applications for prepayment and/or an offer of 'incentives' from the Government. The Government has in every instance refused to accept prepayment from plaintiffs pursuant to the provisions of their contracts." Complaint ¶ 41. The complaint further implies that, in the case of Park Terrace and Mullica, these events occurred in or before 1992. Complaint ¶¶ 11.2, 11.4. The exhibits submitted in support of our motion confirm that Park Terrace and Mullica in fact submitted prepayment applications, that the Government declined to

accept prepayment, and that these plaintiffs accepted incentives to remain in the Section 515 program, all in or before 1992.

Plaintiffs' principal argument in response is that, although they did in fact submit prepayment applications more than 15 years prior to filing suit, these applications were merely "pro forma," and were aimed not at effectuating prepayment but at obtaining incentives pursuant to the Emergency Low Income Housing Preservation Act, Pub. L. No. 100-242, 101 Stat. 1877 (1988) ("ELIHPA"), and its implementing regulations. Therefore, plaintiffs argue, the Government's refusal to accept prepayment was not an actual breach of contract; from the time of that refusal until the time suit was filed, there continued to be nothing more than an anticipatory repudiation effected by the enactment of ELIHPA, and the statute of limitations thus did not begin to run until plaintiffs elected, by filing suit, to treat the alleged repudiation as a breach.

It may well be that, as a practical matter, plaintiffs knew when they applied to prepay that prepayment would not be accepted, and that the most they expected to actually obtain was an incentive, such as an equity loan from FmHA. However, for plaintiffs to suggest that their requests to prepay were not genuine, and that there was thus no true refusal by the Government to accept prepayment, flies in the face of the allegations in the complaint. The complaint expressly alleges that "[b]ut for the Government's conduct, plaintiffs would have terminated their contracts by prepaying their mortgage loans . . . ." Complaint ¶ 47. The complaint further indicates that plaintiffs Park Terrace and Mullica would promptly have done so if their requests to prepay had been granted. Their allegations that they accepted incentives "under duress," Complaint ¶¶ 11.2, 11.4, make no sense except upon the premise that they would have prepaid

their loans rather than accept incentives had they been permitted to do so. There is no basis upon which to assert that any borrower is compelled to request or accept incentives, except in the sense that, if the borrower wishes to obtain cash for the value of the borrower's equity, and cannot accomplish this through prepayment, an incentive in the form of an FmHA equity loan may be the only alternative means of accomplishing this. Incentives are not even offered, much less compelled, absent a prepayment application, and nothing in ELIHPA or its implementing regulations precludes a borrower from simply maintaining the status quo by not submitting a prepayment request at all.

Further, plaintiffs' "pro forma application" argument amounts to an assertion that plaintiffs falsely represented themselves as ready, willing, and able to prepay their loans, for the sole purpose of extracting from the Government incentives to remain in the Section 515 program. If this were the case, plaintiffs' claims would be subject to forfeiture pursuant to 28 U.S.C. § 2514, which provides: "A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof." As this Court has observed,"[t]he words of the statute make it apparent that a claim against the United States is to be forfeited if fraud is practiced during contract performance or in the making of a claim." Crane Helicopter Servs., Inc. v. United States, 45 Fed. Cl. 410, 431 (1999) (emphasis added); accord American Heritage Bancorp v. United States, 61 Fed. Cl. 376, 386-87 (2004) ; Anderson v. United States, 47 Fed. Cl. 438, 444 (2000), aff'd, 344 F.3d 1343 (Fed. Cir. 2003); Supermex, Inc. v. United States, 35 Fed. Cl. 29, 39-40 (1996).

Plaintiffs similarly contradict the allegations in their own complaint by suggesting, based upon the Government's correspondence with Mullica, that the Government did not actually deny Mullica's prepayment request. The complaint expressly alleges, with respect to each plaintiff who "submitted applications for prepayment and/or an offer of 'incentives'," that "[t]he Government has in every instance refused to accept prepayment from plaintiffs pursuant to the provisions of their contracts." Complaint ¶ 41. This allegation plainly applies to both Park Terrace and Mullica; it simply cannot be read any other way.

Plaintiffs also argue that a denial of a prepayment request does not trigger the statute of limitations unless the denial is final and unequivocal. There is no basis for this assertion, either in the cases cited by plaintiffs in ostensible support of the assertion or elsewhere. Indeed, plaintiff's argument is inconsistent with the basic premise underlying their claims: that the prepayment restrictions imposed by ELIHPA constitute a repudiation of plaintiffs' right to prepay their loans. ELIHPA, after all, does not expressly dictate that prepayment requests ever have to be finally and unequivocally rejected. Rather, it imposed various procedural and substantive prerequisites to prepayment. If responding to prepayment requests by imposing these prerequisites does not constitute an actual breach of the alleged prepayment right, then ELIHPA cannot be said to require a breach of that right, and, therefore, cannot be said to repudiate that right.

Plaintiffs also argue that the Court should "examine[] the state of mind of the property owner and the circumstances surrounding the prepayment request," Plaintiffs' Response 14, and that "[u]nder these circumstances, [plaintiffs'] acceptance of incentives could hardly be deemed a voluntary election by the property owner to declare a breach and to trigger accrual of claims."

Id. at 19. However, whether the owner intended to declare a breach when it applied to prepay is irrelevant. Our motion is not based upon plaintiffs' having elected to treat a repudiation as a breach, but upon their having alleged facts that, under plaintiffs' own theory of liability, constituted an actual breach occurring in or before 1992. A plaintiff possesses an option whether and when to treat a repudiation as a breach, but the occurrence of an actual breach does not depend upon a plaintiff's decision to treat it as such. If it did, breach claims would never be time-barred.

Finally, plaintiffs "alternative" argument , concerning the period after the present restrictions expire, must be rejected. Plaintiffs note that both Park Terrace and Mullica "have claims for damages with respect to the period after the restrictions (undertaken pursuant to the 'incentives') expire, but prior to the end of the mortgage term," Plaintiffs' Motion 19, and argue that, assuming that their claim is time-barred with respect to the restriction period, the bar should not apply to the period after the restrictions. Id. at 20. Contrary to plaintiffs' effort to recast their claims as if they were separate claims for separate periods, the complaint does not allege two separate repudiations, one with respect to the period prior to the expiration of the restrictions undertaken pursuant to the incentives and one for the period thereafter. The complaint alleges a single repudiation of a single contractual prepayment right.

To support their argument for a separate claim for damages concerning a post-restriction period, plaintiffs draw a false comparison between their circumstances and those of certain borrowers in Allegre Villa v. United States, 60 Fed. Cl. 11 (2004), whose prepayment rights were treated as not having "vested." Those borrowers' claims were treated an not having vested because their Section 515 loans contained restrictive use provisions that prevented the borrowers

from exiting the Section 515 program during the first 20 years of the loan term – a period that had not yet expired when the borrowers filed suit. The Section 515 loans of Park Terrace and Mullica, however, contained no such restrictions. The restrictions to which plaintiffs refer are restrictions "undertaken pursuant to the 'incentives'." These restrictions did not come into existence until after the alleged repudiation of the prepayment right contained in plaintiffs' Section 515 loans and after Park Terrace and Mullica submitted prepayment requests but were not permitted to prepay. At the time these requests were submitted, the prepayment rights in question were vested. Had Park Terrace and Mullica been permitted to prepay at that time as requested, there would have been no "claims for damages with respect to the period after the restrictions (undertaken pursuant to the 'incentives') expire, but prior to the end of the mortgage term." If the Government was contractually obligated to permit prepayment, that obligation was breached when the Government refused to grant those requests. By that time, the statute of limitations was running on the claims of these plaintiffs in their entirety.

For the foregoing reasons, and for the reasons stated in our moving brief, the claims of plaintiffs Park Terrace and Mullica should be dismissed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/David M. Cohen**
DAVID M. COHEN
Director

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

OF COUNSEL
Michael S. Dufault
Kenneth S. Kessler
Commercial Litigation Branch
Civil Division
Department of Justice

Alicia Peden
Office of General Counsel
Department of Agriculture

**Filed electronically**

January 3, 2007