USDA-FmHA
Form FmHA 1940-16
(Rev. 4-91)

PROMISSORY NOTE

| TYPE OF LOAN |
| --- |
| RRH |

| STATE |
| --- |
| Pennsylvania |
| COUNTY |
| Berks |
| CASE NO. |
| 44-006-232036350 |

Date July 16, 19 93.

**FOR VALUE RECEIVED**, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government") at its office in 850 North Fifth Street, Allentown, Pennsylvania 18102-1731,

**THE PRINCIPAL SUM OF** NINE HUNDRED TWENTY FIVE THOUSAND

**DOLLARS ($** 925,000.00**)**, plus **INTEREST** on the **UNPAID PRINCIPAL** of SEVEN & ONE QUARTER **PERCENT (** 7.25 **%) PER ANNUM.**

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☒ I. Principal and Interest payments shall be deferred. The interest accrued to August 1, 19 93 shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in 599 regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of such new Principal herein $ 927,607.99 and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II. Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the ______ of each ______ beginning on ______, 19___, through ______, 19___, Principal and later accrued Interest shall be paid in ______ installments as indicated in the box below;

☐ III. Payments shall not be deferred. Principal and Interest shall be paid in ______ installments as indicated in the box below:

$ 5760.43 on SEPTEMBER 1, 19 93, and
$ 5760.43 thereafter on the FIRST of each MONTH until the **PRINCIPAL** and **INTEREST** are fully paid except that the **FINAL INSTALLMENT** of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and **PAYABLE** FIFTY ( 50 ) **YEARS** from the **DATE** of this **NOTE**. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time of the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

SUBSIDY REPAYMENT AGREEMENT: Borrower agrees to the repayment (recapture) of subsidy granted in the form of interest credits. Subsidy will be repaid when the borrower's account is settled by sale of the security property, refinancing or payment in full and will be calculated in accordance with regulations in effect at the time of settlement. Recapture is based on property appreciation and can equal all, some or none but never exceed the amount of subsidy received.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

WARNING: Failure to fully disclose curate and truthful financial information may result in the termination of program assistance currently being received, a he denial of future program assistance under U A's Debarment regulations, 7 CFR

No partner of Park Terrace Limited, including a general partner, shall be held personally liable hereunder and, in the event of default, Lender's sole recourse shall be limited to the assets of Park Terrace, Limited.

Presentment, protest, and notice are hereby waived.

(ATTEST)

Park Terrace Limited (SEAL)
(BORROWER)

By: [signature] (SEAL)
~~(CO-BORROWER)~~

Bart J. Axelrod
President and Sole Shareholder
Bala Realty Advisors, Inc.

521 Grove Avenue

Mohnton, Pennsylvania 19540

By: Park Terrace Investors,
General Partner of
Park Terrace Limited

By: Bala Realty Investors,
General Partner of
Park Terrace Investors

By: Bala Realty Advisors, Inc.,
General Partner of
Bala Realty Investors

RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ 925,000.00 | 7/16/93 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $925,000.00 | 7/16/93 |

CHECK ONE STATEMENT ONLY:

✓ I realize that because of recently passed legislation, I can elect to have the interest rate charged by FmHA to be the lower of the rate in effect at either the time of loan approval or loan closing. I do so.

____ I do not choose to have the interest rate charged by FmHA to be the lower of the rate in effect at either the time of loan approval or loan closing. I realize that the interest rate will therefore be the rate in effect at the time of loan approval.

7/16/93
Date

[signature]
Signature of Applicant/Borrower
(or Authorized Representative
if an Entity Is Involved)

REAL ESTATE MORTGAGE FOR PENNSYLVANIA

**THIS MORTGAGE** is made this day July 16, 1993, by Park Terrace, Limited, organized and existing under the laws of the State of Pennsylvania, whose mailing address is P.O. Box 38, Mohnton, Pennsylvania 19540 (the Borrower), and the United States of America (the Government), United States Department of Agriculture acting through the Farmers Home Administration, having an office place of business at Suite 330, One Credit Union Place, Harrisburg, Pennsylvania 17110-2996.

The Government has loaned the borrower money as evidenced by one or more promissory note(s) (the Note) (if more than one note is described below, the word "Note" as used herein shall be construed as referring to each note singly or all notes collectively, as the context may require). The Note has been executed by the Borrower, is payable to the order of the Government in installments as specified therein, may provide for the deferral and capitalization of interest plus principal (described below as "Maximum Amount Financed"), authorizes acceleration of the entire indebtedness at the option of the Government upon any default by the Borrower, and is further described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Maximum Amount Financed | Due Date of Final Installment |
|---|---|---|---|---|
| * 07/28/78 | $850,000.00 | 8.50% | | July 28, 2028 |
| * 07/28/78 | $125,000.00 | 8.25% | | July 28, 2028 |
| 07/16/93 | $925,000.00 | 7.25% | $930,402.26 | July 16, 2043 |

The Government may assign the Note at any time. The Government may also insure the payment of the Note pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statute administered by the Farmers Home Administration.

This instrument shall secure payment of the Note whenever the Note is held either by the Government or by an uninsured holder. Whenever the Note is held by an insured holder, however, this instrument shall not secure payment of the Note or attach to the underlying debt. In that event, this instrument shall constitute an indemnity mortgage to secure any payments to an insured holder of the Note or other advances which the Government may be required to make upon default by the Borrower. The insured holder shall have no right, title, or interest in or to the lien of this instrument or its benefits. This instrument also secures the Borrower's obligations and covenants under other instruments delivered in connection with the loan evidenced by the Note, including the Borrower's Loan Agreement hereby incorporated by reference. The Note, Loan Agreement, Security Agreement, and this instrument together with any supplements, attachments, modifications, and additions are collectively referred to as the "Loan Instruments."

*These Notes are also secured by a Mortgage dated July 28, 1978. This new Mortgage is no way releases, satisfies, or modifies the terms of the prior Mortgage.

**NOW THEREFORE**, in consideration of the loan(s) the Borrower hereby mortgages, assigns, grants and conveys to the Government, the following property in Berks County, Pennsylvania:

ALL THAT CERTAIN piece, parcel, or tract of land designated Phase I Construction Area in the Development of Park Terrace, situate in the Borough of Mohnton, County of Berks, and Commonwealth of Pennsylvania, as shown on the Final Plan of Park Terrace, Drawing No. 8173-006-E001, prepared by Spotts, Stevens, and McCoy, Inc., dated May 17, 1976, and recorded in Plan Book 57, page 25, being more fully bounded and described as follows, to wit:

BEGINNING at a corner at the southeastern building line intersection of Grove Avenue (50 feet wide) and the former Evergreen Terrace (50 feet wide), said corner being located South three degrees two minutes zero seconds West (S. 03°02' 00" W.), a distance of twenty-five feet (25.00') from a corner of property belonging to Alvin Segal and Eleanore Segal, his wife, said corner also being the most northern corner of the herein described property; thence leaving the eastern building line of Grove Avenue and crossing property belonging to Alvin Segal and Eleanore Segal, his wife, the four (4) following courses and distances, viz: (1) South sixty-seven degrees twenty-eight minutes zero seconds East (S. 67° 28' 00" E.), a distance of two hundred fifteen and seventy-four hundredths feet (215.74') to a corner; (2) South three degrees two minutes zero seconds West (S. 03° 02' 00" W.) a distance of two hundred and ninety-nine hundredths feet (200.99') to a corner; (3) South forty-nine degrees thirty-six minutes zero seconds West (S. 49° 36' 00" W.), a distance of three hundred forty and zero hundredths feet (340.00') to a corner; and (4) South thirty-seven degrees twenty minutes nineteen seconds West (S. 37° 20' 19" W.), a distance of two hundred sixty-five and zero hundredths feet (265.00') to a corner marked by an iron pipe in the western building line of the former Mohnton Boulevard (70 feet wide); thence along the same and along property belonging to the Dock Space Development Corp., passing through an iron pin twenty-five and fifteen hundredths feet (25.15') from the next described corner, North eighty-one degrees twenty-four minutes zero seconds West (N. 81° 24' 00" W.), a distance of one hundred sixty-two and twenty-two hundredths feet (162.22') to a corner marked by an iron pin in the center line of the former Leininger Avenue (50 feet wide); thence along the same North two degrees nineteen minutes zero seconds East (N. 02° 19' 00" E.), a distance of two hundred forty-six and fifty-five hundredths feet (246.55') to a corner marked by an iron pin in the projected southeasterly building line of the aforesaid Grove Avenue; thence along the eastern building line of Grove Avenue the two (2) following courses and distances, viz: (1) North fifty-one degrees thirty-four minutes zero seconds East (N. 51° 34' 00" E.), a distance of four hundred seventy-six and ninety-nine hundredths feet (476.99') to a corner marked by an iron pin; and (2) North three degrees two minutes zero seconds East (N. 03° 02' 00" E.), a distance of one hundred forty-seven and fifty-four hundredths feet (147.54') to the place of BEGINNING.

CONTAINING in area four and thirty-five hundredths (4.35 acres of land, more or less.

EXCEPTING AND RESERVING, thereout and therefrom all that certain strip of land known as Grove Street to be used for street purposes. CONTAINING 0.64 of an acre as conveyed by Park Terrace, Limited, a Pennsylvania Limited Partnership, and Alvin Segal and Eleanore Segal, his wife, to Borough of Mohnton, a municipal corporation by Deed dated December 29, 1978 and recorded in Deed Book Volume 1752, page 1039, Berks County Records.

BEING PART OF THE SAME PREMISES which became vested in Park Terrace, Limited, a Limited Partnership, by Deed from Alvin Segal and Eleanore Segal, his wife, dated May 6, 1977, and recorded in Deed Book 1711, page 774, Berks County Records.

This is a purchase money mortgage under the lien priority laws of the Commonwealth of Pennsylvania, as amended.

The borrower and any successors in interest agree to use the housing for the purpose of housing low- and moderate-income people eligible for occupancy as provided in Section 515 of Title V of the Housing Act of 1949 and FmHA regulations then extant during this 20 year period beginning the date of this mortgage. A tenant may seek enforcement of this provision as well as the Government. No person occupying or wishing to occupy the housing shall be required to vacate or be denied occupancy prior to the close of such 20 year period because of early repayment.

**TOGETHER** with all the improvements, tenements and appurtenances now or hereafter erected on the property and all easements, rents royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, all leasehold rights of any kind, and all fixtures now or hereafter attached to or used in connection with the property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, natural gas, water, air and light; and including, but not limited to all plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, washers, dryers, awnings, screens, blinds, shades, storm windows, storm doors, antennas, attached floor coverings, trees and plants; all of which including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this instrument; and all payments at any time owing to the Borrower by virtue of any sale, lease, transfer, conveyance or condemnation of any part thereof or interest therein--all of which are herein collectively referred to as the "Property."

**THIS MORTGAGE** is also intended as a Financing Statement covering fixtures which are affixed or which may become affixed to the above-described property. The types of collateral covered hereby are described in the preceding paragraph.

**TO HAVE AND TO HOLD** the property unto the Government and its assigns forever in fee simple.

The Borrower covenants that Borrower is lawfully seized of the estate hereby and has the right to mortgage, grant, and convey the Property, and that the Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to easements and restrictions of record.

**THIS MORTGAGE SHALL SECURE** (a) payment of the Note in accordance with its terms, including any extensions, reschedulings, reamortizations or renewals thereof, whenever the Note is held by either the Government or by an uninsured holder; (b) repayment, with interest, of any payments, advances and expenditures made by the Government pursuant to the terms of this or any other Loan Instrument; and (c) performance of every covenant and agreement of the Borrowers contained in this or any other Loan Instrument.

The Borrower, for itself, its successors and assigns, **WARRANTS** the title to Property to the Government against the lawful claims of all persons whose claims are not based upon liens, encumbrances, easements or reservation specified above.

The Borrower, for itself, its successors and assigns, **COVENANTS AND AGREES** as follows:

(1) Borrower will promptly pay any indebtedness secured by this instrument when due.

(2) Borrower will indemnify the Government against any loss which the Government may incur as a result of making payments to an insured holder of the Note after the Borrower's default.

(3) Borrower will pay the Government any fees or other charges required under regulations of the Farmers Home Administration.

(4) Borrower will pay when due all taxes, liens, judgments, encumbrances and assessments lawfully attaching to or assessed against the Property, and without demand, will also provide the Government with proof of those payments.

(5) Borrower will pay the Government for any expenses necessary or incidental to (a) the protection of the lien or priority of any Loan Instrument and to (b) the enforcement of or compliance with the provisions of any Loan Instrument. "Expenses" includes (without limitation) costs of evidence of title, surveys, recording fees, attorneys' fees and trustees' fees, as well as court costs and expenses of advertising, selling and conveying the Property or any portion of it.

(6) Borrower will use the loan evidenced by the Note solely for the purposes authorized by the Government.

(7) Borrower will keep the Property insured as required by the Government and will deliver the originals of all insurance policies to the Government for safekeeping.

(8) Borrower will comply with all laws, ordinances and regulations affecting the Property and the conduct of Borrower's business operations.

(9) Borrower will maintain the Property in good repair and make any repairs the Government may require.

(10) Borrower will operate the Property in a good and efficient manner and will comply with management plans and practices which the Government may prescribe from time to time.

(11) Borrower will not abandon the Property; effect waste, lessening or impairment of the Property; or cut, remove or lease any timber, gravel, oil, gas, coal or other minerals.

(12) Borrower will not (except in the ordinary course of business) lease, assign, sell, transfer or encumber the Property or any nonexpendable part thereof, voluntarily or otherwise, either in whole or in part, without the prior written consent of the Government.

(13) The property described herein was obtained or improved through Federal financial assistance. The property is subject to the provisions of Title VI of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973 and the regulations issued pursuant thereto for so long as the property continues to be used for the same or similar purpose for which financial assistance was extended or for so long as the purchaser owns it, whichever is longer.

(14) The Government may require the Borrower to make additional monthly payments equal to one-twelfth of the estimated taxes, assessments, insurance premiums and other charges upon the Property.

(15) The Government and its agents may inspect the Property at reasonable times to ascertain whether the Borrower is fulfilling its obligations under this or any other Loan instrument.

(16) The Government may at any time pay as advances for the Borrower's account any amounts which the Borrower is obligated to pay under any Loan Instrument. The Government may exercise this right regardless of whether the Note is insured and regardless of whether advances exceed the face amount of the Note.

(17) All Advances by the Government pursuant to the terms of this or any other Loan Instrument shall bear interest at the rate borne by the Note which bears the highest interest rate. Advances, together with interest accruing on them, shall be immediately due and payable by the Borrower at the place designated in the latest Note. Advances by the Government shall neither relieve the Borrower of its obligation to pay nor cure any default under any Loan Instrument.

(18) Except to the extent specified by the Government in writing, the Government in its sole discretion may grant an extension of the time for payment or modification of amortization of the indebtedness secured by any Loan Instrument, release any party from liability to the Government, release portions of the Property from the lien of any Loan Instrument, and waive any other Government right under any Loan Instrument without affecting the lien or priority of any Loan Instrument, or the liability of the Borrower or any other party for payment of the indebtedness secured by any Loan Instrument.

(19) The Government will not be bound by any present or future state laws (a) providing for valuation, appraisal, homestead, or

exemption of the Property; (b) prohibiting or restricting an action for deficiency judgment or limiting the judgment amount which may be awarded; (c) prescribing any statute of limitations; (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions the Government may impose by regulation as a condition of approving a transfer of the Property to a new borrower. **THE BORROWER WAIVES THE BENEFIT OF ANY SUCH STATE LAWS.**

(20) Should the Borrower **DEFAULT** on any of its obligations under any Loan Instrument, merge, dissolve, be declared bankrupt or insolvent, or make an assignment for the benefit of creditors, without Notice the Government may (a) accelerate the entire indebtedness secured by this instrument by declaring it immediately due and payable; (b) charge the Borrower's account for any reasonable expenses which the Government may pay or incur to maintain and repair the Property; (c) process, operate and rent the Property; (d) have a receiver appointed for the Property who may exercise the usual powers of receivers in similar cases; (e) foreclose this and any other Loan Instrument and sell the Property; (f) enforce any and all other rights and remedies provided in the Loan Instruments or by future or present laws.

(21) Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated and of the United States of America, on terms and conditions satisfactory to the Government, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and in the manner and after such notice and on terms required by statute or determined by the Government if not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(22) Proceeds of a foreclosure sale pursuant to any Loan Instrument shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions of any Loan Instrument; (b) any prior liens required by law or a competent court to be paid; (c) all indebtedness to the Government secured by this instrument; (d) inferior liens of record required by law or a competent court to be paid; (e) at the Government's option, any other indebtedness of the Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(23) If the Government is the successful bidder at a foreclosure sale under any Loan Instrument, any portion of the purchase price not owed to a third party may be paid by crediting that amount on any debts of the Borrower which are owed to or insured by the Government.

(24) The rights and remedies provided in this instrument are cumulative and shall be in addition to every other remedy now or hereafter existing at law, in equity, by statute or by regulation.

(25) A waiver, amendment, release or modification of this instrument may be effected only by a writing which has been duly executed by the Government and shall not be established by conduct, custom, or course of dealing.

(26) This instrument shall be governed by federal law, and shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this instrument.

(27) Default under this instrument shall constitute a default under any other security instruments of the Borrower held or insured by the Government and default under any other security instrument constitutes default under this instrument.

(28) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(29) Notices to the Borrower shall be sent to its address as shown on the first page of this instrument. Notices to the Government shall be addressed to the Farmers Home Administration, United States Department of Agriculture, Suite 330, One Credit Union Place, Harrisburg, Pennsylvania 17110-2996. Notices shall be sent by certified mail (postage prepaid) unless otherwise required by law. The Government and the Borrower may designate any further or different addresses to which subsequent notices shall be sent.

**(30) THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN: AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL, AND IN THAT CONNECTION DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING, OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHT OR ESTATE OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT.**

(31) This instrument, together with the other loan instruments, mortgages and encumbers only the assets of the borrowing Partnership named herein and offers to the Government no recourse for repayment of the indebtedness from the personal assets of any present or future member of the Partnership, whether individual or corporate.

**IN WITNESS WHEREOF**, the Borrower has caused this Mortgage to be executed by its Partner(s) as of the date first written above.

**PARK TERRACE, LIMITED**

By: Park Terrace Investors
General Partner of
Park Terrace, Limited

By: Bala Realty Investors,
General Partner of
Park Terrace Investors

By: Bala Realty Advisors, Inc.
General Partner of
Bala Realty Investors

(Seal)

(ATTEST)

By: ______________________
**Bart J. Axelrod**
President and Sole Shareholder
Bala Realty Advisors, Inc.

**ACKNOWLEDGMENT**

STATE OF PENNSYLVANIA
)ss:
COUNTY OF Lehigh

On this 16th day of July 1993, before me personally appeared Bart J. Axelrod, President of Bala Realty Advisors, Inc., known to me, who being duly sworn, did say that he is the authorized representative of Park Terrace, Limited, the Limited Partnership that executed the within instrument, and acknowledged to me that such Partnership executed the same.

(NOTARIAL SEAL)

Sharon L. Betz
NOTARY PUBLIC

NOTARIAL SEAL
Sharon L. Betz, Notary Public
City of Allentown, Lehigh County, Pa.
My Commission Expires April 21, 1997

My commission expires: ____________________

The form of this instrument was prepared by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of:

NAME

Asst. Dist. Director

TITLE

2438

RECORDED IN BERKS CO., PA

Recorder of Deeds

37428

DEED # 37428
07-19-93 16:19SUE 06 62859
FEE $25.00
WRIT $0.50
ST $25.50
CHK $73.50
CG $48.00

THANK YOU
RECORDER OF DEEDS
LINDA H. FREY
READING, PA/BERKS CO
CHK $73.50
07-19-93 16:19SUE 06 62859

VOL 2438 PAGE 10

USDA-FmHA
Form FmHA 1944-34
(Rev. 2-90)

MAY 2 4 1993

FORM APPROVED
OMB NO. 0575-0047

# LOAN AGREEMENT

☐ RRH Loan to a Partnership Operating on a Profit Basis
☐ RRH Loan to a Limited Partnership Operating on a Profit Basis
☒ RRH Loan to a Partnership Operating on a Limited Profit Basis
☐ RRH Loan to a Limited Partnership Operating on a Limited Profit Basis

1. Parties and Terms Defined. This agreement dated April 1, 1993 of the Park Terrace Limited, a Partnership, duly organized and operating under The Uniform Ltd. Partnership Act herein called "Partnership", whose post office address is P.O. Box 38, Mohnton, PA 19540, with the United States of America acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "the Government", is made in consideration of a loan, herein called "the loan", to Partnership in the amount of $ 925,000.00 made or insured, or to be made or insured, by the Government pursuant to sections 515 (b) of the Housing Act of 1949 to ~~build~~ finance a rental housing project. The loan may be sold and insured by the Government. The loan shall be used solely for the specific eligible purposes for which it is approved by the Government in order to provide rental housing and related facilities for eligible occupants, as defined by the Government in rural areas. Such housing and facilities and the land constituting the site as herein called "the housing". The indebtedness and other obligations of the Partnership under the note evidencing the loan, the related security instrument and related agreement are herein called the "loan obligations".

2. Execution of Loan Instruments. To evidence the loan the Partnership shall issue a promissory note (herein referred to as "the note"), signed by the General Partners for the amount of the loan, ~~payable in installments~~ over a period of fifty years, bearing interest at a rate, and containing other terms and conditions, prescribed by the Government. To secure the note or any indemnity or other agreement required by the Government, the General Partners are to execute a real estate security instrument giving a lien upon the housing and upon such other real property of the Partnership as the Government shall require, including an assignment of the rents and profits as collateral security to be enforced in the event of any default by the Partnership, and containing other terms and conditions prescribed by the Government. the General Partners are to execute any other security instruments and other instruments and documents required by the Government in connection with the making or insuring of the loan. The indebtedness and other obligations of the Partnership under the note, the related security instrument, and any related agreement are herein called the "loan obligation".

3. Equal Opportunity and Nondiscrimination Provisions. The Partnership will execute (a) any undertakings and agreements required by the Government pursuant to Title VIII of the Civil Rights Act of 1968 and the Fair Housing Amendments Act of 1988 related to Fair Housing regarding nondiscrimination in the use and occupancy of housing, (b) Farmers Home Administration Form FmHA 400-1 entitled "Equal Opportunity Agreement," including an "Equal Opportunity Clause" to be incorporated in or attached as a rider to each construction contract the amount of which exceeds $10,000 and any part of which is paid with funds from the loan, and (c) Farmers Home Administration Form FmHA 400-4, entitled "Assurance Agreement (Under Title VI, Civil Rights Act of 1964)", a copy of which is attached hereto and made a part thereof and any other undertakings and agreements required by the Government pursuant to lawful authority.

4. Borrower Contribution. The amount of $ –0– to be contributed by the Partnership from its own funds for the land purchase or development will be placed or deposited with the lender and dispersed prior to any disbursement of interim loan funds or any FmHA loan funds.

*Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Department of Agriculture, Clearance Officer, OIRM, Room 404-W, Washington, D.C. 20250; and to the Office of Management and Budget, Paperwork Reduction Project (OMB No. 0575-0047), Washington, D.C.20503.*

5. Accounts for Housing Operations and Loan Servicing. The Partnership shall establish on its books the following accounts, which shall be maintained in accordance with FmHA Regulation 7 CFR Part 1930-C so long as the loan obligations remain unsatisfied: A General Fund Account, a Tax and Insurance Escrow Account, a Security Deposit Account and a Reserve Account.

a. General Operating Account. By the time the Farmers Home Administration loan is closed or interim funds are obtained to preclude the necessity for multiple advances of Farmers Home Administration loan funds, whichever occurs first, the Partnership shall provide cash from the Borrower's own funds, a letter of credit, or a combination of the two in an amount totalling $ -0- . Any cash will have been deposited in the General Operating Account and any letter of credit supplied to the FmHA District Office. Use and maintenance of a letter of credit will be in accordance with FmHA Regulation 7 CFR 1930-C.

b. Reserve Account. Transfers at a rate not less than $ 9,250.00 annually shall be made to the Reserve Account until the amount in the Reserve Account reaches the sum of $ 92,500.00 or such higher amount later agreed to with FmHA and shall be resumed at any time when necessary, because of disbursements from the Reserve Account to restore it to said sum. Withdrawal and use of funds deposited to this account will be in accordance with FmHA Regulation 7 CFR 1930-C. With prior consent of the Government, funds in the Reserve Account may be used by the Partnership:

To pay dividends to the partners of up to 8 percent per annum of borrower's initial investment of $ -0- ________________, provided the Partnership determines that after such disbursement (a) the amount in the Reserve Account will not be less than that required by subsection 5b to be accumulated by that time, and (b) during the next 12 months the amount in the Reserve Account will likely not fall below that required to be accumulated by the end of such period.

~~To pay dividends to the partners or for any other purpose desired by the Partnership, provided the Partnership determines that after such disbursement (a) the amount in the Reserve Account will not be less than that required by subsection 5b to be accumulated by that time and (b) during the next 12 months the amount in the Reserve Account will likely not fall below that required to be accumulated by the end of such period.~~

6. Regulatory Covenants. So long as the loan obligations remain unsatisfied, the Partnership shall comply with all appropriate FmHA regulations and shall:

a. Impose and collect such fees, assessments, rents, and charges that the income of the housing will be sufficient at all times for operation and maintenance of the housing, payments on the loan obligations, and maintenance of the accounts herein provided for.

b. Maintain complete books and records relating to the housing's financial affairs, cause such books and records to be audited at the end of each fiscal year, promptly furnish the Government without request a copy of each audit report, and permit the Government to inspect such books and records at all reasonable times.

c. If required or permitted by the Government, revise the account herein provided for, or establish new accounts, to cover handling and disposition of income from and payment of expenses attributable to the housing or to any other property securing the loan obligations, and submit regular and special reports concerning the housing or financial affairs.

d. Agree that if any provisions of its organizational documents or any verbal understandings conflict with the terms of this loan agreement, the terms of the loan agreement shall prevail and govern.

e. Unless the Government gives prior consent:

(1) Not use the housing for any purpose other than as rental housing and related facilities for eligible occupants.

(2) Not enter into any contract or agreement for improvements or extensions to the housing or other property securing the loan obligations.

(3) Not change the membership by either the admission or withdrawal of any general partner(s) nor permit general partner(s) to maintain less than an aggregate of 5 percent, financial interest in the organization nor cause of permit voluntary dissolution of the Partnership nor cause or permit any transfer or encumbrance of title to the housing or any part thereof or interest therein, by sale, mortgage, lease, or otherwise.

(4) Not borrower any money, nor incur any liability aside from current expenses as defined in section 7 which would have a detrimental effect on the housing.

f. Submit for the housing the required reports as per FmHA Regulation 7 CFR Part 1930-C to the Government for prior review.

g. If required by the Government, modify and adjust any matters covered by clause (f) of this section.

h. Comply with all its agreements and obligations in or under the note, security instrument, and any related agreement executed by the Partnership in connection with the loan.

i. Not alter, amend, or repeal without the Government's consent this agreement or the Partnership Agreement, which shall constitute parts of the total contract between the Partnership and the Government relating to the loan obligations.

j. Do other things as may be required by the Government in connection with the operation of the housing, or with any of the Partnership's operations or affairs which may affect the housing, the loan obligations, or the security.

k. If return on investment for any year exceeds 8 percent per annum of borrower's initial investment of $ –0– , the Government may require that the borrower reduce rents the following year and/or refund the excess return on investment to the tenants or use said excess in a manner that will best benefit the tenants.

7. General Provisions.

a. It is understood and agreed by the Partnership that any loan made or insured will be administered subject to the limitations of the authorizing act of Congress and related regulations, and that any rights granted to the Government in this agreement or elsewhere may be exercised by it in its sole discretion.

b. The provisions of this agreement are representations to the Government, to induce the Government, to make or insure a loan to the Partnership as aforesaid. If the Partnership should fail to comply with or perform any provision of this agreement or any requirement made by the Government pursuant to this agreement, such failure shall constitute default as fully as default in payment or amounts due on the loan obligations. In the event of such failure, the Government at its option may declare the entire amount of the loan obligations immediately due and payable and, if such entire amount is not paid forthwith, may take possession of and operate the housing and proceed to foreclose its security and enforce all other available remedies.

c. Any provisions of this agreement may be waived by the Government in its sole discretion, or changed by agreement between the Government and the Partnership, after this agreement becomes contractually binding, to any extent such provisions could legally have been foregone or agreed to in amended form, by the Government initially.

d. Any notice, consent, approval, waiver, or agreement must be in writing.

e. This Loan Agreement shall be subject to the present regulations of the Farmers Home Administration and to its future regulations and provisions hereof.

f. This agreement may be cited in the security instrument and any other instruments as the "Loan Agreement" of April 1, , 19 93.

g. The Partnership agrees that no handicapped person will be subjected to discrimination in employment or denied the benefits of housing because of such handicap. It will only comply with the requirements of the Fair Housing Act, 43 USC 3601 et seq. The Fair Housing Amendment Act of 1988, the Rehab. act of (over)

By:

____________________

____________________

____________________

Park Terrace Limited
PARTNERSHIP NAME

By: Park Terrace Investors, General Partner
By: Bala Realty Investors, General Partner of Park Terrace Investors

By: Bala Realty Advisors, Inc.
General Partner of Bala Realty Investors

Bart J. Axelrod, President

General Provisions (continued from previous page)

1973, 29 USC 794, and the implementing regulations of the Department of Agriculture.

h. The Borrower and any successors in interest agree to use the housing for the purpose of housing low- and moderate-income people eligible for occupancy as provided in FmHA regulations then extant during this 20 year period beginning April 1, 1993. A tenant may seek enforcement of this provision as well as the Government. No person occupying or wishing to occupy the housing shall be required to vacate or be denied occupancy prior to the closeof such 20 year perior because of early prepayment.

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

# SECURITY AGREEMENT

I. **THIS SECURITY AGREEMENT**, dated July 16, 1993, is made between the United States of America, acting through the Farmers Home Administration ("Secured Party"), and Park Terrace, Limited, a Limited Partnership ("Debtor"), organized and existing under the laws of the State of Pennsylvania, maintaining an office in Berks County, whose post office address is P.O. Box 38, Mohnton, Pennsylvania 19540.

**II.** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory note(s) or other instrument(s), and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory note(s) or other instrument(s) all of which are herein called "note" (if more than one note is executed, the word "note" as used herein shall be construed as referring to each note singly or all notes collectively as the context may require) and said note has been executed by Debtor, is payable to the order of Secured Party in installments as specified therein, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor.

This instrument also secures the Borrower's obligations and covenants under other instruments delivered in connection with the loan evidenced by the Note, including the Borrower's Loan Agreement, Real Estate Mortgage, and any deferral, reamortization, rescheduling, or consolidation subsequent hereto.

The note evidences a loan to Debtor, and Secured Party, at any time, may assign the note and insure the payment thereof to any extent authorized by the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949, or any other present or future act administered by the Secured Party.

It is the purpose and intent of this instrument that, among other things, at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity security agreement to secure Secured Party against loss under its insurance contract by reason of any default by Debtor.

**NOW THEREFORE**, in consideration of said loan(s) and (a) at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the payment

of the note, to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions therof and any additional loans or future advances to Debtor heretofore or hereafter made or insured by Secured Party under the then existing provisions of Subtitle A of the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949, or any other present or future act administered by the Secured Party - all with interest, (b) at all times when the note is held by an insured holder, to secure performance of debtor's agreement herein to indemnify and save harmless Secured Party against loss under its insurance contract by reason of any default by Debtor, (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as hereinafter described, and the performance of every covenant and agreement of Debtor contained herein or in any supplementary agreement:

**DEBTOR HEREBY GRANTS** to Secured Party a security interest in and an assignment of its interest in the following collateral including the proceeds thereof:

**A.** All accounts, general intangibles, and gross receipts now or hereafter in existence, including the proceeds thereof, relating to the Debtor's operation of a housing project. Such collateral includes, but is not necessarily limited to, all rents and all rental assistance payments from any source whether public or private; provided, however, that if the Borrower is a limited partnership as defined by the Uniform Limited Partnership Act, it does not include any accounts, general intangibles or gross receipts derived from the sale of limited partnership interests in the Debtor.

**B.** All ranges, refrigerators, washing machines, dryers, heating, air conditioning and other equipment pertaining to said rural rental housing project now owned or hereafter acquired, including all replacements of or substitutions therefor, and including, without limitation, the following:

| Quantity | Kind | Type or Manufacturer | Model No. | Year of Mfg. |
|---|---|---|---|---|
| 48 | Refrigerators | Sears/Kenmore | 253.7673271 | 1978 |
| 48 | Ranges | Sears/Kenmore | 911.6227611 | 1978 |

Disposition of said collateral is not authorized hereby.

Any fixtures described above are affixed or are to be affixed to the following described real estate:

| Record Owner | Approximate No. of Acres | County & State | Location |
|---|---|---|---|
| Park Terrace Limited | 4.35 | Berks, PA | 521 Grove Ave. Mohnton, PA |

**III. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:**

**A.** Debtor is the absolute and exclusive owner of the above-described collateral, and such collateral is free from all liens, encumbrances, security and other interest except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect, (2) any applicable statutory liens, and Debtor will defend the collateral against the claims and demands of all other persons. Any reference to the above liens, encumbrances, security and other interests is for warranty purposes only and does not indicate their priority.

**B.** Statements contained in this Security Agreement and in Debtor's loan application and related loan instruments are true and correct.

**C.** Debtor will (1) use the loan funds for the purpose for which they were or are advanced, (2) comply with such operation and management plans as may be agreed upon from time to time by Debtor and Secured Party, (3) care for and maintain the collateral in a reasonable manner, (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance, (5) permit Secured Party to inspect the collateral at any reasonable time, (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest therein, or permit others to do so, without prior written consent of Secured Party, (7) not permit the collateral to be levied upon, injured or destroyed or its value to be impaired, and (8) maintain its legal existence.

**D.** Debtor will pay promptly when due all (1) indebtedness evidenced by the note and any indebtedness to Secured Party secured hereby, (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or hereafter attaching to, levied on, or otherwise pertaining to the collateral or this security interest, (3) filing, or recording fees for instruments necessary to perfect, continue, service or terminate this security interest, and (4) fees and other charges now or hereafter required by regulations of the Farmers Home Administration.

**E.** If the note is insured by Secured Party, Debtor will indemnify and save harmless Secured Party against any loss by reason of any default by Debtor.

**F.** Whether or not the note is insured by Secured Party, Secured Party may at any time pay any other amounts required herein to be paid by Debtor and not paid by it when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

G. All advances by Secured Party as described in this instrument, with interest, shall be immediately due and payable by Debtor to Secured Party without demand at the place designated in the latest note and shall be secured hereby. No such advance by Secured Party shall relieve Debtor from breach of its covenant to pay. Any payment made by Debtor may be applied on the note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

H. In order to secure or better secure the aforesaid obligation or indebtedness, Debtor will execute and deliver to Secured Party at any time, upon demand, such additional security instruments on such real and personal property as Secured Party may require. With respect to the identification of accounts, and general intangibles, Debtor will furnish Secured Party such information as it may require to identify in a manner satisfactory to Secured Party, all account debtors and contract or other obligors and the amount of the respective accounts and other obligations. Debtor will also furnish Secured Party such additional information as it may require from time to time to further identify all other items of collateral.

I. This instrument also secures the obligations and covenants of Debtor set forth in Debtor's Loan Agreement of April 1, 1993, which has previously been executed as a security agreement and which is hereby incorporated herein by reference and shall continue in effect as a security agreement.

J. Debtor will not discriminate, or permit discrimination, in the use or occupancy of the facilities financed in whole or in part with the proceeds of the note because of race, color, creed, sex or national origin.

K. Debtor hereby assigns to Secured Party any monies (but not in excess of the unpaid balance due hereunder) which may become payable under any insurance of the collateral, including return of unearned premiums, and directs any insurance company to make payments directly to the Secured Party to be applied to said unpaid balance and appoints Secured Party's State Director for Pennsylvania as attorney-in-fact to endorse any draft. After default by Debtor or in accordance with written authorization of Debtor, Secured Party may, upon giving such notice as may be required by law, cancel said insurance and credit any premium refund within said unpaid balance.

L. Debtor will not increase the rent of any tenant without first giving public notice of the proposed increase, eliciting tenant comments concerning the increase and submitting all comments together with a request for such increase to Secured Party in accordance with Secured Party's regulations.

IV. IT IS FURTHER AGREED THAT:

A. Until default Debtor may retain possession of the collateral.

B. Default shall exist hereunder if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness hereby secured or to observe or perform any covenants or agreements herein or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the bankruptcy, insolvency or voluntary or involuntary dissolution or merger of Debtor. Upon any such default:

1. Secured Party, at its option, with or without notice as permitted by law, may (a) declare the unpaid balance on the note and any indebtedness secured hereby immediately due and payable, (b) enter upon the premises and take possession of, repair, improve, use and operate the collateral or make equipment unusable, for the purpose of protecting or preserving the collateral of this security interest, or preparing or processing the collateral for sale, (c) exercise any sale or other rights afforded by law; and (d) have the right at any time to notify the account debtors, or contract or other obligors of the security interest of Secured Party in, and of the assignment to Secured Party of the accounts, or general intangibles upon which the respective account debtors or contract or other obligors are liable to Debtor, and to notify such account debtors or contract or other obligors to make payment of such accounts or other obligations directly to Secured Party, and Secured Party shall also have the right to take control of the cash and other proceeds of any of Debtor's accounts, gross receipts, or general intangibles. The cost of collection and enforcement of the accounts or general intangibles shall be borne by the Debtor even though such expenses may have been incurred by Secured Party.

2. Debtor hereby (a) agrees to assemble the collateral and make it available to Secured Party at such time(s) and place(s) as designated by Secured Party, and (b) waives all notices, exemptions, compulsory disposition and redemption rights.

3. A default shall exist under any other security instrument held or insured by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under any such other security instrument shall constitute default hereunder.

C. Proceeds from disposition of collateral shall be applied first to expenses of retaking, holding, preparing for sale, selling and the like, and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party; second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Farmers Home Administration; third to the satisfaction of indebtedness secured hereby; fourth to the satisfaction of subordinate security interests or liens to the extent required by law; fifth to any other obligations of Debtor owing to or insured by Secured Party; and sixth to Debtor.

Any proceeds collected under insurance policies or condemnation awards shall be applied first on advances and expenditures made by Secured Party with interest, as herein above provided; second on the debt evidenced by the note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral; third on any other obligation of Debtor owing to or insured by Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral condemnation awards and insurance.

D. This Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions hereof.

E. If any provision of this Agreement is held invalid or unenforceable, it shall not affect any other provisions hereof, but this Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

F. The rights and privileges of Secured Party under this Agreement shall inure to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Agreement shall bind Debtor's successors and assigns.

G. If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby.

H. Secured Party shall have the sole and exclusive rights as the secured party hereunder, including but not limited to the power to grant or issue any consent, release, subordination, continuation statement or termination statement, and no insured holder shall have any right, title, or interest in or to the security interest created by this Agreement or any benefits hereof.

I. Secured Party will make or insure future loans or advances to Debtor provided funds are available and the Debtor meets all then current requirements imposed by regulations of the Secured Party.

**J. SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

IN WITNESS WHEREOF, the Borrower has caused this Security Agreement to be executed by its Partner(s) as of the date first written above.

**PARK TERRACE, LIMITED**

By: Park Terrace Investors,
**General Partner of**
Park Terrace, Limited

By: Bala Realty Investors,
General Partner of
Park Terrace Investors

By: Bala Realty Advisors, Inc.,
General Partner of
Bala Realty Investors

(ATTEST)

By: **Bart J. Axelrod**
President and Sole Shareholder
Bala Realty Advisors, Inc.