Form FmHA 440-16
(Rev. 11-10-75)

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

KIND OF LOAN
Type: SECTION 21 RHH

Pursuant to:
☐ Consolidated Farm and Rural Development Act.
☒ Title V of the Housing Act of 1949.

# PROMISSORY NOTE

STATE NEW JERSEY
COUNTY GLOUCESTER
CASE NO. 35-08-1,326,460

Date NOVEMBER 30, 19 77.

**FOR VALUE RECEIVED**, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government") at its office in WILLIAMSTOWN, NEW JERSEY 08094,

**THE PRINCIPAL SUM OF** ONE MILLION EIGHT HUNDRED NINE THOUSAND FIFTY & NO/100 - - - - - -

**DOLLARS** ($ 1,809,050.00), plus **INTEREST** on the **UNPAID PRINCIPAL** of EIGHT **PERCENT** ( 8 %) **PER ANNUM.**

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of four alternatives as indicated below: (check one)

☐ I. Principal and Interest payments shall be deferred. The first installment shall be all accrued interest and shall be due on ______, 19 ___. Payment of Principal and later accrued Interest shall be in ______ installments as indicated in the box below;

☐ II. Principal and Interest payments shall be deferred. The interest accrued to ______, 19 ___ shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in ______ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of such new Principal herein $______ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ III. Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the ______ of each ______ beginning on ______, 19 ___, through ______, 19 ___, Principal and later accrued Interest shall be paid in ______ installments as indicated in the box below;

☒ IV. Payments shall not be deferred. Principal and Interest shall be paid in 480 installments as indicated in the box below:

$ 12,591.00 on DECEMBER 28, 19 77, and

$ 12,591.00 thereafter on the 28th of each MONTH until the **PRINCIPAL** and **INTEREST** are fully paid except that the **FINAL INSTALLMENT** of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and **PAYABLE** FORTY ( 40 ) YEARS from the **DATE** of this **NOTE**. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest computed to the effective date of the payment and then to principal.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower. Refunds and extra payments, as defined in the regulations (7 C.F.R. 1861.2) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied to the installments last to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

Borrower agrees that the Government at any time may assign this note and insure the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

Borrower hereby certifies that he is unable to obtain sufficient credit elsewhere to finance his actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower (a) will personally operate such property as a farm with his own and his family's labor if this is an FO loan, or (b) will personally occupy and use such property if this is an RH loan on a "nonfarm tract" or a section 504 RH loan.

**REFINANCING AGREEMENT**: If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

**DEFAULT**: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. **UPON ANY SUCH DEFAULT**, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act or Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "KIND OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

MULLICA WEST LIMITED

Presentment, protest, and notice are hereby waived.

"General Partner" Kenneth D. Griffin (BORROWER) (SEAL)

"General Partner" Wayne Griffin (SEAL) (BORROWER)

Box 69B, RD#1

Mt. Laurel, NJ 08057

RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ 1,809,050. | 11/30/77 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 1,809,050.00 | 11/30/77 |

(Rev. 11-10-75) FARMERS HOME ADMINISTRATION

| KIND OF LOAN |
| --- |
| Type: SECTION 21 RRH |
| Pursuant to: |
| ☐ Consolidated Farm and Rural Development Act. |
| ☒ Title V of the Housing Act of 1949. |

# PROMISSORY NOTE

| STATE NEW JERSEY |
| --- |
| COUNTY GLOUCESTER |
| CASE NO. 35-08-1,326,460 |

Date MAY 31, 19 77.

**FOR VALUE RECEIVED**, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government") at its office in WILLIAMSTOWN, NEW JERSEY 08094,

**THE PRINCIPAL SUM OF** ONE MILLION THREE HUNDRED THOUSAND AND NO/100 - - - - - - - -

**DOLLARS ($** 1,300,000.00 **)**, plus **INTEREST** on the **UNPAID PRINCIPAL** of NINE **PERCENT (** 9 **%) PER ANNUM.**

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of four alternatives as indicated below: (check one)

☐ I. Principal and Interest payments shall be deferred. The first installment shall be all accrued interest and shall be due on ______, 19__. Payment of Principal and later accrued Interest shall be in ______ installments as indicated in the box below;

☐ II. Principal and Interest payments shall be deferred. The interest accrued to ______, 19__ shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in ______ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of such new Principal herein $______ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ III. Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the ______ of each ______ beginning on ______, 19__, through ______, 19__, Principal and later accrued Interest shall be paid in ______ installments as indicated in the box below;

☒ IV. Payments shall not be deferred. Principal and Interest shall be paid in 480 installments as indicated in the box below:

$ 10,036.00 on JUNE 28, 19 77, and

$ 10,036.00 thereafter on the 28th of each MONTH until the **PRINCIPAL** and **INTEREST** are fully paid except that the **FINAL INSTALLMENT** of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and **PAYABLE** FORTY ( 40 ) **YEARS** from the **DATE** of this **NOTE**. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest computed to the effective date of the payment and then to principal.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower. Refunds and extra payments, as defined in the regulations (7 C.F.R. 1861.2) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied to the installments last to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

Borrower agrees that the Government at any time may assign this note and insure the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

Borrower hereby certifies that he is unable to obtain sufficient credit elsewhere to finance his actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower (a) will personally operate such property as a farm with his own and his family's labor if this is an FO loan, or (b) will personally occupy and use such property if this is an RH loan on a "nonfarm tract" or a section 504 RH loan.

**REFINANCING AGREEMENT**: If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

**DEFAULT**: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act or Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "KIND OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

MULLICA WEST, LIMITED

Presentment, protest, and notice are hereby waived.

"General Partner" KENNETH D. GRIFFIN (BORROWER) (SEAL)

"General Partner" WAYNE GRIFFIN (SPOUSE) (SEAL)

Box 69B, RD#1

Mt. Laurel, NJ 08057

RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ 1,300,000. | 5-31-77 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 1,300,000.00 | 5-31-77 |

99181

# REAL ESTATE MORTGAGE FOR NEW JERSEY

THIS MORTGAGE is made this day, November 30, 1977 by MULLICA WEST, LIMITED, a limited partnership organized and existing under the laws of the State of New Jersey, whose mailing address is Box 69B, R. D. 1, Mt. Laurel, County of Gloucester, New Jersey 08057 (the Borrower).

The United States of America (the Government), acting through the Farmers Home Administration, United States Department of Agriculture, has loaned the Borrower money as evidenced by one or more promissory note(s) or assumption agreement(s) (the Note) (if more than one note is described below, the word "Note" as used herein shall be construed as referring to each note singly or all notes collectively, as the context may require). The Note has been executed by the Borrower, is payable to the order of the Government in installments as specified therein, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by the Borrower, and is further described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| November 30, 1977 | $1,809,050.00 | 8% (eight) | November 28, 2017 |

K.G. W.G.

The Government may assign the Note at any time. The Government may also insure the payment of the Note pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949.

This instrument shall secure payment of the Note whenever the Note is held either by the Government or by an uninsured holder. Whenever the Note is held by an insured holder, however, this instrument shall not secure payment of the Note or attach to the underlying debt. In that event, this instrument shall constitute an indemnity mortgage to secure any payments to an insured holder of the Note or other advances which the Government may be required to make upon default by the Borrower. The insured holder shall have no right, title or interest in or to the lien of this instrument or its benefits. This instrument also secures the Borrower's obligations and covenants under other instruments delivered

in connection with the loan evidenced by the Note, including the Borrower's Loan Agreement of even date and its Loan Resolution referred to therein, both of which are hereby incorporated herein by reference. The Note, Loan Agreement, Loan Resolution and this instrument together with any supplements, attachments, modifications and additions are collectively referred to as the "Loan Instruments".

NOW THEREFORE, in consideration of the loan(s) the Borrower hereby mortgages, (as construed in §46:9-1, N.J.S.A), assigns, grants and conveys to the Government, the following property in Gloucester County(ies), New Jersey:

LAND and premises situate in the Township of Harrison, County if Gloucester and State of New Jersey, bounded and described as follows:

BEGINNING at a point in the center line of Mullica Hill-Swedesboro Road corner to lands of Howard H. Reed; thence South 34 degrees 41 minutes 11 seconds West along lands of Howard H. Reed 640.73 feet to a point; thence South 56 degrees 05 minutes East a distance of 696.56 feet to a point; thence North 55 degrees 45 minutes East a distance of 261.79 feet to a point; thence South 34 degrees 15 minutes East a distance of 385 feet to a point in line of lands now or formerly of Dunlap's Lot thence North 45 degrees 30 minutes East along line of lands now or formerly of Dunlap's Lot a distance of 440.64 feet to lands now or formerly of Charles Parker; thence North 28 degrees 27 minutes West along lands now or formerly of Charles Parker 502.47 feet to an angle therein; thence North 06 degrees 45 minutes West continuing along lands now or formerly of Charles Parker 99 feet to the center line of Mullica Hill-Swedesboro Road; thence North 71 degrees 30 minutes West along the center line of Mullica Hill-Swedesboro Road 748.43 feet to the place of beginning.

BEING shown as Section 2 and Section 3 on Survey and Site Plan of Mullica West made by A. E. Bernard, P. E. and L. S. dated January 31, 1974 and last revised July 2, 1976.

TOGETHER with and subject to all restrictions and easements of record.

TOGETHER with all the improvements, tenements and appurtenances now or hereafter erected on the property, and all easements, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, all leasehold rights of any kind, and all fixtures now or hereafter attached to or used in connection with the property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, natural gas, water, air and light; and including, but not limited to, all plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, washers, dryers, awnings, screens, blinds, shades, storm windows, storm doors, antennas, attached floor coverings, trees and plants; all of which including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this instrument; and all payments at any time owing to the Borrower by virtue of any sale, lease, transfer, conveyance or condemnation of any part thereof or interest therein--all of which are herein collectively referred to as the "Property".

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

The Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, and convey the Property, and that the Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to easements and restrictions of record.

THIS MORTGAGE SHALL SECURE (a) payment of the Note in accordance with its terms, including any extensions or renewals thereof, whenever the Note is held by either the Government or by an uninsured holder; (b) repayment, with interest, of any payments, advances and expenditures made by the Government pursuant to the terms of this or any other Loan Instrument; and (c) performance of every covenant and agreement of the Borrowers contained in this or any other Loan Instrument.

The Borrower, for itself, its successors and assigns, WARRANTS the title to Property (as construed in §46:9-2, N.J.S.A.) to the Government against the lawful claims of all persons whose claims are not based upon liens, encumbrances, easements or reservation specified above.

The Borrower, for itself, its successors and assigns, COVENANTS AND AGREES as follows:

(1) Borrower will promptly pay any indebtedness secured by this instrument when due.

(2) Borrower will indemnify the Government against any loss which the Government may incur as a result of making payments to an insured holder of the Note after the Borrower's default.

(3) Borrower will pay the Government any fees or other charges required under regulations of the Farmers Home Administration.

(4) Borrower will pay when due all taxes, liens, judgments, encumbrances and assessments lawfully attaching to or assessed against the Property, and, without demand, will also provide the Government with proof of those payments.

(5) Borrower will pay the Government for any expenses necessary or incidental to (a) the protection of the lien or priority of any Loan Instrument and to (b) the enforcement of or compliance with the provisions of any Loan Instrument. "Expenses" includes (without limitation) costs of evidence of title, surveys, recording fees, attorneys' fees and trustees' fees, as well as court costs and expenses of advertising, selling and conveying the Property or any portion of it.

(6) Borrower will use the loan evidenced by the Note solely for the purposes authorized by the Government.

(7) Borrower will keep the Property insured as required by the Government and will deliver the originals of all insurance policies to the Government for safekeeping.

(8) Borrower will comply with all laws, ordinances and regulations affecting the Property and the conduct of Borrower's business operations.

(9) Borrower will maintain the Property in good repair and make any repairs the Government may require.

(10) Borrower will operate the Property in a good and efficient manner and will comply with management plans and practices which the Government may prescribe from time to time.

(11) Borrower will not abandon the Property; effect waste, leasing or impairment of the Property; or cut, remove or lease any timber, gravel, oil, gas, coal or other minerals.

(12) Borrower will not (except in the ordinary course of business) lease, assign, sell, transfer or encumber the Property or any nonexpendable part thereof, voluntarily or otherwise, either in whole or in part, without the prior written consent of the Government.

(13) The property described herein was obtained or improved through Federal financial assistance. This property is subject to the provisions of Title VI of the Civil Rights Act of 1964 and the regulations issued pursuant thereto for so long as the property continues to be used for the same or similar purpose for which financial assistance was extended or for so long as the purchaser owns it, whichever is longer.

(14) If at any time it shall appear to the Government that the Borrower may be able to obtain a loan from a production credit association, a federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, the Borrower will, upon the Government's request, apply for and accept a loan in sufficient amount to pay the Note and any other indebtedness secured by this instrument and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such a loan.

(15) The Government may require the Borrower to make additional monthly payments equal to one-twelfth of the estimated taxes, assessments, insurance premiums and other charges upon the Property.

(16) The Government and its agents may inspect the Property at reasonable times to ascertain whether the Borrower is fulfilling its obligations under this or any other Loan Instrument.

(17) The Government may at any time pay as advances for the Borrower's account any amounts which the Borrower is obligated to pay under any Loan Instrument. The Government may exercise this right regardless of whether the Note is insured and regardless of whether advances exceed the face amount of the Note.

(18) All advances by the Government pursuant to the terms of this or any other Loan Instrument shall bear interest at the rate borne by the Note which bears the highest interest rate. Advances, together with interest accruing on them, shall be immediately due and payable by the Borrower at the place designated in the latest Note. Advances by the Government shall neither relieve the Borrower of its obligation to pay nor cure any default under any Loan Instrument.

(19) Except to the extent specified by the Government in writing, the Government in its sole discretion may restructure the indebtedness secured by any Loan Instrument, release any party from liability to the Government, release portions of the Property from the lien of any Loan Instrument, and waive any other Government right under any Loan Instrument without affecting the lien or priority of any Loan Instrument, or the liability of the Borrower or any other party for payment of the indebtedness secured by any Loan Instrument.

(20) The Government will not be bound by any present or future state laws (a) providing for valuation, appraisal, homestead or exemption of the Property; (b) prohibiting or restricting an action for deficiency judgment or limiting the judgment amount which may be awarded; (c) prescribing any statute of limitations; (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions the Government may impose by regulation as a condition of approving a transfer of the Property to a new borrower. THE BORROWER WAIVES THE BENEFIT OF ANY SUCH STATE LAWS.

(21) Should the Borrower DEFAULT on any of its obligations under any Loan Instrument, merge, dissolve, be declared bankrupt or insolvent, or make an assignment for the benefit of creditors, without Notice the Government may (a) accelerate the entire indebtedness secured by this instrument by declaring it immediately due and payable; (b) charge the Borrower's account for any reasonable expenses which the Government may pay or incur to maintain and repair the Property; (c) operate or rent the Property; (d) have a receiver appointed for the Property who may exercise the usual powers of receivers in similar cases; (e) foreclose this and any other Loan Instrument and sell the Property; (f) enforce any and all other rights and remedies provided in the Loan Instruments or by future or present laws.

(22) Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated and of the United States of America, on terms and conditions satisfactory to the Government, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and in the manner and after such notice and on terms required by statute or determined by the Government is not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(23) Proceeds of a foreclosure sale pursuant to any Loan Instrument shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions of any Loan Instrument; (b) any prior liens required by law or a competent court to be paid; (c) all indebtedness to the Government secured by this instrument; (d) inferior liens of record required by law or a competent court to be paid; (e) at the Government's option, any other indebtedness of the Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(24) If the Government is the successful bidder at a foreclosure sale under any Loan Instrument, any portion of the purchase price not owed to a third party may be paid by crediting that amount on any debts of the Borrower which are owed to or insured by the Government.

(25) The rights and remedies provided in this instrument are cumulative and shall be in addition to every other remedy now or hereafter existing at law, in equity, by statute or by regulation.

(26) A waiver, amendment, release or modification of this instrument may be effected only by a writing which has been duly executed by the Government and shall not be established by conduct, custom or course of dealing.

(27) This instrument shall be governed by federal law, and shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this instrument.

(28) Default under this instrument shall constitute a default under any other security instruments of the Borrower held or insured by the Government and default under any other security instrument constitutes default under this instrument.

(29) The invalidity or unenforceability of any portion of this instrument shall not effect the validity or enforceability of the remaining portion of this instrument.

(30) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(32) Notices to the Borrower shall be sent to its address as shown on the first page of this instrument. Notices to the Government shall be addressed to the Farmers Home Administration, United States Department of Agriculture, Robscott Building, 151 East Chestnut Hill Road, Suite 2, Newark, Delaware 19713. Notices shall be sent by certified mail (postage prepaid) unless otherwise required by law. The Government and the Borrower may designate any further or different addresses to which subsequent notices shall be sent.

IN WITNESS WHEREOF, the Borrower has caused this Mortgage to be executed by its general partners as of the date first written above.

WITNESS:

MULLICA WEST, LIMITED, a Limited Partnership

[signature] By [signature]
Kenneth D. Griffin,
General Partner

[signature] By [signature]
Wayne Griffin,
General Partner

ACKNOWLEDGMENT

STATE OF NEW JERSEY )
) ss:
COUNTY OF GLOUCESTER )

On this 30th day of November, 19 77, before me, appeared Kenneth D. Griffin and Wayne Griffin, to me personally known, who being by me duly sworn, did say that they are the General Partners of Mullica West, Limited,

and that this instrument was signed on behalf of Mullica West, Limited and they acknowledged the instrument to be the free act and deed of Mullica West, Limited.

NOTARIAL
SEAL
(None - not required)

Richard V. DeCou
~~NOTARY PUBLIC~~
Attorney at Law
State of New Jersey

My commission expires (Not applicable).

The form of this instrument was prepared by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of

D. CHARLES VALSING
REGIONAL ATTORNEY

BOOK 859 PAGE 394

5768/58 14.00 Bc 86626

RECEIVED
GLOU. CO. CLERKS OFFICE
JOSEPH J. HOFFMAN, CLERK

DEC 7 1977

AM 7 8 9 10 11 12 1 2 3 4 5 6 PM

Received Dec. 7th A.D. 19 77
at 8:30 o'clock A.M.
and recorded in the Clerk's Office
of Gloucester County, at Woodbury,
in book 859 of Mtgs.
page 385&c

Joseph J. Hoffman
Clerk

INTER STATE ABSTRACT CO.
50 HADDON AVENUE
HADDONFIELD, N. J. 08033

BOOK 844 PAGE 644

89884

USDA-FHA
Form FHA 427-1 NJ
(Rev. 2-1-74)

Position 6

# REAL ESTATE MORTGAGE FOR NEW JERSEY

THIS MORTGAGE, made this day, May 31, 1977, between the undersigned MULLICA WEST, LIMITED, a limited partnership doing business in Gloucester County, New Jersey, whose post office address is Box 69H, R. D. 1, Mt. Laurel, New Jersey 08057, the mortgagor(s), herein called "Borrower," and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, the mortgagee, whose principal office is located at Washington, D. C., herein called the "Government,"

WITNESSETH THAT:

WHEREAS, Borrower is justly indebted to the Government as evidenced by one or more certain promissory note(s) or assumption agreement(s), herein called "note" (if more than one note is described below, the word "note" as used herein shall be construed as referring to each note singly or all notes collectively, as the context may require), said note being executed by Borrower, being payable to the order of the Government in installments as specified therein, authorizing acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and being further described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| May 31, 1977 | $1,300,000.00 | 9% | April 30, 2017 |

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Form and Rural Development Act, or Title V of the Housing Act of 1949;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower:

NOW, THEREFORE, (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provisions for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, and in consideration of one dollar, Borrower hereby mortgages (as construed in § 46:9-1, N.J.S.A.) to the Government the following property, herein called "the premises" or "the property," situated in the State of New Jersey, County(ies) of Gloucester:

SEE ATTACHED SHEET FOR PROPERTY DESCRIPTION

LAND and premises situate in the Township of Harrison, County Gloucester and State of New Jersey:

BEGINNING at a point in the center line of Mullica Hill-Woodstown Road (N.J. State Highway Route #45), corner to lands now or formerly of Howard H. Reed; thence North 55 degrees 36 minutes 30 seconds East, along the center line of Mullica Hill-Woodstown Road (N.J. State Highway Route #45), a distance of 150 feet to point in line of lands now or formerly of Dunlap's Lot; thence North 34 degrees 15 minutes West, along lands now or formerly of Dunlap's Lot, 426.11 feet to a point; thence North 45 degrees 30 minutes East, along lands now or formerly of Dunlap's Lot, 255 feet to a point; thence North 34 degrees 15 minutes West, a distance of 385 feet to a point; thence South 55 degrees 45 minutes West, a distance of 261.79 feet to a point; thence North 56 degrees 05 minutes West, a distance of 696.56 feet to a point; thence South 34 degrees 41 minutes 11 seconds West, a distance of 150 feet to a point; thence South 56 degrees 05 minutes East, a distance of 698.88 feet to a point; thence South 34 degrees 15 minutes East, a distance of 800.87 feet to the center line of Mullica Hill-Woodstown Road (N.J. State Highway Route #45) and place of beginning.

BEING shown as Section 1, on Survey made by A. E. Bernard, P. E. and L. S., dated January 31, 1974 and revised to November 25, 1975.

TOGETHER with and subject to a 20 foot wide sanitary sewer easement over the following described premises; Center line of 20 foot wide easement is as follows:

BEGINNING at a point in the Northeasterly line of Mullica West, Section No. 3, being the following courses and distances from the center line of Mullica Hill-Swedesboro Road, (a) South 28 degrees 27 minutes East, 205 feet, more or less; (b) South 06 degrees 45 minutes East, 99 feet from a point in the center line of Mullica Hill-Swedesboro Road; thence (1) South 49 degrees 03 minutes West, 355 feet, more or less to a point; thence (2) South 69 degrees 03 minutes West, 115 feet, more or less to a point in the Northeasterly line of Section No. 1 of Mullica West.

ALSO together with and subject to a 20 foot wide water easement over the following described premises; Center line of 20 foot wide easement is as follows:

Water Easement #1: BEGINNING at a point in the Southwesterly line of Mullica West, Section No. 3, being the following courses and distances from the center line of Mullica Hill-Swedesboro Road (a) South 45 degrees 30 minutes West, 184 feet, more or less from a point; (b) South 28 degrees 27 minutes East, 502.47 feet, from a point; (c) South 06 degrees 45 minutes East, 99 feet, more or less from a point in the center line of Mullica Hill-Swedesboro Road; thence (1) North 44 degrees 30 minutes West, 20 feet to a point; thence (2) South 45 degrees 30 minutes West, 256 feet, more or less to a point in the Northeasterly line of Section No. 1 of Mullica West.

Water Easement #2: Center line of 20 foot wide easement is as follows:

BEGINNING at a point in the second course of above described easement, 124 feet, more or less, South 45 degrees 30 minutes West, of the beginning of said second course; thence (1) North 31 degrees 30 minutes West, 246 feet, more or less; thence (2) South 58 degrees 30 minutes West, 125 feet, more or less; thence (3) South 13 degrees 30 minutes West, 25 feet, more or less, to a point in the Northeasterly line of Section No. 1 of Mullica West.

ALSO together with and subject to a 20 foot wide storm sewer easement over the following described premises; Center line of 20 foot wide easement is as follows:

BEGINNING at a point in the center of a stream running through Section No. 3 of Mullica West, being the following courses and distances from the center line of Mullica Hill-Swedesboro Road (a) South 47 degrees 03 minutes West, 65 feet, more or less; (b) South 28 degrees 27 minutes West, 130 feet, more or less; (c) South 06 degrees 45 minutes East, 99 feet from a point in the center line of Mullica Hill-Swedesboro Road; thence (1) South 47 degrees 03 minutes West, 155 feet, more or less; thence (2) North 62 degrees 30 minutes West, 295 feet, more or less; thence (3) North 84 degrees 30 minutes West, 300 feet, more or less; thence (4) South 05 degrees 30 minutes West, 300 feet, more or less; thence (5) South 34 degrees 15 minutes East, 125 feet, more or less to a point in the Northerly line of Section No. 1 of Mullica West.

ALSO together with and subject to a parking easement over the following described premises;

BEGINNING at a point in the Northerly line of Section No. 1 of Mullica West, 502 feet, more or less, South 56 degrees 05 minutes East of a point in the Westerly line of Mullica West, said point being South 34 degrees 41 minutes 11 seconds West, 640.73 feet of the center line of Mullica Hill-Swedesboro Road; thence (1) South 56 degrees 05 minutes East, along the Northerly line of said Section No. 1, 180 feet, more or less; thence (2) North 34 degrees 15 minutes West, 138 feet, more or less to a point of curve; thence (3) Northwardly, along the arc of a curve, having a radius of 300 feet, an arc distance of 208.13 feet to a point of tangent; thence (4) North 05 degrees 30 minutes East, 138 feet, more or less to a point; thence (5) North 84 degrees 30 minutes West, 65 feet to a point; thence (6) South 05 degrees 30 minutes West, 138 feet, more or less to a point of curve; thence (7) Southwardly, along the arc of a curve, having a radius of 365 feet, an arc distance of 227 feet, more or less to a point and place of beginning.

(24) Borrower covenants and agrees that it will not discriminate, or permit discrimination, by any agent, lessee, or other operator, in the use or occupancy of the facilities financing in whose or in part with the loan in connection with which this instrument is given, because of race, color, creed or national origin.

(25) This instrument also secures the obligations and covenants of Borrower set forth in Borrower's Loan Resolution of May 31, 1972, which is hereby incorporate herein by reference.

together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for himself, his heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the premises, as construed in § 46:9–2, N.J.S.A., and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by him when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government as described by this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of his covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by, delivered to, and retained by the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may extend and defer the maturity of and renew and reamortize the debt evidenced by the note or any indebtedness to the Government secured hereby, release from liability to the Government any party so liable thereon, release portions of the property from and subordinate the lien hereof, and waive any other rights hereunder, without affecting the lien or priority hereof or the liability to the Government of Borrower or any other party for payment of the note or indebtedness secured hereby, except as specified by the Government in writing.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, a bankrupt, or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government in the order prescribed above.

(19) Borrower recognizes that, pursuant to Federal law, the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for him will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, or national origin.

(21) This instrument shall be subject to ... regulations not inconsistent with the express provisions hereof.

(22) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration, United States Department of Agriculture, at Newark, Delaware 19711, and in the case of Borrower to him at his post office address stated above.

(23) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) the day and year first above written.

MULLICA WEST, LIMITED

[signature] (SEAL)
KENNETH D. GRIFFIN, General Partner

[signature] (SEAL)
WAYNE GRIFFIN, General Partner

Signed, sealed, and delivered in the presence of:

[signature] (Witness)
Attorney at Law
State of New Jersey

Received June 1st A.D. 1977
At 2:47 o'clock P.M.
and recorded in the Clerk's Office of Gloucester County, at Woodbury,
In book 844 of Mtgs.
page 644&c
[signature] Clerk

ACKNOWLEDGMENT

STATE OF NEW JERSEY } ss:
COUNTY OF Camden

I, the undersigned, ~~a Notary Public~~ an attorney in and for said State and County, do hereby certify that on this 2 day of May, 19 77, personally appeared Kenneth D. Griffin and Wayne Griffin, who, I am satisfied, are the person s called Borrower in the foregoing mortgage, and individually acknowledged to me that they signed, sealed, and delivered the same as their voluntary act and deed for the uses and purposes therein expressed.

THE MORTGAGE ... HAS RECEIVED A ... MORTGAGE.

(NOTORIAL SEAL)

[signature]
Attorney at Law ~~Notary Public.~~
State of New Jersey

My commission expires:

RECEIVED GLO. CLERKS OFFICE
1977 JUN -1 PM 2 47
JOHN J. HOFFMAN, CLERK

The form of this instrument was prepared by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of

CHARLES D. VALSING, REGIONAL ATTORNEY FOR THE

UNITED STATES DEPT. OF AGRICULTURE

INTER STATE ABSTRACT CO.
56 HADDON AVENUE
HADDONFIELD, N. J.

Rec 8.00 ... 4657 / 57

FmHA Instruction 444.5
Exhibit G

84-02

(RRH LOAN TO PROFIT TYPE CORPORATION OPERATING ON A LIMITED PROFIT BASIS)

LOAN RESOLUTION OF August 25, , 19 77

RESOLUTION OF THE **LIMITED PARTNERSHIP** OF **MULLICA WEST, LIMITED** PROVIDING FOR BORROWING $ 1,809,050.00 TO FINANCE RENTAL HOUSING AND RELATED FACILITIES IN A RURAL AREA FOR SENIOR CITIZENS AND OTHER PERSONS AND FAMILIES WITH LOW OR MODERATE INCOMES IN RURAL AREAS, THE COLLECTION, HANDLING, AND DISPOSITION OF INCOME, THE ISSUANCE OF INSTALLMENT PROMISSORY NOTE AND REAL ESTATE SECURITY INSTRUMENT, AND RELATED MATTERS

Whereas **Mullica West, Limited** (herein referred to as the **"Partnership"**) is a **Limited Partnership duly organized and operating under the Uniform Partnership Law of the**
(authorizing State statute)

**State of New Jersey** ;

The **Limited Partnership (herein referred to as the "Partnership")** has decided to provide certain rental housing and related facilities for eligible occupants in rural areas;

The **Partnership has determined that it** is unable to provide such housing and facilities with its own resources or to obtain from other sources for such purpose sufficient credit upon terms and conditions which the **Partnership** could reasonably be expected to fulfill;

BE IT RESOLVED:

1 Application for Loan. The **Partnership** shall apply for and obtain a loan (herein called "the loan") of $1,809,050.00 through the facilities of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called The "Government") pursuant to sections 515 (b) and 521 (a) of the Housing Act of 1949. The loan may be insured by the Government for the benefit of the lender. The loan shall be used solely for the specific eligible purposes for which it is approved by the Government in order to provide rental housing and related facilities for eligible occupants, as defined by the Government in rural areas. Such housing and facilities and the land constituting the site are herein called "the housing."

Note: The word "partner(s)" may be substituted for the word(s) "board" or "Board of Directors" and the word "partnership" may be substituted for the word "corporation" where appropriate. The OGC should be requested to provide appropriate substitute language to delete the reference to a "corporate seal" in item 2 and "stockholders" in item 9 (b) (5) when required.

2 Execution of Loan Instruments. To evidence the loan the **Partnership** shall issue a promissory note (herein referred to as "the note"), signed by its **Partners** for the amount of the loan, payable in installments over a period of 40 years, bearing interest at a rate, and containing other terms and conditions, prescribed by the Government. To secure the note or any indemnity or other agreement required by the Government, the **Partners** are hereby authorized to execute a real estate security instrument giving a lien upon the housing and upon such other real property of the **Partnership** as the Government shall require, including an assignment of the rents and profits as collateral security to be enforced in the event of any default by the **Partnership**, and containing other terms and conditions prescribed by the Government. The **Partners** are further authorized to execute any other security instruments and other instruments and documents required by the Government in connection with the making or insuring of the loan. The indebtedness and other obligations of the **Partnership** under the note, the related security instrument, and any related agreement are herein called the "loan obligations."

3 Equal Opportunity and Nondiscrimination Provisions. The **Partners** are hereby authorized and directed to execute on behalf of the **Partnership** (a) any undertakings and agreements required by the Government pursuant to Executive Order 11063 regarding nondiscrimination in the use and occupancy of housing, (b) Farmers Home Administration Form FmHA 400-1 entitled "Equal Opportunity Agreement" including an "Equal Opportunity Clause" to be incorporated in or attached as a rider to each construction contract the amount of which exceeds $10,000 and any part of which is paid for with funds from the loan, and (c) Farmers Home Administration Form FmHA 400-4, entitled "Nondiscrimination Agreement (Under Title VI, Civil Rights Act of 1964)," a copy of which is attached hereto and made a part thereof and any other undertakings and agreements required by the Government pursuant to lawful authority.

4 Supervised Bank Account. The proceeds of the note and the amount of $ N/A to be contributed by the **Partnership** from its own funds and used for eligible loan purposes shall be deposited in a "supervised bank account" as required by the Government. 1/ Amounts in the supervised bank account exceeding $40,000 shall be secured by the depositary bank in advance in accordance with U. S. Treasury Department Circular No. 176. As provided by the terms of the agreement creating the supervised bank

account, all funds therein shall, until duly expended, collaterally secure the loan obligations. Withdrawals from the supervised bank account by the **Partnership** shall be made only on checks signed by N/A of the **Partnership** and countersigned by the County Supervisor of the Farmers Home Administration, and only for the specific loan purposes approved in writing by the Government. The **Partnership** share of any liquidated damages or other monies paid by defaulting contractors or their sureties shall be deposited in the supervised bank account to assure completion of the project. When all approved items eligible for payment with loan funds are paid in full, any balance remaining in the supervised bank account shall be applied on the note as an "extra payment" as defined in the regulations of the Farmers Home Administration, and the supervised bank account shall be closed.

5 Accounts for Housing Operations and Loan Servicing. The **Partnership** shall establish on its books the following accounts, which shall be maintained so long as the loan obligations remain unsatisfied: A General Fund Account, an Operation and Maintenance Account, a Debt Service Account, and a Reserve Account. Funds in said accounts shall be deposited in a bank or banks insured by the Federal Deposit Insurance Corporation, except for any portion invested in readily marketable obligations of the United States as authorized by section 9. **The General Partners** shall execute a fidelity bond with a surety company approved by the Government, in an amount not less than the estimated maximum amount of such funds to be held in said accounts at any one time. The United States of America shall be named as co-obligee, and the amount of the bond shall not be reduced without the prior written consent of the Government. The **Partnership** in its discretion may at any time establish and utilize additional accounts to handle any funds not covered by the provisions of this resolution.

6 General Fund Account. By the time the loan is closed the **Partnership** shall from its own funds deposit in the General Fund Account the amount of $ 36,000.00. All income and revenue from the housing shall, upon receipt, be immediately deposited in the General Fund Account. The **Partnership** may also in its discretion at any time deposit therein other funds, not otherwise provided for by this resolution, to be used for any of the purposes authorized in sections 7, 8, or 9. Funds in the General Fund Account shall be used only as authorized in said sections and until so used shall be held by the **Partnership** in trust for the Government as security for the loan obligations.

7 Operation and Maintenance Account. Not later than the 15th of each month, out of the General Fund Account shall be transferred to the Operation and Maintenance Account sufficient amounts to enable the **Partnership** to pay from the Operation and Maintenance Account the actual, reasonable, and necessary current expenses, for the current month and the ensuing month, of operating and maintaining the housing not otherwise provided for. Current expenses may include, in addition to expenses occurring or becoming due monthly, monthly accumulations of proportionate amounts for the payment of

items which may become due either annually or at irregular intervals, such as taxes, insurance and normal repair and replacement of furnishings and equipment reasonably necessary for operation of the housing. Current expenses may also include initial purchase and installation of such furnishings and equipment with any funds deposited in and transferred from the General Fund Account which are not proceeds of the loan or income or revenue from the housing.

8 Debt Service Account. Each month, immediately after the transfer to the Operation and Maintenance Account provided for in section 6, or after it is determined that no such transfer is called for, any balance remaining in the General Fund Account, or so much thereof as may be necessary, shall be transferred to the Debt Service Account until the amount in the Debt Service Account equals the amount of the next installment due on the loan. Funds in the Debt Service Account shall be used only for payments on the loan obligations and, until so used, shall be held by the **Partnership** in trust for the Government as security therefor.

9 Reserve Account.

(a) Immediately after each transfer to the Debt Service Account as provided in section 8, any balance in the General Fund Account shall be transferred to the Reserve Account. Funds in the Reserve Account may be used only as authorized in this resolution and until so used shall be held by the **Partnership** in trust as security for the loan obligations. Transfers at a rate not less than $ 14,300.00 2/ annually shall be made to the Reserve Account until the amount in the Reserve Account reaches the sum of $ 143,000.00 3/ and shall be resumed at any time when necessary, because of disbursements from the Reserve Account to restore it to said sum. Of such sum, at least 50 percent shall be maintained on a cash basis, referred to herein as the "cash reserve." After the cash reserve reaches the required 50 percent of said sum, all or any portion of the balance of said sum may, at the option of the **Partnership**, consist of an amount, referred to herein as the "prepayment reserve," by which the **Partnership** is "ahead of schedule" as defined in the regulations of the Farmers Home Administration. Funds in the cash reserve shall be deposited in a separate bank account or accounts insured by the Federal Deposit Insurance Corporation or invested in readily marketable obligations of the United States, the earnings on which shall accrue to the Reserve Account.

(b) With the prior consent of the Government, funds in the Reserve Account may be used by the **Partnership**:

(1) To meet payments due on the loan obligations in the event the amount in the Debt Service Account is not sufficient for the purpose.

(2) To pay costs of repairs or replacements to the housing caused by catastrophe or long-range depreciation which are not current expenses under section 7.

(3) To make improvements or extensions to the housing.

(4) For other purposes desired by the **Partnership** which in the judgment of the Government likely will promote the loan purposes without jeapordizing collectibility of the loan or impairing the adequacy of the security, or will strenghten the security, or will facilitate, improve, or maintain the orderly collectibility of the loan.

(5) To pay dividends to **partners** or for any other purpose duly authorized by the **partnership, of up to 8% per annum of the borrowers initial investment of** 164,950 **4/ provided the partners de** **m** that after such disbursement (a) the amount in the Reserve Account will be not less than that required by subsection 9 (a) to be accumulated by that time and (b) during the next 12 months the amount in the Reserve Account will likely not fall below that required to be accumulated by the end of such period.

(c) Any amount in the Reserve Account which exceeds the aggregate sum specified in subsection 9 (a) and is not agreed between the **Partnership** and the Government to be used for purposes authorized in subsection 9 (b) shall be applied promptly on the loan obligations.

10 Regulatory Covenants. So long as the loan obligations remain unsatisfied, the **Partnership** shall--

(a) Impose and collect such fees, assessments, rents, and charges that the income of the housing will be sufficient at all times for operation and maintenance of the housing, payments on the loan obligations, and maintenance of the accounts herein provided for.

'206,749.91' See sheets below. JVD

(b) If return on investment for any year exceeds 8 percent per annum of borrower's initial investment of 4/ 164,950, the Government may require that the borrower reduce rents the following year and/or refund the excess return on investment to the tenants or use said excess in a manner that will best benefit the tenants.

(c) Maintain complete books and records relating to the housing's financial affairs, cause such books and records to be audited at the end of each fiscal year, promptly furnish the Government without request a copy of each audit report, and permit the Government to inspect such books and records at all reasonable times.

MAY 15 1980

Page 5d

Mullica West Loan Resolution Ammendment

Procedure FmHA Instruction 444.5, V III-explains Initial Investment

The following is used to determine initial invested dollars:

1. Cost Certification-Section 1- $1,479,550.42
   (form FHA 424-13) -Section 11- $1,977,967.60

2. 2% Initial Operating Capital-Section 1- $26,632.57
   (Sheet 8A, 444.5, V III, K1)-Section 11-$37,832.31

3. Total Investment-

| Section 1 | Section 11 |
|---|---|
| $1,479,550.42 | $1,977,967.60 |
| 26,632.57 | 37,832.31 |
| $1,506,182.99 | $2,015,799.91 |
| Loan Amount<br>$1,300,000.00 | Loan Amount<br>$1,809,050.00 |
| Initial Investment<br>$206,189.99 | Initial Investment<br>$206,749.91 |

Page 56

MAY 15 1980

Ammendment to Loan Resolution

Ammendment to Loan Resolution, Section 1, May 31, 1977, by and between Mullica West Limited and the Farmers Home Administration.

The following is changed to:

Item 9 (b) (5) To pay dividends to partners or for any other purpose duly authorized by the partnership of up to 8% per annum of the borrowers initial investment of $206,189.99 provided the partners determine that after such disbursement (a) the amount in the reserve account will not be less than that required by subsection 9(a) to be accumulated by that time and (b) during the next 12 months the amount in the reserve account will likely not fall below that required to be accumulated by the end of such period.

Item 10 (b) If return on investment for any year exceeds 8% per annum of borrower's initial investment of $206,189.99, the Government may require that the borrower reduce rents the following year and/or refund the excess return on investment to the tenants or use said excess in a manner that will best benefit the tenants.

Mullica West Limited

Date May 14, 1980 — Wayne Griffin — Wayne Griffin-General Partner

Date May 14, 1980 — Kenneth Griffin — Kenneth Griffin-General Partner

Date May 14, 1980 — Ralph L. Griffin — Ralph L. Griffin-Limited Partner

Date May 14, 1980 — Betty C. Griffin — Betty C. Griffin-Limited Partner

May 14, 1980

Roseann McWilliams

ROSEANN McWILLIAMS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Aug. 29, 19[illegible]

(d) If required or permitted by the Government, revise the account herein provided for, or establish new accounts, to cover handling and disposition of income from and payment of expenses attributable to the housing or to any other property securing the loan obligations, and submit regular and special reports concerning the housing or financial affairs.

(e) Unless the Government gives prior consent--

(1) Not use the housing for any purpose other than as rental housing and related facilities for eligible occupants.

(2) Not enter into any contract or agreement for improvements or extensions to the housing or other property securing the loan obligations.

(3) Not cause or permit voluntary dissolution of the **Partnership** nor merge or consolidate with any other organization, nor cause or permit any transfer or encumbrance of title to the housing or any part thereof or interest therein, by sale, mortgage, lease, or otherwise.

(4) Not cause or permit the issue or transfer of **ownership, borrow** any money, nor incur any liability aside from current expenses as defined in section 7 which would have a detrimental effect on the housing.

(f) Submit for the housing the following to the Government for prior review not less than 30 days before the effective dates, and for prior approval by the Government:

(1) Annual budgets and operating plans.

(2) Statements of management policy and practice, including eligibility criteria and implementing rules for occupancy of the housing.

(3) Proposed rents and charges and other terms of rental agreements with occupants and compensation to employees of the housing project.

(4) Rates of compensation to officers and employees of the **Partnership** payable from or chargeable to any account provided for in this resolution.

(g) If required by the Government, modify and adjust any matters covered by clause (f) of this section.

(h) Comply with all its agreements and obligations in or under the note, security instrument, and any related agreement executed by the **Partnership** in connection with the loan.

(i) Not alter, amend, or repeal without the Government's consent this resolution or the **Agreement of Limited Partnership** , which shall constitute parts of the total contract between the **Partnership** and the Government relating to the loan obligation.

(j) Do other things as may be required by the Government in connection with the operation of the housing, or with any of the **Partnership's** operations or affairs which may affect the housing, the loan obligation, or the security.

11 Refinancing the Loan. If at any time it appears to the Government that the **Partnership** is able to obtain a loan upon reasonable terms and conditions to refinance the loan obligations then outstanding, upon request from the Government the **Partnership** will apply for, take all necessary actions to obtain, and accept such refinancing loan and will use the proceeds for said purpose.

12 General Provisions.

(a) It is understood and agreed by the **Partnership** that any loan made or insured will be administered subject to the limitations of the authorizing act of Congress and related regulations, and that any rights granted to the Government herein or elsewhere may be exercised by it in its sole discretion to carry out the purposes of the loan, enforce such limitations, and protect the Government's financial interest in the loan and the security.

(b) The provisions of this resolution are representations to the Government to induce the Government to make or insure a loan to the **Partnership** as aforesaid. If the **Partnership** should fail to comply with or perform any provision of this resolution or any requirement made by the Government pursuant to this resolution, such failure shall constitute default as fully as default in payment of amounts due on the loan obligations. In the event of such failure, the Government at its option may declare the entire amount of the loan obligations immediately due and payable and, if such entire amount is not paid forthwith, may take possession of and operate the housing and proceed to foreclose its security and enforce all other available remedies.

(c) Any provisions of this resolution may be waived by the Government in its sole discretion, or changed by agreement between the Government and the **Partnership**, after this resolution becomes contractually binding,

to any extent such provisions could legally have been foregone or agreed to in amended form, by the Government initially.

(d) Any notice, consent, approval, waiver, or agreement must be in writing.

(e) This resolution may be cited in the security instrument and any other instruments as the "Loan Resolution of August 25, 19 77 ." (date of this resolution)

CERTIFICATE

The undersigned, Partners of the Limited Partnership, Mullica West, Limited, hereby certify that the foregoing is a true copy of the resolution duly adopted by the Partnership on August 25, 19 77 .

Kenneth D. Griffin, General Partner

Wayne Griffin, General Partner

Ralph L. Griffin, Limited Partner

Betty C. Griffin, Limited Partner

1/ Only loan funds, and borrower's funds to be used for an eligible loan purpose, may be deposited in the supervised bank account.

2/ In most cases this figure should be one-tenth of the aggregate sum specified later in the sentence and indicated by footnote 3.

3/ The amount to be inserted will usually be about 10 percent of the value of the buildings and related facilities financed wholly or partially with the loan.

4/ The amount to be inserted shall be determined in accordance with paragraph VIII K of FmHA Instruction 444.5.

o 0 o

FmHA Instruction 444.5
Exhibit G

84-06

(RRH LOAN TO PROFIT TYPE CORPORATION OPERATING ON A LIMITED PROFIT BASIS)

LOAN RESOLUTION OF May 31, 1977

RESOLUTION OF THE LIMITED PARTNERSHIP OF MULLICA WEST, LIMITED PROVIDING FOR BORROWING $ 1,300,000.00 TO FINANCE RENTAL HOUSING AND RELATED FACILITIES IN A RURAL AREA FOR SENIOR CITIZENS AND OTHER PERSONS AND FAMILIES WITH LOW OR MODERATE INCOMES IN RURAL AREAS, THE COLLECTION, HANDLING, AND DISPOSITION OF INCOME, THE ISSUANCE OF INSTALLMENT PROMISSORY NOTE AND REAL ESTATE SECURITY INSTRUMENT, AND RELATED MATTERS

Whereas Mullica West, Limited (herein referred to as the "Partnership") is a Limited Partnership duly organized and operating under the Uniform Partnership Law of the (authorizing State statute) State of New Jersey;

The Limited Partnership (herein referred to as the "Partnership") has decided to provide certain rental housing and related facilities for eligible occupants in rural areas;

The Partnership has determined that it is unable to provide such housing and facilities with its own resources or to obtain from other sources for such purpose sufficient credit upon terms and conditions which the Partnership could reasonably be expected to fulfill:

BE IT RESOLVED:

1. Application for Loan. The Partnership shall apply for and obtain a loan (herein called "the loan") of $ 1,300,000.00 through the facilities of the United States of America acting through the Farmers Home Administration, United States Department of Agriculture, (herein called The "Government") pursuant to sections 515 (b) and 521 (a) of the Housing Act of 1949. The loan may be insured by the Government for the benefit of the lender. The loan shall be used solely for the specific eligible purposes for which it is approved by the Government in order to provide rental housing and related facilities for eligible occupants, as defined by the Government in rural areas. Such housing and facilities and the land constituting the site are herein called "the housing."

Note: The word "partner(s)" may be substituted for the word(s) "board" or "Board of Directors" and the word "partnership" may be substituted for the word "corporation" where appropriate. The OGC should be requested to provide appropriate substitute language to delete the reference to a "corporate seal" in item 2 and "stockholders" in item 9 (b) (5) when required.

2 Execution of Loan Instruments. To evidence the loan the **Partnership** shall issue a promissory note (herein referred to as "the note"), signed by its **Partners** for the amount of the loan, payable in installments over a period of **40** years, bearing interest at a rate, and containing other terms and conditions, prescribed by the Government. To secure the note or any indemnity or other agreement required by the Government, the **Partners** are hereby authorized to execute a real estate security instrument giving a lien upon the housing and upon such other real property of the **Partnership** as the Government shall require, including an assignment of the rents and profits as collateral security to be enforced in the event of any default by the **Partnership**, and containing other terms and conditions prescribed by the Government. The **Partners** are further authorized to execute any other security instruments and other instruments and documents required by the Government in connection with the making or insuring of the loan. The indebtedness and other obligations of the **Partnership** under the note, the related security instrument, and any related agreement are herein called the "loan obligations."

3 Equal Opportunity and Nondiscrimination Provisions. The **Partners** are hereby authorized and directed to execute on behalf of the **Partnership** (a) any undertakings and agreements required by the Government pursuant to Executive Order 11063 regarding nondiscrimination in the use and occupancy of housing, (b) Farmers Home Administration Form FmHA 400-1 entitled "Equal Opportunity Agreement" including an "Equal Opportunity Clause" to be incorporated in or attached as a rider to each construction contract the amount of which exceeds $10,000 and any part of which is paid for with funds from the loan, and (c) Farmers Home Administration Form FmHA 400-4, entitled "Nondiscrimination Agreement (Under Title VI, Civil Rights Act of 1964)," a copy of which is attached hereto and made a part thereof and any other undertakings and agreements required by the Government pursuant to lawful authority.

4 Supervised Bank Account. The proceeds of the note and the amount of $ N/A to be contributed by the **Partnership** from its own funds and used for eligible loan purposes shall be deposited in a "supervised bank account" as required by the Government. 1/ Amounts in the supervised bank account exceeding $40,000 shall be secured by the depositary bank in advance in accordance with U. S. Treasury Department Circular No. 176. As provided by the terms of the agreement creating the supervised bank

account, all funds therein shall, until duly expended, collaterally secure the loan obligations. Withdrawals from the supervised bank account by the **Partnership** shall be made only on checks signed by N/A of the **Partnership** and countersigned by the County Supervisor of the Farmers Home Administration, and only for the specific loan purposes approved in writing by the Government. The **Partnership**s share of any liquidated damages or other monies paid by defaulting contractors or their sureties shall be deposited in the supervised bank account to assure completion of the project. When all approved items eligible for payment with loan funds are paid in full, any balance remaining in the supervised bank account shall be applied on the note as an "extra payment" as defined in the regulations of the Farmers Home Administration, and the supervised bank account shall be closed.

5 Accounts for Housing Operations and Loan Servicing. The **Partnership** shall establish on its books the following accounts, which shall be maintained so long as the loan obligations remain unsatisfied: A General Fund Account, an Operation and Maintenance Account, a Debt Service Account, and a Reserve Account. Funds in said accounts shall be deposited in a bank or banks insured by the Federal Deposit Insurance Corporation, except for any portion invested in readily marketable obligations of the United States as authorized by section 9. **The General Partners** shall execute a fidelity bond with a surety company approved by the Government, in an amount not less than the estimated maximum amount of such funds to be held in said accounts at any one time. The United States of America shall be named as co-obligee, and the amount of the bond shall not be reduced without the prior written consent of the Government. The **Partnership** in its discretion may at any time establish and utilize additional accounts to handle any funds not covered by the provisions of this resolution.

6 General Fund Account. By the time the loan is closed the **Partnership** shall from its own funds deposit in the General Fund Account the amount of $ 26,000.00 . All income and revenue from the housing shall, upon receipt, be immediately deposited in the General Fund Account. The **Partnership** may also in its discretion at any time deposit therein other funds, not otherwise provided for by this resolution, to be used for any of the purposes authorized in sections 7, 8, or 9. Funds in the General Fund Account shall be used only as authorized in said sections and until so used shall be held by the **Partnership** in trust for the Government as security for the loan obligations.

7 Operation and Maintenance Account. Not later than the 15th of each month, out of the General Fund Account shall be transferred to the Operation and Maintenance Account sufficient amounts to enable the **Partnership** to pay from the Operation and Maintenance Account the actual, reasonable, and necessary current expenses, for the current month and the ensuing month, of operating and maintaining the housing not otherwise provided for. Current expenses may include, in addition to expenses occurring or becoming due monthly, monthly accumulations of proportionate amounts for the payment of

items which may become due either annually or at irregular intervals, such as taxes, insurance and normal repair and replacement of furnishings and equipment reasonably necessary for operation of the housing. Current expenses may also include initial purchase and installation of such furnishings and equipment with any funds deposited in and transferred from the General Fund Account which are not proceeds of the loan or income or revenue from the housing.

8 Debt Service Account. Each month, immediately after the transfer to the Operation and Maintenance Account provided for in section 6, or after it is determined that no such transfer is called for, any balance remaining in the General Fund Account, or so much thereof as may be necessary, shall be transferred to the Debt Service Account until the amount in the Debt Service Account equals the amount of the next installment due on the loan. Funds in the Debt Service Account shall be used only for payments on the loan obligations and, until so used, shall be held by the **Partnership** in trust for the Government as security therefor.

9 Reserve Account.

(a) Immediately after each transfer to the Debt Service Account as provided in section 8, any balance in the General Fund Account shall be transferred to the Reserve Account. Funds in the Reserve Account may be used only as authorized in this resolution and until so used shall be held by the **Partnership** in trust as security for the loan obligations. Transfers at a rate not less than $ 10,600.00 2/ annually shall be made to the Reserve Account until the amount in the Reserve Account reaches the sum of $ 106,000.00 3/ and shall be resumed at any time when necessary, because of disbursements from the Reserve Account to restore it to said sum. Of such sum, at least 50 percent shall be maintained on a cash basis, referred to herein as the "cash reserve." After the cash reserve reaches the required 50 percent of said sum, all or any portion of the balance of said sum may, at the option of the **Partnership**, consist of an amount, referred to herein as the "prepayment reserve," by which the **Partnership** is "ahead of schedule" as defined in the regulations of the Farmers Home Administration. Funds in the cash reserve shall be deposited in a separate bank account or accounts insured by the Federal Deposit Insurance Corporation or invested in readily marketable obligations of the United States, the earnings on which shall accrue to the Reserve Account.

(b) With the prior consent of the Government, funds in the Reserve Account may be used by the **Partnership** -

(1) To meet payments due on the loan obligations in the event the amount in the Debt Service Account is not sufficient for the purpose.

(2) To pay costs of repairs or replacements to the housing caused by catastrophe or long-range depreciation which are not current expenses under section 7.

(3) To make improvements or extensions to the housing.

(4) For other purposes desired by the **Partnership** which in the judgment of the Government likely will promote the loan purposes without jeopardizing collectibility of the loan or impairing the adequacy of the security, or will strenghten the security, or will facilitate, improve, or maintain the orderly collectibility of the loan.

(5) To pay dividends to **partners** or for any other purpose duly authorized by the **partnership, of up to 8% per annum of the borrowers initial investment of** 179,550 **4/ provided the partners de[m]** that after such disbursement (a) the amount in the Reserve Account will be not less than that required by subsection 9 (a) to be accumulated by that time and (b) during the next 12 months the amount in the Resorve Account will likely not fall below that required to be accumulated by the end of such period.

(c) Any amount in the Reserve Account which exceeds the aggregate sum specified in subsection 9 (a) and is not agreed between the **Partnership** and the Government to be used for purposes authorized in subsection 9 (b) shall be applied promptly on the loan obligations.

10 Regulatory Covenants. So long as the loan obligations remain unsatisfied, the **Partnership** shall--

(a) Impose and collect such fees, assessments, rents, and charges that the income of the housing will be sufficient at all times for operation and maintenance of the housing, payments on the loan obligations, and maintenance of the accounts herein provided for.

206,189.99 see sheets below. JVD

(b) If return on investment for any year exceeds 8 percent per annum of borrower's initial investment of 4/ 179,550, the Government may require that the borrower reduce rents the following year and/or refund the excess return on investment to the tenants or use said excess in a manner that will best benefit the tenants.

(c) Maintain complete books and records relating to the housing's financial affairs, cause such books and records to be audited at the end of each fiscal year, promptly furnish the Government without request a copy of each audit report, and permit the Government to inspect such books and records at all reasonable times.

MAY 15 1980

Page 5a

Mullica West Loan Resolution Ammendment

Procedure FmHA Instruction 444.5, V III-explains Initial Investment

The following is used to determine initial invested dollars:

1. Cost Certification-Section 1- $1,479,550.42
   (form FHA 424-13) -Section 11- $1,977,967.60

2. 2% Initial Operating Capital-Section 1- $26,632.57
   (Sheet 8A, 444.5, V III, K1)-Section 11-$37,832.31

3. Total Investment-

| Section 1 | Section 11 |
|---|---|
| $1,479,550.42 | $1,977,967.60 |
| 26,632.57 | 37,832.31 |
| $1,506,182.99 | $2,015,799.91 |
| Loan Amount | Loan Amount |
| $1,300,000.00 | $1,809,050.00 |
| Initial Investment | Initial Investment |
| $206,189.99 | $206,749.91 |

MAY 15 1980

Page 5b

# Ammendment to Loan Resolution

Ammendment to Loan Resolution, Section 11, August 25, 1977, by and between Mullica West Limited and the Farmers Home Administration.

The following is changed to:

Item 9 (b) (5) To pay dividends to partners or for any other purpose duly authorized by the partnership of up to 8% per annum of the borrowers initial investment of $206,749.91, provided the partners determine that after such disbursement (a) the amount in the reserve account will not be less than that required by subsection 9(a) to be accumulated by that time and (b) during the next 12 months the amount in the reserve account will likely not fall below that required to be accumulated by the end of such period.

Item 10 (b) If return on investment for any year exceeds 8% per annum of borrower's initial investment of $206,749.91 the Government may require that the borrower reduce rents the following year and/or refund the excess return on investment to the tenants or use said excess in a manner that will best benefit the tenants.

Mullica West Limited

Date May 14, 1980 — Wayne Griffin — Wayne Griffin-General Partner

Date May 14, 1980 — Kenneth Griffin — Kenneth Griffin-General Partner

Date May 14, 1980 — Ralph L. Griffin — Ralph L. Griffin-Limited Partner

Date May 14, 1980 — Betty C. Griffin — Betty C. Griffin-Limited Partner

MAY 14, 1980

Roseann McWilliams

ROSEANN McWILLIAMS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Aug. 29, 1983

(d) If required or permitted by the Government, revise the account herein provided for, or establish new accounts, to cover handling and disposition of income from and payment of expenses attributable to the housing or to any other property securing the loan obligations, and submit regular and special reports concerning the housing or financial affairs.

(e) Unless the Government gives prior consent--

(1) Not use the housing for any purpose other than as rental housing and related facilities for eligible occupants.

(2) Not enter into any contract or agreement for improvements or extensions to the housing or other property securing the loan obligations.

(3) Not cause or permit voluntary dissolution of the **Partnership** nor merge or consolidate with any other organization, nor cause or permit any transfer or encumbrance of title to the housing or any part thereof or interest therein, by sale, mortgage, lease, or otherwise.

(4) Not cause or permit the issue or transfer of **ownership, borrow** any money, nor incur any liability aside from current expenses as defined in section 7 which would have a detrimental effect on the housing.

(f) Submit for the housing the following to the Government for prior review not less than 30 days before the effective dates, and for prior approval by the Government:

(1) Annual budgets and operating plans.

(2) Statements of management policy and practice, including eligibility criteria and implementing rules for occupancy of the housing.

(3) Proposed rents and charges and other terms of rental agreements with occupants and compensation to employees of the housing project.

(4) Rates of compensation to officers and employees of the **Partnership** payable from or chargeable to any account provided for in this resolution.

(g) If required by the Government, modify and adjust any matters covered by clause (f) of this section.

(h) Comply with all its agreements and obligations in or under the note, security instrument, and any related agreement executed by the **Partnership** in connection with the loan.

(i) Not alter, amend, or repeal without the Government's consent this resolution or the **Agreement of Limited Partnership**, which shall constitute parts of the total contract between the **Partnership** and the Government relating to the loan obligation.

(j) Do other things as may be required by the Government in connection with the operation of the housing, or with any of the **Partnership's** operations or affairs which may affect the housing, the loan obligation, or the security.

11 Refinancing the Loan. If at any time it appears to the Government that the **Partnership** is able to obtain a loan upon reasonable terms and conditions to refinance the loan obligations then outstanding, upon request from the Government the **Partnership** will apply for, take all necessary actions to obtain, and accept such refinancing loan and will use the proceeds for said purpose.

12 General Provisions.

(a) It is understood and agreed by the **Partnership** that any loan made or insured will be administered subject to the limitations of the authorizing act of Congress and related regulations, and that any rights granted to the Government herein or elsewhere may be exercised by it in its sole discretion to carry out the purposes of the loan, enforce such limitations, and protect the Government's financial interest in the loan and the security.

(b) The provisions of this resolution are representations to the Government to induce the Government to make or insure a loan to the **Partnership** as aforesaid. If the **Partnership** should fail to comply with or perform any provision of this resolution or any requirement made by the Government pursuant to this resolution, such failure shall constitute default as fully as default in payment of amounts due on the loan obligations. In the event of such failure, the Government at its option may declare the entire amount of the loan obligations immediately due and payable and, if such entire amount is not paid forthwith, may take possession of and operate the housing and proceed to foreclose its security and enforce all other available remedies.

(c) Any provisions of this resolution may be waived by the Government in its sole discretion, or changed by agreement between the Government and the **Partnership**, after this resolution becomes contractually binding,

to any extent such provisions could legally have been foregone or agreed to in amended form, by the Government initially.

(d) Any notice, consent, approval, waiver, or agreement must be in writing.

(e) This resolution may be cited in the security instrument and any other instruments as the "Loan Resolution of May 31, 1977." (date of this resolution)

CERTIFICATE

The undersigned, Partners of the Limited Partnership, Mullica West, Limited, hereby certify that the foregoing is a true copy of the resolution duly adopted by the Partnership on May 31, 1977.

Kenneth D. Griffin, General Partner

Wayne Griffin, General Partner

Ralph L. Griffin, Limited Partner

Betty C. Griffin, Limited Partner

1/ Only loan funds, and borrower's funds to be used for an eligible loan purpose, may be deposited in the supervised bank account.

2/ In most cases this figure should be one-tenth of the aggregate sum specified later in the sentence and indicated by footnote 3.

3/ The amount to be inserted will usually be about 10 percent of the value of the buildings and related facilities financed wholly or partially with the loan.

4/ The amount to be inserted shall be determined in accordance with paragraph VIII K of FmHA Instruction 444.5.

o 0 o

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

## SECURITY AGREEMENT

I. THIS SECURITY AGREEMENT, dated [illegible], 19[illegible], is made between the United States of America acting through the Farmers Home Administration ("Secured Party") and Mullica West, Limited, a Limited Partnership organized and existing under the laws of the State of New Jersey, maintaining an office in Gloucester County, New Jersey, whose post office address is 69B, R. D. 1, Mt. Laurel, New Jersey 08057.

II. Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory note(s) or other instrument(s), all of which are herein called "note" (if more than one note is executed, the word "note" as used herein shall be construed as referring to each note singly or all notes collectively as the context may require) said note being executed by Debtor, being payable to the order of Secured Party in installments as specified therein, and authorizing acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor, and being further described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
| --- | --- | --- | --- |
| [illegible] | [illegible] | [illegible] | [illegible] |

The note evidences a loan to Debtor, and Secured Party, at any time, may assign the note and insure the payment thereof to any extent authorized by the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949, or any other present or future act administered by the Secured Party.

It is the purpose and intent of this instrument that, among other things, at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity security agreement to secure Secured Party against loss under its insurance contract by reason of any default by Debtor.

NOW THEREFORE, in consideration of said loan(s) and (a) at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the payment of the note, to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions thereof and any additional loans or future advances to Debtor heretofore or hereafter made to insured by Secured Party under the then existing provisions of Subtitle A of the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949, or any other present or future act administered by the Secured Party - all with interest, (b) at all times when the note is held by an insured holder, to secure performance of debtor's agreement herein to indemnify and save harmless Secured Party against loss under its insurance contract by reason of any default by Debtor, (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as hereinafter described, and the performance of every covenant and agreement of Debtor contained herein or in any supplementary agreement:

DEBTOR HEREBY GRANTS to Secured Party a security interest in and an assignment of its interest in the following collateral, including the proceeds thereof:

A. All contract rights, accounts receivable, general intangibles, and gross receipts now or hereafter in existence, including the proceeds thereof, derived from or pertaining to any and all activities of the Debtor in operating a rural rental housing project situate on the premises hereinafter described.

B. All ranges, refrigerators, washing machines, dryers, heating, air conditioning and other equipment pertaining to said rural rental housing project now owned or hereafter acquired, including all replacements of or substitutions therefor, and including, without limitation, the following:

| Quantity | Kind | Manufacturer | Type or Model No. | Year of Mfg. |
|---|---|---|---|---|
| [illegible] | Refrigerators | | [illegible] | [illegible] |
| [illegible] | Ranges | | [illegible] | [illegible] |
| [illegible] | Washing Machines | | [illegible] | [illegible] |
| [illegible] | Dryers | | [illegible] | [illegible] |

Disposition of said collateral is not authorized hereby.

Any fixtures described above are affixed or are to be affixed to the following described real estate:

| Record Owner | Approximate No. of Acres | County & State | Location |
|---|---|---|---|
| Mullica West, Limited | [illegible] | Gloucester, New Jersey | [illegible] |

III. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

A. Debtor is the absolute and exclusive owner of the above-described collateral, and such collateral is free from all liens, encumbrances, security and other interest except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect, (2) any applicable statutory liens, and (3) other liens, encumbrances, security or other interests, as follows:

and Debtor will defend the collateral against the claims and demands of all other persons. Any reference to the above liens, encumbrances, security and other interests is for warranty purposes only and does not indicate their priority.

B. Statements contained in this Security Agreement and in Debtor's loan application and related loan instruments are true and correct.

C. Debtor will (1) use the loan funds for the purpose for which they were or are advanced, (2) comply with such operation and management plans as may be agreed upon from

time to time by Debtor and Secured Party, (3) care for and maintain the collateral in a reasonable manner, (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance, (5) permit Secured Party to inspect the collateral at any reasonable time, (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest therein, or permit others to do so, without the prior written consent of Secured Party, (7) not permit the collateral to be levied upon, injured or destroyed or its value to be impaired, and (8) maintain its legal existence.

D. Debtor will pay promptly when due all (1) indebtedness evidenced by the note and any indebtedness to Secured Party secured hereby, (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or hereafter attaching to, levied on, or otherwise pertaining to the collateral or this security interest, (3) filing, or recording fees for instruments necessary to perfect, continue, service or terminate this security interest, and (4) fees and other charges now or hereafter required by regulations of the Farmers Home Administration.

E. If the note is insured by Secured Party, Debtor will indemnify and save harmless Secured Party against any loss by reason of any default by Debtor.

F. Whether or not the note is insured by Secured Party, Secured Party may at any time pay any other amounts required herein to be paid by Debtor and not paid by it when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

G. All advances by Secured Party as described in this instrument, with interest, shall be immediately due and payable by Debtor to Secured Party without demand at the place designated in the latest note and shall be secured hereby. No such advance by Secured Party shall relieve Debtor from breach of its covenant to pay. Any payment made by Debtor may be applied on the note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

H. In order to secure or better secure the aforesaid obligation or indebtedness, Debtor will execute and deliver to Secured Party at any time, upon demand, such additional security instruments on such real and personal property as Secured Party may require. With respect to the identification of accounts, contract rights, and general intangibles, Debtor will furnish Secured Party such information as it may require to identify in a manner satisfactory to Secured Party, all account debtors and contract or other obligors and the amount of the respective accounts receivable and contract or other obligations. Debtor will also furnish Secured Party such additional information as it may require from time to time to further indentify all other items of collateral.

I. This instrument also secures the obligations and covenants of Debtor set forth in Debtor's Loan Resolution of August 3, 197_ which has previously been executed as a security agreement and which is hereby incorporated herein by reference and shall continue in effect as a security agreement.

J. Debtor will not discriminate, or permit discrimination, in the use or occupancy of the facilities financed in whole or in part with the proceeds of the note because of race, color, creed, sex or national origin.

K. Debtor hereby assigns to Secured Party any monies (but not in excess of the unpaid balance due hereunder) which may become payable under any insurance of the collateral, including return of unearned premiums, and directs any insurance company to make payments directly to the Secured Party to be applied to said unpaid balance and appoints Secured Party's, State Director for New Jersey as attorney-in-fact to endorse any draft. After default by Debtor or in accordance with written authorization of Debtor, Secured Party may, upon giving such notice as may be required by law, cancel said insurance and credit any premium refund within said unpaid balance.

IV. IT IS FURTHER AGREED THAT:

A. Until default Debtor may retain possession of the collateral.

B. Default shall exist hereunder if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness hereby secured or to observe or perform any

covenants or agreements herein or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the bankruptcy, insolvency or voluntary or involuntary dissolution or merger of Debtor. Upon any such default:

1. Secured Party, at its option, with or without notice as permitted by law, may (a) declare the unpaid balance on the note and any indebtedness secured hereby immediately due and payable, (b) enter upon the premises and take possession of, repair, improve, use and operate the collateral or make equipment unusable, for the purpose of protecting or preserving the collateral of this security interest, or preparing or processing the collateral for sale, (c) exercise any sale or other rights afforded by law; and (d) have the right at any time to notify the account debtors, or contract or other obligors of the security interest of Secured Party in, and of the assignment to Secured Party of the account, accounts receivable, contract rights, or general intangibles upon which the respective account debtors or contract or other obligors are liable to Debtor, and to notify such account debtors or contract or other obligors to make payment of such accounts receivable or contract or other obligations directly to Secured Party, and Secured Party shall also have the right to take control of the cash and other proceeds of any of Debtor's accounts receivable, contract rights, gross receipts, or general intangibles. The costs of collection and enforcement of the accounts receivable, contract rights or general intangibles shall be borne by the Debtor even though such expenses may have been incurred by Secured Party.

2. Debtor hereby (a) agrees to assemble the collateral and make it available to Secured Party at such time(s) and place(s) as designated by Secured Party, and (b) waives all notices, exemptions, compulsory disposition and redemption rights.

3. A default shall exist under any other security instrument held or insured by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under any such other security instrument shall constitute default hereunder.

C. Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, selling and the like, and for payment of reasonable attorneys' fees and legal expenses incurred by Secured

Party; second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Farmers Home Administration; third to the satisfaction of indebtedness secured hereby; fourth to the satisfaction of subordinate security interests or liens to the extent required by law; fifth to any other obligations of Debtor owing to or insured by Secured Party; and sixth to Debtor. Any proceeds collected under insurance policies or condemnation awards shall be applied first on advances and expenditures made by Secured Party with interest, as hereinabove provided; second on the debt evidenced by the note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral; third on any other obligation of Debtor owing to or insured by Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral condemnation awards and insurance.

D. This Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions hereof.

E. If any provision of this Agreement is held invalid or unenforceable, it shall not affect any other provisions hereof, but this Agreement shall be construed as if it had never contained such invalid or enforceable provision.

F. The rights and privileges of Secured Party under this Agreement shall inure to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Agreement shall bind Debtor's successors and assigns.

G. If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby.

H. Secured Party shall have the sole and exclusive rights as the secured party hereunder, including but not limited to the power to grant or issue any consent, release, subordination, continuation statement or termination statement, and no insured holder shall have any right, title, or interest in or to the security interest created by this Agreement or any benefits hereof.

I. Secured Party will make or insure future loans or advances to Debtor provided funds are available and the Debtor meets all then current requirements imposed by regulations of the Secured Party.

J. SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.

IN WITNESS WHEREOF, the Borrower has caused this Security Agreement to be executed by its General Partners all as of the date first written above.

MULLICA WEST, LIMITED

By ______________________
KENNETH D. GRIFFIN,
General Partner

By ______________________
WAYNE GRIFFIN,
General Partner

WITNESS:

______________________

______________________

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

SECURITY AGREEMENT

I. THIS SECURITY AGREEMENT, dated May 31, 1977, is made between the United States of America acting through the Farmers Home Administration (herein called Secured Party and MULLICA WEST, LIMITED, a limited partnership, (herein called Debtor), having and office and principal place of business at Box 69B, R. D. 1, Mt. Laurel, New Jersey 08057.

II. WHEREAS Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory note(s) or other instrument(s), all of which are herein called "note" (if more than one note is executed, the word "note" as used herein shall be construed as referring to each note singly or all notes collectively as the context may require), said note being executed by Debtor, being payable to the order of Secured Party in installments as specified therein, and authorizing acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor, and being further described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| May 31, 1977 | $1,300,000.00 | 9% | April 30, 2017 |

; and

WHEREAS the note evidences a loan to Debtor, and Secured Party, at any time, may assign the note and insure the payment thereof to any extent authorized by the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949, or any other present or future act administered by the Secured Party; and

WHEREAS, it is the purpose and intent of this instrument that, among other things, at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity security agreement to secure Secured Party against loss under its insurance contract by reason of any default by Debtor;

NOW THEREFORE, in consideration of said loan(s) and (a) at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the payment of the note, to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions thereof and any additional loans or future advances to Debtor heretofore or hereafter made or insured by Secured Party under the then existing provisions of Subtitle A of the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949, or any other present or future act administered by the Secured Party - all with interest, (b) at all times when the note is held by an insured holder, to secure performance of debtor's agreement herein to indemnify and save harmless Secured Party against loss under its insurance contract by reason of any default by Debtor, (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as hereinafter described, and the performance of every covenant and agreement of Debtor contained herein or in any supplementary agreement:

DEBTOR HEREBY GRANTS to Secured Party a security interest in and an assignment of its interest in the following collateral, including the proceeds thereof:

Item 1. All gross receipts, accounts receivable, contract rights, and general intangibles now in existence or which may hereafter come into existence, including the proceeds thereof derived from or pertaining to all activities of the Debtor in operating a rural rental housing facility situate on the premises described below.

Item 2. All ranges, refrigerators, washing machines, dryers, heating and other equipment pertaining to said rental housing project now owned or hereafter acquired including all replacements of or substitutions therefor including, but not necessarily limited to, the following:

| Quantity | Kind | Manufacturer | Type or Model No. | Yr. of Mfg. |
|---|---|---|---|---|
| 72 | Refrigerators | General Electric | TB-12-S | 76 |
| 72 | Ranges | General Electric | JBS03 | 76 |
| 72 | Washing Machines | General Electric | WA550 | 76 |
| 72 | Dryers | General Electric | DE5300 | 76 |

Disposition of said collateral is not authorized hereby.

Any fixtures described above are affixed or are to be affixed to the following described real estate:

| Record Owner | Approximate No. of Acres | Township, County & State | Location |
|---|---|---|---|
| Mullica West, Limited | | Mt. Laurel, Gloucester County, New Jersey | |

III. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

A. Debtor is the absolute and exclusive owner of the above-described collateral, and such collateral is free from all liens, encumbrances, security and other interests except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect, (2) any applicable statutory liens, and (3) other liens, encumbrances, security or other interests, as follows:

and Debtor will defend the collateral against the claims and demands of all other persons. Reference to the above liens, encumbrances, security and other interests is for warranty purposes only and does not indicate their priority.

B. Statements contained in Debtor's loan application(s) are true and correct; and Debtor will (1) use the loan funds for the purpose for which they were or are advanced, (2) comply with such operation and management plans as may be agreed upon from time to time by Debtor and Secured Party, (3) care for and maintain the collateral in a reasonable manner, (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance, (5) permit Secured Party to inspect the collateral at any reasonable time, (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest therein, or permit others to do so, without the prior written consent of secured party, and (7) not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired.

C. Debtor will pay promptly when due all (1) indebtedness evidenced by the note and any indebtedness to Secured Party secured hereby, (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or hereafter attaching to, levied on, or otherwise pertaining to the collateral or this security interest, (3) filing or recording fees for instruments necessary to perfect, continue, service or terminate this security interest, and (4) fees and other charges now or hereafter required by regulations of the Farmers Home Administration.

D. If the note is insured by Secured Party, Debtor will indemnify and save harmless Secured Party against any loss by reason of any default by Debtor.

E. Whether or not the note is insured by Secured Party, Secured Party may at any time pay any other amounts required herein to be paid by Debtor and not paid by it when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

F. All advances by Secured Party as described in this instrument, with interest, shall be immediately due and payable by Debtor to Secured Party without demand at the place designated in the latest note and shall be secured hereby. No such advance by Secured Party shall relieve Debtor from breach of its covenant to pay. Any payment made by Debtor may be applied on the note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

G. In order to secure or better secure the aforesaid obligation or indebtedness, Debtor will execute and deliver to Secured Party at any time, upon demand, such additional security instruments on such real and personal property as Secured Party may require. With respect to the identification of accounts, contract rights, and general intangibles, Debtor will furnish Secured Party such information as it may require to identify in a manner satisfactory to Secured Party, all account debtors and contract or other obligors and the amount of the respective accounts receivable and contract or other obligations. Debtor will also furnish Secured Party such additional information as it may require from time to time to further identify all other items of collateral.

H. This instrument also secures the obligations and covenants of Debtor set forth in Debtor's Loan Resolution of                    , which is hereby incorporated herein by reference. Debtor also covenants and agrees that it will not discriminate or permit discrimination in the use or occupancy of the facilities financed in whole or in part.

IV. IT IS FURTHER AGREED THAT:

A. Until default Debtor may retain possession of the collateral.

B. Default shall exist hereunder if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness hereby secured or to observe or perform any covenants or agreements herein or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the bankruptcy, insolvency or voluntary or involuntary dissolution of Debtor. Upon any such default:

1. Secured Party, at its option, with or without notice as permitted by law, may (a) declare the unpaid balance on the note and any indebtedness secured hereby immediately due and payable, (b) enter upon the premises and take possession of, repair, improve, use and operate the collateral or make equipment unusable, for the purpose of protecting or preserving the collateral or this security interest, or preparing or processing the collateral for sale,

(c) exercise any sale or other rights accorded by law; and (d) have the right at any time to notify the account debtors, or contract or other obligors of the security interest of secured party in, and of the assignment to secured party of the account, accounts receivable, contract rights, or general intangibles upon which the respective account debtors or contract or other obligors are liable to Debtor, and to notify such account debtors or contract or other obligors to make payment of such accounts receivable or contract or other obligations directly to secured party, and secured party shall also have the right to take control of the cash and other proceeds of any of Debtor's accounts receivable, contract rights, or general intangibles. The costs of collection and enforcement of the accounts receivable contract rights or general intangibles shall be borne by the Debtor even though such expenses may have been incurred by Secured Party.

2. Debtor hereby (a) agrees to assemble the collateral and make it available to Secured Party at such time(s) and place(s) as designated by Secured Party, and (b) waives all notices, exemptions, compulsory disposition and redemption rights.

3. A default shall exist under any other security instrument held or insured by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under any such other security instrument shall constitute default hereunder.

C. Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, selling and the like, and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Farmers Home Administration, third to the satisfaction of indebtedness secured hereby, fourth to the satisfaction of subordinate security interests or liens to the extent required by law, fifth to any other obligations of Debtor owing to or insured by Secured Party, and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party with interest, as hereinabove provided, second on the debt evidenced by the note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to or insured by Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

D. This Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions hereof.

E. If any provision of this Agreement is held invalid or unenforceable, it shall not affect any other provisions hereof, but this Agreement shall be construed as if it had never contained such invalid or enforceable provision.

F. The rights and privileges of Secured Party under this Agreement shall inure to the benefit of its successors and assigns. All convenants, warranties, representations, and agreements of Debtor contained in this Agreement shall bind Debtor's successors and assigns.

G. If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby.

H. Secured Party shall have the sole and exclusive rights as the secured party hereunder, including but not limited to the power to grant or issue any consent, release, subordination, continuation statement or termination statement, and no insured holder shall have any right, title, or interest in or to the security interest created by this Agreement or any benefits hereof.

I. Secured Party will make or insure future loans or advances to Debtor provided funds are available and the Debtor meets all then current requirements imposed by regulations of the Secured Party.

J. SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.

IN WITNESS WHEREOF, the Debtor has caused its name to be hereunto subscribed by Kenneth D. Griffin and Wayne Griffin, its General Partners, said partners being thereunto duly authorized.

MULLICA WEST, LIMITED

By *Kenneth D. Griffin*
KENNETH D. GRIFFIN, General Partner

By *Wayne Griffin*
WAYNE GRIFFIN, General Partner

WITNESS:

*Richard V. DeCou*

*Attorney at Law*
*State of New Jersey*