USDA-FmHA
Form FmHA 1944-34
(Rev. 2-90)

# LOAN AGREEMENT

FORM APPROVED
OMB NO. 0575-0047

COPY

☐ RRH Loan to a Partnership Operating on a Profit Basis
☐ RRH Loan to a Limited Partnership Operating on a Profit Basis
☐ RRH Loan to a Partnership Operating on a Limited Profit Basis
☐ RRH Loan to a Limited Partnership Operating on a Limited Profit Basis

1. Parties and Terms Defined. This agreement dated March 18, 1991 the Mullica West Limited, a Partnership, duly organized and operating under N.J.S.A. 42-21ET SEQ, herein called "Partnership", whose post office address is 704 East Main Street, Moorestown, NJ 08057, with the United States of America acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "the Government", is made in consideration of a loan, herein called "the loan", to Partnership in the amount of $ 3,460,000.00 made or insured, or to be made or insured, by the Government pursuant to sections 515 (b) of the Housing Act of 1949 to ~~build~~ maintain a RRH Family project. The loan may be sold and insured by the Government. The loan shall be used solely for the specific eligible purposes for which it is approved by the Government in order to provide rental housing and related facilities for eligible occupants, as defined by the Government in rural areas. Such housing and facilities and the land constituting the site as herein called "the housing". The indebtedness and other obligations of the Partnership under the note evidencing the loan, the related security instrument and related agreement are herein called the "loan obligations".

2. Execution of Loan Instruments. To evidence the loan the Partnership shall issue a promissory note (herein referred to as "the note"), signed by The General Partners for the amount of the loan, payable in installments over a period of Forty-Five years, bearing interest at a rate, and containing other terms and conditions, prescribed by the Government. To secure the note or any indemnity or other agreement required by the Government, The General Partners are to execute a real estate security instrument giving a lien upon the housing and upon such other real property of the Partnership as the Government shall require, including an assignment of the rents and profits as collateral security to be enforced in the event of any default by the Partnership, and containing other terms and conditions prescribed by the Government. The General Partners are to execute any other security instruments and other instruments and documents required by the Government in connection with the making or insuring of the loan. The indebtedness and other obligations of the Partnership under the note, the related security instrument, and any related agreement are herein called the "loan obligation".

3. Equal Opportunity and Nondiscrimination Provisions. The Partnership will execute (a) any undertakings and agreements required by the Government pursuant to Title VIII of the Civil Rights Act of 1968 and the Fair Housing Amendments Act of 1988 related to Fair Housing regarding nondiscrimination in the use and occupancy of housing, (b) Farmers Home Administration Form FmHA 400-1 entitled "Equal Opportunity Agreement," including an "Equal Opportunity Clause" to be incorporated in or attached as a rider to each construction contract the amount of which exceeds $10,000 and any part of which is paid with funds from the loan, and (c) Farmers Home Administration Form FmHA 400-4, entitled "Assurance Agreement (Under Title VI, Civil Rights Act of 1964)", a copy of which is attached hereto and made a part thereof and any other undertakings and agreements required by the Government pursuant to lawful authority.

4. Borrower Contribution. The amount of $ - to be contributed by the Partnership from its own funds for the land purchase or development will be placed or deposited with the lender and dispersed prior to any disbursement of interim loan funds or any FmHA loan funds.

*Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Department of Agriculture, Clearance Officer, OIRM, Room 404-W, Washington, D.C. 20250; and to the Office of Management and Budget, Paperwork Reduction Project (OMB No. 0575-0047), Washington, D.C. 20503.*

7 C.F.R. 15b.

5. Accounts for Housing Operations and Loan Servicing. The Partnership shall establish on its books the following accounts, which shall be maintained in accordance with FmHA Regulation 7 CFR Part 1930-C so long as the loan obligations remain unsatisfied: A General Fund Account, a Tax and Insurance Escrow Account, a Security Deposit Account and a Reserve Account.

a. General Operating Account. By the time the Farmers Home Administration loan is closed or interim funds are obtained to preclude the necessity for multiple advances of Farmers Home Administration loan funds, whichever occurs first, the Partnership shall provide cash from the Borrower's own funds, a letter of credit, or a combination of the two in an amount totalling $ ____________________ . Any cash will have been deposited in the General Operating Account and any letter of credit supplied to the FmHA District Office. Use and maintenance of a letter of credit will be in accordance with FmHA Regulation 7 CFR 1930-C.

b. Reserve Account. Transfers at a rate not less than $ 35,000.00 annually shall be made to the Reserve Account until the amount in the Reserve Account reaches the sum of $ 350,000.00 or such higher amount later agreed to with FmHA and shall be resumed at any time when necessary, because of disbursements from the Reserve Account to restore it to said sum. Withdrawal and use of funds deposited to this account will be in accordance with FmHA Regulation 7 CFR 1930-C. With prior consent of the Government, funds in the Reserve Account may be used by the Partnership:

To pay dividends to the partners of up to 8 percent per annum of borrower's initial investment of $412,938.00, ____________________ , provided the Partnership determines that after such disbursement (a) the amount in the Reserve Account will not be less than that required by subsection 5b to be accumulated by that time, and (b) during the next 12 months the amount in the Reserve Account will likely not fall below that required to be accumulated by the end of such period.

~~[illegible]~~

6. Regulatory Covenants. So long as the loan obligations remain unsatisfied, the Partnership shall comply with all appropriate FmHA regulations and shall:

a. Impose and collect such fees, assessments, rents, and charges that the income of the housing will be sufficient at all times for operation and maintenance of the housing, payments on the loan obligations, and maintenance of the accounts herein provided for.

b. Maintain complete books and records relating to the housing's financial affairs, cause such books and records to be audited at the end of each fiscal year, promptly furnish the Government without request a copy of each audit report, and permit the Government to inspect such books and records at all reasonable times.

c. If required or permitted by the Government, revise the account herein provided for, or establish new accounts, to cover handling and disposition of income from and payment of expenses attributable to the housing or to any other property securing the loan obligations, and submit regular and special reports concerning the housing or financial affairs.

d. Agree that if any provisions of its organizational documents or any verbal understandings conflict with the terms of this loan agreement, the terms of the loan agreement shall prevail and govern.

e. Unless the Government gives prior consent:

(1) Not use the housing for any purpose other than as rental housing and related facilities for eligible occupants.

(2) Not enter into any contract or agreement for improvements or extensions to the housing or other property securing the loan obligations.

(3) Not change the membership by either the admission or withdrawal of any general partner(s) nor permit general partner(s) to maintain less than an aggregate of 5 percent, financial interest in the organization nor cause of permit voluntary dissolution of the Partnership nor cause or permit any transfer or encumbrance of title to the housing or any part thereof or interest therein, by sale, mortgage, lease, or otherwise.

(4) Not borrower any money, nor incur any liability aside from current expenses as defined in section 7 which would have a detrimental effect on the housing.

f. Submit for the housing the required reports as per FmHA Regulation 7 CFR Part 1930-C to the Government for prior review.

g. If required by the Government, modify and adjust any matters covered by clause (f) of this section.

h. Comply with all its agreements and obligations in or under the note, security instrument, and any related agreement executed by the Partnership in connection with the loan.

i. Not alter, amend, or repeal without the Government's consent this agreement or the Partnership Agreement, which shall constitute parts of the total contract between the Partnership and the Government relating to the loan obligations.

j. Do other things as may be required by the Government in connection with the operation of the housing, or with any of the Partnership's operations or affairs which may affect the housing, the loan obligations, or the security.

k. If return on investment for any year exceeds 8 percent per annum of borrower's initial investment of $ 412,938.00, the Government may require that the borrower reduce rents the following year and/or refund the excess return on investment to the tenants or use said excess in a manner that will best benefit the tenants.

7. General Provisions.

a. It is understood and agreed by the Partnership that any loan made or insured will be administered subject to the limitations of the authorizing act of Congress and related regulations, and that any rights granted to the Government in this agreement or elsewhere may be exercised by it in its sole discretion.

b. The provisions of this agreement are representations to the Government, to induce the Government, to make or insure a loan to the Partnership as aforesaid. If the Partnership should fail to comply with or perform any provision of this agreement or any requirement made by the Government pursuant to this agreement, such failure shall constitute default as fully as default in payment or amounts due on the loan obligations. In the event of such failure, the Government at its option may declare the entire amount of the loan obligations immediately due and payable and if such entire amount is not paid forthwith, may take possession of and operate the housing and proceed to foreclose its security and enforce all other available remedies.

c. Any provisions of this agreement may be waived by the Government in its sole discretion, or changed by agreement between the Government and the Partnership, after this agreement becomes contractually binding, to any extent such provisions could legally have been foregone or agreed to in amended form, by the Government initially.

d. Any notice, consent, approval, waiver, or agreement must be in writing.

e. This Loan Agreement shall be subject to the present regulations of the Farmers Home Administration and to its future regulations and provisions hereof.

f. This agreement may be cited in the security instrument and any other instruments as the "Loan Agreement" of March 18, 19 91.

g. The partnership agrees that no handicapped person will be subjected to discrimination in employment or denied the benefits of the housing because of such handicap. It will comply with the requirements of the Fair Housing Act, 42 U.S.C. 3601 et seq., the Fair Housing Amendments Act of 1988, the Rehabilitation Act of 1973, 29 U.S.C. 794, and the implementing regulations of the Department of Agriculture, 7 C.F.R. 15b.

BV UG

By: ______________________

______________________

______________________

MULLICA WEST LIMITED
PARTNERSHIP NAME

BY: [signature]
WAYNE GRIFFIN
GENERAL PARTNER

BY: MULLICA INVESTORS, A PENNSYLVANIA LIMITED PARTNERSHIP
GENERAL PARTNER

[signature]
BART J. AXELROD, PRESIDENT
BALA REALTY ADVISERS, INC.
GENERAL PARTNER OF MULLICA INVESTORS, A PENNSYLVANIA LIMITED PARTNERSHIP

COPY

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

SECURITY AGREEMENT

I. THIS SECURITY AGREEMENT, dated June 18, 1991 is made between the United States of America, acting through the Farmers Home Administration ("Secured Party") and Mullica West Limited, a limited partnership ("Debtor"), organized and existing under the laws of the State of New Jersey, maintaining an office in Burlington County, New Jersey, whose post office address is 704 G East Main Street, Moorestown, New Jersey 08057.

II. Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory note(s) or other instrument(s), and in the future may incur additional indebtedness to secured party which will also be evidenced by one or more promissory note(s) or other instrument(s), all of which are herein called "note" (if more than one note is executed, the word "Note" as used herein shall be construed as referring to each note singly or all notes collectively as the context may require) and said note has been executed by Debtor, is payable to the order of Secured Party in installments as specified therein, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor.

This instrument also secures the Borrower's obligations and covenants under other instruments delivered in connection with the loan evidenced by the Note, including the Borrower's Loan Agreement, Real Estate Mortgage, and any deferral, reamortization, rescheduling or consolidation subsequent hereto. The note evidences a loan to Debtor, and Secured Party, at any time, may assign the note and insure the payment thereof to any extent authorized by the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949, or any other present or future act administered by the Secured Party.

It is the purpose and intent of this instrument that, among other things, at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity security agreement to secure Secured Party against loss under its insurance contract by reason of any default by Debtor.

NOW THEREFORE, in consideration of said loan(s) and (a) at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the payment of the note, to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions thereof and any additional loans or future advances to Debtor heretofore or hereafter made or insured by Secured Party under the then existing provisions of Subtitle A of the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949, or any other present or future act administered by the Secured Party - all with interest, (b) at all times when the note is held by an insured holder, to secure performance of debtor's agreement herein to indemnify and save harmless Secured Party against loss under its insurance contract by reason of any default by Debtor, (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as hereinafter described, and the performance of every covenant and agreement of Debtor contained herein or in any supplementary agreement:

DEBTOR HEREBY GRANTS to Secured Party a security interest in and an assignment of its interest in the following collateral, including the proceeds thereof:

A. All accounts, general intangibles, and gross receipts now or hereafter in existence, including the proceeds thereof, relating to the Debtor's operation of a housing project. Such collateral includes, but is not necessarily limited to, all rents and all rental assistance payments from any source whether public or private; provided, however, that if the Borrower is a limited partnership as defined by the Uniform Limited Partnership Act, it does not include any accounts, general intangibles or gross receipts derived from the sale of limited partnership interests in the Debtor.

B. All ranges, refrigerators, washing machines, dryers, heating, air conditioning and other equipment pertaining to said rural rental housing project now owned or hereafter acquired, including all replacements of or substitutions therefor.

Disposition of said collateral is not authorized hereby.

Any fixtures described above are affixed or are to be affixed to the following described real estate:

| Record Owner | Approximate No. of Acres | County & State | Location |
|---|---|---|---|
| Mullica West Limited | 24.3 | Gloucester, NJ | Mullica Hill Route 45 Harrison Township |

III. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

A. Debtor is the absolute and exclusive owner of the above-described collateral, and such collateral is free from all liens, encumbrances, security and other interest except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect, (2) any applicable statutory liens, and (3) other liens, encumbrances, security or other interests, as follows:

NONE

and Debtor will defend the collateral against the claims and demands of all other persons. Any reference to the above liens, encumbrances, security and other interests is for warranty purposes only and does not indicate their priority.

B. Statements contained in this Security Agreement and in Debtor's loan application and related loan instruments are true and correct.

C. Debtor will (1) use the loan funds for the purpose for which they were or are advanced, (2) comply with such operation and management plans as may be agreed upon from time to time by Debtor and Secured Party, (3) care for and maintain the collateral in a reasonable manner, (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance, (5) permit Secured Party to inspect the collateral at any reasonable time, (6) not abandon the collateral or encumber, conceal,

remove, sell or otherwise dispose of it or of any interest therein, or permit others to do so, without the prior written consent of Secured Party, (7) not permit the collateral to be levied upon, injured or destroyed or its value to be impaired, and (8) maintain its legal existence.

D. Debtor will pay promptly when due all (1) indebtedness evidenced by the note and any indebtedness to Secured Party secured hereby, (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or hereafter attaching to, levied on, or otherwise pertaining to the collateral or this security interest, (3) filing, or recording fees for instruments necessary to perfect, continue, service or terminate this security interest, and (4) fees and other charges now or hereafter required by regulations of the Farmers Home Administration.

E. If the note is insured by Secured Party, Debtor will indemnify and save harmless Secured Party against any loss by reason of any default by Debtor.

F. Whether or not the note is insured by Secured Party, Secured Party may at any time pay any other amounts required herein to be paid by Debtor and not paid by it when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

G. All advances by Secured Party as described in this instrument, with interest, shall be immediately due and payable by Debtor to Secured Party without demand at the place designated in the latest note and shall be secured hereby. No such advance by Secured Party shall relieve Debtor from breach of its covenant to pay. Any payment made by Debtor may be applied on the note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

H. In order to secure or better secure the aforesaid obligation or indebtedness, Debtor will execute and deliver to Secured Party at any time, upon demand, such additional security instruments on such real and personal property as Secured Party may require. With respect to the identification of accounts, and general intangibles, Debtor will furnish Secured Party such information as it may require to identify in a manner satisfactory to Secured Party, all account debtors and contract or other obligors and the amount of the respective accounts and other obligations. Debtor will also furnish Secured Party such additional information as it may require from time to time to further identify all other items of collateral.

I. This instrument also secures the obligations and covenants of Debtor set forth in Debtor's Loan Agreement of March 18, 1991 which has previously been executed as a security agreement and which is hereby incorporated herein by reference and shall continue in effect as a security agreement.

J. Debtor will not discriminate, or permit discrimination, in the use or occupancy of the facilities financed in whole or in part with the proceeds of the note because of race, color, creed, sex or national origin.

K. Debtor hereby assigns to Secured Party any monies (but not in excess of the unpaid balance due hereunder) which may become payable under any insurance of the collateral, including return of unearned premiums, and directs any insurance company to make payments directly to the Secured Party to be applied to said unpaid balance and appoints Secured Party's, State Director for New Jersey, as attorney-in-fact to endorse any draft. After default by Debtor or in accordance with written authorization of Debtor, Secured Party may, upon giving such notice as may be required by law, cancel said insurance and credit any premium refund within said unpaid balance.

L. Debtor will not increase the rent of any tenant without first giving public notice of the proposed increase, elicting tenant comment concerning the increase and submitting all comments together with a request for such increase to Secured Party in accordance with Secured Party's regulations.

IV. IT IS FURTHER AGREED THAT:

A. Until default Debtor may retain possession of the collateral.

B. Default shall exist hereunder if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness hereby secured or to observe or perform any covenants or agreements herein or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the bankruptcy, insolvency or voluntary or involuntary dissolution or merger of Debtor. Upon any such default:

1. Secured Party, at its option, with or without notice as permitted by law, may (a) declare the unpaid balance on the note and any indebtedness secured hereby immediately due and payable, (b) enter upon the premises and take possession of, repair, improve, use and operate the collateral or make equipment unusable, for the purpose of protecting or preserving the

collateral of this security interest, or preparing or processing the collateral for sale, (c) exercise any sale or other rights afforded by law; and (d) have the right at any time to notify the account debtors, or contract or other obligors of the security interest of Secured Party in, and of the assignment to Secured Party of the accounts, or general intangibles upon which the respective account debtors or contract or other obligors are liable to Debtor, and to notify such account debtors or contract or other obligors to make payment of such accounts or other obligations directly to Secured Party, and Secured Party shall also have the right to take control of the cash and other proceeds of any of Debtor's accounts, gross receipts, or general intangibles. The costs of collection and enforcement of the accounts or general intangibles shall be borne by the Debtor even though such expenses may have been incurred by Secured Party.

2. Debtor hereby (a) agrees to assemble the collateral and make it available to Secured Party at such time(s) and place(s) as designated by Secured Party, and (b) waives all notices, exemptions, compulsory disposition and redemption rights.

3. A default shall exist under any other security instrument held or insured by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under any such other security instrument shall constitute default hereunder.

C. Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, selling and the like, and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party; second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Farmers Home Administration; third to the satisfaction of indebtedness secured hereby; fourth to the satisfaction of subordinate security interests or liens to the extent required by law; fifth to any other obligations of Debtor owing to or insured by Secured Party; and sixth to Debtor. Any proceeds collected under insurance policies or condemnation awards shall be applied first on advances and expenditures made by Secured Party with interest, as hereinabove provided; second on the debt evidenced by the note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral; third on any other obligation of Debtor owing to or insured by Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral condemnation awards and insurance.

D. This Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions hereof.

E. If any provision of this Agreement is held invalid or unenforceable, it shall not affect any other provisions hereof, but this Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

F. The rights and privileges of Secured Party under this Agreement shall inure to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Agreement shall bind Debtor's successors and assigns.

G. Secured Party shall have the sole and exclusive rights as the secured party hereunder, including but not limited to the power to grant or issue any consent, release, subordination, continuation statement or termination statement, and no insured holder shall have any right, title, or interest in or to the security interest created by this Agreement or any benefits hereof.

H. Secured Party will make or insure future loans or advances to Debtor provided funds are available and the Debtor meets all then current requirements imposed by regulations of the Secured Party.

I. SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.

IN WITNESS WHEREOF, the Debtor has caused this Security Agreement to be executed by its Partners who hereunto set their hands and seals as of the date first written above.

Signed, sealed and delivered in the presence of:

MULLICA WEST LIMITED

WITNESS AS TO ALL

BY: WAYNE GRIFFIN
GENERAL PARTNER

BY: MULLICA INVESTORS, A PENNSYLVANIA LIMITED PARTNERSHIP
GENERAL PARTNER

ATTEST: SECRETARY

BART J. AXELROD, PRESIDENT
BALA REALTY ADVISERS, INC.
GENERAL PARTNER OF MULLICA INVESTORS, A PENNSYLVANIA LIMITED PARTNERSHIP