REAL ESTATE MORTGAGE FOR NEW JERSEY

Prepared by: Ernest R. Grunow

COPY

THIS MORTGAGE is made this day, June 18, 1991, by Mullica West Limited, a New Jersey Limited Partnership, organized and existing under the laws of the State of New Jersey, whose mailing address is 704 G East Main Street, Moorestown, NJ 08057 (The Borrower).

The United States of America (the Government), acting through the Farmers Home Administration, United States Department of Agriculture, having an office or place of business at Tarnsfield Plaza, Suite 22, Tarnsfield-Woodlane Road, Mount Holly, New Jersey 08060, has loaned the Borrower money as evidenced by one or more promissory note(s) or assumption agreement(s) (the Note) (if more than one note is described below, the word "Note" as used herein shall be construed as referring to each note singly or all notes collectively, as the context may require). The Note has been executed by the Borrower, is payable to the order of the Government in installments as specified therein, may provide for the deferral and capitalization of interest plus principal (described below as "Maximum Amount Financed"), authorizes acceleration of the entire indebtedness at the option of the Government upon any default by the Borrower, and is further described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Maximum Amount Financed | Due Date of Final Installment |
|---|---|---|---|---|
| June 18, 1991 | $3,460,000.00 | 8.75% | $3,577,101.67 | June 17, 2036 |
| *May 31, 1977 | $1,300,000.00 | 9.00% | | April 30, 2017 |
| *Nov. 30, 1977 | $1,809,050.00 | 8.00% | | Nov. 28, 2017 |

The Government may assign the Note at any time. The Government may also insure the payment of the Note pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statute administered by the Farmers Home Administration.

This instrument shall secure payment of the Note whenever the Note is held either by the Government or by an uninsured holder. Whenever the Note is held by an insured holder, however, this instrument shall not secure payment of the Note or attach to the underlying debt. In that event, this instrument shall constitute an indemnity mortgage to secure any payments to an insured holder of the Note or other advances which the Government may be required to make upon default by the Borrower. The insured holder shall have no right, title or interest in or to the lien of this instrument or its benefits. This instrument also secures the Borrower's obligations and covenants under other instruments delivered in connection with the loan evidenced by the Note, including the Borrower's Loan Agreement, Security Agreement, and any deferral, reamoritization, rescheduling or consolidation subsequent hereto. The Note, Loan Agreement, Security Agreement, and this instrument together with any supplements, attachments, modifications and additions are collectively referred to as the "Loan Instruments."

* These Notes have been reamortized by re-amortization agreements dated 6/18/91. The new rates of interest and final due dates, if any, are as follows:

| | | |
|---|---|---|
| May 31, 1977 | 9% | 6/17/2036 final due date |
| Nov. 30, 1977 | 8.75% | 6/17/2036 final due date |

NOW THEREFORE, in consideration of the loan(s) the Borrower hereby mortgages, (as construed in §46:9-1, N.J.S.A.),assigns, grants and conveys to the Government, the following property in Gloucester County: New Jersey.

All that certain tract or parcel of land situate in the Township of Harrison, County of Gloucester, State of New Jersey being hereinafter more particularly described:

TRACT #1:

ALL THAT CERTAIN lot, tract or parcel of land and premises situate in the Township of Harrison, County of Gloucester and State of New Jersey, bounded and described as follows:

BEGINNING at a point in the center line of Mullica Hill - Woodstown Road, (New Jersey State Highway Route #45) 50 feet wide and now or formerly of Howard H. Reed; (late of lands of Joseph Jessup, deceased); thence (1) North 55 degrees 36 minutes 30 seconds East along the center line of Mullica Hill-Woodstown Road (New Jersey State Highway Route #45) a distance of 150.00 feet to a point in line of lands now or formerly of Dunlap's lot; now or formerly Russell M. Padgett; thence (2) North 34 degrees 15 minutes West along lands now or formerly of Dunlap's Lot and said Padgett, 426.11 feet to a point; thence (3) North 45 degrees 30 minutes East still along lands now or formerly of Dunlap's Lot and said Padgett, 255.00 feet to a point; thence (4) North 34 degrees 15 minutes West, a distance of 385.00 feet to a point; thence (5) South 55 degrees 45 minutes West a distance of 261.79 feet to a point; thence (6) North 56 degrees 05 minutes West a distance of 696.56 feet to a point in line of lands of Howard H. Reed, late Joseph Jessup, aforesaid; thence (7) South 34 degrees 41 minutes 11 seconds West, along said lands, a distance of 150.00 feet to a point corner to same; thence (8) South 56 degrees 05 minutes East still along said lands, a distance of 698.88 feet to a point for an angle in same; thence (9) South 34 degrees 15 minutes East along same a distance of 800.87 feet to the center line of Mullica Hill-Woodstown Road (New Jersey State Highway #45) and place of Beginning.

BEING shown as Section 1, on Survey and Site Plan of Mullica West, made by A.E. Bernard, P.E., and L.S., dated January 31, 1974 and revised to November 25, 1975 and also being a portion of a final survey dated November 16, 1977, made by A.E. Bernard, P.E., and L.S.

BEING Tax Lots 8.01 and 11.01, Block 52.

TOGETHER with 20 feet wide easements over and through Sections 2 and 3 of the property depicted upon the site plan of Mullica West, prepared by A.E. Bernard, C.E., dated January 31, 1974, revised May 29, 1974, September 9, 1975, October 9, 1975 and November 25, 1975 for the construction and maintenance of the sanitary sewer line, storm sewer and water mains as located in said site plan, attached hereto as Exhibit "A", said easements extending 10 feet on either side of the lines.

SUBJECT, HOWEVER, to easements reserved unto Griffin Construction Company, its successors and assigns, which easements are specifically described in said side plan, of Mullica West, for the purpose of constructing and maintaining connections to the sanitary sewer and water mains, depicted on said site plan; Mullica West, Limited, undertaking no responsibility, nor making any warranties regarding the expense, public approval, or physical capacities relating to said mains or connections.

The following is the description of the center line of a 20 feet wide sanitary sewer easement:

BEGINNING at a point at a proposed manhole for a proposed sanitary sewer system, between proposed buildings "C" and "D" as shown on site plan of Mullica West, revised October 9, 1975; thence South 55 degrees 45 minutes West, 280.00 feet to a point in the Westerly line of Mullica West Property.

The following is the description of the center line of the 20 feet wide water service easement:

BEGINNING at a point at the proposed "L" in the Southwesterly corner of a proposed six inch water main, said point being Southwestwardly of Building "A" as shown on site Plan of Mullica West, revised October 9, 1975; thence South 55 degrees 45 minutes West, 135 feet to a point in the Westerly line of Mullica West Property.

TRACT #2

ALL THAT CERTAIN tract or parcel of land and premises situate in the Township of Harrison, County of Gloucester and State of New Jersey, bounded and described as follows:

BEGINNING at a point in the center line of Mullica Hill-Swedesboro Road (33 feet wide) and corner to lands of Howard H. Reed (late of Joseph Jessup, deceased); thence (1) South 34 degrees 41 minutes 11 seconds West along lands of Howard H. Reed (late Joseph Jessup) 640.73 feet to a point; thence (2) South 56 degrees 05 minutes East a distance of 696.56 feet to a point; thence (3) North 55 degrees 45 minutes East a distance of 261.79 feet to a point; thence (4) South 34 degrees 15 minutes East a distance of 385.00 feet to a point in line of lands now or formerly of Dunlap's lot (now or formerly of Russell M. Padgett); thence (5) North 45 degrees 30 minutes East along line of lands now or formerly of Dunlap's Lot and said Padgett a distance of 440.64 feet to lands now or formerly of Charles Parker; thence (6) North 28 degrees 27 minutes West along lands now or formerly of Charles Parker 502.47 feet to an angle therein; thence (7) North 06 degrees 45 minutes West continuing along lands now or formerly of Charles Parker 99.00 feet to the center line of Mullica Hill-Swedesboro Road; thence (8) North 71 degrees 30 minutes West along the center line of Mullica Hill-Swedesboro Road 748.43 feet to the place of Beginning.

BEING shown as Section 2 and Section 3 on Survey and Site Plan of Mullica West, made by A.E. Bernard, P.E., and L.S., dated January 31, 1974 and last revised July 2, 1976 and also being part of a survey dated November 16, 1977, made by A.E. Bernard, P.E., and L.S.

BEING Tax Lots 8 and 8.02, Block 52.

The borrower and any successors in interest agree to use the housing for the purpose of housing very low-, low- and moderate-income people eligible for occupancy as provided in FmHA regulations then extant during this 20 year period beginning on the date of this mortgage instrument. A tenant may seek enforcement of this provision as well as the Government. No person occupying or wishing to occupy the housing shall be required to vacate or be denied occupancy prior to the close of such 20 year period because of early prepayment.

TOGETHER with all the improvements, tenements and appurtenances now or hereafter erected on the property, and all easements, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, all leasehold rights of any kind, and all fixtures now or hereafter attached to or used in connection with the property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, natural gas, water, air and light; and including, but not limited to, all plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, washers, dryers, awnings, screens, blinds, shades, storm windows, storm doors, antennas, attached floor coverings, trees and plants; all of which including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this instrument; and all payments at any time owing to the Borrower by virtue of any sale, lease, transfer, conveyance or condemnation of any part thereof or interest therein-- all of which are herein collectively referred to as the "Property".

THIS MORTGAGE is also intended as a Financing Statement covering fixtures which are affixed or which may become affixed to the above-described property. The types of collateral covered hereby are described in the preceding paragraph.

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple. The Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, and convey the Property, and that the Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to easements and restrictions of record.

THIS MORTGAGE SHALL SECURE (a) payment of the Note in accordance with its terms, including any extensions, reschedulings, reamortizations or renewals thereof, whenever the Note is held by either the Government or by an uninsured holder; (b) repayment, with interest, of any payments, advances and expenditures made by the Government pursuant to the terms of this or any other Loan Instrument; and (c) performance of every covenant and agreement of the Borrowers contained in this or any other Loan Instrument.

The Borrower, for itself, its successors and assigns, WARRANTS the title to Property (as construed in §46:9-2, N.J.S.A.) to the Government against the lawful claims of all persons whose claims are not based upon liens, encumbrances, easements or reservation specified above.

The Borrower, for itself, its successors and assigns, COVENANTS AND AGREES as follows:

(1) Borrower will promptly pay any indebtedness secured by this instrument when due.

(2) Borrower will indemnify the Government against any loss which the Government may incur as a result of making payments to an insured holder of the Note after the Borrower's default.

(3) Borrower will pay the Government any fees or other charges required under regulations of the Farmers Home Administration.

(4) Borrower will pay when due all taxes, liens, judgments, encumbrances and assessments lawfully attaching to or assessed against the Property, and, without demand, will also provide the Government with proof of those payments.

(5) Borrower will pay the Government for any expenses necessary or incidental to (a) the protection of the lien or priority of any Loan Instrument and to (b) the enforcement of or compliance with the provisions of any Loan Instrument. "Expenses" includes (without limitation) costs of evidence of title, surveys, recording fees, attorneys' fees and trustees' fees, as well as court costs and expenses of advertising, selling and conveying the Property or any portion of it.

(6) Borrower will use the loan evidenced by the Note solely for the purposes authorized by the Government.

(7) Borrower will keep the Property insured as required by the Government and will deliver the originals of all insurance policies to the Government for safekeeping.

(8) Borrower will comply with all laws, ordinances and regulations affecting the Property and the conduct of Borrower's business operations.

(9) Borrower will maintain the Property in good repair and make any repairs the Government may require.

(10) Borrower will operate the Property in a good and efficient manner and will comply with management plans and practices which the Government may prescribe from time to time.

(11) Borrower will not abandon the Property; effect waste, lessening or impairment of the Property; or cut, remove or lease any timber, gravel, oil, gas, coal or other minerals.

(12) Borrower will not (except in the ordinary course of business) lease, assign, sell, transfer or encumber the Property or any nonexpendable part thereof, voluntarily or otherwise, either in whole or in part, without the prior written consent of the Government.

(13) The property described herein was obtained or improved through Federal financial assistance. This property is subject to the provisions of Title VI of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973 and the regulations issued pursuant thereto for so long as the property continues to be used for the same or similar purpose for which financial assistance was extended or for so long as the purchaser owns it, whichever is longer.

(14) The Government may require the Borrower to make additional monthly payments equal to one-twelfth of the estimated taxes, assessments, insurance premiums and other charges upon the Property.

(15) The Government and its agents may inspect the Property at reasonable times to ascertain whether the Borrower is fulfilling its obligations under this or any other Loan Instrument.

(16) The Government may at any time pay as advances for the Borrower's account any amounts which the Borrower is obligated to pay under any Loan Instrument. The Government may exercise this right regardless of whether the Note is insured and regardless of whether advances exceed the face amount of the Note.

(17) All advances by the Government pursuant to the terms of this or any other Loan Instrument shall bear interest at the rate borne by the Note which bears the highest interest rate. Advances, together with interest accruing on them, shall be immediately due and payable by the Borrower at the place designated in the latest Note. Advances by the Government shall neither relieve the Borrower of its obligation to pay nor cure any default under any Loan Instrument.

(18) Except to the extent specified by the Government in writing, the Government in its sole discretion may grant an extension of the time for payment or modification of amortization of the indebtedness secured by any Loan Instrument, release any party from liability to the Government, release portions of the Property from the lien of any Loan Instrument, and waive any other Government right under any Loan Instrument without affecting the lien or priority of any Loan Instrument, or the liability of the Borrower or any other party for payment of the indebtedness secured by any Loan Instrument.

(19) The Government will not be bound by any present or future state laws (a) providing for valuation, appraisal, homestead or exemption of the Property; (b) prohibiting or restricting an action for deficiency judgment or limiting the judgment amount which may be awarded; (c) prescribing any statute of limitations; (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions the Government may impose by regulation as a condition of approving a transfer of the Property to a new borrower. THE BORROWER WAIVES THE BENEFIT OF ANY SUCH STATE LAWS.

(20) Should the Borrower DEFAULT on any of its obligations under any Loan Instrument, merge, dissolve, be declared bankrupt or insolvent, or make an assignment for the benefit of creditors, without Notice the Government may (a) accelerate the entire indebtedness secured by this instrument by declaring it immediately due and payable; (b) charge the Borrower's account for any reasonable expenses which the Government may pay or incur to maintain and repair the Property; (c) process, operate and rent the Property; (d) have a receiver appointed for the Property who may exercise the usual powers of receivers in similar cases; (e) foreclose this and any other Loan Instrument and sell the Property; (f) enforce any and all other rights and remedies provided in the Loan Instruments or by future or present laws.

(21) Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated and of the United States of America, on terms and conditions satisfactory to the Government, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and in the manner and after such notice and on terms required by statute or determined by the Government if not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(22) Proceeds of a foreclosure sale pursuant to any Loan Instrument shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions of any Loan Instrument; (b) any prior liens required by law or a competent court to be paid; (c) all indebtedness to the Government secured by this instrument; (d) inferior liens of record required by law or a competent court to be paid; (e) at the Government's option, any other indebtedness of the Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(23) If the Government is the successful bidder at a foreclosure sale under any Loan Instrument, any portion of the purchase price not owed to a third party may be paid by crediting that amount on any debts of the Borrower which are owed to or insured by the Government.

(24) The rights and remedies provided in this instrument are cumulative and shall be in addition to every other remedy now or hereafter existing at law, in equity, by statute or by regulation.

(25) A waiver, amendment, release or modification of this instrument may be effected only by a writing which has been duly executed by the Government and shall not be established by conduct, custom or course of dealing.

(26) This instrument shall be governed by federal law, and shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this instrument.

(27) Default under this instrument shall constitute a default under any other security instruments of the Borrower held or insured by the Government and default under any other security instrument constitutes default under this instrument.

(28) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(29) Notices to the Borrower shall be sent to its address as shown on the first page of this instrument. Notices to the Government shall be addressed to the Farmers Home Administration, United States Department of Agriculture, Osborne Building, Landis Avenue, Norma, NJ 08347. Notices shall be sent by certified mail (postage prepaid) unless otherwise required by law. The Government and the Borrower may designate any further or different addresses to which subsequent notices shall be sent.

(30) This instrument, together with the other loan instruments, mortgages and encumbers only the assets of the borrowing Partnership named herein and offers to the Government no recourse for repayment of the indebtedness from the personal assets of any present or future member of the Partnership, whether individual or corporate.

IN WITNESS WHEREOF, the Borrower has caused this Mortgage to be executed by its Partners who hereunto set their hands and seal(s) as of the date first written above.

Signed, sealed and delivered in the presence of:

MULLICA WEST LIMITED

WITNESS

By: WAYNE GRIFFIN
General Partner

By: MULLICA INVESTORS, A PENNSYLVANIA LIMITED PARTNERSHIP
GENERAL PARTNER

ATTEST:

BART J. AXELROD, PRESIDENT
BALA REALTY ADVISORS, INC.
GENERAL PARTNER OF MULLICA INVESTORS, A PENNSYLVANIA LIMITED PARTNERSHIP

ACKNOWLEDGMENT

STATE OF NEW JERSEY
) ss:
COUNTY OF GLOUCESTER

On this 18th day of June, 1991, before me, , notary public, personally appeared Wayne Griffin and Bart Axelrod, known to me, who being duly sworn, did say that Wayne Griffin and Mullica Investors, a Pennsylvania Limited Partnership, are the partners of the Partnership that executed the within instrument, and acknowledged to me that such Partnership executed the same. Wayne Griffin and Bart Axelrod further acknowledged that the partnership has received a true copy of the within instrument.

(NOTARIAL SEAL)

NOTARY PUBLIC

JANE F. SOWERS
Notary Public of New Jersey
My commission expires: My Commission Expires May 19, 1992.

The form of this instrument was prepared by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of

NAME

DLS
TITLE

REAL ESTATE MORTGAGE FOR NEW JERSEY

Prepared by: Ernest R. Grunow

COPY

THIS MORTGAGE is made this day, June 18, 1991, by Mullica West Limited, a New Jersey Limited Partnership, organized and existing under the laws of the State of New Jersey, whose mailing address is 704 East Main Street, Moorestown, NJ 08057 (The Borrower).

The United States of America (the Government), acting through the Farmers Home Administration, United States Department of Agriculture, having an office or place of business at Tarnsfield Plaza, Suite 22, Tarnsfield-Woodlane Road, Mount Holly, New Jersey 08060, has loaned the Borrower money as evidenced by one or more promissory note(s) or assumption agreement(s) (the Note) (if more than one note is described below, the word "Note" as used herein shall be construed as referring to each note singly or all notes collectively, as the context may require). The Note has been executed by the Borrower, is payable to the order of the Government in installments as specified therein, may provide for the deferral and capitalization of interest plus principal (described below as "Maximum Amount Financed"), authorizes acceleration of the entire indebtedness at the option of the Government upon any default by the Borrower, and is further described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Maximum Amount Financed | Due Date of Final Installment |
|---|---|---|---|---|
| June 18, 1991 | $3,460,000.00 | 8.75% | $3,577,101.67 | June 17, 2036 |
| *May 31, 1977 | $1,300,000.00 | 9.00% | | April 30, 2017 |
| *Nov. 30, 1977 | $1,809,050.00 | 8.00% | | Nov. 28, 2017 |

The Government may assign the Note at any time. The Government may also insure the payment of the Note pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statute administered by the Farmers Home Administration.

This instrument shall secure payment of the Note whenever the Note is held either by the Government or by an uninsured holder. Whenever the Note is held by an insured holder, however, this instrument shall not secure payment of the Note or attach to the underlying debt. In that event, this instrument shall constitute an indemnity mortgage to secure any payments to an insured holder of the Note or other advances which the Government may be required to make upon default by the Borrower. The insured holder shall have no right, title or interest in or to the lien of this instrument or its benefits. This instrument also secures the Borrower's obligations and covenants under other instruments delivered in connection with the loan evidenced by the Note, including the Borrower's Loan Agreement, Security Agreement, and any deferral, reamoritization, rescheduling or consolidation subsequent hereto. The Note, Loan Agreement, Security Agreement, and this instrument together with any supplements, attachments, modifications and additions are collectively referred to as the "Loan Instruments."

* These Notes have been reamortized by re-amortization agreements dated 6/18/91. The new rates of interest and final due dates, if any, are as follows:

| | | |
|---|---|---|
| May 31, 1977 | 9% | 6/17/2036 final due date |
| Nov. 30, 1977 | 8.75% | 6/17/2036 final due date |

NOW THEREFORE, in consideration of the loan(s) the Borrower hereby mortgages, (as construed in §46:9-1, N.J.S.A.),assigns, grants and conveys to the Government, the following property in Gloucester County: New Jersey.

All that certain tract or parcel of land situate in the Township of Harrison, County of Gloucester, State of New Jersey being hereinafter more particularly described:

TRACT #1:

ALL THAT CERTAIN lot, tract or parcel of land and premises situate in the Township of Harrison, County of Gloucester and State of New Jersey, bounded and described as follows:

BEGINNING at a point in the center line of Mullica Hill - Woodstown Road, (New Jersey State Highway Route #45) 50 feet wide and now or formerly of Howard H. Reed; (late of lands of Joseph Jessup, deceased); thence (1) North 55 degrees 36 minutes 30 seconds East along the center line of Mullica Hill-Woodstown Road (New Jersey State Highway Route #45) a distance of 150.00 feet to a point in line of lands now or formerly of Dunlap's lot; now or formerly Russell M. Padgett; thence (2) North 34 degrees 15 minutes West along lands now or formerly of Dunlap's Lot and said Padgett, 426.11 feet to a point; thence (3) North 45 degrees 30 minutes East still along lands now or formerly of Dunlap's Lot and said Padgett, 255.00 feet to a point; thence (4) North 34 degrees 15 minutes West, a distance of 385.00 feet to a point; thence (5) South 55 degrees 45 minutes West a distance of 261.79 feet to a point; thence (6) North 56 degrees 05 minutes West a distance of 696.56 feet to a point in line of lands of Howard H. Reed, late Joseph Jessup, aforesaid; thence (7) South 34 degrees 41 minutes 11 seconds West, along said lands, a distance of 150.00 feet to a point corner to same; thence (8) South 56 degrees 05 minutes East still along said lands, a distance of 698.88 feet to a point for an angle in same; thence (9) South 34 degrees 15 minutes East along same a distance of 800.87 feet to the center line of Mullica Hill-Woodstown Road (New Jersey State Highway #45) and place of Beginning.

BEING shown as Section 1, on Survey and Site Plan of Mullica West, made by A.E. Bernard, P.E., and L.S., dated January 31, 1974 and revised to November 25, 1975 and also being a portion of a final survey dated November 16, 1977, made by A.E. Bernard, P.E., and L.S.

BEING Tax Lots 8.01 and 11.01, Block 52.

TOGETHER with 20 feet wide easements over and through Sections 2 and 3 of the property depicted upon the site plan of Mullica West, prepared by A.E. Bernard, C.E., dated January 31, 1974, revised May 29, 1974, September 9, 1975, October 9, 1975 and November 25, 1975 for the construction and maintenance of the sanitary sewer line, storm sewer and water mains as located in said site plan, attached hereto as Exhibit "A", said easements extending 10 feet on either side of the lines.

SUBJECT, HOWEVER, to easements reserved unto Griffin Construction Company, its successors and assigns, which easements are specifically described in said side plan, of Mullica West, for the purpose of constructing and maintaining connections to the sanitary sewer and water mains, depicted on said site plan; Mullica West, Limited, undertaking no responsibility, nor making any warranties regarding the expense, public approval, or physical capacities relating to said mains or connections.

The following is the description of the center line of a 20 feet wide sanitary sewer easement:

BEGINNING at a point at a proposed manhole for a proposed sanitary sewer system, between proposed buildings "C" and "D" as shown on site plan of Mullica West, revised October 9, 1975; thence South 55 degrees 45 minutes West, 280.00 feet to a point in the Westerly line of Mullica West Property.

The following is the description of the center line of the 20 feet wide water service easement:

BEGINNING at a point at the proposed "L" in the Southwesterly corner of a proposed six inch water main, said point being Southwestwardly of Building "A" as shown on site Plan of Mullica West, revised October 9, 1975; thence South 55 degrees 45 minutes West, 135 feet to a point in the Westerly line of Mullica West Property.

TRACT #2

ALL THAT CERTAIN tract or parcel of land and premises situate in the Township of Harrison, County of Gloucester and State of New Jersey, bounded and described as follows:

BEGINNING at a point in the center line of Mullica Hill-Swedesboro Road (33 feet wide) and corner to lands of Howard H. Reed (late of Joseph Jessup, deceased); thence (1) South 34 degrees 41 minutes 11 seconds West along lands of Howard H. Reed (late Joseph Jessup) 640.73 feet to a point; thence (2) South 56 degrees 05 minutes East a distance of 696.56 feet to a point; thence (3) North 55 degrees 45 minutes East a distance of 261.79 feet to a point; thence (4) South 34 degrees 15 minutes East a distance of 385.00 feet to a point in line of lands now or formerly of Dunlap's lot (now or formerly of Russell M. Padgett); thence (5) North 45 degrees 30 minutes East along line of lands now or formerly of Dunlap's Lot and said Padgett a distance of 440.64 feet to lands now or formerly of Charles Parker; thence (6) North 28 degrees 27 minutes West along lands now or formerly of Charles Parker 502.47 feet to an angle therein; thence (7) North 06 degrees 45 minutes West continuing along lands now or formerly of Charles Parker 99.00 feet to the center line of Mullica Hill-Swedesboro Road; thence (8) North 71 degrees 30 minutes West along the center line of Mullica Hill-Swedesboro Road 748.43 feet to the place of Beginning.

BEING shown as Section 2 and Section 3 on Survey and Site Plan of Mullica West, made by A.E. Bernard, P.E., and L.S., dated January 31, 1974 and last revised July 2, 1976 and also being part of a survey dated November 16, 1977, made by A.E. Bernard, P.E., and L.S.

BEING Tax Lots 8 and 8.02, Block 52.

The borrower and any successors in interest agree to use the housing for the purpose of housing very low-, low- and moderate-income people eligible for occupancy as provided in FmHA regulations then extant during this 20 year period beginning on the date of this mortgage instrument. A tenant may seek enforcement of this provision as well as the Government. No person occupying or wishing to occupy the housing shall be required to vacate or be denied occupancy prior to the close of such 20 year period because of early prepayment.

TOGETHER with all the improvements, tenements and appurtenances now or hereafter erected on the property, and all easements, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, all leasehold rights of any kind, and all fixtures now or hereafter attached to or used in connection with the property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, natural gas, water, air and light; and including, but not limited to, all plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, washers, dryers, awnings, screens, blinds, shades, storm windows, storm doors, antennas, attached floor coverings, trees and plants; all of which including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this instrument; and all payments at any time owing to the Borrower by virtue of any sale, lease, transfer, conveyance or condemnation of any part thereof or interest therein-- all of which are herein collectively referred to as the "Property".

THIS MORTGAGE is also intended as a Financing Statement covering fixtures which are affixed or which may become affixed to the above-described property. The types of collateral covered hereby are described in the preceding paragraph.

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple. The Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, and convey the Property, and that the Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to easements and restrictions of record.

THIS MORTGAGE SHALL SECURE (a) payment of the Note in accordance with its terms, including any extensions, reschedulings, reamortizations or renewals thereof, whenever the Note is held by either the Government or by an uninsured holder; (b) repayment, with interest, of any payments, advances and expenditures made by the Government pursuant to the terms of this or any other Loan Instrument; and (c) performance of every covenant and agreement of the Borrowers contained in this or any other Loan Instrument.

The Borrower, for itself, its successors and assigns, WARRANTS the title to Property (as construed in §46:9-2, N.J.S.A.) to the Government against the lawful claims of all persons whose claims are not based upon liens, encumbrances, easements or reservation specified above.

The Borrower, for itself, its successors and assigns, COVENANTS AND AGREES as follows:

(1) Borrower will promptly pay any indebtedness secured by this instrument when due.

(2) Borrower will indemnify the Government against any loss which the Government may incur as a result of making payments to an insured holder of the Note after the Borrower's default.

(3) Borrower will pay the Government any fees or other charges required under regulations of the Farmers Home Administration.

(4) Borrower will pay when due all taxes, liens, judgments, encumbrances and assessments lawfully attaching to or assessed against the Property, and, without demand, will also provide the Government with proof of those payments.

(5) Borrower will pay the Government for any expenses necessary or incidental to (a) the protection of the lien or priority of any Loan Instrument and to (b) the enforcement of or compliance with the provisions of any Loan Instrument. "Expenses" includes (without limitation) costs of evidence of title, surveys, recording fees, attorneys' fees and trustees' fees, as well as court costs and expenses of advertising, selling and conveying the Property or any portion of it.

(6) Borrower will use the loan evidenced by the Note solely for the purposes authorized by the Government.

(7) Borrower will keep the Property insured as required by the Government and will deliver the originals of all insurance policies to the Government for safekeeping.

(8) Borrower will comply with all laws, ordinances and regulations affecting the Property and the conduct of Borrower's business operations.

(9) Borrower will maintain the Property in good repair and make any repairs the Government may require.

(10) Borrower will operate the Property in a good and efficient manner and will comply with management plans and practices which the Government may prescribe from time to time.

(11) Borrower will not abandon the Property; effect waste, lessening or impairment of the Property; or cut, remove or lease any timber, gravel, oil, gas, coal or other minerals.

(12) Borrower will not (except in the ordinary course of business) lease, assign, sell, transfer or encumber the Property or any nonexpendable part thereof, voluntarily or otherwise, either in whole or in part, without the prior written consent of the Government.

(13) The property described herein was obtained or improved through Federal financial assistance. This property is subject to the provisions of Title VI of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973 and the regulations issued pursuant thereto for so long as the property continues to be used for the same or similar purpose for which financial assistance was extended or for so long as the purchaser owns it, whichever is longer.

(14) The Government may require the Borrower to make additional monthly payments equal to one-twelfth of the estimated taxes, assessments, insurance premiums and other charges upon the Property.

(15) The Government and its agents may inspect the Property at reasonable times to ascertain whether the Borrower is fulfilling its obligations under this or any other Loan Instrument.

(16) The Government may at any time pay as advances for the Borrower's account any amounts which the Borrower is obligated to pay under any Loan Instrument. The Government may exercise this right regardless of whether the Note is insured and regardless of whether advances exceed the face amount of the Note.

(17) All advances by the Government pursuant to the terms of this or any other Loan Instrument shall bear interest at the rate borne by the Note which bears the highest interest rate. Advances, together with interest accruing on them, shall be immediately due and payable by the Borrower at the place designated in the latest Note. Advances by the Government shall neither relieve the Borrower of its obligation to pay nor cure any default under any Loan Instrument.

(18) Except to the extent specified by the Government in writing, the Government in its sole discretion may grant an extension of the time for payment or modification of amortization of the indebtedness secured by any Loan Instrument, release any party from liability to the Government, release portions of the Property from the lien of any Loan Instrument, and waive any other Government right under any Loan Instrument without affecting the lien or priority of any Loan Instrument, or the liability of the Borrower or any other party for payment of the indebtedness secured by any Loan Instrument.

(19) The Government will not be bound by any present or future state laws (a) providing for valuation, appraisal, homestead or exemption of the Property; (b) prohibiting or restricting an action for deficiency judgment or limiting the judgment amount which may be awarded; (c) prescribing any statute of limitations; (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions the Government may impose by regulation as a condition of approving a transfer of the Property to a new borrower. THE BORROWER WAIVES THE BENEFIT OF ANY SUCH STATE LAWS.

(20) Should the Borrower DEFAULT on any of its obligations under any Loan Instrument, merge, dissolve, be declared bankrupt or insolvent, or make an assignment for the benefit of creditors, without Notice the Government may (a) accelerate the entire indebtedness secured by this instrument by declaring it immediately due and payable; (b) charge the Borrower's account for any reasonable expenses which the Government may pay or incur to maintain and repair the Property; (c) process, operate and rent the Property; (d) have a receiver appointed for the Property who may exercise the usual powers of receivers in similar cases; (e) foreclose this and any other Loan Instrument and sell the Property; (f) enforce any and all other rights and remedies provided in the Loan Instruments or by future or present laws.

(21) Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated and of the United States of America, on terms and conditions satisfactory to the Government, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and in the manner and after such notice and on terms required by statute or determined by the Government if not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(22) Proceeds of a foreclosure sale pursuant to any Loan Instrument shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions of any Loan Instrument; (b) any prior liens required by law or a competent court to be paid; (c) all indebtedness to the Government secured by this instrument; (d) inferior liens of record required by law or a competent court to be paid; (e) at the Government's option, any other indebtedness of the Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(23) If the Government is the successful bidder at a foreclosure sale under any Loan Instrument, any portion of the purchase price not owed to a third party may be paid by crediting that amount on any debts of the Borrower which are owed to or insured by the Government.

(24) The rights and remedies provided in this instrument are cumulative and shall be in addition to every other remedy now or hereafter existing at law, in equity, by statute or by regulation.

(25) A waiver, amendment, release or modification of this instrument may be effected only by a writing which has been duly executed by the Government and shall not be established by conduct, custom or course of dealing.

(26) This instrument shall be governed by federal law, and shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this instrument.

(27) Default under this instrument shall constitute a default under any other security instruments of the Borrower held or insured by the Government and default under any other security instrument constitutes default under this instrument.

(28) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(29) Notices to the Borrower shall be sent to its address as shown on the first page of this instrument. Notices to the Government shall be addressed to the Farmers Home Administration, United States Department of Agriculture, Osborne Building, Landis Avenue, Norma, NJ 08347. Notices shall be sent by certified mail (postage prepaid) unless otherwise required by law. The Government and the Borrower may designate any further or different addresses to which subsequent notices shall be sent.

(30) This instrument, together with the other loan instruments, mortgages and encumbers only the assets of the borrowing Partnership named herein and offers to the Government no recourse for repayment of the indebtedness from the personal assets of any present or future member of the Partnership, whether individual or corporate.

IN WITNESS WHEREOF, the Borrower has caused this Mortgage to be executed by its Partners who hereunto set their hands and seal(s) as of the date first written above.

Signed, sealed and delivered in the presence of:

MULLICA WEST LIMITED

WITNESS

By: WAYNE GRIFFIN
General Partner

By: MULLICA INVESTORS, A PENNSYLVANIA LIMITED PARTNERSHIP
GENERAL PARTNER

ATTEST:

BART J. AXELROD, PRESIDENT
BALA REALTY ADVISORS, INC.
GENERAL PARTNER OF MULLICA INVESTORS, A PENNSYLVANIA LIMITED PARTNERSHIP

ACKNOWLEDGMENT

STATE OF NEW JERSEY
) ss:
COUNTY OF GLOUCESTER

On this 18th day of June , 1991 , before me, , notary public, personally appeared Wayne Griffin and Bart Axelrod, known to me, who being duly sworn, did say that Wayne Griffin and Mullica Investors, a Pennsylvania Limited Partnership, are the partners of the Partnership that executed the within instrument, and acknowledged to me that such Partnership executed the same. Wayne Griffin and Bart Axelrod further acknowledged that the partnership has received a true copy of the within instrument.

(NOTARIAL SEAL)

NOTARY PUBLIC

JANE F. SOWERS
Notary Public of New Jersey
My commission expires: My Commission Expires May 19, 1992.

The form of this instrument was prepared by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of

NAME TITLE DLS