IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TAMERLANE, LIMITED, et. al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05-677C |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF DISMISSAL
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Pursuant to the Court's Memorandum Order and Opinion of May 18, 2007), defendant respectfully submits the following supplemental brief concerning defendant's alternative ground for dismissal based upon a failure to state a claim upon which relief can be granted .

DEFENDANT'S BRIEF

Preliminary Statement

In its May 18, 2007 Opinion, the Court analyzed, but did not expressly decide, whether the claims of plaintiffs Park Terrace Limited ("Park Terrace") and Mullica West Limited ("Mullica"), were barred by the statute of limitations. The Court treated the claims as having vested as to some, but not all, of the periods in question, depending upon the expiration of restrictive use provisions of equity loans accepted by Park Terrace and Mullica in lieu of being permitted to prepay loans received from the Farmers Home Administration ("FmHA") pursuant to sections 515 and 521 of the Housing Act of 1949. Thus, the Court stated that

> the statute of limitations began to run on Mullica's claims as to the twenty-year restrictions period on or before June 18, 1991, when Mullica entered into an equity loan with FmHA. The statute of limitations began to run for Park Terrace as to the twenty-year restriction period on or before July 16, 1992, when Park Terrace entered into its equity loan with FmHA.

Slip op. 16. The Court further stated that "by accepting the Government's offer [of equity loans], plaintiffs' rights to pursue claims as to the period following the twenty-year restrictive use provision have not yet vested," and that in Allegre Villa v. United States, 60 Fed. Cl. 11, 17 (2004), "stands for the proposition that plaintiffs can treat the enactment of ELIHPA and the Housing and Community Development Act of 1992 as an anticipatory breach for prepayment rights that have not yet vested." Slip op. 18.

The Court did not state that any of the rights asserted in the complaint failed to vest by the time plaintiffs submitted their prepayment requests, that any relevant restrictive use provision was in effect at that time, or that the events that triggered the statute of limitations as to at least a portion of each plaintiff's claim failed to do so as to the entire claim. And, for the Court to hold that plaintiffs could continue treating the referenced legislation as an anticipatory breach for statute of limitations purposes after the occurrence of an actual breach would be inconsistent with controlling principles expressly stated by the Supreme Court in Franconia Associates v. United States, 536 U.S. 129 (2002).

However, even if the statute of limitations could be deemed not to have run with respect to "claims as to the period following the twenty-year restrictive use provision [that] have not yet vested," the complaint fails to state any such claims. The complaint does not allege separate sets of rights, some vested and some not, some actually breached and some only repudiated. The complaint alleges that each of these plaintiffs possessed a contractual right to prepay its Section 515 loans at any time, and that the Government fully breached these rights.[1]

---

[1] We believe that the complaint fails to state a claim for breach of contract for the additional reason that the terms of the prepayment clause in question and the terms of the

(continued...)

Finally, Count Two of the complaint should be dismissed because, as this Court has previously held in cases raising claims virtually identical to those asserted here, the remedy for the Government's refusal to accept prepayment of an FmHA loan and release the borrower from the loan program is an action for breach of contract; a separate cause of action for a taking of property without just compensation is not available in such cases.

## ARGUMENT

### I. The Complaint Fails To State A Claim As To Rights That Are Subject To Restrictive Use Provisions And Have Not Yet Vested

If Park Terrace and Mullica possess any claims that are not time-barred according to the Court's May 18, 2007 Opinion, then these are "claims as to the period following the twenty-year restrictive use provision [that] have not yet vested." Slip op. 18. Under controlling principles expressly stated by the Supreme Court in Franconia, even these claims are time-barred. Even if this were not so, however, dismissal of these claims would be warranted, for failure to state a claim.

With respect to the statute of limitations, we will not repeat the arguments presented in our moving brief and reply. We note, however, that, according to Franconia, the statute of limitations governing claims for breach of the right to prepay a Section 515 loan begins to run either at the time of an actual breach, such as a rejection of an actual attempt to prepay, or

---

[1](...continued)
legislation that allegedly repudiated that clause are reconcilable, and that, therefore, the legislation did not repudiate the clause. We recognize that this is based upon an analysis that conflicts, at least in part, with several decisions of this Court, including Franconia Assocs. v. United States, 61 Fed. Cl. 718 (2004), and Allegre Villa, and we do not believe that a dispositive motion based upon this analysis would be productive at this time. However, we reserve the right to demonstrate, at an appropriate future stage in these proceedings, that the legislation did not repudiate or breach contractual prepayment rights.

earlier, if the borrower elects to treat Congress's alleged repudiation of this right as a present breach. "Unless petitioners treated ELIHPA as a present breach by filing suit prior to the date indicated for performance, breach would occur when a borrower attempted to prepay . . . ." Franconia, 536 U.S. at 143 (emphasis added). The right of election does not extend past an actual breach. Nothing in Franconia permits a borrower to continue treating its breach claim as not yet having accrued after rejection of an attempt to prepay. Nor may a borrower treat its continuing inability to prepay after such a rejection as a continuing claim for accrual purposes. See Ariadne Financial Services Pty. Ltd. v. United States, 133 F.3d 874, 879 (Fed. Cir. 1998). Election to treat a repudiation as a breach may accelerate, but cannot postpone, accrual of a cause of action.

> To recapitulate, "[t]he time of accrual . . . depends on whether the injured party chooses to treat the . . . repudiation as a present breach." 1 C. Corman, Limitation of Actions § 7.2.1, p. 488 (1991). If that party "[e]lects to place the repudiator in breach before the performance date, the accrual date of the cause of action is accelerated from [the] time of performance to the date of such election." Id., at 488-489. But if the injured party instead opts to await performance, "the cause of action accrues, and the statute of limitations commences to run, from the time fixed for performance rather than from the earlier date of repudiation." Id., at 488. . . .

Franconia, 536 U.S. at 144 (emphasis added).

The Franconia Court also noted that "our ruling today ensures that suit must be brought within a fixed period after the date of injury – in this case, no later than six years after the Government's refusal to accept prepayment in accord with the terms of the promissory notes." 536 U.S. at 147 n.10. This language is clear and unambiguous. It does not provide for an exception – in effect, a tolling of the statute of limitations – based upon events subsequent to the refusal to accept prepayment, such as a borrower's acceptance of an equity loan containing a

restrictive use provision.[2] Franconia simply cannot be construed to permit suit to be brought more than six years after the Government's refusal to accept prepayment.

However, even if the statute of limitations could be deemed not to have run with respect to claims for the period following the expiration of the restrictive use provisions of the equity loans issued to Park Terrace and Mullica, based upon the theory that these are distinct claims the pursuit of which is not yet a vested right, the complaint does not even purport to state any such claims. The complaint does not allege that the Government's past refusal to accept prepayment was limited to the period preceding the expiration of the restrictive use provisions contained in the equity loans, nor does the complaint otherwise allege separate sets of rights, some vested and some not, some actually breached and some only repudiated. Indeed, the allegations in the complaint are inconsistent with such a bifurcation of the claims in question.

The complaint alleges past and continuing harm, all of which is attributed to past events, from the alleged repudiation of the prepayment right to the actual denial of the plaintiffs' requests to prepay. The complaint alleges that the "anticipatory repudiation constitutes a breach of each plaintiff's contract as of the date of Government performance required by each contract, i.e., the date that each plaintiff would terminate its contract but for the Government's repudiation." Complaint ¶ 50. These dates, according to the complaint, were in the past; the complaint alleges that, "[b]ut for the Government's conduct, plaintiffs would have terminated their contracts by prepaying their mortgage loans," and that the "repudiation of plaintiffs'

[2] Where a restrictive use provision in the loan documents is in effect at the time of the prepayment request, it may be argued that a rejection of the request is not a "refusal to accept prepayment in accord with the terms of the promissory notes." That was the case in Allegre Villa. It is not the case here.

contractual termination right has prevented any prepayment . . . from taking place. Complaint ¶ 47 (emphasis added). The complaint describes plaintiffs' prepayment right, and the harm from the denial of that right, as past, present, and continuing: "Plaintiffs are continuing to suffer injury and resulting damages each day that they are denied the ability to exercise their contractual termination right and to enter the real estate market with their properties at any time at their option." Complaint ¶ 51 (emphasis added). The prepayment right alleged in the complaint is a right to prepay "at any time," Complaint ¶¶ 2, 5, and the complaint describes the contract creating this right as containing no restrictive use provisions. Complaint ¶¶ 5, 7, 11.2, 11.4 (alleging that restrictive use clauses were contained only in post-1979 loans, and that the loans of Park Terrace and Mullica were pre-1979 loans). These allegations are completely inconsistent with the theory that plaintiffs' claims involve two separate sets of rights, one with respect to the period prior to the expiration of the restrictive use provisions in the equity loans, which vested on or before the date of acceptance of those loans in the early 1990s, and one with respect to the period subsequent to the expiration of these provisions, which will not vest until that expiration. Thus, the complaint cannot be said to state a claim for an anticipatory breach of prepayment rights that have not yet vested.

## II. The Complaint Fails To State A Claim For An Uncompensated Taking

The rights alleged to have been infringed by the Government were plaintiffs' right, under the applicable promissory notes, to prepay their FmHA loans. This is a right arising from a contract between plaintiffs and the Government. Although plaintiffs frame their action in terms of a taking of their housing projects through restrictions upon the use of these projects, Complaint ¶ 40, the restrictions themselves were not unilaterally imposed upon plaintiffs by the

Government, but were agreed to by plaintiffs in return for subsidized FmHA loans. Plaintiffs agreed to comply with these restrictions as long as any portion of their loans remained unpaid. If plaintiffs possessed a right to terminate these restrictions by prepaying their loans, then that right was based strictly upon the terms of the promissory notes, and was thus a contract right. If the contracts required the Government to accept prepayments offered by plaintiffs under the circumstances involved here and the Government refused to do so, then the contract was breached. If the contracts did not require the Government to accept prepayment under these circumstances, then there was not only no breach of contract, but also no taking. Plaintiffs' rights as owners of the properties in question did not, after all, include a right to use the property in a manner prohibited by valid and existing contracts signed by the owners.

Under these circumstances, plaintiffs cannot maintain a takings claim. "[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract." Sun Oil Co. v. United States, 572 F.2d 786, 818, 215 Ct. Cl. 716 (1978). Remedies for alleged infringement of any contractually-established rights generally lie in contract, not the Fifth Amendment. Id.; accord Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001); Baggett Transportation Co. v. United States, 969 F.2d 1028, 1034 (Fed. Cir. 1992). Although rights existing independently of a contract are not necessarily restricted to contractual remedies, see Integrated Logistics Support Sys. Int'l, Inc. v. United States, 42 Fed. Cl. 30, 34-35 (1998), such rights cannot give rise to a takings claim if the claim depends upon rights and obligations created by a contract with the Government. Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 656 (2003).

Further, compensation under the Takings clause is a remedy for actions taken by the Government in its sovereign capacity, under its power of eminent domain, not actions taken by the Government in its proprietary capacity. Sun Oil, 572 F.2d at 818. Based upon this principle and an extensive analysis of takings jurisprudence generally, this Court, in a decision on the merits after remand from the Supreme Court in Franconia, rejected takings claims virtually identical to those asserted here, and explained:

> The foregoing analysis resonates in the case sub judice, in which the central hypothesis is that the government acted in a proprietary capacity in passing legislation that abridged plaintiffs' prepayment rights. If this is true . . . [,] it follows, a fortiori, that defendant, while repudiating its contracts, did not effectuate a taking. Because this conclusion stems from the nature of the power invoked by Congress in impacting plaintiffs' property, rather than the nature of the property itself, it applies, with equal force, to plaintiffs' contract rights and the [housing] complexes they acquired under the program. As to the former, it remains that when a contract between a private party and the Government creates the property right subject to a Fifth Amendment claim, the proper remedy for infringement lies in a contract claim, not one for a taking. See Allegre Villa [v. United States], 60 Fed. Cl. [11], 18-19 [(2004)]; Detroit Edison Co. [v. United States], 56 Fed. Cl.[299], 303 [(2003)]. The same holds true as to the complexes themselves--no regulatory taking occurred because the Congress did not appropriate those properties in its sovereign capacity for public use. . . .

Franconia Assocs. v. United States, 61 Fed. Cl. 718, 739-740 (2004) (footnotes omitted). The takings claims rejected in Allegre Villa were, like those in Franconia, virtually identical to those asserted here. This is true not only with respect to all four plaintiffs, and not only the two plaintiffs addressed in our motion and in the May 18, 2007 Opinion. For the reasons stated in both of those cases, the takings claims in this case should be dismissed.

CONCLUSION

For the foregoing reasons, all of the claims of plaintiffs Park Terrace and Mullica should be dismissed, and the takings claims asserted in Count Two of the complaint should be dismissed as to all plaintiffs, with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/Jeanne E. Davidson**
JEANNE E. DAVIDSON
Director

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643

Attorneys for Defendant

OF COUNSEL
Michael S. Dufault
Kenneth S. Kessler
Commercial Litigation Branch
Civil Division
Department of Justice

Alicia Peden
Office of General Counsel
Department of Agriculture

**Filed electronically**

June 5, 2007