**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TAMERLANE, LIMITED, et al., Plaintiffs, | : | No. 05-677C (Judge Christine O.C. Miller) |
| v. | : | |
| UNITED STATES OF AMERICA, Defendant. | : | |

**SUPPLEMENTAL MEMORANDUM OF PLAINTIFFS,**
**PARK TERRACE LIMITED AND MULLICA WEST LIMITED,**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COZEN O'CONNOR

H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Plaintiffs and the Responding Parties on the Motion, Park Terrace Limited and Mullica West Limited

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES .......... ii

ARGUMENT .......... 1

I. THE STATUTE OF LIMITATIONS IS NOT A BAR TO THE BREACH OF CONTRACT CLAIMS .......... 4

A. Discovery Should Be Permitted Before Any Contract Claims Can Be Dismissed Based On The Statute of Limitations. .......... 4

B. The Government's Arguments Concerning The Post-Restriction Period Claims Are Without Merit. .......... 6

II. THE TAKINGS CLAIM ASSERTED IN COUNT II SHOULD NOT BE DISMISSED. .......... 9

A. A Takings Claim May Be Pursued Alternative To A Breach Of Contract Claim. .......... 10

B. An Alternative Takings Claim Exists By Reason Of And Arising From The Equity Loan Transaction, To The Extent The Breach Of Contract Rights Are Deemed Foreclosed. .......... 11

CONCLUSION .......... 14

APPENDIX .......... 1

# TABLE OF AUTHORITIES

Page

**CASES**

Allegre Villa v. United States,
60 Fed. Cl. 11 (2004)....................8, 10

Franconia Assocs. v. United States,
61 Fed. Cl. 718 (2004)....................5, 11-12

H.F. Allen Orchards v. United States,
749 F.2d 1571 (Fed. Cir. 1984)....................3

Integrated Logistics Support Sys. Int'l, Inc. v. United States,
42 Fed. Cl. 30 (1998)....................10, 13

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 587-88 (1986)....................3

Monon Corp. v. Stoughton Trailers, Inc.,
239 F.3d 1253 (Fed. Cir. 2001)....................3

Prudential Ins. Co. v. United States,
801 F.2d 1295 (Fed. Cir. 1986)....................10

Sun Oil v. United States,
215 Ct. Cl. 716, 572 F.2d 786 (1978)....................10

**STATUTES**

F.R.Civ.P. 12(c)....................1, 2

F.R.Civ.P. 56....................1, 2, 13

**OTHER AUTHORITIES**

2 Moore's Federal Practice (3d. ed. 2006)....................2

11 Moore's Federal Practice (3d. ed. 2006)....................2

Kevin R. Garden, "Fifth Amendment Takings of Rights Arising From Agreements with the Federal Government,"
29 Pub. Cont. L.J. 187, 201-202 (2000)....................11

This supplemental memorandum is filed by plaintiffs, Park Terrace Limited and Mullica West Limited ("Responding Plaintiffs"),[1] pursuant to the May 18, 2007 Opinion and Order (the "Order") directing that the parties brief the Government's position that Count II, the takings claim, fails to set forth a viable legal theory for recovery.[2]

**ARGUMENT**

This case previously was stayed. The Government sought relief from the stay to file a "motion to dismiss" the claims of Responding Plaintiffs on "jurisdictional" grounds. The Government then filed its motion, pursuant to RCFC 12(c), but included matters extrinsic to the record to support it.

The Court conducted oral argument on the motion on January 25, 2007. Thereafter, it issued the Order converting the Government's motion, stating that the pending issues were being decided in the procedural posture of a motion for summary judgment. Order at 8 (because matters outside the pleadings were presented by the Government, its motion "shall be treated as one for summary judgment and disposed of as provided in RCFC 56").

At the January 25, 2007 hearing on the Government's Rule 12(c) motion, Responding Plaintiffs urged the Court not to convert the Rule 12(c) motion to a Rule 56 motion for summary judgment, but specifically argued that if the Court elected to decide the issues in a

---

1 In this supplemental memorandum, Responding Plaintiffs rely on one page of their initial memorandum, which is contained in the Appendix ("App.") attached hereto at 23.

2 In the Government's Supplemental Brief ("Govt. Supp. Br.") filed on June 5, 2007 brief, it re-argued the statute of limitations issue insofar as the Court rejected the Government's position. Responding Plaintiffs have moved to strike this as unauthorized. The Court has held disposition of that motion in abeyance pending a ruling on all pending issues. Without prejudice to the Motion to Strike, and on the theory that "turnabout is fair play," Responding Plaintiffs will both (1) respond to the Government's argument raised in the Govt. Supp. Br., and (2) request that the Court re-examine its position concerning that portion of the Order to the extent it decided the issue unfavorably to Responding Plaintiffs.

summary judgment posture, Responding Plaintiffs should be allowed to take discovery. N.T. 24-26 (App. 7-9); see also N.T. 29-31 (App. 10-12).[3]

RCFC 56 governs summary judgment. RCFC 56(f) provides:

> **(f) When Affidavits are Unavailable.**
> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

See also RCFC 56(e): "The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits."

Federal Rules 12(c) and 56 are substantively identical to RCFC 12(c) and 56. As 2 Moore's Federal Practice (3d. ed. 2006) states, in the Federal Rules context:

> Whenever discovery may be needed to determine whether the matters advanced by the movant outside of the pleadings may present genuine issues of material fact (thus precluding summary judgment), Rule 56(f) comes into play.

§ 12.34[3][a] at 12-72.2.

As Moore further comments, under Rule 56, the courts should allow a party opposing a motion for summary judgment to develop an adequate factual record. Moore states:

> The district courts have a duty under Rule 56(f) to ensure that the parties have been given a reasonable opportunity to make their record complete before ruling on a motion for summary judgment. To this end, it has been said that Rule 56(f) should be liberally construed.

11 Moore's Federal Practice, (3d. ed. 2006), § 56.10[8][a] at 56-83 to 56-84.

---

[3] The relevant portions of the January 25, 2007 hearing transcript are App. 1-22. References to the hearing transcript will be denominated by their transcript and App. page numbers as "N.T. ___ (App. ___)".

This is consistent with the fundamental jurisprudence, recognized by the Court, that on a motion for summary judgment the opposing party is entitled to the benefit of all reasonable inferences:

> The benefit of all reasonable presumptions and inferences runs to the party opposing summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); H.F. Allen Orchards v. United States, 749 F.2d 1571, 1574 (Fed. Cir. 1984) (noting that non-moving party shall "receive the benefit of all applicable presumptions, inferences and intendments").

Order at 9.

At oral argument, the Court itself adverted to the potential need for discovery. In fact, the Court stated at oral argument:

> But I think you're entitled to have me ask, with discovery could Mr. Axelrod do more and you would say, yes, because you haven't had discovery. * * * And Mr. Axelrod would therefore have the opportunity to flesh out his declarations if he learned anything more, his memory was jogged more or whatever.

N.T. 38-39 (App. 16-17). See also N.T. 34 (App. 13) (court "inclined to allow more factual development of the case"); N.T. 36 (App. 15) (court has not seen all the facts); N.T. 47 (App. 21) (court suggests that in summary judgment posture it would afford a limited time period for focused development of the record); N.T. 49 (App. 22) (court does not think it fair to preclude plaintiff from taking discovery under RCFC 56(f)). In addition, the Court augmented the summary judgment record sua sponte. See Order, at 4 note 3.

Against this background, Responding Plaintiffs respond to the Government's Supplemental Brief.

## I. THE STATUTE OF LIMITATIONS IS NOT A BAR TO THE BREACH OF CONTRACT CLAIMS.

### A. Discovery Should Be Permitted Before Any Contract Claims Can Be Dismissed Based On The Statute of Limitations.

The Government has re-argued its limitation position to the extent it did not prevail. Without prejudice to the position that the Court has already decided limitation issues, Responding Plaintiffs do the same.

Responding Plaintiffs continue to assert that the request for prepayment, and rejection, were formalistic not meaningful in the sense required under the cases. In ruling that the contract claims are barred, the Court has taken a limited number of documents proffered by the Government, and an affidavit proffered by the plaintiffs (which included documents in plaintiffs' possession omitted by the Government), to issue a ruling preclusive of the claims. However, not one minute of discovery has taken place or been allowed, and Responding Plaintiffs have neither had the benefit of looking at the Government's files nor deposing the Government's personnel.

Such discovery could vindicate the position of Responding Plaintiffs. For example, Responding Plaintiffs contend that the prepayment request was not genuine but merely a mechanical, "formalistic" gesture to secure incentives. As the result of discovery, it could turn out the Government knew that the outcome of any "request for prepayment" was a foreordained denial, but nevertheless encouraged owners to go through the empty exercise of making a meaningless "application" to prepay -- so that a piece of paper would be in its file.[4] The fact

---

4 The Court also suggested the scenario where the owner said to a Government official:

> I know in order to get incentives I'd have to be able to prepay, I'm prepared to prepay but you're telling me I can't do it. So, in lieu thereof, I'm, I'll accept the incentives.

N.T. 10 (App. 3). The Court at oral argument characterized this as "here's our block to the very act that would start the statute of limitations running, but it's enough of a block to start the

issue is whether or not both the borrower and the Government considered this as a step to get the incentive loan and neither considered it a bona fide attempt to prepay.

Alternatively, as a result of discovery, it could turn out that the Government orchestrated what amounted to a coercive campaign to cause owners to unintentionally forfeit unborn breach of contract rights without knowledge of the consequences. Precisely in the service of such a coercive campaign, owners were "led down the primrose path" to pursue "incentive" transactions with the prejudicial "application" to prepay slipped in for the Government's future benefit. This could thus supply the "evidence that the circumstances [surrounding entry into the equity loan] were the result of coercive acts by the Government." Order at 16.

This is hardly farfetched, given that in Franconia Assocs. v. United States, 61 Fed. Cl. 718 (2004), the Government took the position that a claimant was required to accept incentives as a "suitable substitute transaction" in order to reasonably mitigate loss. Franconia, 61 Fed. Cl. at 741-742. This position adds credibility to the argument that both the Government and Bart J. Axelrod, the representative of each of Responding Plaintiffs, believed that the request for prepayment was merely a formality and not a real or voluntary request.

It would therefore be error to dismiss any portion of Responding Plaintiffs' claims based on the statute of limitations without affording Responding Defendants a limited and focused opportunity to further develop the record through discovery. This case has previously

---

statute of limitations running . . ."). N.T. 45-46 (App. 19-20). Responding Plaintiffs would add the following scenario:

> I know in order to get incentives, I have to submit a form that requests prepayment. You know and I know we are not presently able to prepay because we have not arranged refinancing. But we will submit the form in order to get the incentives.

been stayed to facilitate settlement efforts.[5] No discovery has taken place. A RCFC 16 conference has not been held, and no scheduling order has been entered. No documents have been produced or volunteered by the Government. In fact, the Government's Supplemental Brief re-argues the Order and asserts that the Complaint does not support the Court's decision. Responding Plaintiffs have offered to replead if necessary. See infra at 9.

At oral argument, Responding Plaintiffs specifically requested the opportunity to take discovery. See supra at 1-2. The Court acknowledged the need for further factual development of the record and suggested receptivity to its further development. See supra at 3. In view of the Court's remarks at the hearing, it was the anticipation of Responding Plaintiffs that the Court would find an adequate basis to deny summary judgment on the existing record, but in the event it did not, the Court would enter an order affording the opportunity for the discovery specifically requested by Responding Plaintiffs at oral argument.

In an abundance of caution, Responding Plaintiffs are contemporaneously filing a declaration of Bart J. Axelrod to RCFC 56(f) concerning the necessity of conducting discovery to oppose the pending motion. Discovery therefore should be allowed, and a definitive ruling on the viability of the breach of contract claims should await the outcome of that discovery.

### B. The Government's Arguments Concerning The Post-Restriction Period Claims Are Without Merit.

While the Court has rejected the Government's limitations position as to the post-restriction period, and this should be the end of the matter, we respond briefly to the Government's Supplemental Brief.

The Government argues that once the statute was triggered, it was triggered for all time. But the Government ignores that the incentive transaction, which resulted in the equity

5 After the January 25, 2007 hearing, and pursuant to the Court's suggestion, discussions ensued concerning the possibility of resolution of the case. These discussions were unfruitful.

loan, was the product of a situation where the Government had denied the partnerships any option for relief, and in that context caused the partnerships to agree to a set of new restrictions on the use of the property for a twenty-year period. It is in that decidedly unsympathetic context that the Government advances the position that to obtain incentives, the partnerships necessarily would have made a demand for prepayment denied by the Government.

It should be noted that this argument is advanced assuming that the Court adheres to its previous opinion that the statute has run on the claims related to the initial loan. Of course, if the Court agrees that it is premature to dismiss any claim until there has been adequate discovery, this issue is moot at this time.

Thus, assuming arguendo there was a meaningful demand and the claim accrued by virtue thereof, the bar of the statute should only extend to the end of the restriction period because the demand for prepayment was putatively "refused" only to the extent that the owner accepted a restriction on the use of the property as part of the equity loan transaction. Indeed, in the correspondence relied on by the Government to argue that the claim accrued, the Government explicitly acknowledged that the equity loan transaction would result in only a twenty year restriction. See Appendix to the Government's motion to dismiss ("Govt. App.") at 3, 7.

In its June 23, 1992 letter to Park Terrace Limited, the Government stated:

> In conjunction with your prepayment request, we are making you, as General Partner for Park Terrace Limited, a one-time offer of an equity loan in the amount of $769,400 as an incentive to keep Park Terrace in low income housing. * * *
>
> Any agreement entered into to accept this incentive will require you to sign a restrictive-use provision obligating the housing to the low-moderate income program for 20 years.

Govt. App. at 3. Likewise, in its March 14, 1991 letter to Mullica West, the Government stated:

> Based on the material submitted, it is the determination of Farmers Home Administration (FmHA) that you have demonstrated the ability to repay your loan in full. As a result of this ability, FmHA is offering a package of one-time incentives so that you may remain in the FmHA multiple family housing loan program in order to extend the low income use of the housing. The following incentives are hereby offered:
>
> 1. A subsequent loan for the equity in the project. The amount of this loan has been calculated to be $3,460,000. * * *
>
> Any agreement entered into to accept these one time incentives will require the signing of a restrictive-use provision obligating the housing to low and moderate income program for 20 years.

Govt. App. at 7. It was based on these letters that the Court concluded the claims of the Responding Plaintiffs had accrued. Order at 16.

Since the putative "denial" of the right to prepayment accrues the claim and triggers the statute, see Govt. Supp. Br. at 4, assuming arguendo there was a denial[6] it is the imposition of the restriction which acts as the denial. However, the operation of the restriction extends only for the length of the period in which the restriction was imposed. Since the restriction was finite, to the extent it triggers the statute, it does so only as to the restriction period. After that, there is no denial, and by filing suit Responding Plaintiffs are entitled to recover on account of contracts for which the right of prepayment had not yet vested. Allegre Villa v. United States, 60 Fed. Cl. 11 (2004). Therefore, should the plaintiff partnerships be barred for the period as to which restrictions exist, suit may nevertheless proceed as to the period after the restrictions expire.

Moreover, the Government's position would raise inequity to unprecedented levels. According to the Axelrod Affidavit, having backed the owners into a corner and

---

[6] These letters, fairly read, only offer the equity loan "incentive," but do not refuse prepayment. If they are interpreted to refuse prepayment, they do so only to the extent of the restriction period. As to Mullica West, the record shows the Government did not even refuse prepayment -- the Government's letter merely says prepayment will not be allowed "at this time." Plaintiffs' Appendix in opposition to the Government's motion to dismiss at 9.

foreclosed any other option to the owners, the Government now wants to compound its wrong by turning the request for incentives it coaxed out of the partnerships into a perpetual bar of the owner's rights. As the Court put it at oral argument: "here's our block to the very act that would start the statute of limitations running, but it's enough of a block to start the statute of limitations running . . ."). N.T. 45-46 (App. 19-20). This would truly be "whipsawing" of the most extreme degree.

The Government repeatedly complains that the claim recognized by the Court involves two transactions, with the events predicate to the post-restriction period based on a transaction not the subject of the Complaint. Without admitting the validity of the point, such a formalistic objection to the Complaint is easily cured by amendment of the Complaint. See N.T. 20 (App. 5); N.T. 46 (App. 20) (plaintiffs entitled "to go one more round" under rules of pleading). Responding Plaintiffs specifically request an opportunity to amend the Complaint to conform with the jurisprudence that has emerged from these proceedings, if and to the extent deemed necessary by the Court.[7]

## II. THE TAKINGS CLAIM ASSERTED IN COUNT II SHOULD NOT BE DISMISSED.

The Government argues for dismissal of Count II because, as the Government puts it, the taking of the housing project was accomplished "through restrictions upon the use of these projects . . . which were not unilaterally imposed upon plaintiffs by the Government, but were agreed to by plaintiffs in the terms for subsidized FmHA loans." Govt. Supp. Br. at 6-7. The Government goes on to argue that any right to terminate the restrictions by prepaying the loans was based strictly upon the terms of the promissory notes, and was thus a contract right, and that if the Government refused to accept the prepayment, only a contract breach took place.

7 In their brief in opposition to the Government's motion (at 11, note 6), Responding Plaintiffs requested the opportunity to amend the Complaint, if deemed necessary. See App. 23.

This position is unsound because the Government ignores that should the contract rights be precluded, the events giving rise to the preclusion of those rights may themselves constitute an actionable taking.

## A. A Takings Claim May Be Pursued Alternative To A Breach Of Contract Claim.

A claim under the takings clause may be available where alternative contract rights are not. As this Court stated in Allegre Villa v. United States, 60 Fed. Cl. 11 (2004):

> If the right at issue is not governed by the terms of the parties' contract, plaintiffs may pursue a takings action. See Prudential Ins. Co. v. United States, 801 F.2d 1295, 1300 n.13 (Fed. Cir. 1986) (noting that takings claim may offer plaintiff relief where contract claim is ineffective). Also, rights that arise independently from the contract may be brought through a takings action. See Integrated Logistics Support Sys. Int'l, Inc. v. United States, 42 Fed. Cl. 30, 34-35 (1998) (refusing to dismiss takings claim when court could not conclude whether contract conferred rights at issue).

60 Fed. Cl. at 20.

The capacity in which the governmental action occurs must be sovereign, not proprietary. Sun Oil v. United States, 215 Ct. Cl. 716, 572 F.2d 786, 818 (1978). We submit that no more sovereign use of governmental power exists then a law, passed in the name of public welfare, which restricts a private property right. The Congress was not acting "commercially" when it passed ELIHPA, in the sense that it sought to advance its own financial interests, but to ensure an adequate supply of low income housing for the public benefit -- the very essence of the exercise of the sovereign powers of eminent domain for a public use.

While the Franconia Court concluded that the Government acted in a proprietary capacity in passing legislation that abridged plaintiffs' prepayment rights, 61 Fed. Cl. at 739, at issue here is the extinguishment of the right to sue arising from the consequences of that legislation. Notably, the Franconia Court quoted the commentary of Kevin R. Garden, "Fifth Amendment Takings of Rights Arising From Agreements with the Federal Government," 29 Pub. Cont. L.J. 187, 201-202 (2000); that commentary would recognize sovereign action in the circumstances at issue here, namely Governmental actions to preclude the assertion of unborn contract rights:

> Courts will . . . find a taking pursuant to a sovereign act of the Government where the Government intended, even if implicitly, to take a property right.

61 Fed. Cl. at 739.

**B. An Alternative Takings Claim Exists By Reason Of And Arising From The Equity Loan Transaction, To The Extent The Breach Of Contract Rights Are Deemed Foreclosed.**

The Government repeatedly argues the dispute involves "two separate sets of rights" -- one involving the original transaction and the other the equity loan. See Govt. Supp. Br. at 6. Likewise, the Court characterized the Government's position as one where its actions "created a situation where it extended the repudiation by imposing new restrictions." See, N.T. at 35 (App. 14); N.T. 19 (App. 4) (incentive solution "created a new set of restrictions"); N.T. 21 (App. 6) (Government may have taken actions that created a new cause of action).

If this is so, an alternative takings claim could be based, not on the refusal to allow prepayment, but on the transaction in which the Government sought to extinguish the rights of Responding Plaintiffs to vindicate their harm by bootstrapping on to the equity loan process a set of "application" documents which would later be relied on to foreclose the unborn breach of contract claims. The Government, by forcing private partnerships to support low-

income families for a longer period than agreed and forfeiting claims on that account, has taken property -- the ability to transfer the real estate or to recover compensation on account of that inability -- from the Responding Plaintiffs without paying just compensation. The circumstances leading to the equity loans -- i.e. the events set forth in the Axelrod Affidavit -- implicates the fairness and propriety of the conduct by the Government to extinguish those rights (to the extent they result in the preclusion of the contract rights).[8] The takings claims, then, derive from a source -- the equity loan transactions -- independent of the underlying original contracts (the loans themselves).

It bears repetition that in Franconia Assocs. v. United States, 61 Fed. Cl. 718 (2004), the Government took the position that a claimant was required to accept incentives as a "suitable substitute transaction" in order to reasonably mitigate loss. Franconia, 61 Fed. Cl. at 741-742. The Government now can hardly be heard to say that the forced acceptance of incentives, even if sufficient to accrue a claim for breach of contract, could not constitute an independent wrong (the taking) whose consequences were visited on Responding Plaintiffs when suit was filed and the breach of contract claim precluded.

The point is also driven home when one considers that absent the Government's initiation of the incentives transaction, through informing the property owners that they had no other choice for relief from the Government's own repudiation, the property owners could have maintained the status quo and done nothing. As the Government's counsel acknowledged at oral argument:

---

[8] The point is punctuated by the Court's remarks at oral argument that the incentive program "was spurious to begin with." N.T. 42 (App. 18), see also N.T. 45-46 (App. 19-20) (characterizing the Government's position as "here's our block to the very act that would start the statute of limitations running, but it's enough of a block to start the statute of limitations running . . .").

> Well, yeah, if they had done nothing at all, if they had not sought to prepay, then they would be free to wait until the governments [sic] obligation is triggered and it wouldn't be triggered if the Plaintiffs didn't make any effort to prepay.

N.T. 5 (App. 2). Alternatively, the owners could have elected to sue. Either way, there would be no limitation issues. To allow the Government to invoke a self-created limitations defense, where otherwise there would be none, without being required to financially respond to the harm it caused has a distinct element of inequity and unfairness -- effectively allowing the Government to use an offer of relief from its repudiating statute "to profit from its own wrong."

Responding Plaintiffs submit that the Count II motion should be denied based on the present record. However, to the extent the Court does not have an adequately developed factual record to evaluate, in a summary judgment context, whether Plaintiffs have a viable takings claim, Responding Plaintiffs, in an abundance of caution and to forestall any possible issues, are filing a Rule 56(f) affidavit herewith. Obviously, the discovery appropriate to the breach of contract limitations issues would wholly overlap the discovery appropriate to formulate the takings claim. Accordingly, the Court should allow discovery and revisit the dismissal issue later, if and to the extent necessary to avoid dismissal. See Integrated Logistics Support Sys. Int'l, Inc. v. United States, 42 Fed. Cl. 30 (1998), at 34-35 (refusing to dismiss a takings claim pending further discovery).

## CONCLUSION

For the reasons stated above, the Court should refuse to dismiss Count II, or allow discovery. Alternatively, and to the extent it entertains re-argument as to limitations issues in Count I, the Court should (a) afford discovery as to the pre-restriction period, (b) affirm as to the post-restriction period, and (c) hold Count II in abeyance pending the ultimate outcome of Count I issues and discovery on Count II.

Respectfully submitted,

COZEN O'CONNOR

**s/ H. Robert Fiebach**
H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Plaintiffs and the Responding Parties on the Motion, Park Terrace Limited and Mullica West Limited

**Filed Electronically**

Dated: June 15, 2007

PHILADELPHIA\3205277\1 164980.000