# APPENDIX

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TAMERLANE LTD., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Docket No. 05-677C |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

Courtroom 7, Room 508,
National Courts Building
717 Madison Place NW
Washington, D.C.

Thursday,
January 25, 2007

The parties met, pursuant to notice of the Court, at 3:05 p.m.

BEFORE: HONORABLE CHRISTINE O.C. MILLER
Judge

APPEARANCES:

<u>For the Plaintiff</u>:

H. ROBERT FIEBACH, Esquire
DAVID M. DORET, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, Pennsylvania 19103
(215) 665-4166/3716
(215) 665-3716

<u>For the Defendant</u>:

SHALOM BRILLIANT, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 616-8275

until 2005, not participated in an incentive program, and not run athwart of the statute of limitations?

MR. BRILLIANT: Well, yeah, if they had done nothing at all, if they had not sought to prepay, then they would be free to wait until the governments obligation is triggered and it wouldn't be triggered if the Plaintiffs didn't make any effort to prepay. But that's not what happened here.

THE COURT: How many entities -- or cases might be easier to discuss -- accepted the prepayment-incentive program and sued within the statutory six-year period?

MR. BRILLIANT: I really don't have the numbers handy. I mean, those that accepted incentives, out of the total are certainly a minority. Not a trivial minority, but we've got about, in the global settlement pool that largely is defined by the fact that they're all represented by the same set of attorneys, so we started this process as a global thing, there are about over 600 Plaintiffs representing more than 800 properties, and some significant number of them received incentives, but I couldn't give you the number now.

THE COURT: Are these the only fish that are outside the pool?

statutes and they say what they say. But if a dialogue -- orally or in writing -- had occurred whereby Mr. Axelrod would have said to an official, I know in order to get incentives I'd have to be able to prepay, I'm prepared to prepay but you're telling me I can't do it. So, in lieu thereof, I'm, I'll accept the incentives. Are you saying the cause of action would have arisen at that time?

MR. BRILLIANT: I think yes. Because essentially, what the borrower is saying there is, first of all, he wants to prepay. I mean, this incentive isn't there, the prepayment application isn't just some kind of pro forma, as the Plaintiffs try to put it now, piece of paper you submit for the purpose of getting an equity loan or other incentive. The whole idea of an incentive is to keep someone in the program who wants to leave.

The prepayment application is presumably something that indicates the borrower in fact really wants to prepay. And the pleadings in this case indicate that in fact the Plaintiffs really wanted to prepay and would have prepaid when they applied to prepay, if they'd been allowed to. And the only reason they accepted these incentive offers, which they characterize as having been done under duress, it

was no present right to get out of the program, neither at the time ELIHPA was enacted, nor thereafter, until the expiration of the restrictive-use provisions. There can't be an actual breach because there is not yet a right to prepay and get out of the program. But what we have here is the Plaintiffs, if there was a repudiation, it was a single repudiation. Not a repudiation of separate rights, there was a single right to prepay.

THE COURT: No there wasn't a repudiation of separate rights. There was a repudiation single right to prepay but in the process of affecting whatever solution the government would call it, the incentive solution, the government created a new set of restrictions. I think --

MR. BRILLIANT: But it didn't impose them.

THE COURT: -- what's sauce for the goose is sauce for the gander.

MR. BRILLIANT: Well --

THE COURT: It was a new condition. That's what the letter says so.

MR. BRILLIANT: Well no. But the thing is, the Plaintiff didn't have to accept the incentive at all. The Plaintiff could have said I don't want to agree to anything. They didn't have to agree to

anything. They wouldn't have gotten an equity loan or whatever it was that they wanted to get, but that was a new agreement. So, if the Plaintiffs want to sue later for breach of the, some term of the equity loan they got, that's another suit. But what their suing on is a breach of the section 515 loan. the section 515 loan had no prepayment restriction, and the Plaintiff was under no obligation to take on any new restrictions if it didn't want to.

THE COURT: What if Plaintiff wanted to amend his complaint to make clear that he was suing on the basis of the expiration of the period of the restrictions and elected to sue prematurely which is what is being allowed, or is allowed under Franconia? I don't know what your problem would be.

MR. BRILLIANT: Well, because it wasn't premature to begin with. I mean, they had a right to sue back in the early '90s. In other words, they had a right to sue if, when they accepted, before they accepted, under their theory, they had a right to prepay before, and to get out of the program, before they accepted the incentive. Instead, they chose to accept the incentive, but under their theory they had a right to prepay and get out of the program before that. And if that right was not honored, and that was

a breach, then that was the breach. And they had a cause of action starting from that point.

THE COURT: You mean, if they may have lost that cause of action, but I think the government may have taken actions that created another one.

MR. BRILLIANT: Well, I'm not going to argue now that there might not be some other cause of action that hasn't ripened yet that they might be able to bring at some future date. If they bring that suit we'll deal with it. But that will be a different suit, because it wouldn't be a suit for breaching the contractual right under their 515 loan. Because the 515 loan, the only contractual right involved there is the right to prepay without restrictions whenever they want to. And that's the right that they say was not honored and it was not honored when they tried to enforce it. And that was well over six years ago. It was about -- what is it now? Almost sixteen years ago.

THE COURT: You're a brunette. You were a brunette then.

MR. BRILLIANT: I -- and more of it.

(Laughter.)

THE COURT: I call this, in my whole career I call it, the greying of the Department of Justice.

allow the partnership to prepay it's loan to the FmHA and leave the section 6 -- the section 515 program. The government said that under it's new regulations the only alternative available to the partnership was through like incentives.

The government further informed the partnership that there were three alternative incentives and et cetera, in the face of the government's informing the partnership of no other alternatives. So my question to you, since we are in a summary judgment posture, and the opponent is entitled to all inferences to be drawn in it's favor even though you've got the burden of proof, can you make a proffer that Mr. Axelrod remembers anything more specific?

MR. FIEBACH: Yes. Mr. Axelrod had many discussions, and the discussion would go pretty much the way you posited it to counsel for the government. But let me say initially, Your Honor, the motion is filed as a Rule 12(c) motion. The government has offered materials outside the pleadings and has requested that if you're going to consider the materials outside the pleadings that you convert it to a motion for summary judgment. You have the discretion under Rule 12(c) not to at this point.

Obviously the motion, as a 12(c) motion cannot be granted because there is nothing in the, on the face of the pleadings which would give the Court any basis at all to consider a statute of limitations issue. It's only by going to the selected correspondence that the government has attached.

There's been no discovery in this case. We've not seen the government's file. There's been no deposition of Mr. Axelrod. This case was stayed on the assumption that there would be some good faith negotiation and attempt to mediate the case. The government took the position that they were unwilling as to these two Plaintiffs of the four that we represent, to discuss settlement at all until this issue was presented, as they said, as a question of jurisdiction. And I want to have a couple of comments on that as well. But, as an example, the government selected these two letters by which Mullica West and Park Terrace requested the right to pay off the remaining balance; did not even attach the letter that we attached, that we happen to have in our file that you mentioned earlier, pointing out that the governments response was that they cannot accept the offer at this time.

Mr. Brilliant has given you testimony, in

effect, as to what he would say "at this time" means. That's a question of fact as to what "at this time" meant, and what was the understanding of Mr. Axelrod with respect to that, and what was the understanding of the person who wrote the letter. By saying it's a form letter doesn't answer anything, I don't know, even that's a fact question, as to whether it's a form letter. So I would urge the Court not to convert this to a motion for summary judgment, to ask you to deny the motion at this time, and to allow either full discovery and to have a Rule 16 conference, and to pursue the case. We would love to try to get it settled, but if the government's unwilling to do that, then we ought to move forward with the case, because we don't want it to be in this limbo.

So initially we are urging the Court not to consider it as a motion for summary judgment, and to not do so until there's a full record, until we see, maybe there's memoranda in the government file of discussions that they had with Mr. Axelrod that Mr. Axelrod doesn't even remember any longer which might refresh his recollection. So, I think it would be unfair at this point to grant a motion, to convert it and grant it when there may well be fact questions here.

distinguished from mere proposal or proposition to proffer it." Hence, mere written proposal to pay money without offer of cash, is not "tender". And Williston on Contracts, defines in section 2.5, no, I'm sorry. Williston on Contracts defines tender as follows: "Stated in alternate terms, tender is an unconditional offer of payment consistent of an actual production of a sum, not less than the amount due on a particular obligation. Tender must be without conditions to which the creditor can have a valid objection or which would be prejudicial to his or her rights. Tender is the unconditional offer of a debtor to the creditor of the amount of it's debt."

THE COURT: Would you take the position that because the ability to prepay the loan must be demonstrated in order to get the incentives, that the initial application process cannot therefore be viewed as a tender?

MR. FIEBACH: Your Honor, yes. Mr. -- we get to the question of is there a fact issue in this case; there's a real fact issue because Mr. Axelrod has said when he wrote that letter, he never intended it as an offer to prepay. He understood at the time that the government wasn't going to, because of the statute, wasn't going to allow it, and he was doing,

he was going through a pro forma requirement that the government said you've got to do this in order to get the incentive loan.

THE COURT: Well, how is that different from somebody who made the same application, got approval to enter in an incentive program, filed suit and is in the happy settlement pot? Because there are those Plaintiffs that approached it that way. How is that, how are your Plaintiffs distinguished in that situation?

MR. FIEBACH: I don't think they are, Your Honor. You say --

THE COURT: What I'm talking about is --

MR. FIEBACH: I'm not sure I follow.

THE COURT: -- people who bought on to the notion of the incentive program,

MR. FIEBACH: Right,

THE COURT: Made the application,

MR. FIEBACH: Yes,

THE COURT: Proved their ability to prepay, were approved under the incentive program, but then sued for breach during the --

MR. FIEBACH: Within the six-year period.

THE COURT: -- within the six-year period.

MR. FIEBACH: Well, one of the Plaintiffs is

in fact is in that, Tamerlane is in fact in that position. That was what Tamerlane did. Tamerlane's suit was filed within six years and there's no statute of limitation defense asserted with respect to it's claim. This is, this motion is only with respect to two of the four.

THE COURT: Right. What I'm getting at is, what distinguishes them? I mean, why are two okay and two aren't ok?

MR. FIEBACH: I think they're all okay. And it may have an issue on damages, the number of years on damage that they're entitled to get. But I don't think there is any difference because the ones who accepted it were only going through a form of words that they had no intention at that time. And also, Your Honor, one of the issues on the tender is was there a right, a demonstration of an ability to prepay at that time. And you have nothing in front of you as to what was submitted to the government at that time. I mean, I can tell you, I believe that what the facts are here is that Mr. Axelrod submitted two letters for each, one for each of the properties from mortgage bankers. Not from banks but from mortgage lenders, mortgage brokers, who said, yeah, we think we can get you a loan.

to be thrashed out one more time before the Federal Circuit, but we do have an en banc decision fairly recent, 2003. And by failing to discuss that, and the Supreme Court authority decided within it, I don't think a case like Grass Valley would convince me to depart from the rule that the statute of limitations is jurisdictional.

All that means in this case, however, is the burden of proof is yours. And because the government filed an answer and we are in a motion for judgment on the pleading, it doesn't change the burden of proof, but it does change how we proceed. And the "penalty" that the government must bear for not moving to dismiss is that you are entitled, if you think it's worth your time, to develop the record.

And that's why I asked you for a proffer about Mr. Axelrod and what the actual situation was, because I would be inclined to allow more factual development of the case. My suggestion, though, to the parties, would be as follows. I think you're limited to damages six years before you filed. And I also think that if a defendant would win it would prevail on the unitary breach theory.

So I see some ground for the parties really to discuss, and that is the limited breach framework,

you know, throwing it in the settlement pool within this limited breach framework, with a view that although I think the government would prevail on this theory about unitary breach, I am not so sure the Federal Circuit would go along with it. I think the government itself created a situation where it extended the repudiation by imposing new restrictions, and gave the Plaintiff a second election, which we know from Franconia, the Plaintiff prematurely can elect to treat as a breach by filing suit.

So while I am at present unpersuaded by your argument on that point, I really don't think its worth the parties while to run the risk, the cost and time of discovery, further developing this case, assuming that, best case scenario for Plaintiff, you prevail and get six years; best case for Defendant, you don't; best case for Plaintiff but you do finally persuade me to give you the out years and worst case for Defendant, Defendant loses that ruling on appeal, which it well might.

Because you've got to remember the basic context of Franconia is the government is in a position where it did something wrong. And the slack is not going to lie with the government on this. That doesn't mean that the burden of proof on a

jurisdictional defense isn't strictly enforced, it just means that the scenic backdrop is pretty bad. And I wouldn't call this "duress", I haven't seen all the facts, but I think the alternative presented was of one for which the Plaintiffs certainly had Hobson's choice.

You have raised a legitimate issue on whether or not there was a tender. Because a tender is a condition of qualifying for the incentives program, an application to prepay does not mean a tender of prepayment. Because of that distinction that the government itself has drawn. And, this may be much ado about nothing, but it's a decision that you and your clients ultimately will have to make about how you want to spend your time if you really want this opportunity to prove and develop the record.

But in the meantime, I'm given 90 days from the date the last brief was filed, on January 3rd to issue an opinion. I'll do my work, we'll move ahead writing one, but I think that you ought to move ahead talking and trying to get a suitable damages framework that reflects the vulnerabilities of both sides. I would urge you to do that.

MR. FIEBACH: Your Honor, that was, if you may remember, our suggestion when we opposed the

monetary settlement that reflects the realities of the case and I would think, six years before the date you filed. And then take 60 percent or less of any figure the out years represent. And I think justice would be served, in terms of fees that are going to be incurred, government time that's going to be incurred, delay that occurred, and possibly some jurisprudence that is strange, because we have, percolating at the lower court level, Grass Valley, which is a strange decision, and the Federal Circuit hasn't made up it's mind yet about how it's going to view the statute of limitations problem.

And, taking the route I'm taking, when the Federal Circuit decides whether it really meant what it said in it's en banc decision, it may turn out that I erred letting this case continue at all, in which case Plaintiff is really in the hole. So I urge you to approach this circumspectly, or modestly, and try to work something out while we deliberate, and you've both given me a lot to think about. But I think that you're entitled to have me ask, with discovery could Mr. Axelrod do more and you would say, yes, because you haven't had discovery.

All inferences go to the opponent of summary judgment, since that's how we're treating this thing;

which isn't Plaintiff's fault, it's the government's. And even though Plaintiff has the burden, we have to have evidence of an actual tender, and I don't have it, yet. And Mr. Axelrod would therefore also have the opportunity to flesh out his declarations if he learned anything more, his memory was jogged more or whatever. So what I'd like to do is throw you a challenge, which is, beat me to the punch. Get in a position where you can call my law clerk, Ms. Kelly and say, stop working on the opinion, we'll settle this.

MR. FIEBACH: Your Honor, I don't think you've ever had a Plaintiff in your courtroom that wasn't interested in trying to settle a case, but as my mother used to say, it takes two to tango. So we're certainly willing.

THE COURT: Well, thank you. Mr. Brilliant, what are your views?

MR. BRILLIANT: Well, Your Honor, should I --

THE COURT: Yes, please, it's easier.

MR. BRILLIANT: I think one of the problems with the approach is that the damage calculations issue is actually a lot more difficult and complicated than the statute of limitations issue.

happened in 1992.

THE COURT: They wouldn't be saying that. If Plaintiffs prevail against your motion, Plaintiffs would get damages six years before the date of filing.

MR. BRILLIANT: Right, but in order to get damages for the past, they'd have to be able to say that, absent the breach, in other words, absent --

THE COURT: Absent the breach, they would have waited until they filed.

MR. BRILLIANT: Well, no, absent the breach, they would have been allowed to prepay six years before they filed suit. In other words, that's when it's being treated as a breach. That means the government is charged with an obligation to have allowed them to prepay six years before they filed suit.

THE COURT: Yes, but the only reason they didn't was the incentive program which was spurious to begin with, because it wasn't consistent with the original program per what Franconia says.

MR. BRILLIANT: Which means, in that event, it was a breach. In other words, it was either an action in violation of the contract, or it wasn't.

THE COURT: No, it was a punt on behalf of the government, trying to get out of a difficult

period also ends if you do something else that ends the waiting period, because it ends your right to now get out of the program through a tender. And that's what accepting the incentive did --

THE COURT: You know, you may be right? You're a very persuasive arguer, I will really mull this over. But right now, I think that's an example of playing "gotcha", and it's coming close to whipsawing. The government merely didn't say, we won't let you prepay. The government came up with an alternative.

MR. BRILLIANT: An optional one.

THE COURT: And the alternative was illegitimate, and didn't remedy any sort of breach. All it did was, if there was a basis for an offset, it had to be taken into account. And I just think that what this does is elevate the incentive program to a level of action that it wasn't intended to be at. If anything, metaphorically, you could say it was intended to block a tender. But, I will consider your argument.

MR. BRILLIANT: That's why I think it triggers the statute of limitations. Because that's precisely it. The purpose of the incentive was to keep the project in the program.

THE COURT: But you can't make repayment. You can't do the act that would trigger everything because the government stepped in and said, here's our block to the very act that would start the statute of limitations running, but it's enough of a block to start the statute of limitations running --

MR. BRILLIANT: Because they accepted it. I mean, they could have said, we don't want this incentive, we want to prepay. They could have even, I suppose, they could have tendered checks.

THE COURT: Yes, and they could have gone bankrupt, too. There are a lot of "could haves" that hopefully we won't have to get into. Because what we will be resolving here is not the merits, just jurisdiction. But I think, unless the parties can agree on accommodation that takes account of the relative strengths of the weaknesses of your case on jurisdiction, that it's entitled to go one more round, if Plaintiff wants to press it under the rules of pleading. Because we are in a summary judgment mode, even though the decision in this case would be, if you prevail, a dismissal, an entry of judgment dismissing the case for one of jurisdiction not present.

MR. BRILLIANT: The only other point I wanted to make is specifically referenced to the

question of discovery. It wasn't at all clear to me from Mr. Fiebach's comments what we would be looking for. In other words, the Plaintiff knows his side of the story. And it's not at all clear what facts, what conceivable facts that aren't already before the Court, the Plaintiff proposes to come up with, but they say if we prove those facts, that will show that the claim is not time-barred, and there is jurisdiction.

THE COURT: Well, I think they told us, Mr. Fiebach gave us a preview. Having had intimate and multiple acquaintances with the Windstar cases, I can say that a lot of times Plaintiffs don't have the full record of their own activities as the government might have, which is another reason a case like this should settle. I mean, time does it no good service. But, I don't see anything specious in what he's asking for, or unnecessarily hypothetical.

And I think applying the rule that the inferences have to be drawn against the opponent that allow in the record to be developed. And I would give you, if I just go that way, a very limited period, and it would be very focused; there should be some development. I don't think this is a satisfactory resolution.

under some theory of motion for judgment on the pleadings relating to subject matter jurisdiction, In which case Defendant might win outright right now. I don't know. I need to mull things over based on your arguments.

But I think that I see Plaintiff with the possibility of scraping in the six years before you filed, depending on how we treat tender, and I'm going to treat it as Franconia did, not any other case. And Plaintiff clearly will bear the burden of jurisdiction, and this will go to subject matter jurisdiction, which doesn't mean anything in the light of day. It would mean an awful lot if this were a motion to dismiss, because it would mean Plaintiff had the burden and had to discharge it right now, and Mr. Axelrod wouldn't get the second bite.

And Plaintiff would have failed for not having filed a motion to convert a motion for discovery under Rule 56(f) and 8, of responding to motion for summary judgment. So I'm not going to hang Plaintiff on a procedural petard, I just don't think it's fair. Let's get to the bottom of this, either with a settlement or an opinion that takes into account of what a tender is, and the circumstances of the 515 incentive program. But thank you both very

judgment on the pleadings, since the Government admittedly cannot point to a trigger of claim accrual contained within the pleadings.[6]

**B. Notwithstanding The Government's Attempt To Cure Its Defective Motion By Attaching Documents Outside The Pleadings, The Motion Should Be Denied Since The Attached Documents Show Only A Pro Forma Request To Prepay Pursuant To The Process For Obtaining "Incentives.**

Recognizing the insufficiency of the pleadings to support its motion, the Government then attaches to its motion for judgment on the pleadings eight pages of correspondence relating to the taking of "incentives" on which it bases a claim that the claims were triggered. See Brief at 6-7; Gov. App. This does not cure the deficiency in the Government's Rule 12(c) motion. As to Mullica, the Government omits critical correspondence which shows that the Government never rejected the prepayment offer on which the Government rests its position. As to both partnerships, the putative "prepayment" requests, on which the Government relies, were pro forma in nature, made in the context of the process of obtaining "incentives" orchestrated by the Government, and in no way should be regarded as a genuine election to convert repudiation into breach, which is required to trigger accrual.

Each issue is discussed below.

**(1) Mullica Did Not Experience an Unequivocal Denial of the Putative October 11, 1988 "Prepayment" Request.**

With respect to Mullica, the Government omits from its addendum the Government's March 30, 1989 letter in response to Mullica's October 11, 1988 letter. (Gov.

---

6 The remainder of the Government's motion is based on an attempt to use what may be termed conclusory or advocatorial allegations in the Complaint against the plaintiffs. Brief at 5-7. In measuring the adequacy of a Rule 12(c) motion, conclusory allegations and statements regarding law are not counted in the Rule 12(c) review of the pleadings. As Wright and Miller state, in ruling on a motion for judgment on the pleadings, conclusions of law or matters not admissible in evidence at trial are not considered. See § 1368, at 243-244. In any event, to the extent that the Complaint is deemed to be inconsistent with the law as reviewed in this memorandum of law, plaintiffs are prepared to amend the Complaint and (if need be) leave is requested and should appropriately be granted to replead any such allegations.