**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TAMERLANE, LIMITED, et al., | : | |
| Plaintiffs, | : | No. 05-677C (Judge Christine O.C. Miller) |
| v. | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |

**PLAINTIFFS' REQUEST TO REQUIRE PRODUCTION OF SETTLEMENT AGREEMENT IN CONNECTION WITH PENDING OCTOBER 23, 2007 CASE MANAGEMENT CONFERENCE**

The Court has scheduled a case management conference for October 23, 2007 at 3:00 p.m. with respect to the claims of plaintiffs, Tamerlane Limited ("Tamerlane") and Park Terrace East Limited ("Park Terrace East") (collectively "Plaintiffs"). Plaintiffs submit this request for production of the Franconia settlement agreement in preparation for, and in connection with, the pending conference.

Previously, upon inquiry by the Court as to the status of the Franconia litigation, the Government reported that a settlement had been reached in the Franconia case with respect to the calculation of compensation to be paid to the individual plaintiffs, but that the Justice Department was conducting an internal review process prior to approval. Plaintiffs believe that since then, formal approval has taken place and the settlement is in the process of implementation.

Plaintiffs further believe that the settlement, which encompasses hundreds of projects, establishes a formula for the computation of damages as to any given property. The computation establishes damages through a projection of the value of the lost income to the project owner by reason of being deprived of the benefit of operating the project as a private

market apartment building, rather than a government-regulated, low income residential facility. The key variable in the computation is the determination of rent levels in the relevant market. Plaintiffs understand that Cushman & Wakefield has been engaged as a joint consultant for claimants and the Government to conduct rent comparability surveys for each project covered by the settlement, and that at this time Cushman & Wakefield is performing that work.

Plaintiffs respectfully request that the Government provide to the Court and to Plaintiffs, prior to the October 23, 2007 conference, a copy of the Franconia settlement agreement because it will be of assistance to the Court and the parties at the conference. First, having the settlement agreement will make the pending conference more productive by allowing Plaintiffs to evaluate whether, in lieu of a full blown trial concentrating on damages, Plaintiffs might be willing to accept the Franconia settlement paradigm.[1] At the same time, availability of the settlement document could provide a framework to narrow the damages issues for trial.

At the July 18, 2007 conference, the Court addressed the contours of the trial, expressing the Court's view that the matter effectively has been resolved on liability. See N.T. 7/18/07, at 22-4 (Exhibit "A" attached). Plaintiffs believe that any attempt by the Government to resist liability as to Plaintiffs is meritless. Should the Government accept the idea that the Franconia settlement should be made applicable to Plaintiffs, Plaintiffs believe they can readily evaluate the applicability of the Franconia settlement paradigm, which might lead to resolution of their claims.

If Plaintiffs accept the paradigm (or if any appropriate adjustments can be agreed upon), it should be a simple task to quantify damages, at least as to Tamerlane, because there

---

[1] An issue exists because plaintiffs believe that the preponderance of properties affected by the Franconia settlement are small properties in very rural areas, unlike plaintiffs which own large properties in suburban metropolitan areas. As a result, various of the parameters in the Franconia settlement paradigm (for example, capitalization rates) may be inapplicable to plaintiffs' properties.

already exists a substantial body of market rental analyses. Tamerlane was appraised several times in the 2001 time frame in connection with the 2002 equity loan. These appraisals were commissioned by Tamerlane and submitted to the Government and approved by Andrew Law, presently State Director of Rural Development for New Jersey, or commissioned by the Government itself and accepted by it. The appraisals perform rent comparability studies reaching conclusions which, for all intents and purposes, were the same.

In addition, one of the properties settled in Franconia is Tamerlane 3. This is a sister project to Tamerlane, built on the same site and in the same market area to similar specifications. The Tamerlane 3 resolution may well pave the way for resolving Tamerlane.[2]

Finally, plaintiffs are having an expert conduct appraisals of the properties. The expert will testify at trial. Those appraisals, when completed, will be made available to the Government on a timely basis, in accordance with the schedule to be established by the Court.

In their document requests to the Government, Plaintiffs requested a copy of the settlement agreement. The Government has objected to providing a copy, on the grounds that it was "irrelevant" and on the further basis that the Franconia claims were resolved by judgment, not settlement. See Exhibit "B" attached, ¶4. The objections are transparently meritless. Should the Court deem it necessary, Plaintiffs respectfully request that this memorandum be treated as a formal request to compel production.

Plaintiffs therefore respectfully request that the Court direct the Government to provide the settlement agreement to the Court and counsel by Friday, October 19, 2007.

---

[2] While Tamerlane was inspected in 2002 and certain deficiencies were noted, those repairs have all been made using funds in the reserve fund. The reserve fund represents the money of the owners, set aside for repairs and replacements. The Government is fully aware that the repairs were made, having inspected the property and approved the disbursement of the money in the reserve fund to pay for the repairs. As a result, Tamerlane is in no different position than Tamerlane 3.

Respectfully submitted,

COZEN O'CONNOR

**s/ H. Robert Fiebach**

H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Plaintiffs Tamerlane Limited and Park Terrace East Limited

**Filed Electronically**

Dated: October 5, 2007

**EXHIBIT "A"**

addressed by summary judgment? That's how you see it? You don't see it wrapped into our trial?

MR. DORET: Well, I see it that the government is bound by prior rulings with respect to the breach issues and that therefore --

THE COURT: Well, the government *is* bound by these rulings. I have no problem with saying Franconia binds them. What the government would have to do through its fact discovery is cut out some issue that was not covered by Franconia, and until it does that, I really do not want to invite more briefing.

You don't need to brief the issue of the fact that Franconia controls. It will be the government's burden to make a showing. And I expect to learn about it on October 4 or at the conclusion of fact discovery, what that issue might be. I really don't want any more dispositive motions in this case.

MR. DORET: Thank you, Your Honor. That's a very helpful clarification.

MR. BRILLIANT: Your Honor, if I might get a clarification to the clarification? In talking about Franconia controls, which Franconia? Are we talking about the Supreme Court decision or Judge Allegra's decision? The Supreme Court decision dealt with statute of limitations, and we all agreed that that

controls. Judge Allegra's decision is maybe a persuasive decision, but as a matter of law, it can't possibly control. A Court of Federal Claims' decision doesn't control other Court of Federal Claims' decisions.

THE COURT: No, I agree with that, but I view the matter has having been resolved on liability. Let's put it this way. Most of the parties regard Franconia as the Supreme Court has largely taken the government's substantial defense out of play and that anything else really doesn't matter. I think that Judge Allegra's decision would have persuasive authority. I think it's very well-reasoned.

You would be free to show as I said some reason why your case is different or why you think his decision was incorrectly decided, but I understood that the government's arsenal was pretty bereft of support after the Supreme Court. That's how I read it. But that just may be a reading that wasn't particularly pro-government because the decision wasn't.

But my having lived with Judge Allegra's decision on Franconia for some time and seeing how it's been reacted to by other Judges of the Court, it seems to be well-considered. We'll see what you have

to say, but I'd rather avoid a motions practice. My inclination is to set this case for trial and include any liability issues in with damages issues and write an opinion comprehensive of both in which you're free to argue why Judge Allegra was wrong despite the fact you just settled over 100 cases.

MR. BRILLIANT: Well, of course, Your Honor, when we settled, it's the compromised --

THE COURT: I know. Believe me I know, but I find it amusing that if we have values as you say coming out in a wash of those many cases you just settled, they dwarf what's involved here number one, and number two, holding out Custer's last stand for two cases when liability with respect to such a great number has already been compromised is peculiar, but it's certainly within your prerogative to do it. You've done peculiar things before.

MR. BRILLIANT: Again, it's not that we're unwilling to compromise. What we're not willing to do is to agree that liability is established. I mean, the Court obviously can decide it is, and the Court decides, but that's not our view.

THE COURT: You can reargue anything you want.

MR. BRILLIANT: I had one other just

**EXHIBIT "B"**

**DOCUMENT REQUESTS**

1. All transaction files and other documents (including internal memoranda and notes of field office personnel) concerning the origin, negotiation and consummation of the "equity loan" transaction with Tamerlane.

2. To the extent not previously requested, all documents relating to or evidencing all oral discussions (whether by telephone, face-to-face meetings or otherwise) between representatives of the Farmers' Home Administration (or its successor) and representatives of Tamerlane relating to the equity loan transaction.

3. As to each of Tamerlane and Park Terrace East, the file of the agency with respect to the respective properties, including but not limited to all appraisals, all property condition reports and all documents evidencing site inspections or site visits.

4. All agreements of settlement with respect to claims asserted for failure of Farmers' Home Administration or its successors to permit prepayment of mortgages on account of low income rural housing projects developed under Section 515 of the Housing Act of 1949, including but not limited to all settlement agreements with respect to the claims of the plaintiffs in Franconia Assoc. v. United States, 61 Fed. Cl. 718 (2004).

5. All reports of experts whose testimony is expected to be presented at trial.

6. All documents concerning plaintiff provided to any expert with respect to the calculation of damages.

7. All documents on which your expert relies, or on which your expert disputes the facts or conclusions contained in our expert report.

8. Transcripts of all cases in which the identified experts gave testimony.

9. All documents identified in response to the interrogatories of plaintiffs.

created by or at the request of Government attorneys for use in the defense of this litigation, or were prepared for the purpose of seeking or providing legal advice in confidence, and are therefore protected by the attorney work-product privilege and/or the attorney client privilege.

3. Copies of non-privileged documents that were contained in the referenced files as of April 2006 will be provided under separate cover. Several documents contained in the referenced files were created by or at the request of Government attorneys for use in the defense of this litigation, or were prepared for the purpose of seeking or providing legal advice in confidence, and are therefore protected by the attorney work-product privilege and/or the attorney client privilege. These documents are identified in a privilege log to be provided under separate cover. To the extent that this request seeks documents added to the referenced files after April 2006, defendant objects to the request upon the ground that these files are active and, in the absence of any end-date, the request is unduly burdensome.

4. Defendant objects to this request upon the ground that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further states that there are no settlement agreements with respect to the claims of the plaintiffs in Franconia Assoc. v. United States, 61 Fed. C1. 718 (2004). Those claims were resolved by judgment after trial, not by settlement.

5. Defendant has not yet retained an expert to testify at trial in this case. Should defendant retain an expert or experts for this purpose, defendant will produce reports of any such experts in accordance with RCFC 26(a)(2)(B), during the expert discovery phase of this litigation.

6. Defendant objects to this request to the extent that it seeks documents provided to experts who have not been retained to testify at trial in this case, upon the ground that the

**CERTIFICATE OF SERVICE**

I, David M. Doret, hereby certify that a true and correct copy of the foregoing Plaintiffs' Request to Require Production of Settlement Agreement in Connection with Pending October 23, 2007 Case Management Conference was served upon counsel for Defendant, United States of America, by sending the same via electronic mail to the following named person on the 5th day of October, 2007:

SHALOM BRILLIANT, ESQUIRE
Senior Trial Counsel
Commercial Litigation Branch Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
Room 8012
Washington, D.C. 20530

Attorney for Defendant

**s/ David M. Doret**
David M. Doret