# APPENDIX

United States Department of Agriculture
Farmers Home Administration
Washington D.C. 20250

MAR 0 8 1991

RECEIVED
MAR 18 1991
STATE OFFICE
NEW JERSEY

SUBJECT: Mullica West, Ltd.
Equity Loan Request

TO: Takashi Moriuchi
State Director, FmHA
Mt. Holly, New Jersey

We have completed our review of the above captioned application for an equity loan to avert prepayment. Based on our review of the documentation submitted, you are authorized to continue processing the application, subject to the appropriate sections of FmHA Instruction 1944-E, Section 1944.237.

National Office authorization is required prior to obligation of the incentive. However, before determining your final incentive offer, please review our comments pertaining to incentive offers in Attachment A. If you have any questions pertaining to Attachment A, please call Arlene Halfon at 447-3187.

We conducted a review of the appraisal submitted with this application. Based on our review, we find that the appraisal is well documented and justifies the final estimate of market value. We have attached some review comments which we believe would make the appraisal even stronger. Our comments are not intended to criticize; but, rather to be used as a tool to strengthen a good product. Please review Attachment B with this intent in mind. If you have any questions pertaining to Attachment B, please contact Steven D. Jorgensen at 382-1620.

RONNIE O. THARRINGTON
Assistant Administrator
Housing

Attachments

FmHA Farmers Home Administration is an Equal Opportunity Lender.
Complaints of discrimination should be sent to:
Secretary of Agriculture, Washington, D.C. 20250

ATTACHMENT A

1. There is documentation of the ability to prepay in the file. This documentation appears to be an analysis done after the appraisal was made. Comparable rents provided by the borrower with the prepayment request, which would have formed the basis for an initial evaluation, were lower than those shown on the appraisal, and included other amenities (such as a pool). Based on those rents, it is unlikely the project could have supported a loan much greater than $1 million above the unpaid balance at the conventional rates and terms you use. The letter from the bank, purportedly providing the initial documentation, only stated that a loan for a minimum of the outstanding balance would be made "if the property can be operated as market rate apartments." The letter serves no purpose; the analysis required by the letter would have served as documentation if the letter had not been submitted. (The financial statement submitted by the borrower does not show liquid assets sufficient to repay the loan.)

2. Your equity loan offer to the borrower of 90 percent of the appraised value of the project as conventional housing minus the unpaid balance is acceptable once the ability to prepay was documented. However, since incentives should be determined based on factors specific to the project and market, in accordance with Paragraph IV C of Exhibit E of FmHA Instruction 1965-B, you may wish to consider other methods for arriving at the final offer. One method is published as Exhibit D in the proposed rule dealing with prepayment published in the Federal Register on July 20, 1990. The other method would involve calculating the amount of mortgage a project can support, given conventional market rents, and the projected budgets at rates and terms for conventional housing in the community. Using the rates and terms on the projected budget you developed with economic rents determined in the appraisal, either of the above methods would yield an equity loan of about $2.6m - $2.7m. You apparently feel that these rates and terms are more legitimate than the terms quoted by the bank, as stated in the January 31, 1991 running case record. Using the range of quoted rates and terms, either of the methods would yield equity loans of approximately $3.0m to $3.3m.

Attachment B

Based on our review we believe that the quality of this appraisal is very good. Our comments are structured to follow the PART format of the appraisal form.

PART I, Page 5 of 10:

1. We would recommend that an exhibit be included with the appraisal that documents the "Total Estimated Reproduction Cost New of Improvements." This documentation can be in the form of the appraiser's cost estimate, attaching the Marshall & Swift printout used by the appraiser, or both.

2. The line entitled "Less Total Obsolescence" should be documented with an exhibit that explains what type of obsolescence is being addressed (functional, locational, etc.) and show the calculations of how the obsolescence adjustment was determined.

PART L, Page 7 of 10:

1. In the section entitled "Terms (including conditions of sale and financing terms)," we recommend that the State Review Appraiser see that a statement is provided whether these types of sales activities are typical for the market area. (Keep in mind that for prepayment requests the intended use is as conventional rental housing.) It is our assumption that the comparable sales data are considered typical in type, size, and financing for this market. Also, New Jersey is a unique market and documentation demonstrating this would only enhance the appraisal.

2. The appraisal demonstrates a "market" capitalization rate range of 9 percent to 13 percent with the rate selected being supported by this range. This is an acceptable practice; however, we recommend that the appraiser document how and why the interpolation of 11 percent was made. Again, this appears to be logical and supportable; therefore, documentation would strengthen the appraisal.

PART M, Page 9 of 10:

The budget line items contain the statement "appears to be normal." This gives a reader the impression that the appraiser is not sure what is typical for the market. It would be helpful if documentation were provided about how the budget items were determined the past three to five years; actual expenses, management data from the market, data obtained through industry data, etc.

PART N, Page 9 of 10:

The appraiser used a discount rate (Weighted Average) in the income approach. In this case, it was equal to the capitalization rate from PART L, which is logical and supportable, and an acceptable practice. However, when a discount rate is used, we recommend that the appraiser explain why. We find that discount rates are investment specific while capitalization rates are market specific. Because of a capitalization rate's relationship to the market, we prefer that capitalization rates be used in the income approach. Whichever rate is used, it must be supported by other recognized methods of obtaining a capitalization rate; such as, similar risk rate, market rate, Mortgage Equity Band of Investment, and etc.

United States Department of Agriculture

Farmers Home Administration

Washington D.C. 20250

DECEIVED APR 19 1991 APR 19 1991 STATE OFFICE

SUBJECT: Authorization to Obligate Incentives to Avert Prepayment of RRH Loans

TO: Takashi Moriuchi
State Director, FmHA
Mt. Holly, New Jersey

You are hereby authorized to obligate the following incentives, which have been accepted by Mullica West Apartments, so as to withdraw a request to prepay an RRH loan:

1. An equity loan in the amount of $3,460,000 which, together with the present unpaid balance on the loan of $2,192,218.39, represents 87 percent of the appraised value of the project of $6,500,000.

2. Sixty-nine (69) additional units of family RA, bringing the total to 108.

All incentives should be processed in accordance with Paragraph IV E 2 of Exhibit E to FmHA Instruction 1965-B. Incentives should be obligated within 30 days of receipt of this letter, or a request for an extension with justification for the delay sent to the National Office. The restrictive-use provisions contained in Exhibit E-3 to FmHA Instruction 1965-B must be inserted in the deed and loan agreement at closing.

The funds and RA required to obligate the incentive are being added to your State's allocation for this fiscal year. The loan funds and RA may not be utilized for any purpose other than for the incentive. If any or all of these funds or RA will not be obligated, please notify the MHSPM Division immediately so the excess may be removed from your allocation. Call Cynthia Reese-Foxworth in the MHP Division at FTS or (202) 382-1622 when the funds have been obligated, to provide her with the date of obligation and the name of the transferee (if any).

Be certain to complete an M5E AMAS transaction after the M5A transaction, but before the M1A or the MRA. Equity loans should be obligated as Assistance Code 014. The Prepayment Incentive Code (PPI) is IE if no transfer is to take place simultaneously with the loan closing, or TE if there will be a transfer. The RA should be obligated using Alpha Code F.

RONNIE O. THARRINGTON
Assistant Administrator
Housing

FmHA Farmers Home Administration is an Equal Opportunity Lender. Complaints of discrimination should be sent to: Secretary of Agriculture, Washington, D.C. 20250

FmHA AN No. 1854 (1965)

United States Department of Agriculture | Farmers Home Administration | Washington D.C. 20250

January 11, 1989

SUBJECT: Handling of Obligations for Incentives and Transfers to Non-Profit Corporations Under the Prepayment Process

TO: State Directors, District Directors, and Multifamily Coordinators, FmHA

PURPOSE/INTENDED OUTCOME: FmHA Instruction 1965-B, Exhibit E contains the regulations for handling prepayment requests for projects not subject to restrictive-use provisions. This Administrative Notice (AN) clarifies the processing aspects of the procedure and provides additional guidance in two areas:

1. Reduced loan application packages and methods for processing these loans;

2. Methods for ordering advances for loans to non-profit organizations and for obligating rental assistance (RA) in accordance with this procedure.

The shorter loan application package will be incorporated into the prepayment procedure and Automated Multi-Housing Accounting System (AMAS) software is being developed to automate the handling of the obligations.

COMPARISON WITH PREVIOUS AN'S: There has been no previous AN on this subject.

IMPLEMENTATION RESPONSIBILITIES:

Processing Incentives to Avoid Prepayment: After the borrower indicates its intention to accept an equity loan in lieu of prepayment, a loan application must be submitted. This appli-ation need not contain all information generally required for a loan, but only the information listed in Exhibit A to this AN. The District Director will determine the feasibility of the

EXPIRATION DATE: December 31, 1989

FILING INSTRUCTIONS: Preceding FmHA Instruction 1965-B

FmHA Farmers Home Administration is an Equal Opportunity Lender. Complaints of discrimination should be sent to: Secretary of Agriculture, Washington, D.C. 20250

loan, including any consolidation and rescheduling in terms of the effects of rents on current tenants and future operations. No equity loan will be made without sufficient RA to protect current tenants against new or increased rent overburden (rent in excess of 30 percent of tenant's adjusted income). NO INCENTIVE SHOULD BE OBLIGATED THAT WILL LEAD TO TENANT DISPLACEMENT. The District Office will appraise the project and determine the amount of the proposed loan. The borrower may reject the offer at this point if not satisfied with the loan amount.

After project feasibility is determined and the borrower indicates acceptance of the proposed loan amount, the District Office submits Form FmHA 1965-B-1 to the National Office to request authorization to process the loan.

Processing Transfers to Non-Profit Corporations or Public Agencies:

After the transferor (borrower) has found a non-profit corporation or public agency to purchase the project, and an option is signed between the current borrower and the proposed purchaser organization, the organization must file a transfer and loan application. In lieu of a complete loan application, only the items listed in Exhibit B of this AN need to be submitted. FmHA will make a final determination of eligibility of the borrower and feasibility of the proposed transfer and subsequent loan. EVERY TENANT WHO WILL EXPERIENCE RENT OVERBURDEN MUST BE PROVIDED WITH RA OR DEBT FORGIVENESS RA IF A TRANSFER AND LOAN TO A NON-PROFIT WILL BE PROCESSED. This decision will consider any consolidation and rescheduling of the loans that will take place.

If the total unpaid debt on the project (unpaid principal and interest) will exceed the State Director's approval authority, the complete case file should be sent to the National Office for review. When the transfer and loan(s) are ready to be processed, the National Office should be notified on Form FmHA 1965-B-1.

Until notification that the AMAS software for this function is completed, both the request for the obligation for the "advance" and the check will be requested by notifying Arlene Halfon in the Multiple Family Housing Servicing and Property Management Division at FTS or (202) 447-3187. The amount of "advance" may not exceed $10,000, the exact amount to be determined based on the State Director's approval of the written justification of the amount required. The "advance" will initially be secured by a Promissory Note only. It will bear no interest and show only one annual installment due for the entire amount, one year from the closing. Only one "advance" may be made for the direct costs.

At transfer and loan closing, any unspent, unauthorized or unjustified expenses against the "advance" will be repaid. There must also be sufficient funds in the operations and maintenance (O&M) account for first year operations. Normally, this will be transferred with the project in the O&M account. However, with proper justification, this may come from loan funds (up to 2 percent of appraised value). All loans on the project will be consolidated and rescheduled at closing.

For All Equity Loans (Both Types of Above Transactions):

1. At loan closing, before the borrower/transferor may retain any equity, present project status must be paid current, the reserve account less any authorized withdrawals and other accounts must be on schedule, and any liens must be paid.

2. Exhibit C contains the codes and other information necessary for obligating RA and debt forgiveness.

NEAL SOX JOHNSON
Acting Administrator

Attachments

EXHIBIT A

Application for Incentive Equity Loan

The following items will be developed in accordance with FmHA Instruction 1944-E unless otherwise specified:

1. Form AD-625 with a narrative discussion of the borrower's equity loan request,

2. Current Financial Statement,

3. Proposed budget showing anticipated rents to cover revised financing package, including updated figures on required reserve contributions and return on investment (if any),

4. Data on current tenants' income, rents and RA, and incomes of those on the waiting list to show that new rents will not displace or prevent occupancy by eligible tenants unless sufficient RA is available.

If a transfer is to take place at the time the equity loan is closed, a complete transfer docket will also be required.

EXHIBIT B

Application for Transfer and Equity Loan to Non-Profit Corporation or Public Agency

All requirements for a transfer in accordance with Section 1965.65 (f) of FmHA Instruction 1965-B must be met. In addition, the following information is required. It is to be developed in accordance with FmHA Instruction 1944-E unless otherwise specified:

1. Identity of Interest statement between transferor and transferee,

2. Statement of experience of organization and all principals,

3. Management Plan and Agreement in accordance with Exhibit B of FmHA Instruction 1930-C,

4. Proposed Application for Occupancy, Lease, and Occupancy Rules and Regulations in accordance with Exhibit B of FmHA Instruction 1930-C,

5. Option,

6. Proposed budget showing anticipated rents with updated figures on required reserve contributions,

7. Data on current tenants' incomes, rents and RA, and incomes of those on the waiting list to show amount of RA which will be needed for current tenants and other eligible occupants.

8. If rehabilitation is included in the loan, plans and specifications and method of construction must be outlined,

9. A breakdown of packaging and administration costs to be paid with any "advance" to non-profit organizations purchasing a project to avert prepayment,

10. Any first year operations and maintenance expenses requested,

11. District Office comments and recommendations and the State Office evaluation.

EXHIBIT C

OBLIGATION OF RENTAL ASSISTANCE AND DEBT FORGIVENESS

The FMI for Form FmHA 1944-51, "Multifamily Housing Obligation-Fund Analysis," is presently being updated to show obligations of RRH incentive and debt forgiveness RA. The appropriate alpha code will be entered on the MRA "Obligation" Screen:

| RA Type | Alpha Code | O&E Code |
|---|---|---|
| RRH Incentive | F | 0061 |
| LH Incentive | U | 0082 |
| RRH Debt Forgiveness | G | 0071 |
| LH Debt Forgiveness | V | 0092 |

EXHIBIT A

## Application for Incentive Equity Loan

The following items will be developed in accordance with FmHA Instruction 1944-E unless otherwise specified:

1. Form AD-625 with a narrative discussion of the borrower's equity loan request,

2. Current Financial Statement,

3. Proposed budget showing anticipated rents to cover revised financing package, including updated figures on required reserve contributions and return on investment (if any),

4. Data on current tenants' income, rents and RA, and incomes of those on the waiting list to show that new rents will not displace or prevent occupancy by eligible tenants unless sufficient RA is available.

If a transfer is to take place at the time the equity loan is closed, a complete transfer docket will also be required.

AN # 2030/1965)
12/28/89
Ex A.

RECEIVED F COPY

[illegible]HA AN No. 2030 (1965)

United States Department of Agriculture | Farmers Home Administration | Washington D.C. 20250

December 28, 1989

RECEIVED
JAN 25 1990
STATE OFFICE
NEW JERSEY

SUBJECT: Handling of Obligations for Incentives and Transfers to Non-Profit Corporations Under the Prepayment Process

TO: State Directors and District Directors, FmHA

ATTENTION: Multifamily Coordinators

PURPOSE/INTENDED OUTCOME: FmHA Instruction 1965-B, Exhibit E contains the regulations for handling prepayment requests for projects not subject to restrictive-use provisions. This Administrative Notice (AN) clarifies the processing aspects of the procedure and provides additional guidance in two areas:

1. Reduced loan application packages and methods for processing these loans;

2. Methods for ordering advances for loans to non-profit organizations and for obligating rental assistance (RA) in accordance with this procedure.

The shorter loan application package will be incorporated into the prepayment procedure and Automated Multi-Housing Accounting System (AMAS) software is being developed to automate the handling of the obligations.

COMPARISON WITH PREVIOUS AN'S: This AN replaces and makes several corrections to FmHA AN No. 1854(1965) dated January 11, 1989, which expires on December 31, 1989.

IMPLEMENTATION RESPONSIBILITIES:

Processing Incentives to Avoid Prepayment: After the borrower indicates the intention to accept an equity loan in lieu of prepayment, a loan application must be submitted. This application need not contain all information generally required for a loan, but only the information listed in Exhibit A to this AN. The District Director will determine the feasibility of the

EXPIRATION DATE: December 31, 1990

FILING INSTRUCTIONS:
Preceding FmHA
Instruction 1965-B

FmHA Farmers Home Administration is an Equal Opportunity Lender.
Complaints of discrimination should [illegible] to:
Secretary of Agriculture, Washington [illegible]0250

loan, including any reamortizations, in terms of the effects of rents on current tenants and future operations. No equity loan will be made without sufficient RA to protect current tenants against new or increased rent overburden (rent in excess of 30 percent of tenant's adjusted income). NO INCENTIVE SHOULD BE OBLIGATED THAT WILL LEAD TO TENANT DISPLACEMENT. The designated-or-contract appraiser will appraise the project. The exact amount of the proposed loan will then be determined. The borrower may reject the offer at this point if not satisfied with the loan amount.

After project feasibility is determined and the borrower indicates acceptance of the proposed loan amount, the District Office submits Form Letter 1965-B-1 to the National Office through the State Office to request authorization to process the loan.

Processing Transfers to Non-Profit Corporations or Public Agencies:

After the transferor (borrower) has found a non-profit corporation or public agency to purchase the project, (see Paragraphs VI A and B of Exhibit E of FmHA Instruction 1965-B) and an option is signed between the current borrower and the proposed purchaser organization, the organization must file a transfer and loan application. In lieu of a complete loan application, only the items listed in Exhibit B of this AN need to be submitted. FmHA will make a final determination of eligibility of the borrower and feasibility of the proposed transfer and subsequent loan. EVERY TENANT WHO WILL EXPERIENCE RENT OVER-BURDEN MUST BE PROVIDED WITH RA OR DEBT FORGIVENESS RA IF A TRANSFER AND LOAN TO A NON-PROFIT WILL BE PROCESSED. This decision will consider any reamortizations of the loans that will take place.

If the total unpaid debt on the project (unpaid principal and interest) will exceed the State Director's approval authority, the complete case file should be sent to the National Office for review. When the transfer and loan(s) are ready to be processed, the National Office should be notified on Form Letter 1965-B-1.

Until notification that the AMAS software for this function is completed, both the request for the obligation for the "advance" and the check will be requested by notifying Arlene Halfon in the Multiple Family Housing Servicing and Property Management Division at FTS or (202) 447-3187. The amount of "advance" may not exceed $10,000, the exact amount to be determined based on the State Director's approval of the written justification of the amount required. The "advance" will initially be secured by a Promissory Note only. It will bear no interest and show only one annual installment due for the entire amount, one year from the first day of the month of loan closing. Only one "advance" may be made for the direct costs for any transfer.

At transfer and loan closing, any unspent, unauthorized or unjustified expenses against the "advance" will be repaid. There must also be sufficient funds in the operations and maintenance (O&M) account for first year operations. Normally, this will be transferred with the project. However, with proper justification, this may come from loan funds (up to 2 percent of appraised value).

For All Equity Loans (Both Types of Above Transactions):

1. At loan closing, before the borrower/transferor may retain any equity, present project status must be paid current, the reserve account less any authorized withdrawals and other accounts must be on schedule, and any liens must be paid.

2. Exhibit C contains the codes and other information necessary for obligating RA and debt forgiveness.

Michael C. Williams

for NEAL SOX JOHNSON
Acting Administrator

Attachments

EXHIBIT A

## Application for Incentive Equity Loan

The following items will be developed in accordance with FmHA Instruction 1944-E unless otherwise specified:

1. Form AD-625 with a narrative discussion of the borrower's equity loan request,

2. Current Financial Statement,

3. Proposed budget showing anticipated rents to cover revised financing package, including updated figures on required reserve contributions and return on investment (if any),

4. Data on current tenants' income, rents and RA, and incomes of those on the waiting list to show that new rents will not displace or prevent occupancy by eligible tenants unless sufficient RA is available.

If a transfer is to take place at the time the equity loan is closed, a complete transfer docket will also be required.

EXHIBIT B

Application for Transfer and Equity Loan to
Non-Profit Corporation or Public Agency

All requirements for a transfer in accordance with Section 1965.65 (f) of FmHA Instruction 1965-B must be met. In addition, the following information is required. It is to be developed in accordance with FmHA Instruction 1944-E unless otherwise specified:

1. Identity of Interest statement between transferor and transferee,

2. Statement of experience of organization and all principals,

3. Management Plan and Agreement in accordance with Exhibit B of FmHA Instruction 1930-C,

4. Proposed Application for Occupancy, Lease, and Occupancy Rules and Regulations in accordance with Exhibit B of FmHA Instruction 1930-C,

5. Option,

6. Proposed budget showing anticipated rents with updated figures on required reserve contributions,

7. Data on current tenants' incomes, rents and RA, and incomes of those on the waiting list to show amount of RA which will be needed for current tenants and other eligible occupants.

8. If rehabilitation is included in the loan, plans and specifications and method of construction must be outlined,

9. A breakdown of packaging and administration costs to be paid with any "advance" to non-profit organizations purchasing a project to avert prepayment,

10. Any first year operations and maintenance expenses requested,

11. District Office comments and recommendations and the State Office evaluation.

EXHIBIT C

## OBLIGATION OF RENTAL ASSISTANCE AND DEBT FORGIVENESS

The FMI for Form FmHA 1944-51, "Multifamily Housing Obligation-Fund Analysis," is presently being updated to show obligations of RRH incentive and debt forgiveness RA. The appropriate alpha code will be entered on the MRA "Obligation" Screen:

| RA Type | Alpha Code | O&E Code |
|---|---|---|
| RRH Incentive | F | 0061 |
| LH Incentive | U | 0082 |
| RRH Debt Forgiveness | G | 0071 |
| LH Debt Forgiveness | V | 0092 |

MAR 11 1991

United States Department of Agriculture

Farmers Home Administration

Washington D.C. 20250

February 25, 1991

FmHA AN No. 2234 (1965)

SUBJECT: Guidelines for Accepting Prepayment in Order to Ensure Tenant Protections

TO: State Directors and District Directors

ATTENTION: Rural Housing Chiefs

PURPOSE/INTENDED OUTCOME:

The purpose of this Administrative Notice (AN) is to clarify procedures to be followed and evaluations to be made prior to accepting prepayment of Multiple Family Housing loans. This is necessary because, in some cases, prepayments are being accepted which do not comply with the Congressional mandate that first priority be given to protection of tenants and potential tenants of the project.

COMPARISON WITH PREVIOUS AN:

There is no previous AN issued on this subject.

IMPLEMENTATION RESPONSIBILITIES:

Section V A of Exhibit E of FmHA Instruction 1965-B states the conditions under which a prepayment may be accepted, with or without restrictive-use provisions, after a borrower has been offered and rejected an incentive to not prepay. There is little guidance in this procedure, however, for doing the evaluations necessary to make these decisions. There is also very little guidance in Exhibit E on handling the other procedures necessary leading up to a prepayment.

The following process should be followed prior to accepting a prepayment, in order to be certain that tenants are properly protected throughout the decision-making process (Please Note: Exhibit E must be followed in all respects. The issues addressed here only deal with tenant protections in the decision to accept prepayment; other aspects of the procedure involve putting emphasis on different kinds of decision-making):

EXPIRATION DATE: January 31, 1992

FILING INSTRUCTIONS: Preceding FmHA Instruction 1965-B



FmHA Farmers Home Administration is an Equal Opportunity Lender. Complaints of discrimination should be sent to:

I. In accordance with Paragraph II A 2, the borrower's request to prepay must contain "complete and well-documented information necessary to prepare the prepayment report." Complete documentation for the manner in which all answers are derived must be submitted, or the prepayment request should not be considered complete.

In evaluating the acceptance of prepayment, projected rents and availability of other vacant units are important considerations.

a. Documentation that the projected rents, after prepayment, are accurate would normally include a projected budget, based on the current budget, with conventional rate amortization showing that the borrower could feasibly operate the project at the projected rent. It would also include a market analysis showing that conventional rents in the market area are similar to or less than the projected rents. If either of these conditions do not apply, the borrower's projected rents should not be presumed to be reliable.

b. The borrower's response to the item dealing with vacancies in the community should be supported with data dealing with comparable units in the same market area and comparable rents.

II. Exhibit B to FmHA Instruction 1965-B is a guide letter for use to notify tenants about the possibility of a pending prepayment. The information given tenants must be accurate and complete. It must accurately reflect the most current information concerning an anticipated prepayment date, the likelihood that prepayment will actually be accepted, reasons for which prepayment may be accepted, restrictions to which the borrower will be bound if prepayment is accepted, anticipated rents after prepayment, the availability of alternative housing in the community, and the right of tenants to comment on the proposed prepayment. Tenants should periodically be advised of changes in this information or of the status of the request, with updates at least annually, until the final disposition (e.g., acceptance of an incentive to not prepay) of the request.

III. In accordance with paragraph IV of Exhibit E, every borrower who requests to prepay, and can document the ability to prepay, will be offered an incentive to not do so. The size of the incentive will be based on whether this housing is needed by current tenants and other low- and moderate-income people in the market area, and on the loss to the borrower by remaining in the FmHA program. The size

of the incentive may not be based on whether the borrower actually wishes to prepay or wishes to receive an incentive to not prepay, or on whether the borrower is a servicing problem. In the latter case, the incentive can be made contingent on a sale to an acceptable purchaser if the servicing problems or liquidation efforts are documented. Each incentive must be individually derived based on the market in the particular community. Call the MHSPM Division in the National Office for further guidance on developing incentives, when necessary.

IV. Thorough documentation should be shown of how the decision was made on whether to accept prepayment, with or without restrictions. The proposed rule published in the July 20, 1990, Federal Register, on pages 29601 - 29634, may be used for guidance on the evaluations to be made. See especially the proposed Section 1965.215 for this guidance. However, the following guidance should also be followed:

a. A tenant who will experience new or increased rent overburden, based on 30 percent of adjusted income due to the prepayment, should be counted as displaced, whether or not the tenant actually moves.

b. The effect of the prepayment on minorities, both in the project and in the community, must be thoroughly evaluated. Prepayments should only be accepted with the 20-year restriction, if there will be adverse impact on minorities.

c. The borrower's written assurance that rents will not be raised, the use of long-term tenant leases, or the anticipated continuation of the HAP contract may not be used in lieu of restrictive-use provisions. If such assurances are needed, then prepayment may not be accepted without restrictions.

d. All decisions about the need for housing must be made for the "long run," not for the immediate future. This means for as long as restrictions would have remained with the project, if they had been signed.

e. IF THERE ARE ANY DOUBTS ABOUT WHETHER PREPAYMENT MAY BE ACCEPTED WITHOUT RESTRICTIONS, IT SHOULD NOT BE!!! If there is any doubt about accepting prepayment with the restrictions which protect only current tenants, it should not be.

V. The prepayment report, with all supporting documentation, must be indefinitely retained in the State Office, with a copy of the report only forwarded to the National Office, after the prepayment is accepted.

Please call Arlene Halfon in the MHSPM Division if there are any questions, or to discuss these issues further.

LA VERNE AUSMAN
Administrator