IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TAMERLANE, LIMITED, PARK TERRACE LIMITED, PARK TERRACE EAST LIMITED, and MULLICA WEST, LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 05-677C<br>(Judge Christine O.C. Miller) |

**MOTION OF PLAINTIFFS, TAMERLANE LIMITED AND PARK TERRACE EAST LIMITED, PURSUANT TO RCFC 56 FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

This Motion is respectfully submitted by Moving Plaintiffs, Tamerlane Limited ("Tamerlane") and Park Terrace East Limited ("Park Terrace East") (collectively "Moving Plaintiffs"), in support of their motion, pursuant to RCFC 56, for partial summary judgment as to liability.

In support of this Motion, Moving Plaintiffs rely on the following submitted herewith:

1. The Proposed Findings of Uncontroverted Facts of Moving Plaintiffs.

2. The Memorandum of Law of Moving Plaintiffs in Support of their Motion for Partial Summary Judgment as to Liability.

3. The Appendix, containing:

(a) The Declaration of Bart J. Axelrod, on Behalf of Park Terrace East Limited, in Support of its Motion for Partial Summary Judgment as to Liability, with exhibits.

(b) The Declaration of Bart J. Axelrod, on behalf of Tamerlane Limited, in Support of its Motion for Partial Summary Judgment as to Liability, with exhibits.

(c) The Declaration of David M. Doret, Esquire, with exhibit.

(d) Excerpt of transcript of 7/18/07 Conference, at 22-24.

WHEREFORE, Moving Plaintiffs respectfully request that the Court grant their motion for partial summary judgment as to liability.

Respectfully submitted,

COZEN O'CONNOR

**s/ H. Robert Fiebach**
H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Moving Plaintiffs, Tamerlane Limited and Park Terrace East Limited

**Filed Electronically**

Dated: November 30, 2007

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TAMERLANE, LIMITED, PARK TERRACE LIMITED, PARK TERRACE EAST LIMITED, and MULLICA WEST, LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 05-677C<br>(Judge Christine O.C. Miller) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFFS, TAMERLANE LIMITED AND PARK TERRACE EAST LIMITED, FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

COZEN O'CONNOR

H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Moving Plaintiffs, Tamerlane Limited and Park Terrace East Limited

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................... ii

STATEMENT OF QUESTION PRESENTED .................... 1

STATEMENT OF THE CASE .................... 2

Background .................... 2

The Moving Plaintiffs .................... 3

The Present Motion .................... 5

ARGUMENT .................... 6

I. PRIOR DECISIONAL LAW SUPPORTS ENTRY OF PARTIAL SUMMARY JUDGMENT AS TO THE GOVERNMENT'S LIABILITY FOR BREACH OF CONTRACT. .................... 6

II. PARTIAL SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF MOVING PLAINTIFFS. .................... 8

A. The Sole Fact Issue, Presented Only As To Park Terrace East, Is The Ability Of The Project To Prepay The Mortgage And To Convert. .................... 8

B. The Government's Attempts To Set Up Accord And Satisfaction As An Affirmative Defense As To Tamerlane Are Meritless. .................... 8

CONCLUSION .................... 12

APPENDIX ....................

a) Declaration of Bart J. Axelrod, on Behalf of Park Terrace East Limited, in Support of Its Motion for Partial Summary Judgment as to Liability .................... 1

b) Declaration of Bart J. Axelrod, on Behalf of Tamerlane Limited, in Support of Its Motion for Partial Summary Judgment as to Liability .................... 30

c) Declaration of David M. Doret, Esquire .................... 126

d) Excerpt of Transcript of 7/18/07 Conference, at 22-24 .................... 180

# TABLE OF AUTHORITIES

Page

**CASES**

Abatement Contr. Corp. v. United States,
58 Fed. Cl. 594 (2003) ....................9

Allegre Villa, Ltd. P'ship v. United States,
60 Fed. Cl. 11 (2004) ("Allegre Villa") ....................2, 6-7

Axion Corp. v. United States,
68 Fed. Cl. 468 (2005) ....................9

C.H. Robinson Int'l. v. United States,
64 Fed. Cl. 651 (2005) ....................9

Edwards v. United States,
22 Cl. Ct. 411 (1991) ....................9

Franconia Assocs. v. United States,
61 Fed. Cl. 718 (2004) ....................Passim

Holland v. United States,
74 Fed. Cl. 225 (2006) ....................9

Jaynes v. United States,
75 Fed. Cl. 218 (2007) ....................9

Shufford v. Integon Indem. Corp.,
73 F. Supp. 2d 1293 (M.D. Ala. 1999) ....................9-10

**STATUTES**

Emergency Low Income Housing Preservation Act of 1987,
codified as amended 42 U.S.C. § 1472(c) and 12 U.S.C. § 17151 (2000) ....................3, 6

Housing Act of 1949, Section 515,
later codified at 42 U.S.C. § 1485 (2000) ....................2

Housing and Community Development Act,
Pub. L. No. 102-550, 106 Stat. 3672, later codified at 42 U.S.C. § 1472(c) ....................3, 6

National Housing Act in 1979,
Pub. L. No. 96-153, 93 Stat. 1101 (1979) ....................3

RCFC 56 ....................12

This Memorandum of Law is respectfully submitted by Moving Plaintiffs, Tamerlane Limited ("Tamerlane") and Park Terrace East Limited ("Park Terrace East") (collectively "Moving Plaintiffs"), in support of their motion, pursuant to RCFC 56, for partial summary judgment as to liability.

The Motion of Moving Plaintiffs for Partial Summary Judgment is accompanied by the following, on which they rely:

1. Appendix, containing:

(a) The Declaration of Bart J. Axelrod, on Behalf of Park Terrace East Limited, in Support Of Its Motion For Partial Summary Judgment As To Liability (the "Axelrod Park Terrace East Declaration"), with exhibits.

(b) The Declaration of Bart J. Axelrod, on Behalf of Tamerlane Limited, in Support Of Its Motion For Partial Summary Judgment As To Liability (the "Axelrod Tamerlane Declaration") , with exhibits.

(c) The Declaration of David M. Doret, Esquire ("Doret Declaration"), with exhibit.

(d) Excerpt of transcript of 7/18/07 conference, at 22-24.

2. The Proposed Findings of Uncontroverted Facts of Moving Plaintiffs.

**STATEMENT OF QUESTION PRESENTED**

Whether each of the Moving Parties, based on prior decisional law and the proposed findings of uncontroverted facts, should be awarded partial summary judgment as to liability on their respective claims.

## STATEMENT OF THE CASE

**Background**

This suit relates to loan transactions provided for under Section 515 of the Housing Act of 1949, later codified at 42 U.S.C. § 1485 (2000). The loan program was administered by the Farmers Home Administration ("FmHA"), a division of the Department of Agriculture. The program, created in 1962, allowed the FmHA to make loans to property owners for the production of low income rural housing. In Allegre Villa, Ltd. P'ship v. United States, 60 Fed. Cl. 11 (2004) ("Allegre Villa") (Miller, J.), this court summarized the history of the program as it relates to the present dispute.

Briefly recapitulated, in the 1960s and 1970s, the FmHA, a federal agency organized under the Housing Act of 1949 within the Department of Agriculture, sponsored a federal program to provide governmental assistance to relieve housing shortages for the elderly and middle and low income people in rural areas. Originally, only non-profit entities could benefit from the program, but beginning in 1972, the FmHA began offering government-assisted loans to private investors to encourage investors to build multi-family residential units in rural areas.

The loans, which had 40-50 year terms, required the borrowers to undertake various restrictions, such as limitations on return on investment, limitations on eligible tenants, limitations on rents, and the imposition of various maintenance and financial requirements. In trying to interest investors in doing these projects, the FmHA promised that should the investors wish to leave the program and free themselves of the low income housing restrictions, they could pre-pay their loans at any time. In other words, prepayment (i.e. refinancing) was available as an option by which owners could leave the government program and convert their projects to commercial use as market-rent properties. See Allegre Villa, at 13. The Court of Claims in Franconia Assocs. v. United States, 61 Fed. Cl. 718 (2004) ("Franconia") court noted that the

"prepayment option served as a major inducement for recruiting property owners into the program." 61 Fed. Cl. at 722-73.

By the late 1970s, due to a tight rental market and increasing property values, many property owners were beginning to prepay their mortgages, as permitted by their agreements. Congress then passed an amendment to the National Housing Act in 1979, Pub. L. No. 96-153, 93 Stat. 1101 (1979), which prevented the FmHA from accepting prepayment of any loan unless the owner agreed to maintain the low-income use for a 15 or 20 year period from the date of the loan. The blackout on prepayment could be avoided only if the FmHA determined there was no longer a need for the low-cost housing (or if federal financial assistance to residents was no longer available). In 1980, Congress eliminated the 1979 restrictions on prepayment so that they would not apply retroactively, but only with respect to post-1979 loans.

In 1987, Congress enacted the Emergency Low Income Housing Preservation Act of 1987, codified as amended 42 U.S.C. § 1472(c) (2000) and 12 U.S.C. § 17151 (2000) ("ELIHPA"), which amended the Section 515 program by retroactively imposing restrictions on the prepayment of mortgages entered into before December 21, 1979 – effectively repudiating the prepayment provisions of those loan agreements. Thereafter, Congress extended the reach of ELIHPA to post-1979 projects through enactment of the Housing and Community Development Act ("HCDA"), Pub. L. No. 102-550, 106 Stat. 3672, later codified at 42 U.S.C. § 1472(c). HCDA extended the ELIHPA restrictions on prepayment of mortgages made before December, 1979 to include loans made after December, 1979 and until 1989.

**The Moving Plaintiffs**

The two Moving Plaintiffs each assert their respective claims which are the subject of this motion for partial summary judgment. The first Moving Plaintiff, Park Terrace East, a limited partnership organized and existing under the laws of Pennsylvania, entered into a

1981 loan for rental housing at Park Terrace Apartments Phase II, consisting of 44 units. Copies of the relevant transaction documents are attached to the Axelrod Park Terrace East Declaration as Exhibits A-D (App. 4-29).

The loan was subject to a twenty (20) year low-income housing restriction, which expired in 2001. Id., ¶ 2 (App. 1). Upon the expiration of the restriction, Park Terrace East would have been able to prepay its loan and convert the project to commercial housing at market rate rentals. Id., ¶ 2, 4 (App. 1-2). The loan indebtedness will not be fully liquidated until the end of its fifty (50) year term in 2031. Id., ¶ 2 (App. 1).

Park Terrace East has not secured incentives. Id., ¶ 5 (App. 3). In its answer, the Government has not asserted any affirmative defenses as to the Park Terrace East claims.

The second Moving Plaintiff, Tamerlane, a limited partnership organized and existing under the laws of New Jersey, entered into a loan for rental housing at Sicklerville, New Jersey, having 160 units. Copies of the Tamerlane transaction documents are attached to the Axelrod Tamerlane Declaration as Exhibits A-D (App. 34-59).

The loan was subject to a twenty year low income housing restriction, which expired in 2002. Id., ¶ 2 (App. 30). Upon the expiration of the restriction, Tamerlane would have been able to prepay the loan and convert the project to commercial housing at market rate rentals. Id., ¶ 2, 4 (App. 30-31). The loan indebtedness will not be fully liquidated until the end of its fifty (50) year term in 2032. Id., ¶ 2 (App. 30).

In 2002, upon the expiration of the twenty year low-income housing restriction period, Tamerlane secured "incentives" in the form of an equity loan. Id., ¶ 5 (App. 32). Copies of the Tamerlane equity loan transaction documents are attached to the Axelrod Tamerlane Declaration as Exhibits E-H (App. 60-87).

In its answer, the Government has only asserted only one affirmative defense, accord and satisfaction, as to the Tamerlane claims.

**The Present Motion**

In support of this motion, Moving Plaintiffs respectively rely on the Axelrod Park Terrace East Declaration and the Axelrod Tamerlane Declaration. The Declarations confirm what has already been established in previous litigation, that: (1) it was known generally that prepayment would be allowed upon the expiration of restrictions, whereupon the project could be converted to commercial multi-family housing at market rate rentals; (2) in acquiring and selecting the properties, Axelrod relied on the ability of the owner to prepay the loan and to convert the property; (3) the Government has refused to let the owners prepay the respective loans. The Declarations also address the ability of each of Moving Plaintiffs to prepay the loan and convert to commercial multi-family residential use at market rate rentals at the time suit was started. In addition, the Axelrod Tamerlane Declaration negates the accord and satisfaction affirmative defense raised as to Tamerlane.

Moving Plaintiffs also rely on the Expert Report of Bruce Coin, an expert and mortgage broker, who opines that at the time of the inception of suit, financing would have been available to prepay the mortgages and to convert the properties to commercial multi-family residential use at market rate rentals. A copy of Mr. Coin's expert report is attached to the Declaration of David M. Doret, Esquire as Exhibit A (App. 127-179).

For the reasons set forth below, partial summary judgment should be granted in favor of each of Moving Plaintiffs.

## ARGUMENT

### I. PRIOR DECISIONAL LAW SUPPORTS ENTRY OF PARTIAL SUMMARY JUDGMENT AS TO THE GOVERNMENT'S LIABILITY FOR BREACH OF CONTRACT.

In Allegre Villa, supra, 60 Fed. Cl. 11 (2004), this Court granted partial summary judgment as to liability to three groups of plaintiffs. The first group of plaintiffs requested permission from the FmHA to prepay their mortgages without restrictions by filing formal prepayment applications. Id. at 15. The second group of plaintiffs consisted of owners who were aware of the FmHA's denial of prepayment applications and, believing the tendering of an application to be futile, did not submit prepayment applications. Id. The third group of plaintiffs consisted of post-1979 owners who had not yet reached the 20-year anniversary that would bring about their contractual right to prepayment. These plaintiffs believed, based on statements from the FmHA and the denial of other owners' applications, that their prepayment right would not be honored.

The Allegre Villa decision predated the Franconia decision by some five months. Allegre Villa granted summary judgment in favor of all three groups of claimant owners on the issue of the Government's liability for breach. The Court relied on several opinions from other judges of the Court of Federal Claims, 60 Fed. Cl. at 13, and concluded:

> The court finds that the Government breached plaintiffs' contracts to which no valid defense was offered. Plaintiffs allege that each property owner entered into a loan agreement after 1972, but prior to December 15, 1989. [T]he Government breached its contracts with plaintiffs during that time frame by enacting ELIHPA and HCDA...

60 Fed. Cl. at 16-17.

Thereafter, Franconia was decided. See supra, 61 Fed. Cl. 718 (2004). Franconia held that the amendment of legislation which placed permanent restrictions on prepayment of FmHA loan agreements, which had contained unfettered prepayment provisions, was a

repudiation of the agreements which became a breach of contract either at a time when a request for prepayment was made and not honored or when the suit was brought by the affected property owner. Franconia also presented the prepayment issue as to a number of partnerships which originated after 1979. The original loans to these partnerships contained restrictions, but the restrictions lasted 20 years and by the early 2000's had expired by their terms. Franconia also held that these projects, too, had a breach of contract claim once their restrictions expired.

The Franconia court found as a fact that in every case, the pre-1979 owners would not have signed their contracts without the prepayment option, having decided to pick locations and develop their properties with an eye to converting the projects to market rents in the future. As to the post-1979 owners, they too were found to have intended to prepay as soon as their restrictions expired. The court found that upon prepayment, the owners would convert the properties to commercial uses as apartments, condominiums or even nonresidential properties, raising the rents to market levels, and use the proceeds for retirement, alternative investments or wealth transfer to heirs.

At the July 18, 2007 conference, the Court expressed its view that by virtue of the Franconia decision, the matter effectively has been resolved on liability. (App. 180-183.) The Court stated that it intended to follow Franconia, a well-reasoned decision accepted by the judges of the Court of Federal Claims, although it would listen to any grounds on which the Government contended that the Franconia decision should not apply to the subject claims. Id.

Accordingly, and based on the Allegre Villa and Franconia precedent as well as the Court's own pronouncements in this case, prior decisional law supports the Government's breach of contract and the entry of partial summary judgment in favor of Moving Plaintiffs as to liability for the breach of contract.

## II. PARTIAL SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF MOVING PLAINTIFFS.

### A. The Sole Fact Issue, Presented Only As To Park Terrace East, Is The Ability Of The Project To Prepay The Mortgage And To Convert.

There is the one partnership-specific fact issue which exists only as to Park Terrace East, namely the ability to prepay the mortgage and to convert the project to commercial use. Franconia held that owners who failed to present evidence that they would have prepaid their mortgages and converted their properties to commercial use, had they been allowed to do so without restriction, failed to meet the proximate cause requirement for recovery of lost profits for the government's breach of prepayment provisions of loan agreements.

The ability to prepay the mortgage on Park Terrace East and to convert the project to commercial use at market rents is supported by both the Declaration of Bart Axelrod and the Declaration of Bruce Coin. They show that as of the inception of suit, institutional financing was available to prepay the mortgage and to ramp up the property to commercial use. In fact, Park Terrace Limited, the "twin" project of Park Terrace East, secured "incentives" in 1993. To do this, it was required to demonstrate that it could prepay.

Tamerlane, which received an equity loan in 2002, demonstrated its ability to prepay its loan as part of the equity loan process. Nevertheless, as a "belt and suspenders" precaution, Declarations by Axelrod and Coin are submitted attesting to Tamerlane's ability to prepay its loan in 2005.

### B. The Government's Attempts To Set Up Accord And Satisfaction As An Affirmative Defense As To Tamerlane Are Meritless.

The Government has pleaded as its sole affirmative defense as to Tamerlane the issue of accord and satisfaction, asserting that by reason of the equity loan transaction, in which

Tamerlane took incentives, the transaction operated as an accord and satisfaction.[1] The argument is meritless.

An "accord and satisfaction" occurs when some performance different from that which was claimed as due is rendered and the substituted performance is accepted by the claimant as full satisfaction of his claim. Jaynes v. United States, 75 Fed. Cl. 218 (2007); Holland v. United States, 74 Fed. Cl. 225 (2006). A valid accord and satisfaction consists of four elements: (1) proper subject matter, (2) competent parties, (3) a meeting of the minds of the parties, and (4) consideration. Id.; Axion Corp. v. United States, 68 Fed. Cl. 468 (2005). An accord and satisfaction, like any contract, can be set aside, in whole or in part, for such reasons as mutual mistake, supervening illegality, or frustration of purpose. C.H. Robinson Int'l. v. United States, 64 Fed. Cl. 651 (2005).

Accord and satisfaction is subject to the same rules respecting validity as is the original contract. Edwards v. United States, 22 Cl. Ct. 411 (1991). Economic duress can void an otherwise valid accord and satisfaction. Abatement Contr. Corp. v. United States, 58 Fed. Cl. 594 (2003). In order to prove that a party was under economic duress for purposes defeating the defense of accord and satisfaction, a party must show (1) wrongful acts or threats, (2) financial distress caused by the wrongful acts or threats, and (3) the absence of any reasonable alternative to the terms presented by the wrongdoer. See Shufford v. Integon Indem. Corp., 73 F. Supp. 2d 1293 (M.D. Ala. 1999). Here, contrary to the Government's affirmative defense, no accord and satisfaction arose by reason of Tamerlane's acceptance of incentives. The reasons are two-fold.

First, accepting incentives was not voluntary, but was coerced by the lack of an alternative brought about by the Government's repudiation of its bargain. Voluntary relinquishment of rights is a prerequisite to accord and satisfaction. The Axelrod Tamerlane

---

1 This is an issue only as to Tamerlane, since Park Terrace East never sought or received any "incentives."

Declaration describes the circumstances of the equity loan transaction and negates that it operated as a voluntary relinquishment of rights. See ¶¶ 5, 8.

As Axelrod avers, the inability to prepay the loan and convert the project to commercial housing at market rate rentals, which was the consequence of the Government's wrongful act, worked an economic hardship on Tamerlane and its partners. It resulted in locking in Tamerlane and its partners in an illiquid investment, frustrating the anticipated exit strategy from that investment, while affording Tamerlane and its partners at best barely a minimal, and in any event a sub-market, return on their investment. The incentive process was not voluntary but coercive, since the Government left Tamerlane no other alternative for relief but to seek incentives. Id. at ¶ 8.

Obviously, prior decisional law is supportive of the conclusion that the absence of choice vitiated any accord and satisfaction. Although the Government stopped short of advancing this defense in Franconia, the Franconia court noted that acceptance of incentives was hardly voluntary, but rather like making the least bad decision "with a gun to your head:"

> For example, some plaintiffs accepted incentives because, under the statute and regulations, they believed that rejection would lead to a "forced sale" of their property to a nonprofit entity. Others accepted loans from the FmHA because, due to the restrictions imposed under the program, that was the only available way to finance needed maintenance and improvements. Still others accepted incentives only after being informed by FmHA officials that they could not prepay under any circumstance and thus had no other alternative. None of these situations suggest that the owners who were unwilling to further contract with an agency that had twice repudiated their contracts and who perceived that the options offered to them were fraught with risk, acted unreasonably.

61 Fed. Cl. at 746, note 47.[2] This accords with this Court's own pronouncement, in its Memorandum and Opinion filed May 18, 2007, to the effect that "it is arguable that [owners accepting incentives] had no other alternative." At 16.

The result is all the more forceful given that the Franconia court also noted that incentives were hardly a fair option. Rather, they had a "toll charge" -- they were not meaningful options, were underfunded, did not work as intended and represented what amounted to a constructive failure to accept prepayment without offsetting benefit to the owners. See Franconia, 61 Fed. Cl. at 726. The court also called them "unfounded and dysfunctional options." Id. at 757.

Second, the relinquishment of the ability to assert claims was never a term of the incentive transaction. See Axelrod Tamerlane Declaration, ¶ 9. The Government did not place language in the documents creating a waiver of any rights or a release of any claims. Nor was there any meeting of the minds to that effect. The fact that incentives partnerships could recover in Franconia proves that no document exists to relinquish rights. Absent an agreement on the relinquishment of rights, no rights were relinquished.

Therefore, the Government's accord and satisfaction defense as to Tamerlane is baseless.

---

2 In Franconia, the Government all but argued that accepting incentives was required to mitigate, and that partnerships which failed to accept incentives had failed to act reasonably to mitigate damages. The court rejected this position. Now, the Government has reversed field, arguing that the incentives it coerced came at the expense of the relinquishment of other rights. This is "whipsawing" of the worst sort.

## CONCLUSION

For the reasons stated above, pursuant to RCFC 56, the motion of each of the Moving Plaintiffs for partial summary judgment as to liability should be granted, and judgment should be entered in their favor and against defendant as to liability.

Respectfully submitted,

COZEN O'CONNOR

**s/ H. Robert Fiebach**
H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Moving Plaintiffs, Tamerlane Limited and Park Terrace East Limited

**Filed Electronically**

Dated: November 30, 2007

PHILADELPHIA\3418475\1 164980.000

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TAMERLANE, LIMITED, PARK TERRACE LIMITED, PARK TERRACE EAST LIMITED, and MULLICA WEST, LIMITED, | : | No. 05-677C (Judge Christine O.C. Miller) |
| Plaintiffs, | : | |
| v. | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |

**PROPOSED FINDINGS OF UNCONTROVERTED FACTS OF MOVING PLAINTIFFS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

Moving Plaintiffs, Tamerlane Limited ("Tamerlane") and Park Terrace East Limited ("Park Terrace East") (collectively "Moving Plaintiffs"), respectfully submit these proposed findings of uncontroverted facts in support of their motion, pursuant to RCFC 56, for partial summary judgment as to liability.

**Background**

1. The relevant facts concerning the background of the Section 515 housing program, the enactment by Congress of the statutes restricting prepayment of loans, the administration of the Section 515 housing program subsequent to the enactment of that legislation, and the breach of contract by the Government by reason of the abrogation of the right of prepayment contained in the decisions of Allegre Villa v. United States, 60 Fed. Cl. 11 (2004), and Franconia Assocs. v. United States, 61 Fed. Cl. 718 (2004), are true and correct.

## I. **Park Terrace East Limited**

2. Exhibits A-D to the Declaration of Bart J. Axelrod in support of Park Terrace East 's Motion for Partial Summary Judgment are true and correct copies of the operative documents with respect to the 1981 Park Terrace East loan with the FmHA.

3. Park Terrace East was able to secure financing to prepay its loan, and to convert its property to commercial multi-family residential housing at market rate rentals, at the time of the inception of suit in June 2005.

## II. **Tamerlane Limited**

4. Exhibits A-J to the Declaration of Bart J. Axelrod in support of Tamerlane's Motion for Partial Summary Judgment are true and correct copies of the operative documents with respect to the 1980-82 Tamerlane loans with the FmHA.

5. Exhibits K-M to the Declaration of Bart J. Axelrod in support of Tamerlane's Motion for Partial Summary Judgment are true and correct copies of the operative documents with respect to the 2002 Tamerlane equity loan with the FmHA.

6. Tamerlane was able to secure financing to prepay its loan, and to convert its property to commercial multi-family housing at market rents at the time of the inception of suit in June, 2005. Tamerlane had demonstrated its ability to prepay and convert prior to the Government extending an equity loan to Tamerlane.

7. Tamerlane's acceptance of an equity loan incentive did not operate as a voluntary agreement by Tamerlane to accept substituted performance and to relinquish any legal rights to assert claims by reason of the Government's wrongful breach of contract, inter alia, because the Government's breach of contract, which created economic hardship to Tamerlane and its partners, left no alternative available to attempt to relieve that harm.

8. In connection with the equity loan transaction, no agreement was reached for Tamerlane to relinquish any legal rights to assert claims by reason of the Government's breach.

Respectfully submitted,

COZEN O'CONNOR

**s/ H. Robert Fiebach**
H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Moving Plaintiffs, Tamerlane Limited and Park Terrace East Limited

**Filed Electronically**

Dated: November 30, 2007

PHILADELPHIA\3455700\1 164980.000

**CERTIFICATE OF SERVICE**

I, David M. Doret, Esquire, hereby certify that a true and correct copy of the foregoing Plaintiffs' Motion of Plaintiffs, Tamerlane Limited and Park Terrace East Limited, Pursuant To RCFC 56 For Partial Summary Judgment As To Liability; Memorandum of Law In Support of Motion of Plaintiffs, Tamerlane Limited and Park Terrace East Limited, For Partial Summary Judgment As To Liability; Proposed Findings of Uncontroverted Facts of Moving Plaintiffs In Support of Motion For Partial Summary Judgment As To Liability; and Appendix to Motion for Partial Summary Judgment was served, via electronic filing on the 30th day of November, 2007 on the following:

Shalom Brilliant, Esquire
Senior Trial Counsel
Commercial Litigation Branch Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
Room 8012
Washington, D.C. 20530

Counsel for Defendant, United States of America

David M. Doret, Esquire