**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| TAMERLANE, LIMITED, PARK TERRACE LIMITED, PARK TERRACE EAST LIMITED, and MULLICA WEST, LIMITED, Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | No. 05-677C (Judge Christine O.C. Miller) |

# APPENDIX

COZEN O'CONNOR

H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Moving Plaintiffs, Tamerlane Limited and Park Terrace East Limited

# TABLE OF CONTENTS

Page

Declaration of Bart J. Axelrod, on Behalf of Park Terrace East Limited, in Support of Its Motion for Partial Summary Judgment as to Liability .................. 01 - 03

Exhibit A (Loan Agreement dated March 15, 1981) .................. 04 - 07

Exhibit B (Note dated May 14, 1981) .................. 08 - 11

Exhibit C (Mortgage dated May 14, 1981) .................. 12 - 21

Exhibit D (Security Agreement dated May 14, 1981) .................. 22 - 29

Declaration of Bart J. Axelrod, on Behalf of Tamerlane Limited, in Support of Its Motion for Partial Summary Judgment as to Liability .................. 30 - 33

Exhibit A (Loan Agreement dated January 11, 1980) .................. 34 - 42

Exhibit B (Note dated April 25, 1980) .................. 43 - 46

Exhibit C (Loan Agreement dated January 11, 1980) .................. 47 - 55

Exhibit D (Note dated April 25, 1980) .................. 56 - 59

Exhibit E (Mortgage dated April 25, 1980) .................. 60 - 69

Exhibit F (Security Agreement dated April 25, 1980) .................. 70 - 76

Exhibit G (Loan Agreement dated December 22, 1981) .................. 77 - 83

Exhibit H (Note dated December 28, 1981) .................. 84 - 87

Exhibit I (Mortgage dated December 28, 1981) .................. 88 - 100

Exhibit J (Security Agreement dated December 28, 1981) .................. 101 - 108

Exhibit K (Loan Agreement dated June 1, 2002) .................. 109 - 113

Exhibit L (Mortgage Modification Agreement dated June 1, 2002) .................. 114 - 118

Exhibit M (Mortgage Modification Agreement dated June 1, 2002) .................. 119 - 122

Exhibit N (November 14, 2000 letter of Michael I. Blank, Executive Vice President, Pinnacle Capital Group) .................. 123 - 125

Declaration of David M. Doret, Esquire ....................126

Exhibit A (Expert Report of Bruce Coin) .................... 127 - 179

Transcript of 7/18/07 Conference at 22-24 .................... 180 - 183

**IN THE UNITED STATES
COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TAMERLANE, LIMITED, PARK TERRACE LIMITED, PARK TERRACE EAST LIMITED, and MULLICA WEST, LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | : | No. 05-677C<br>(Judge Christine O.C. Miller) |

**DECLARATION OF BART J. AXELROD, ON BEHALF OF PARK TERRACE EAST LIMITED, IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

Bart J. Axelrod deposes and states as follows:

1. I am President of Bala Realty Advisors, Inc. ("Bala"), the general partner of Park Terrace Investors, which is the general partner of Park Terrace East Limited ("Park Terrace East"), one of the plaintiffs in these proceedings. I am authorized to make this Declaration on behalf of Park Terrace East in support of its motion for partial summary judgment as to liability.

2. In 1981, Park Terrace East made a loan approved by the Farmer's Home Administration (the "FmHA" or the "Government") under the Section 515 housing program in connection with a 44 unit apartment building in Mohnton, Pennsylvania. The loan had a twenty (20) year restriction on prepayment. The Park Terrace East loan will not be fully liquidated until the end of its fifty (50) year term in 2031. Copies of the operative Park Terrace East transaction documents are attached to this Declaration as Exhibits A-D respectively.

3. The Park Terrace East project was acquired in or about 1983. At that time, it was generally known throughout the industry, and by myself, that prepayment of the loan and conversion to commercial multi-family housing at market rate rentals would be allowed upon the expiration of the restriction period. Prior to acquiring the project, I had specific discussions concerning the ability of Park Terrace East to prepay the loan and convert the property to commercial multi-family residential use at market rate rentals upon the expiration of the restrictions. These discussions assured me that such prepayment and conversion would be permitted. These discussions took place with Alvin Segal (now deceased), a developer of two Section 515 properties (including Park Terrace East), Ralph Griffin, a developer of many Section 515 properties (including Tamerlane, the property owned by the other Moving Plaintiff), and Larry Isdaner, CPA (now deceased), a tax advisor. In addition, I had discussions to similar effect with representatives of the FmHA, although I do not recall the names of the persons with whom I spoke. In acquiring the property, Park Terrace East relied upon knowledge that the loan could be repaid as soon as the restrictions expired, and that upon prepayment the project could be taken out of the Section 515 low income housing program operated by the Government and converted to commercial multi-family residential housing at market rate rent levels. In fact, I selected the project based on its location and with an eye toward a profitable conversion at the time it would be free of restrictions.

4. Suit was brought by Park Terrace East on June 22, 2005. At the time, Park Terrace East could have prepaid the mortgage loan and taken the project out of the Section 515 program. The value of the project, in relation to the amount needed to prepay the Government's loan, was more than adequate to support the willingness of an institutional real lender to loan sufficient money to prepay the Government's loan and to fund any expenses incurred in converting the property for commercial multi-family housing at market rate rentals.

5. No equity loan or other incentive was requested or secured by Park Terrace East.

6. The sister project of Park Terrace East, Park Terrace Limited, secured an equity loan in 1993. Prior to its receipt of the equity loan, the Government informed me that it would not allow the Park Terrace Limited project to leave the program because there did not exist an adequate supply of low income housing in the area. In fact, the Government will not allow the Park Terrace East project to leave the program until 2031, when the Park Terrace East loan indebtedness has been fully liquidated. This is based on what Government officials, such as Howard Henderson, and Ernest Grunow and Jack Kauffman, told us in connection with Section 515 properties in which I have been involved. It is also based on my knowledge of the Government's actions in refusing to allow other projects to leave the program, particularly projects located in areas near metropolitan centers, such as the one where the subject property is located, in which development over time has resulted in the escalation of rent levels and made it more difficult for low income tenants to secure rental housing.

7. The facts set forth herein are based upon my personal knowledge and are true and correct.

8. I understand that the statements made herein are made subject to the penalties of 28 U.S.C. § 1746 relating to unsworn falsification to authorities.

BART J. AXELROD

Dated: November 30, 2007

# Exhibit A

Form FmHA 1944-34
(8-1-80)

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

LOAN AGREEMENT FOR AN

☐ RRH Loan to a Partnership Operating on a Profit Basis
☐ RRH Loan to a Limited Partnership Operating on a Profit Basis
☐ RRH Loan to a Partnership Operating on a Limited Profit Basis
☒ RRH Loan to a Limited Partnership Operating on a Limited Profit Basis

1. Parties and Terms Defined. This agreement dated March 15, 1981 of the Park Terrace, East Limited, a Partnership, duly organized and operating under Park Terrace, East Limited, herein called "Partnership", whose post office address is P. O. Box 2356 Huntingdon Valley, Pennsylvania 19006, with the United States of America acting through the Farmers Home Administration, United States Department of Agriculture, herein called "the Government", is made in consideration of a loan, herein called "the loan", to Partnership in the amount of $ 1,287,140.00 made or insured, or to be made or insured, by the Government pursuant to sections 515 (b) of the Housing Act of 1949 to build a low to moderate income rental housing project. The loan may be sold and insured by the Government. The loan shall be used solely for the specific eligible purposes for which it is approved by the Government in order to provide rental housing and related facilities for eligible occupants, as defined by the Government in rural areas. Such housing and facilities and the land constituting the site as herein called "the housing". The indebtedness and other obligations of the Partnership under the note evidencing the loan, the related security instrument and related agreement are herein called the "loan obligations".

2. Execution of Loan Instruments. To evidence the loan the Partnership shall issue a promissory note (herein referred to as "the note"), signed by the General Partners for the amount of the loan, payable in installments over a period of Fifty (50) years, bearing interest at a rate, and containing other terms and conditions, prescribed by the Government. To secure the note or any indemnity or other agreement required by the Government, the General Partners are to execute a real estate security instrument giving a lien upon the housing and upon such other real property of the Partnership as the Government shall require, including an assignment of the rents and profits as collateral security to be enforced in the event of any default by the Partnership, and containing other terms and conditions prescribed by the Government. the General Partners are to execute any other security instruments and other instruments and documents required by the Government in connection with the making or insuring of the loan. The indebtedness and other obligations of the Partnership under the note, the related security instrument, and any related agreement are herein called the "loan obligation".

3. Equal Opportunity and Nondiscrimination Provisions. The Partnership will execute (a) any undertakings and agreements required by the Government pursuant to Title VIII of the Civil Rights Act of 1968 related to Fair Housing regarding nondiscrimination in the use and occupancy of housing, (b) Farmers Home Administration Form FmHA 400-1 entitled "Equal Opportunity Agreement", including an "Equal Opportunity Clause" to be incorporated in or attached as a rider to each construction contract the amount of which exceeds $10,000 and any part of which is paid for with funds from the loan, and (c) Farmers Home Administration Form FmHA 400-4, entitled "Assurance Agreement (Under Title VI, Civil Rights Act of 1964)", a copy of which is attached hereto and made a part thereof and any other undertakings and agreements required by the Government pursuant to lawful authority.

4. Borrower Contribution. The amount of $ 140,800.00 to be contributed by the Partnership from it's own funds for the land purchase or development will be placed or deposited with the lender and dispersed priod to any disbursement of interim loan funds or any FmHA loan funds.

5. Accounts for Housing Operations and Loan Servicing. The Partnership shall establish on its books the following accounts, which shall be maintained in accordance with FmHA Regulation 7 CFR Part 1930-C so long as the loan obligations remain unsatisfied: A General Fund Account, a Tax and Insurance Escrow Account, a Security Deposit Account and a Reserve Account.

a. General Operating Account. By the time the Farmers Home Administration loan is closed or interim funds are obtained to preclude the necessity for multiple advances of Farmers Home Administration loan funds, which ever occurs first, the Partnership shall from its own funds deposit in the General Operating Account the amount of

$ 28,559.00 .

b. Reserve Account. Transfers at a rate not less than $ 9,200.00 annually shall be made to the Reserve Account until the amount in the Reserve Account reaches the sum of

92,000

$ 9,200.00 and shall be resumed at any time when necessary, because of disbursements from the Reserve Account to restore it to said sum. Use of funds deposited to this account will be in accordance with FmHA Regulation 7 CFR Part 1930-C. With prior consent of the Government funds in the Reserve Account may be used by the Partnership:

To pay dividends to the partners of up to 8 percent per annum of the borrower's initial investment of $ 96,420.00 , provided the Partnership determines that after such disbursement (a) the amount in the Reserve Account will be not less than that required by subsection 5 b to be accumulated by that time and (b) during the next 12 months the amount in the Reserve Account will likely not fall below that required to be accumulated by the end of such period.

To pay dividends to the partners or for any other purpose desired by the Partnership, provided the Partnership determines that after such disbursement (a) the amount in the Reserve Account will not be less than that required by subsection 5 b to be accumulated by that time and (b) during the next 12 months the amount in the Reserve Account will likely not fall below that required to be accumulated by the end of such period.

6. Regulatory Covenants. So long as the loan obligations remain unsatisfied, the Partnership shall comply with all appropriate FmHA regulations and shall.

a. Impose and collect such fees, assessments, rents, and charges that the income of the housing will be sufficient at all times for operation and maintenance of the housing, payments on the loan obligations, and maintenance of the accounts herein provided for.

b. Maintain complete books and records relating to the housing's financial affairs, cause such books and records to be audited at the end of each fiscal year, promptly furnish the Government without request a copy of each audit report, and permit the Government to inspect such books and records at all reasonable times.

c. If required or permitted by the Government, revise the account herein provided for, or establish new accounts, to cover handling and disposition of income from and payment of expenses attributable to the housing or to any other property securing the loan obligations, and submit regular and special reports concerning the housing or financial affairs.

d. Agree that if any provisions of its organizational documents or any verbal understandings conflict with the terms of this loan agreement, the terms of the loan agreement shall prevail and govern.

e. Unless the Government gives prior consent:

(1) Not use the housing for any purpose other than as rental housing and related facilities for eligible occupants.

(2) Not enter into any contract or agreement for improvements or extensions to the housing or other property securing the loan obligations.

(3) Not change the membership by either the admission or withdrawal of any partner(s) nor permit the general partner(s) to maintain less than a 5 percent financial interest in the organization nor cause or permit voluntary dissolution of the Partnership nor cause or permit any transfer or encumbrance of title to the housing or any part thereof or interest therein, by sale, mortgage, lease, or otherwise.

(4) Not borrow any money, nor incur any liability aside from current expenses as defined in section 7 which would have a detrimental effect on the housing.

f. Submit for the housing the required reports as per FmHA Regulation 7 CFR Part 1930-C to the Government for prior review.

g. If required by the Government, modify and adjust any matters covered by clause (f) of this section.

h. Comply with all its agreements and obligations in or under the note, security instrument, and any related agreement executed by the Partnership in connection with the loan.

i. Not alter, amend, or repeal without the Government's consent this agreement or the Partnership Agreement, which shall constitute parts of the total contract between the Partnership and the Government relating to the loan obligations.

j. Do other things as may be required by the Government in connection with the operation of the housing, or with any of the Partnership's operations or affairs which may affect the housing, the loan obligations, or the security.

k. If return on investment for any year exceeds 8 percent per annum of borrower's initial investment of $ 96,420.00, the Government may require that the borrower reduce rents the following year and/or refund the excess return on investment to the tenants or use said excess in a manner that will best benefit the tenants.

7. General Provisions.

a. It is understood and agreed by the Partnership that any loan made or insured will be administered subject to the limitations of the authorizing act of Congress and related regulations, and that any rights granted to the Government in this agreement or elsewhere may be exercised by it in its sole discretion.

b. The provisions of this agreement are representations to the Government, to induce the Government, to make or insure a loan to the Partnership as aforesaid. If the Partnership should fail to comply with or perform any provision of this agreement or any requirement made by the Government pursuant to this agreement, such failure shall constitute default as fully as default in payment or amounts due on the loan obligations. In the event of such failure, the Government at its option may declare the entire amount of the loan obligations immediately due payable and, if such entire amount is not paid forthwith, may take possession of an operate the housing and proceed to foreclose its security and enforce all other available remedies.

c. Any provisions of this agreement may be waived by the Government in its sole discretion, or changed by agreement between the Government and the Partnership, after this agreement becomes contractually binding, to any extent such provisions could legally have been foregone or agreed to in amended form, by the Government initially.

d. Any notice, consent, approval, waiver, or agreement must be in writing.

e. This agreement may be cited in the security instrument and any other instruments as the "Loan Agreement" of March 15, 1981.

Park Terrace East, Limited
PARTNERSHIP NAME

By: Ron Segel, David Parker

# Exhibit B

(Rev. 11-10-75)

FARMERS HOME ADMINISTRATION

KIND OF LOAN

Type: RRH

Pursuant to:

☐ Consolidated Farm and Rural Development Act.

☒ Title V of the Housing Act of 1949.

# PROMISSORY NOTE

STATE Pennsylvania

COUNTY Berks

CASE NO. 44-06-232036350

Date May 14, 19 81

**FOR VALUE RECEIVED**, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government") at its office in 940 Hamilton Mall Gallery on the Mall Allentown, PA 18101,

**THE PRINCIPAL SUM OF** ONE MILLION TWO HUNDRED EIGHTY SEVEN THOUSAND ONE HUNDRED FORTY 00/100 **DOLLARS ($** 1,287,140.00 **), plus INTEREST on the UNPAID PRINCIPAL of** NINE **PERCENT (** 9 **%) PER ANNUM.**

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of four alternatives as indicated below: (check one)

☐ I. Principal and Interest payments shall be deferred. The first installment shall be all accrued interest and shall be due on ______________, 19___. Payment of Principal and later accrued Interest shall be in ______________ installments as indicated in the box below;

☐ II. Principal and Interest payments shall be deferred. The interest accrued to ______________, 19___ shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in ______________ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of such new Principal herein $______________ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ III. Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the ______________ of each ______________ beginning on ______________, 19___, through ______________, 19___, Principal and later accrued Interest shall be paid in ______________ installments as indicated in the box below;

☒ IV. Payments shall not be deferred. Principal and Interest shall be paid in 600 installments as indicated in the box below:

$ 9,770.00 on June 14, 19 81, and

$ 9,770.00 thereafter on the 14th of each month until the **PRINCIPAL** and **INTEREST** are fully paid except that the **FINAL INSTALLMENT** of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and **PAYABLE** FIFTY ( 50 ) **YEARS** from the **DATE** of this **NOTE**. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

*Position 2*

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest computed to the effective date of the payment and then to principal.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower. Refunds and extra payments, as defined in the regulations (7 C.F.R. 1861.2) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied to the installments last to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

Borrower agrees that the Government at any time may assign this note and insure the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

Borrower hereby certifies that he is unable to obtain sufficient credit elsewhere to finance his actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower (a) will personally operate such property as a farm with his own and his family's labor if this is an FO loan, or (b) will personally occupy and use such property if this is an RH loan on a "nonfarm tract" or a section 504 RH loan.

**REFINANCING AGREEMENT**: If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

**DEFAULT**: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. **UPON ANY SUCH DEFAULT**, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act or Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "KIND OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

**No partner of Park Terrace East Limited, including a general partner, shall be held personally liable hereunder and, In the event of default, Lender's sole recourse shall be limited to the assets of Park Terrace East Limited.**

Presentment, protest, and notice are hereby waived.

PARK TERRACE EAST LIMITED

(SEAL)
(BORROWER)

Alvin Segal,
General Partner

(SEAL)
(SPOUSE)

RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ 1,287,140.00 | 5/14/81 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ | |

☆U.S.GPO:1979-0-665-052/28

# Exhibit C

VOL 1341 PAGE 352

# PARTNERSHIP REAL ESTATE MORTGAGE FOR PENNSYLVANIA

THIS MORTGAGE is made this day, May 14, 1981, by Park Terrace East Limited, a Limited Partnership organized and existing under the laws of the State of Pennsylvania, whose mailing address is 3874 Bradford Road Huntingdon Valley, PA 19006 (the Borrower).

The United States of America (the Government), acting through the Farmers Home Administration, United States Department of Agriculture, having an office or place of business at P. O. Box 905, Federal Building, Harrisburg, Pennsylvania 17108, has loaned the Borrower money as evidenced by one or more promissory note(s) or assumption agreement(s) (the Note) (if more than one note is described below, the word "Note" as used herein shall be construed as referring to each note singly or all notes collectively, as the context may require). The Note has been executed by the Borrower, is payable to the order of the Government in installments as specified therein, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by the Borrower, and is further described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| May 14, 1981 | $1,287,140.00 | 9% | May 13, 2031 |

The Government may assign the Note at any time. The Government may also insure the payment of the Note pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statute administered by the Farmers Home Administration.

This instrument shall secure payment of the Note whenever the Note is held either by the Government or by an uninsured holder. Whenever the Note is held by an insured holder, however, this instrument shall not secure payment of the Note or attach to the underlying debt. In that event, this instrument shall constitute an indemnity mortgage to secure any payments to an insured holder of the Note or other advances which the Government may be required to make upon default by the Borrower. The insured holder shall have no right, title or interest in or to the lien of this instrument or its benefits. This instrument also secures the Borrower's obligations and covenants under other instruments delivered in connection with the loan evidenced by the Note, including the Borrower's Loan Agreement hereby incorporated by reference. The Note, Loan Agreement, Security Agreement, and this instrument together with any supplements, attachments, modifications and additions are collectively referred to as the "Loan Instruments".

NOW THEREFORE, in consideration of the loan(s) the Borrower hereby mortgages, assigns, grants and conveys to the Government, the following property in Berks County(ies),:

ALL THAT CERTAIN lot or piece of land, SITUATE in the Borough of Mohnton, Berks County, Pennsylvania, bounded and described as follows, to wit:-

BEGINNING at a point on the Easterly side of Maplewood Avenue (44 feet right-of-way) said point being located North 02 degrees 37 minutes 00 seconds East 139.15 feet from the Northerly end of a 10.08 feet radius junction curve joining the Northerly side of East Madison Street (54 feet right-of-way) with the Easterly side of Maplewood Avenue; thence from the point of beginning crossing Maplewood Avenue and along line of lands of Mabel V. Leininger North 87 degrees 23 minutes 00 seconds West 134.45 feet to a point on the Easterly side of Mohnton Boulevard (unopened); thence by the same North 08 degrees 52 minutes 00 seconds East 52.45 feet to a point, a corner for other lands of Park Terrace Open Space; thence by the same the following two courses and distances, viz: (1) By an arc of a circle curving to the right having a radius of 137.67 feet the arc distance of 48.16 feet to a point; (2) North 00 degrees 25 minutes 50 seconds West 241.33 feet to a point, a corner formed by Phase II and Phase III of Park Terrace Apartments; thence by the same the following three sourses and distances, viz: (1) South 88 degrees 19 minutes 17 seconds East 358.68 feet to a point; (2) By an arc of a circle curving to the right having a radius of 70.00 feet the arc distance of 248.41 feet to a point; (3) South 86 degrees 58 minutes 00 seconds East 17.29 feet to a point, on line of lands of Mohnsville Cemetery Company; thence by the same South 03 degrees 02 minutes 00 seconds West 356.98 feet to a point on the Northerly side of a 14 feet wide alley (unopened); thence by the same North 87 degrees 23 minutes 00 seconds West 402.43 feet to the first mentioned point and place of beginning.

CONTAINING in said metes and bounds 4.109 +/-Acres.

BEING part of the same premises which Alvin Segal and Eleanore, his wife by Deed dated January 24, 1977 and recorded at Reading, Pa. in Deed Book 1706 page 310, granted and conveyed unto Alvin Segal and Eleanore, his wife, in fee.

LVOL1341 PAGE 354

This is a purchase money mortgage under the lien priority laws of the Commonwealth of Pennsylvania, as amended.

TOGETHER with all the improvements, tenements and appurtenances now or hereafter erected on the property, and all easements, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, all leasehold rights of any kind, and all fixtures now or hereafter attached to or used in connection with the property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, natural gas, water, air and light; and including, but not limited to, all plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, washers, dryers, awnings, screens, blinds, shades, storm windows, storm doors, antennas, attached floor coverings, trees and plants; all of which including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this instrument; and all payments at any time owing to the Borrower by virtue of any sale, lease, transfer, conveyance or condemnation of any part thereof or interest therein--all of which are herein collectively referred to as the "Property".

THIS MORTGAGE is also intended as a Financing Statement covering fixtures which are affixed or which may become affixed to the above-described property. The types of collateral covered hereby are described in the preceding paragraph.

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

The Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, and convey the Property, and that the Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to easements and restrictions of record.

THIS MORTGAGE SHALL SECURE (a) payment of the Note in accordance with its terms, including any extensions or renewals thereof, whenever the Note is held by either the Government or by an uninsured holder; (b) repayment, with interest, of any payments, advances and expenditures made by the Government pursuant to the terms of this or any other Loan Instrument; and (c) performance of every covenant and agreement of the Borrowers contained in this or any other Loan Instrument.

The Borrower, for itself, its successors and assigns, WARRANTS the title to Property to the Government against the lawful claims of all persons whose claims are not based upon liens, encumbrances, easements or reservation specified above.

The Borrower, for itself, its successors and assigns, COVENANTS AND AGREES as follows:

(1) Borrower will promptly pay any indebtedness secured by this instrument when due.

(2) Borrower will indemnify the Government against any loss which the Government may incur as a result of making payments to an insured holder of the Note after the Borrower's default.

(3) Borrower will pay the Government any fees or other charges required under regulations of the Farmers Home Administration.

(4) Borrower will pay when due all taxes, liens, judgments, encumbrances and assessments lawfully attaching to or assessed against the Property, and, without demand, will also provide the Government with proof of those payments.

(5) Borrower will pay the Government for any expenses necessary or incidental to (a) the protection of the lien or priority of any Loan Instrument and to (b) the enforcement of or compliance with the provisions of any Loan Instrument. "Expenses" includes (without limitation) costs of evidence of title, surveys, recording fees, attorneys' fees and trustees' fees, as well as court costs and expenses of advertising, selling and conveying the Property or any portion of it.

(6) Borrower will use the loan evidenced by the Note solely for the purposes authorized by the Government.

(7) Borrower will keep the Property insured as required by the Government and will deliver the originals of all insurance policies to the Government for safekeeping.

(8) Borrower will comply with all laws, ordinances and regulations affecting the Property and the conduct of Borrower's business operations.

(9) Borrower will maintain the Property in good repair and make any repairs the Government may require.

(10) Borrower will operate the Property in a good and efficient manner and will comply with management plans and practices which the Government may prescribe from time to time.

(11) Borrower will not abandon the Property; effect waste, lessening or impairment of the Property; or cut, remove or lease any timber, gravel, oil, gas, coal or other minerals.

(12) Borrower will not (except in the ordinary course of business) lease, assign, sell, transfer or encumber the Property or any nonexpendable part thereof, voluntarily or otherwise, either in whole or in part, without the prior written consent of the Government.

(13) The property described herein was obtained or improved through Federal financial assistance. This property is subject to the provisions of Title VI of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973 and the regulations issued pursuant thereto for so long as the property continues to be used for the same or similar purpose for which financial assistance was extended or for so long as the purchaser owns it, whichever is longer.

(14) If at any time it shall appear to the Government that the Borrower may be able to obtain a loan from a production credit association, a federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, the Borrower will, upon the Government's request, apply for and accept a loan in sufficient amount to pay the Note and any other indebtedness secured by this instrument and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such a loan.

(15) The Government may require the Borrower to make additional monthly payments equal to one-twelfth of the estimated taxes, assessments, insurance premiums and other charges upon the Property.

(16) The Government and its agents may inspect the Property at reasonable times to ascertain whether the Borrower is fulfilling its obligations under this or any other Loan Instrument.

(17) The Government may at any time pay as advances for the Borrower's account any amounts which the Borrower is obligated to pay under any Loan Instrument. The Government may exercise this right regardless of whether the Note is insured and regardless of whether advances exceed the face amount of the Note.

(18) All advances by the Government pursuant to the terms of this or any other Loan Instrument shall bear interest at the rate borne by the Note which bears the highest interest rate. Advances, together with interest accruing on them, shall be immediately due and payable by the Borrower at the place designated in the latest Note. Advances by the Government shall neither relieve the Borrower of its obligation to pay nor cure any default under any Loan Instrument.

(19) Except to the extent specified by the Government in writing, the Government in its sole discretion may grant an extension of the time for payment or modification of amortization of the indebtedness secured by any Loan Instrument, release any party from liability to the Government, release portions of the Property from the lien of any Loan Instrument, and waive any other Government right under any Loan Instrument without affecting the lien or priority of any Loan Instrument, or the liability of the Borrower or any other party for payment of the indebtedness secured by any Loan Instrument.

(20) The Government will not be bound by any present or future state laws (a) providing for valuation, appraisal, homestead or exemption of the Property; (b) prohibiting or restricting an action for deficiency judgment or limiting the judgment amount which may be awarded; (c) prescribing any statute of limitations; (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions the Government may impose by regulation as a condition of approving a transfer of the Property to a new borrower. THE BORROWER WAIVES THE BENEFIT OF ANY SUCH STATE LAWS.

(21) Should the Borrower DEFAULT on any of its obligations under any Loan Instrument, merge, dissolve, be declared bankrupt or insolvent, or make an assignment for the benefit of creditors, without Notice the Government may (a) accelerate the entire indebtedness secured by this instrument by declaring it immediately due and payable; (b) charge the Borrower's account for any reasonable expenses which the Government may pay or incur to maintain and repair the Property; (c) process, operate and rent the Property; (d) have a receiver appointed for the Property who may exercise the usual powers of receivers in similar cases; (e) foreclose this and any other Loan Instrument and sell the Property; (f) enforce any and all other rights and remedies provided in the Loan Instruments or by future or present laws.

(22) Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated and of the United States of America, on terms and conditions satisfactory to the Government, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and in the manner and after such notice and on terms required by statute or determined by the Government if not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(23) Proceeds of a foreclosure sale pursuant to any Loan Instrument shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions of any Loan Instrument; (b) any prior liens required by law or a competent court to be paid; (c) all indebtedness to the Government secured by this instrument; (d) inferior liens of record required by law or a competent court to be paid; (e) at the Government's option, any other indebtedness of the Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(24) If the Government is the successful bidder at a foreclosure sale under any Loan Instrument, any portion of the purchase price not owed to a third party may be paid by crediting that amount on any debts of the Borrower which are owed to or insured by the Government.

(25) The rights and remedies provided in this instrument are cumulative and shall be in addition to every other remedy now or hereafter existing at law, in equity, by statute or by regulation.

(26) A waiver, amendment, release or modification of this instrument may be effected only by a writing which has been duly executed by the Government and shall not be established by conduct, custom or course of dealing.

(27) This instrument shall be governed by federal law, and shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this instrument.

(28) Default under this instrument shall constitute a default under any other security instruments of the Borrower held or insured by the Government and default under any other security instrument constitutes default under this instrument.

(29) The invalidity or unenforceability of any portion of this instrument shall not effect the validity or enforceability of the remaining portion of this instrument.

(30) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(31) Notices to the Borrower shall be sent to its address as shown on the first page of this instrument. Notices to the Government shall be addressed to the Farmers Home Administration, United States Department of Agriculture, Federal Building, Room 728, P. O. Box 905, Harrisburg, Pennsylvania 17108. Notices shall be sent by certified mail (postage prepaid) unless otherwise required by law. The Government and the Borrower may designate any further or different addresses to which subsequent notices shall be sent.

(32) THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE, OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN: AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL, AND IN THAT CONNECTION DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING, OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT.

(33) This instrument, together with the other loan instruments, mortgages and encumbers only the assets of the borrowing Partnership named herein and offers to the Government no recourse for repayment of the indebtedness from the personal assets of any present or future member of the Partnership, whether individual or corporate.

IN WITNESS WHEREOF, the Borrower has caused this Mortgage to be executed by its Partner(s) who hereunto set(s) his/their hand(s) and seal(s) as of the date first written above.

Park Terrace East Limited

By [signature]
Alvin Segal
General Partner

Signed, sealed and delivered in the presence of:

________________________(WITNESS)

ACKNOWLEDGMENT

STATE OF PENNSYLVANIA
) ss:
COUNTY OF BERKS

On this 14th day of May, 1981 before me, Arlene C. White, notary public, personally appeared Alvin Segal, known to me, who being duly sworn, did say that they are the partners of the Partnership that executed the within instrument, and acknowledged to me that such Partnership executed the same.

(NOTARIAL SEAL)

ARLENE C. WHITE NOTARY PUBLIC COMMONWEALTH OF PENNSYLVANIA

[signature: Arlene C. White]
NOTARY PUBLIC

My Commission expires: 9/29/81.

VOL 1341 PAGE 360

The form of this instrument was prepared by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of

| NAME | TITLE |
|---|---|