No. 05-677C
(Judge Christine O.C. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TAMERLANE, LIMITED, et. al,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY TO SUPPLEMENTAL MEMORANDUM
OF PLAINTIFFS, MULLICA WEST LIMITED AND PARK TERRACE LIMITED,
IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

---

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643

Attorneys for Defendant

**Filed electronically**

December 6, 2007

# TABLE OF CONTENTS

DEFENDANT'S REPLY TO SUPPLEMENTAL MEMORANDUM OF PLAINTIFFS, MULLICA WEST LIMITED AND PARK TERRACE LIMITED, IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Preliminary Statement . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. The Complaint Fails To State A Timely Claim On Behalf Of Mullica And Park Terrace . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. Park Terrace And Mullica Cannot Nullify The Effect Of The Government's Having Refrained From Granting Their Prepayment Requests In The Early 1990s By Characterizing The Requests As A Charade . . . . . . . . . . . . . . . . . . .. . . . . 5

B. The Complaint Fails To State A Claim As To Rights That Have Not Yet Vested . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. The Complaint Fails To State A Claim For An Uncompensated Taking . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

Allegre Villa v. United States,
60 Fed. Cl. 11 [(2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Bowles v. Russell,
127 S.Ct. 2360 (June 14, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Franconia Associates v. United States,
536 U.S. 129 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Franconia Assocs. v. United States,
61 Fed. Cl. 718 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sun Oil Co. v. United States,
572 F.2d 786, 215 Ct. Cl. 716 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATUTES

42 U.S.C. § 1472(c)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

42 U.S.C. § 1472(c)(5)(G)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Emergency Low Income Housing Preservation Act, Pub. L. No. 100-242, 101 Stat. 1877
(1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TAMERLANE, LIMITED, et. al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05-677C |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO SUPPLEMENTAL MEMORANDUM
OF PLAINTIFFS, MULLICA WEST LIMITED AND PARK TERRACE LIMITED,
IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to the Court's Order of October 24, 2007, defendant, the United States, respectfully submits the following reply to the supplemental memoranda of plaintiffs Mullica West Limited ("Mullica") and Park Terrace Limited ("Park Terrace"), in opposition to our motion for judgment on the pleadings concerning the claims of these plaintiffs.

DEFENDANT'S BRIEF

Preliminary Statement

In its May 18, 2007 Opinion, the Court concluded that the claims of Mullica and Park Terrace were barred by the statute of limitations at least in part, but not necessarily in their entirety. The Court treated the claims of these plaintiffs as having vested as to some, but not all, of the periods in question, depending upon the expiration of restrictive use provisions of equity loans accepted by these plaintiffs in lieu of being permitted to prepay loans received from the Farmers Home Administration ("FmHA") pursuant to sections 515 and 521 of the Housing Act of 1949. In our supplemental brief filed June 5, 2007 ("Def. June Supp. Br."), we noted that the Court did not state that any of the rights actually asserted in the complaint had failed to vest, or that the events that triggered the statute of limitations as to at least a portion of each plaintiff's

claim failed to do so as to the entire claim. We further demonstrated that to hold that plaintiffs could continue treating the enactment of the Emergency Low Income Housing Preservation Act, Pub. L. No. 100-242, 101 Stat. 1877 (1988) ("ELIHPA"), as an anticipatory breach for statute of limitations purposes after the occurrence of an actual breach would be inconsistent with Franconia Associates v. United States, 536 U.S. 129 (2002).[1] Additionally, we demonstrated that, even if the statute of limitations could be deemed not to have run with respect to claims that had not vested, the complaint failed to state any such claims. Finally, we demonstrated that the remedy for the Government's refusal to accept prepayment of an FmHA loan and release the borrower from the loan program is an action for breach of contract, and that a separate cause of action for a taking of property without just compensation is not available in such cases.

---

[1] Although the supplemental briefs previously filed by the parties do not discuss the jurisdictional nature of the statute of limitations in question, it should be noted that, subsequent to the filing of our last supplemental brief, the United States Supreme Court issued a decision that is pertinent to this issue. In that decision, the Court stated:

> Jurisdictional treatment of statutory time limits makes good sense. Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider. Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them. Put another way, the notion of "subject-matter" jurisdiction obviously extends to "classes of cases . . . falling within a court's adjudicatory authority," but it is no less "jurisdictional" when Congress forbids federal courts from adjudicating an otherwise legitimate "class of cases" after a certain period has elapsed from final judgment.

Bowles v. Russell, 127 S.Ct. 2360, 2365-66 (June 14, 2007) (internal quotations and citations omitted). Although Bowles involved the effect of statutory time limits upon appellate jurisdiction, the reasoning contained in the above-quoted observation is equally applicable to statutes prohibiting federal trial courts from adjudicating an otherwise legitimate "class of cases" after a certain period has elapsed from the accrual of the cause of action.

In plaintiffs' June 15, 2007 supplemental memorandum ("Pl. June Supp. Mem."), plaintiffs responded, in part, by arguing that discovery should be permitted before dismissal of their breach of contract claims as untimely. On June 25, 2007, the Court issued an Order ("June Order") stating that it would "rely on transactional documents in ruling on defendant's dispositive motion relative to the extension period," and, upon this basis, ordered that "Plaintiffs may engage in documentary discovery until August 20, 2007, limited to the remaining transaction." June Order 1. In the same Order, the Court vacated paragraph 3 of its May 22, 2007 Order, pursuant to which the Government's reply to plaintiffs' June 15, 2007 supplemental brief would have been due on June 25, 2007, and stated that the Court would set the remaining briefing schedule by further order. In its October 24, 2007 Order, the Court directed plaintiffs to file a further supplemental brief by November 15, 2007, and the Government to file its reply by December 6, 2007. Because our opportunity to reply to plaintiffs' June 15, 2007 supplemental brief was suspended by the June 25, 2007 Order pending a further scheduling order, which was issued on October 24, 2007, this reply addresses plaintiffs' June supplemental memorandum as well as their supplemental memorandum of November 15, 2007 ("Pl. Nov. Supp. Mem.").

Although plaintiffs' filing of a second supplemental memorandum was a result of the Court's determination to "rely on transactional documents in ruling on defendant's dispositive motion relative to the extension period" and to permit discovery in this regard, and although it is apparent that the referenced "extension period" is the period subsequent to the expiration of restrictive use provisions of equity loans discussed in the May 18, 2007 Opinion, plaintiffs' November supplemental memorandum does not discuss the extension period. Instead, plaintiffs utilize this memorandum to reargue the question whether the events of 1988 through 1992 concerning the prepayment requests of Mullica and Park Terrace triggered the statute of

limitations at all. Plaintiffs' argument here is essentially a repetition of the argument, rejected by the Court in its May 18, 2007 Opinion, that although they did in fact submit prepayment applications more than 15 years prior to filing suit, these applications were merely "pro forma" (or, as more colorfully characterized in the November supplemental memorandum, a "charade"), and thus did not trigger the statute of limitations. Plaintiffs cite several documents produced in discovery subsequent to the issuance of that Opinion as proving that both plaintiffs and the Government regarded these prepayment applications as a charade, but the cited documents prove no such thing. Plaintiffs' argument is also inconsistent with the facts and legal theory pleaded in the complaint. Plaintiffs have provided no reason for the Court to depart from its previous conclusion that events in and before 1992 triggered the statute of limitations with respect to the claims of Mullica and Park Terrace.

Nor can Mullica and Park Terrace preserve from the statute of limitations the period following the expiration of the restrictive use provisions of their equity loans, based upon the argument contained in their June supplemental memorandum. This argument entirely misconstrues the relationship between the restrictions contained in the equity loans and those contained in plaintiffs' Section 515 loans, the effect of the former upon the latter, and the relationship between all of these restrictions and the contract right alleged to have been breached: the right to prepay the Section 515 loans.

Plaintiffs also argue in their June memorandum that an "alternative takings claim" exists as a result of the equity loan transactions: that, through these transactions, the Government extinguished plaintiffs' right to pursue breach of contract claims. No such alternative claim appears in the complaint, but, even if such a claim could be read into the complaint, it would fail as a matter of law. First, with respect to Park Terrace and Mullica, the referenced equity loan

transactions occurred in or before 1992; consequently, a takings claim arising from those transactions would be no less time barred than the claims actually pleaded. Second, the facts alleged in the complaint do not support a conclusion that these transactions were involuntary, nor would such a conclusion be consistent with the statutes and regulations governing such transactions. Third, here again, plaintiffs misconstrue the effect of the equity loan transactions. Plaintiffs' right to pursue breach of contract claims were not extinguished by these transactions. Even after these transactions, plaintiffs could have sued for breach of contract at any time within six years of the accrual of their claims.

## ARGUMENT

### I. The Complaint Fails To State A Timely Claim On Behalf Of Mullica And Park Terrace

#### A. Park Terrace And Mullica Cannot Nullify The Effect Of The Government's Having Refrained From Granting Their Prepayment Requests In The Early 1990s By Characterizing The Requests As A Charade

In an attempt to revive the argument, rejected by the Court in its May 18, 2007 Opinion, that the prepayment applications submitted by Park Terrace in 1991 and Mullica in 1988 were merely "pro forma"and thus did not trigger the statute of limitations, plaintiffs cite several documents as proving that both plaintiffs and the Government regarded these prepayment applications as a "charade." These documents, however, merely confirm what was previously undisputed: that a borrower submitting a prepayment request could not expect the request to be granted except under the conditions specified in ELIHPA, and that ELIHPA authorized the Government to offer, to borrowers who apply to prepay their loans, incentives (such as equity loans) to avert prepayment. 42 U.S.C. § 1472(c)(4)(B).

Plaintiffs argue that "[w]ith the Government positioning its incentive program as one of 'in lieu of' or 'to avert' prepayment, it is hard to square the 'prepayment' letters in this case with

Franconia's requirement of a meaningful tender of performance and dishonor, which is necessary to cause the Government's repudiation to ripen into an actual breach triggering accrual of the claim." Pl. Nov. Supp. Mem. 7. However, whatever plaintiffs may mean by a "meaningful" tender, prepayment requests such as those at issue here are exactly the kind of requests for performance which trigger the obligation to perform, and it is the failure to allow prepayment in response to such requests that triggers accrual of the claim under Franconia. The basis upon which plaintiffs assert that their submission of their prepayment requests were not "meaningful" is that they allegedly could not be expected to result in acceptance of prepayment; that under the prepayment restrictions of ELIHPA, "the Government's denial of the putative 'prepayment' requests was mechanical and foreordained." Pl. Nov. Supp. Mem. 5. Yet, Franconia involved the very same prepayment restrictions. The Government's denial of the prepayment requests of Mullica and Park Terrace was no more mechanical and foreordained than in the case of the prepayment requests in Franconia. A failure to allow prepayment in response to a prepayment request submitted in the face of the ELIHPA restrictions is exactly what the Court in Franconia held to be the event that triggers the statute of limitations.

Further, the documents upon which plaintiffs rely belie the characterization of the prepayment requests as a charade. Plaintiffs point to language contained in the agency's Guidelines for Accepting Prepayment in Order to Ensure Tenant Protections, stating:

> III. In accordance with paragraph IV of Exhibit E, every borrower who requests to prepay, and can document the ability to prepay, will be offered an incentive not to do so. The size of the incentive will be based on whether this housing is needed by current tenants and other low- and moderate-income people in the market area, and on the loss to the borrower by remaining in the FmHA program. The size of the incentive may not be based on whether the borrower actually wishes to prepay or wishes to

> receive an incentive not to repay, or on whether the borrower is a servicing problem.

Pl. Nov. Supp. Mem. 7, quoting Pl. Nov. Supp. Mem. App. 20-21 (emphasis added by plaintiffs). The portion of this passage that plaintiffs choose to emphasize states that the size of the incentive cannot be based upon such subjective factors as the actual wishes of the borrower. More significant is the fact that the same passage limits incentives to borrowers who not only "request to prepay," but who also "can document the ability to prepay . . . ." Id. There would be no need for such a requirement unless incentives were meant to be limited to cases where there is a genuine likelihood, based upon objective facts, that the borrower would actually prepay if permitted to do so.

Moreover, even assuming that the statute of limitations would not be triggered by a prepayment application in a case where the borrower overtly disclaimed any actual desire to prepay and submitted the application only as a means of obtaining an equity loan or other incentive designed to avert prepayment, that is not the case here.[2] The complaint expressly alleges that "[b]ut for the Government's conduct, plaintiffs would have terminated their contracts by prepaying their mortgage loans . . . ." Complaint ¶ 47 (emphasis added). Plaintiffs' contention that they were harmed by the ELIHPA restrictions is based entirely upon the premise that they would have prepaid their loans and the terminated the affordability restrictions associated with those loans if the Government had permitted them to do so.

---

[2] If this were the case, plaintiffs' claims would fail on the merits, because plaintiffs would have received what they requested and would have been deprived of no opportunity they would have utilized.

Finally, plaintiffs' argument is at odds with the legal theory underlying their claims. At the heart of these claims is the contention that the prepayment restrictions contained in ELIHPA repudiated the right of FmHA loan program participants to prepay their Section 515 loans and terminate their loan agreements at any time. Complaint ¶¶ 24-29. What made ELIHPA an anticipatory breach of contract, according to plaintiffs, was not that it mandated an outright, absolute, permanent rejection of any and all requests to prepay, but that it repudiated plaintiffs' right to prepay "at any time at any time at their option." Complaint ¶ 24. Under this theory, the measures provided in ELIHPA for averting prepayment, including the incentive offers, are inconsistent with the right to prepay at any time. According to the theory that plaintiffs advance now, however, responding to a prepayment request with an incentive offer is not a breach of the prepayment right. Under this theory, ELIHPA cannot be characterized as a repudiation. Repudiation "entails a statement or 'voluntary affirmative act' indicating that the promisor 'will commit a breach' when performance becomes due." Franconia, 536 U.S. at 143, quoting Restatement (Second) of Contracts § 250 (1979). ELIHPA never requires an absolute, permanent refusals to accept prepayment. It permits – indeed, encourages – incentive offers to borrowers who offer to prepay and are able to do so, 42 U.S.C. § 1472(c)(4)(A), (B), and permits prepayment in certain circumstances, either subject to certain restrictions, section 1472(c)(5)(G)(ii)(I), or without restrictions, section § 1472(c)(5)(G)(ii)(II), depending upon the circumstances. Nothing in ELIHPA requires the kind of conduct that, under plaintiffs' present theory, would constitute a breach of the prepayment right.

Thus, if plaintiffs' present theory were sound, the claims of Mullica and Park Terrace would involve neither an anticipatory breach nor an actual breach of the prepayment right, but

merely a potential future breach in the event plaintiffs were to be precluded from prepaying their Section 515 loan after the expiration of the 20-year restrictive use provisions of the equity loans. Whatever right plaintiffs might have to sue for such a breach if and when it occurs, their current suit would be premature and would have to be dismissed for failure to state a claim upon which relief can be granted.

In sum, there is no dispute that Mullica and Park Terrace submitted prepayment requests at a time when they actually wished to prepay. The requests were not granted. If these plaintiffs did not expect their requests to be granted in view of ELIHPA's prepayment restrictions, and if a desire to at least obtain the benefit of incentives was what made submitting the requests worth the effort, this does not render the requests less meaningful that then requests contemplated by the Supreme Court in Franconia. Nor was there any less of a refusal to perform when performance became due, according to plaintiffs' theory of liability, merely because the Government responded to the requests with incentive offers rather than simple, unconditional rejections. And, under Franconia, the Government's refusal to honor these requests triggered the statute of limitations.

B. The Complaint Fails To State A Claim As To Rights That Have Not Yet Vested

As we demonstrated in our June 5, 2007 supplemental brief, the complaint does not allege that the Government's past refusal to accept prepayment was limited to the period preceding the expiration of the restrictive use provisions contained in the equity loans, nor does the complaint otherwise allege separate sets of rights, some vested and some not, some actually breached and some only repudiated. Rather, the allegations in the complaint are inconsistent with such a bifurcation of the claims in question.

The gist of plaintiffs' response in their June supplemental memorandum is that their prepayment rights were never actually denied; assuming the requests were denied, the denial consisted of the imposition of the 20-year restrictive use provisions of the equity loans that they accepted in lieu of prepayment; since these restrictions were only for a 20-year term, there was no denial of the prepayment request with respect to the period following the 20-year term of the restrictions; and, therefore, plaintiffs' claims with respect to the latter period are not time-barred. This theory, however, is wrong in several respects, and, even if it were correct, it would not salvage plaintiffs' claims.

Plaintiffs' theory is wrong in primarily in the following respects:

First, whether or not the Government utilized the term "denied" in responding to plaintiffs' prepayment requests, plaintiffs cannot escape their own allegation that "[t]he Government has in every instance refused to accept prepayment from plaintiffs pursuant to the provisions of their contracts." Complaint ¶ 41. And, as we have demonstrated, there was no less of a refusal to perform when performance became due according to plaintiffs' theory of liability, merely because the Government responded to the requests with incentive offers rather than simple, unconditional rejections.

Second, it was the refusal to allow prepayment at the time of the requests to prepay – not the imposition of the 20-year restrictive use provisions of the equity loans – that constituted the denial plaintiffs' prepayment requests and the non-performance upon which plaintiffs' claim of liability is based. Indeed, if Park Terrace and Mullica had rejected the Government's offer of an equity loan, there would have been no pretext for them to even mention the 20-year term upon which they now rely, much less confuse these restrictions with the Government's refusal to

accept prepayment of the their Section 515 loans. The Government's refusal to accept prepayment and the parties' transaction of the equity loans were separate events.[3]

Third, the Section 515 loans and the equity loans were separate loans, each with their own terms and restrictions. Thus, the scope of the refusal to accept prepayment of the Section 515 loans was not defined by the terms of the equity loans. As a result of this refusal, plaintiffs remained subject to the restrictions contained in the terms of their Section 515 loans, independent of any new restrictions contained in the terms of their equity loans. The latter restrictions did not replace the former restrictions, and the fact that the latter restrictions were limited to 20 years from the date of the equity loans did not mean that the Government would accept prepayment of plaintiffs' Section 515 loans or release plaintiffs from the restrictions entailed by their Section 515 loans upon the expiration of the restrictions of the equity loans. Absent a change in circumstances, prepayment of the Section 515 loans would remain subject to the same statutory prepayment restrictions – those prescribed in ELIHPA – after the expiration of the equity loans as at the time of the original prepayment requests. Indeed, it is for this very reason that plaintiffs assert a right to sue with respect to the period after the expiration of the equity loans. Thus, there is no basis for asserting that the Government denied plaintiffs'

[3] This is not to say that the equity loans are entirely irrelevant. The significance of the equity loans is this: The Government's offer of equity loans was an acknowledgment of receipt of plaintiffs' prepayment requests and an indication that the Government was not allowing plaintiffs to prepay. Plaintiffs' acceptance of equity loans was an indication that their prepayment requests were neither withdrawn prior to denial nor intended as mere tentative inquiries. The restrictive use provisions of the equity loans preclude plaintiffs from arguing that they were still awaiting acceptance of their prepayment requests after receiving the equity loans, since prepayment would only terminate the restrictions under their Section 515 loans, not the independent restrictions under their equity loans. Nothing about the equity loans, however, made the denial of plaintiffs' prepayment requests any more limited than if there had been no equity loans at all.

prepayment requests only with respect to the 20-year restrictive use provisions of the equity loans.

Fourth, to the extent that the Government's refusal to accept prepayment may be viewed as not permanent, it is no different from any other refusal to accept prepayment based upon the ELIHPA restrictions. ELIHPA provided no basis for permanent refusals to accept prepayment; there is always a possibility of a change in circumstances that would allow a borrower to meet the prerequisites for prepayment prescribed by ELIHPA. Thus, a simple refusal to accept prepayment is no more permanent than a refusal coupled with an equity loan adding time-limited use restrictions. The Government's refusal to grant the prepayment requests of Mullica and Park Terrace, therefore, triggered the statute of limitations to the same extent as a simple refusal with no incentive.

## II. The Complaint Fails To State A Claim For An Uncompensated Taking

In our June 5, 2007 supplemental brief, we demonstrated that the remedy for the Government's alleged repudiation of the right to prepay Section 515 loans, and for the refusal to accept prepayment of such a loan and release the borrower from the loan program, is an action for breach of contract; a separate cause of action for a taking of property without just compensation is not available in such cases. We established this based not only upon numerous cases precluding takings claims based upon infringements of rights created by a contract with the Government, but also upon cases rejecting takings claims virtually identical to the claim here, based upon ELIHPA's restrictions upon prepayment of Section 515 loans. See Franconia

Assocs. v. United States, 61 Fed. Cl. 718, 739-740 (2004); Allegre Villa v. United States, 60 Fed. Cl. 11, 18-19[(2004).[4]

Plaintiffs attempt to distinguish this case from Franconia and Allegre Villa by stating that "at issue here is the extinguishment of the right to sue arising from the consequences of [ELIHPA]." Pl. June Supp. Mem. 11. Plaintiffs do not claim that they pleaded a claim alleging any such extinguishment, but argue that

> an alternative takings claim could be based, not on the refusal to allow prepayment, but on the transaction in which the Government sought to extinguish the rights of Responding Plaintiffs to vindicate their harm by bootstrapping on to the equity loan process a set of "application" documents which would later be relied on to foreclose the unborn breach of contract claims. . . .

Id. Upon this basis, plaintiffs argue that "[t]he takings claims, then, derive from a source – the equity loan transactions – independent of the underlying original contracts (the loans themselves)." Id. at 12. This argument fails, however, for several reasons.

---

[4] Among the reasons for this is that compensation under the Takings clause is a remedy for actions taken by the Government in its sovereign capacity, under its power of eminent domain, not actions taken by the Government in its proprietary capacity. Sun Oil Co. v. United States, 572 F.2d 786, 818, 215 Ct. Cl. 716 (1978); Franconia, 61 Fed. Cl. at 740. Plaintiffs acknowledge this, but assert that "Congress was not acting 'commercially' when it passed ELIHPA, in the sense that it sought to advance its own financial interests, but to ensure an adequate supply of low income housing for the public benefit . . . ." Pl. June Supp. Mem. 10. We agree with thus description of the purpose of ELIHPA. This Court, however, has treated the enactment of ELIHPA as commercial, and, upon this basis, has rejected our argument that the unmistakability doctrine precluded the contract interpretation underlying Section 515 prepayment suits. See, e.g., Franconia, 61 Fed. Cl. at 735; Allegre Villa v. United States, 60 Fed. Cl. 11 at 16-17. If the Court were

First, with respect to Park Terrace and Mullica,[5] the referenced equity loan transactions occurred in or before 1992; consequently, a takings claim arising from those transactions would be no less time barred than the claims actually pleaded.

Second, plaintiffs' argument presupposes that the equity loans were unilaterally forced upon plaintiffs by the Government. Plaintiffs cannot transform the bilateral nature of the equity loans by arguing that it was accepted under duress. In addition to the observations of this Court concerning plaintiffs' allegation of duress, slip op. 15-16, we note that plaintiffs have alleged no facts and cited no statutory or regulatory provisions indicating that rejecting an equity loan would have any consequence other than that of not receiving an equity loan. Plaintiffs assert that "absent the Government's initiation of the incentives transaction . . . , the property owners could have maintained the status quo and done nothing." Pl. Supp. June Mem. 12. Plaintiff's do not explain why, even after "the Government's initiation of the incentives transaction," they could not have "maintained the status quo and done nothing." At least one plaintiff in fact did nothing; the complaint alleges that only "certain of the plaintiffs have submitted applications for prepayment and/or an offer of 'incentives' from the Government." Complaint ¶ 41. And, the "the Government's initiation of the incentives transaction," even as described by plaintiffs, amounted to nothing more than advice that, if they applied to prepay, prepayment would not be accepted but an incentive might be offered. If any of the plaintiffs applied to prepay only

[5] Because our motion for judgment on the pleadings was based upon the statute of limitations, and because Park Terrace and Mullica are the only plaintiffs who submitted offers to prepay which were rejected more than six years before suit was filed, our motion was addressed only to these two plaintiffs. The grounds for dismissing the takings claims, however, are applicable to all plaintiffs.

because they desired equity loans or other incentives, they can claim to have been victims of temptation, but not of coercion.

Third, there has been no "extinguishment" of any right to sue or of "unborn breach of contract claims," as a result of the equity loan transactions or otherwise. At most, certain events involved in these transactions – particularly, plaintiffs' prepayment requests and the Government's offer of incentives <u>instead</u> of accepting prepayment – triggered the statute of limitations upon the contract claims. Park Terrace and Mullica still could have sued for breach of contract at any time within six years after these events. The equity loans might have had a bearing upon the merits of the contract claims and upon the quantification of damages attributable to the alleged breach, but these would be issues to resolve in such a suit, not obstacles to bringing the suit. And, as far as any "unborn breach of contract claims" are concerned, plaintiffs remain free to pursue those claims – once they are born.

In sum, neither plaintiffs' originally-pleaded takings claim nor their new "alternative takings claim" states a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in our previous briefs in this matter, all of the claims of plaintiffs Park Terrace and Mullica should be dismissed, and the takings claims asserted in Count Two of the complaint should be dismissed as to all plaintiffs, with prejudice.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

**s/Jeanne E. Davidson**
JEANNE E. DAVIDSON
Director

**Filed electronically**

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643

Attorneys for Defendant

December 6, 2007

CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of December, 2007, a copy of the foregoing "DEFENDANT'S REPLY TO SUPPLEMENTAL MEMORANDUM OF PLAINTIFFS, MULLICA WEST LIMITED AND PARK TERRACE LIMITED, IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**s/Shalom Brilliant**