# In the United States Court of Federal Claims

No. 05-677C
(Filed December 10, 2007)

* * * * * * * * * * * * * * * * * * * * * * *

**TAMERLANE, LIMITED, PARK TERRACE LIMITED, PARK TERRACE EAST LIMITED, and MULLICA WEST LIMITED,**

Plaintiffs,

v.

**THE UNITED STATES,**

Defendant.

* * * * * * * * * * * * * * * * * * * * * * *

Contracts, breach of contracts, Franconia Associates v. United States, 536 U.S. 129 (2002); Housing Act of 1949, Pub. L. No. 81-171, 63 Stat. 413; jurisdiction; statute of limitations; 25 U.S.C. § 2501 (2000); Emergency Low Income Housing Preservation Act of 1987, Pub. L. No. 100-242, 101 Stat. 1815 (1988) ("ELIHPA")

H. Robert Fiebach, Philadelphia, PA, for plaintiffs. David M. Doret, Cozen O'Connor, of counsel.

Shalom Brilliant, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. Michael S. Dufault and Kenneth D. Kessler, Department of Justice and Alicia Peden, Office of General Counsel, Department of Agriculture, of counsel.

**ERRATA**

Please replace the attached corrected pages 11 and 15 of the Memorandum Order and Opinion filed on May 18, 2007. Each original contained one error.

s/ Christine O.C. Miller

______________________________
**Christine Odell Cook Miller**
Judge

> obligation to accept the tender and release its control over use of the property that secured the loan.

536 U.S. at 133.

Following the Supreme Court's decision, this court had an opportunity to address the issue again in Allegre Villa v. United States, 60 Fed. Cl. 11 (2004). This court stated:

> The passage of ELIHPA and HCDA operated as a repudiation on the part of the Government, which "ripens into a breach prior to the time for performance only if the promisee 'elects to treat it as such.'" Id. The option to choose the date of breach by filing suit arises because repudiation "give[s] the promisee the right of electing . . . to wait till the time for [the promisor's] performance has arrived, or to act upon [the repudiation] and treat it as a final assertion by the promisor that he is no longer bound by the contract." Roehm v. Horst, 178 U.S. 1, 13, 20 S. Ct. 780, 44 L. Ed. 953 (1900). Contracts with plaintiffs for which the right to prepayment has not yet vested were breached on the date this lawsuit was filed, because those plaintiffs have chosen to treat the Government's repudiation as a breach.

Id. at 17.

The central question before the court on defendant's motion is whether FmHA's denial of Mullica's and Park Terrace's offers of prepayment constitutes a breach of contract, such that the statute of limitations began to run in 1988 and 1991, respectively. Both plaintiffs argue against this proposition. First, Mullica contends that it never received a final denial of its prepayment request. According to Mullica, the October 11, 1988 letter to FmHA could not trigger the statute of limitations because the Government's response on March 30, 1989, was not a final denial. Second, Mullica and Park Terrace insist that "the 'prepayment' letters on which the Government relies were merely an exercise in following the steps prescribed by the Government to secure 'incentives.'" Pls.' Br. filed Dec. 18, 2006, at 16. Plaintiffs alternatively argue that the statute of limitations does not bar their claims "as to the period after the restrictions expire," because those claims "accrued only with the filing of this suit." Pls.' Br. filed Dec. 18, 2006, at 21.

1) Final denial of Mullica's prepayment request

Mullica contends that because it never received a "final, unequivocal denial" of prepayment, payment was never tendered. Pls.' Br. filed Dec. 18, 2006, at 4. Consequently,

Id. at 17.

During oral argument plaintiffs placed a great deal of emphasis on the term "tender." Counsel for plaintiffs quoted the definitions in Black's Law Dictionary and Williston on Contracts. See Tr. at 28-29. Black's Law Dictionary defines the term "tender" as " valid and sufficient offer of performance; specif[ically], an unconditional offer of money or performance to satisfy a debt or obligation. . . . The tender may save the tendering party from a penalty for nonpayment or nonperformance or may, if the other party unjustifiably refuses the tender, place the other party in default." Black's Law Dictionary 1507 (8th ed. 2004). Similarly, Williston on Contracts defines tender as "an unconditional offer of payment consisting of the actual production of a sum not less than the amount due on a particular obligation; tender must be without conditions to which the creditor can have a valid objection or which will be prejudicial to his or her rights." Richard A. Lord, Williston on Contracts, § 72:27 (4th ed. 2006) (footnotes omitted). In summary, plaintiffs argue that, in order to tender payment, they had to demonstrate the ability to prepay. It is their position that they merely began the application process in order to qualify for incentives, such as the equity loan, and never intended the letters submitted to FmHA to be prepayment requests.

Defendant rejoins, first, that plaintiffs' contention that the prepayment requests were not genuine or were in any way "pro forma" is contrary to plaintiffs' allegations in their complaint. "[Plaintiffs'] allegations that they accepted incentives 'under duress,' Complaint ¶¶ 11.2, 11.4, make no sense except upon the premise that they would have prepaid their loans rather than accept incentives had they been permitted to do so." Def.'s Br. filed Jan. 3, 2007, at 2-3. A breach therefore occurred when plaintiffs attempted to prepay their loans. At that point the claims accrued because plaintiffs sought performance from FmHA and their request was denied. Secondly, defendant insists that plaintiffs did tender prepayment of their loan obligations. "[Defendant is] not relying simply on the fact that prior to 1992 both of these [p]laintiffs submitted prepayment applications. It's that [plaintiffs] submitted prepayment applications, were offered incentives in lieu of prepayment, and accepted them." Tr. at 44.

Plaintiffs' arguments are unpersuasive. The letters of Messrs. Axelrod and Wanerman cannot be characterized as "pro forma" requests for prepayment. The record establishes that plaintiffs were seeking to prepay their loans and submitted requests as required by FmHA regulations. See 7 C.F.R. § 1965.90(b)(1) (1992), and Exhibit E to Subpart B. This does not suffice to support a finding that the letters somehow were intended only as a mechanism to secure incentives.

Furthermore, while plaintiffs contend that they entered into the agreements under duress, they cannot meet the requirements of this legal theory. "To render a contract