No. 05-677C
(Judge Christine O.C. Miller)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

TAMERLANE, LIMITED, et. al,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

**APPENDIX TO
DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

---

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

**Filed electronically**

SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643

Attorneys for Defendant

January 16, 2008

# INDEX TO APPENDIX


Letter from Bart Axelrod to USDA, Rural Development (December 27, 2000) . . . . . . . . . . . . . 1

Letters from USDA, Rural Development to Bart Axelrod (August 30, 2001) . . . . . . . . . . . . . . . 3

Letter from Bala Realty to State Director, Rural Development (September 6, 2001) . . . . . . . . . 7

Letters from State Director, Rural Development to Bart Axelrod (January 31, 2002), with enclosures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Letter from D. Mark Griffin to State Director, Rural Development (March 14, 2002), with enclosures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Settlement Statement (May 10, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Plaintiffs' Responses to Defendant's First Set of Interrogatories (excerpts) . . . . . . . . . . . . . 22

Deposition of Bart J. Axelrod (excerpts) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

TAMERLANE LIMITED
704-G East Main Street
Moorestown, NJ 08057
(856)866-0600

RECEIVED DEC 27 2000

Mr. David H. Schmidt
Multi-Family Housing Servicing Specialist
Rural Development
790 Woodlane Road
Mt. Holly, NJ 08060

In re: Tamerlane Apartments
Winslow Township, New Jersey

Dear Mr. Schmidt:

In accordance with RD Instruction 1965-E, this is to request approval to prepay the subject project loans in full by July 1, 2001.

We have reviewed the status of this project and have determined that it is in our interests to submit a request to prepay the loans. Accordingly, complete and well-documented information is enclosed for you to be able to complete the required Report on Prepayment.

The project is eligible for prepayment; the loans were obligated before December 15, 1989.

Exhibit C, item E (2) of RD Instruction 1965-E requires that "if the loan is to be prepaid," then the lease language subsequent to prepayment should be included if the loan is to be prepaid subject to restrictive-use provisions. Because we do not plan to pay off the loans subject to restrictive use provisions, such lease language is not required.

All tenant leases will be extended until at least June 30, 2001, more than six months from this date. A Lease Addendum is required for all new tenants after the prepayment request is submitted. The Addendum is to be inserted in the leases of new tenants after the submittal of the request. This is to request Agency approval of the attached Addendum.

We have enclosed documentation of the ability to prepay:

- an appraisal, including an analysis of competitive apartment complexes, which indicates the conventional, unsubsidized rental rates; Agency files should include a

July 31, 2000 letter from the Rural housing Program Director which states in the 5th paragraph: "Rural Development rental projects in the area presently have high vacancy rates at both subsidized and basic rent levels."

- a proforma operating budget indicating the project will be economically feasible at projected market rents with conventional financing; and,

- evidence that we can refinance the project with conventional financing.

We look forward to payment of the loans, converting the units to conventional rents, and saving the government substantial amounts of money presently used for Interest Credit and Rental Assistance.

Sincerely yours,

Bart J Apfelbeck

December 26, 2000

Date

attachments: Lease Addendum

enclosures: Fair Housing Certification
Exhibit C Information and Documentation

USDA

United States Department of Agriculture

Rural Development

790 Woodlane Rd
Tarnsfield Plaza, Suite 22
Mt. Holly, NJ, 08060
TEL: (609) 265-3600
FAX:

August 30, 2001

Bart Axelrod
P.O. Box 669
Narberth, PA, 19072-0669

RE: GENERAL INCENTIVE OFFER FOR Tamerlane Apartments Project 01-4

Dear Mr. Axelrod:

This letter is to notify you that in response to your request to prepay your multi-family housing loan, USDA, Rural Development is prepared to develop an incentive offer that would include one or more of the incentives found in RD Instruction 1965-E, paragraph 1965.213. These include the following:

a. An equity loan
b. Additional rental assistance
c. Increased annual return on investment
d. Excess Section 8 rents
e. Conversion or modification of interest credit.

If you accept a "Specific" incentive package, you will be required to execute a "Restrictive Use Agreement" that will obligate you and any successors in title to restricting the use of the above-referenced housing project to very-low, low, and moderate income tenants for a period of 20 years from the date the incentives are closed. An incentive package is a one-time offer.

This letter serves as a "General Incentive Offer." If you accept this general offer, a "Specific Incentive Offer" will be developed for you. You have until September 29, 2001 to accept or reject this "General Incentive Offer" in writing. If you do not respond in writing, either by accepting or rejecting these incentives, we will consider your request for prepayment concluded and the incentive offer will be considered withdrawn without additional notification.

If you reject the "General Incentive Offer," Rural Development will advise you of additional processing requirements, including the possibility of prepaying the loan, or offering the project for sale to a non-profit organization. Your response must be postmarked no later than September 29, 2001.

Rural Development is an Equal Oppurtunity Lender
Complaints of Discrimination should be sent to:
Secretary of Agriculture, Washington, DC 20250

Do consider these incentives carefully, and if you have any questions, please call our office.

Sincerely,

ERNEST R. GRUNOW, JR.
State Director

Rural Development is an Equal Oppurtunity Lender
Complaints of Discrimination should be sent to:
Secretary of Agriculture, Washington, DC 20250

USDA

United States Department of Agriculture

Rural Development

790 Woodlane Rd
Tarnsfield Plaza, Suite 22
Mt. Holly, NJ, 08060
TEL: (609) 265-3600
FAX:

August 30, 2001

Bart Axelrod
P.O. Box 669
Narberth, PA, 19072-0669

RE: GENERAL INCENTIVE OFFER FOR Tamerlane Apartments Project 02-6

Dear Mr. Axelrod:

This letter is to notify you that in response to your request to prepay your multi-family housing loan, USDA, Rural Development is prepared to develop an incentive offer that would include one or more of the incentives found in RD Instruction 1965-E, paragraph 1965.213. These include the following:

a. An equity loan
b. Additional rental assistance
c. Increased annual return on investment
d. Excess Section 8 rents
e. Conversion or modification of interest credit.

If you accept a "Specific" incentive package, you will be required to execute a "Restrictive Use Agreement" that will obligate you and any successors in title to restricting the use of the above-referenced housing project to very-low, low, and moderate income tenants for a period of 20 years from the date the incentives are closed. An incentive package is a one-time offer.

This letter serves as a "General Incentive Offer." If you accept this general offer, a "Specific Incentive Offer" will be developed for you. You have until September 29, 2001 to accept or reject this "General Incentive Offer" in writing. If you do not respond in writing, either by accepting or rejecting these incentives, we will consider your request for prepayment concluded and the incentive offer will be considered withdrawn without additional notification.

If you reject the "General Incentive Offer," Rural Development will advise you of additional processing requirements, including the possibility of prepaying the loan, or offering the project for sale to a non-profit organization. Your response must be postmarked no later than September 29, 2001.

Rural Development is an Equal Oppurtunity Lender
Complaints of Discrimination should be sent to:
Secretary of Agriculture, Washington, DC 20250

Do consider these incentives carefully, and if you have any questions, please call our office.

Sincerely,

ERNEST R. GRUNOW, JR.
State Director

Rural Development is an Equal Oppurtunity Lender
Complaints of Discrimination should be sent to:
Secretary of Agriculture, Washington, DC 20250

BALA REALTY
~~812 MONTGOMERY AVENUE~~
P.O. BOX 669
NARBERTH, PA 19072-0669

TELEPHONE: (610) 668-2224
FAX: (610) ~~668-4235~~

September 6, 2001

Mr. Ernest R. Grunow, Jr.
State Director, Rural Development
790 Woodlane Road, Suite 22
Mount Holly, NJ 08060

RE: GENERAL INCENTIVE OFFER FOR Tamerlane Apartments

Dear Mr. Grunow:

This is to accept the Agency letter dated August 30, 2001 in which the Agency offers to develop an incentive offer.

The acceptance is for the total loans which encumber Tamerlane Apartments, a 160 unit apartment project.

**Appropriate Incentives**

We invite the specific offer of:

- an equity loan (and the opportunity to secure outside financing for an equity loan);
- increased annual return on investment; and,
- additional Rental Assistance

**Updated appraisal**

In order to save the Agency time and expense, we will request the appraiser to appraise the property taking into account the capital improvements required by the Agency. Because his prior appraisal was submitted to the Agency and determined to be acceptable, we believe this second appraisal will also be acceptable. We shall submit the appraisal to the Agency for review and acceptance.

The appraisal can then be used by the Agency in developing the amount of the equity loan for the incentive offer and in determining the increased amount of equity on which a return to the owner will be offered.

We expect that the appraisal will be submitted by September 26, 2001.

Please feel free to contact me if you have any questions.

Sincerely yours,

Bart J. Axelrod, President, Bala Realty Advisors, Inc, General Partner of Tamerlane Investors, General Partner of Tamerlane, Limited

USDA

United States Department of Agriculture

Rural Development

790 Woodlane Rd
Tarnsfield Plaza, Suite 22
Mt. Holly, NJ, 08060
TEL: (609) 265-3600
FAX:

January 31, 2002

Bart Axelrod
P.O. Box 669
Narberth, PA, 19072-0669

RE: INCENTIVE OFFER FOR Tamerlane Apartments

Dear Mr. Axelrod:

USDA Rural Development has completed its analysis of your request to prepay your Rural Rental Housing loan on the 40 unit project known as Tamerlane Apartments in Sicklerville, NJ. Since you have submitted a complete application and demonstrated the ability to prepay, we are offering you the following incentives to remain in the program.

Based on an appraisal of the project and the prevailing rents for similar projects in the community, Rural Development will consent to a junior lien or subordination that will allow for an equity loan from a third party, not to exceed a monthly repayment of $2,491. Any third party loan must be at a fixed rate of interest and equally amortized with no balloon payment. The amount of the third-party loan may not exceed $326,425. A third-party equity loan is also subject to review and approval of all the terms and conditions imposed by the third-party lender. The junior lien or subordination is also contingent on Rural Development approval and your continued eligibility for program assistance as defined in Rural Development instruction 1944-E.

If you accept the incentive package, we will reamortize the existing loan at the prevailing program interest rate in effect at the time of the loan closing, and will extend the repayment period over the remaining life of the project or the maximum program term, whichever is the lesser.

In conjunction with the closing of the equity loan or the reamortization of the existing Rural Development debts, the project will be required to convert to the Predetermined Amortization Schedule System (PASS), if it has not already been converted.

Both General Partners must sign all prepayment documents.

Rural Development is an Equal Opportunity Lender
Complaints of Discrimination should be sent to:
Secretary of Agriculture, Washington, DC 20250

All deferred maintenance must be addressed before any of these incentives may be received (see attached). This offer is made subject to the availability of funds and continued borrower eligibility.

If you accept this incentive package you will be required to execute a "Restrictive Use Agreement" that will obligate you and any successors in title to restricting the use of the project to very-low, low, and moderate income tenants for a period of 20 years from the date the incentives are closed. This incentive package is a one-time offer. If you accept this incentive package, you will not be eligible for ANY additional incentives on this project for the 20-year period of the "Restrictive Use Agreement."

You have until March 2, 2002 (30 days from the date of this letter) to accept or reject this incentive package in writing. If you do not respond in writing, either by accepting or rejecting these incentives, we will consider your request for prepayment concluded, and the incentive package will be considered withdrawn without additional notification.

If you reject the incentive package, Rural Development will advise you of additional processing requirements, including the possibility of prepaying the loan or offering the project for sale to a non-profit organization.

Do consider these incentives carefully and if you have any questions, please contact my office. Please respond to the incentive package in writing by returning the "Acknowledgement of Incentive Offer and Response" attached to this letter. Your response must be postmarked no later than March 2, 2002.

Sincerely,

ERNEST R. GRUNOW, JR.
State Director

*Rural Development is an Equal Opportunity Lender*
*Complaints of Discrimination should be sent to:*
*Secretary of Agriculture, Washington, DC 20250*

# ACKNOWLEDGEMENT OF INCENTIVE OFFER AND RESPONSE

Tamerlane Apartments 01-4

I am in receipt of an Incentive Package from Rural Development dated January 31, 2002. I understand that the incentives offered in that letter are being made to induce me to keep my 40 unit project known as Tamerlane Apartments and located in Sicklerville, NJ in the Rural Housing Program.

I hereby acknowledge that no other offers, either expressed or implied, have or will be made by Rural Development. I hereby declare that I have the authority to accept or reject this incentive package on behalf of all individuals and entities who have an ownership interest in this project.

I further declare that I have read each of the incentives being offered and understand the financial and legal obligations of each of these incentives, both individually and as a whole. Based on these statements and my review of the incentives, I have made the following determination.

CHECK ONLY ONE OPTION

☐ I WILL ACCEPT THE INCENTIVES AS OFFERED BY RURAL DEVELOPMENT.

☐ I AM REJECTING THE INCENTIVES OFFERED BY RURAL DEVELOPMENT.

SIGNED BY: ______________________ DATE: ____________

SIGNED BY: ______________________ DATE: ____________

Rural Development is an Equal Opportunity Lender
Complaints of Discrimination should be sent to:
Secretary of Agriculture, Washington, DC 20250

# LIST OF DEFERRED MAINTENANCE ITEMS FOR Tamerlane Apartments

| No. | Deferred Maintenance Task | Estimated Cost |
|---|---|---|
| 1. | Rough Carpentry | 4,663 |
| 2. | Doors/Windows/Glass | 33,208 |
| 3. | Siding | 40,255 |
| 4. | Roofing | 4,095 |
| 5. | Sheet Metal Work | 1,842 |
| 6. | Demolition | 15,487 |
| | Total Estimated Cost: | 99,550 |

Rural Development is an Equal Opportunity Lender
Complaints of Discrimination should be sent to:
Secretary of Agriculture, Washington, DC 20250

USDA

United States
Department of
Agriculture

Rural
Development

790 Woodlane Rd
Tarnsfield Plaza, Suite 22
Mt. Holly, NJ, 08060
TEL: (609) 265-3600
FAX:

January 31, 2002

Bart Axelrod
P.O. Box 669
Narberth, PA, 19072-0669

RE: INCENTIVE OFFER FOR Tamerlane Apartments

Dear Mr. Axelrod:

USDA Rural Development has completed its analysis of your request to prepay your Rural Rental Housing loan on the 120 unit project known as Tamerlane Apartments in Sicklerville, NJ. Since you have submitted a complete application and demonstrated the ability to prepay, we are offering you the following incentives to remain in the program.

- Based on an appraisal of the project and the prevailing rents for similar projects in the community, Rural Development will consent to a junior lien or subordination that will allow for an equity loan from a third party, not to exceed a monthly repayment of $12,047. Any third party loan must be at a fixed rate of interest and equally amortized with no balloon payment. The amount of the third-party loan may not exceed $1,578,470. A third-party equity loan is also subject to review and approval of all the terms and conditions imposed by the third-party lender. The junior lien or subordination is also contingent on Rural Development approval and your continued eligibility for program assistance as defined in Rural Development instruction 1944-E.

  Rural Development will provide 105 additional units of family/elderly incentive rental assistance.

  If you accept the incentive package, we will reamortize the existing loan at the prevailing program interest rate in effect at the time of the loan closing, and will extend the repayment period over the remaining life of the project or the maximum program term, whichever is the lesser.

Both General Partners must sign all prepayment documents.

Rural Development is an Equal Opportunity Lender
Complaints of Discrimination should be sent to:
Secretary of Agriculture, Washington, DC 20250

In conjunction with the closing of the equity loan or the reamortization of the existing Rural Development debts, the project will be required to convert to the Predetermined Amortization Schedule System (PASS), if it has not already been converted.

All deferred maintenance must be addressed before any of these incentives may be received (see attached). This offer is made subject to the availability of funds and continued borrower eligibility.

If you accept this incentive package you will be required to execute a "Restrictive Use Agreement" that will obligate you and any successors in title to restricting the use of the project to very-low, low, and moderate income tenants for a period of 20 years from the date the incentives are closed. This incentive package is a one-time offer. If you accept this incentive package, you will not be eligible for ANY additional incentives on this project for the 20-year period of the "Restrictive Use Agreement."

You have until March 2, 2002 (30 days from the date of this letter) to accept or reject this incentive package in writing. If you do not respond in writing, either by accepting or rejecting these incentives, we will consider your request for prepayment concluded, and the incentive package will be considered withdrawn without additional notification.

If you reject the incentive package, Rural Development will advise you of additional processing requirements, including the possibility of prepaying the loan or offering the project for sale to a non-profit organization.

Do consider these incentives carefully and if you have any questions, please contact my office. Please respond to the incentive package in writing by returning the "Acknowledgement of Incentive Offer and Response" attached to this letter. Your response must be postmarked no later than March 2, 2002.

Sincerely,

ERNEST R. GRUNOW, JR.
State Director

Rural Development is an Equal Opportunity Lender
Complaints of Discrimination should be sent to:
Secretary of Agriculture, Washington, DC 20250

# ACKNOWLEDGEMENT OF INCENTIVE OFFER AND RESPONSE

Tamerlane Apartments 02-6

I. I understand that the incentives offered in that letter are being made to induce me to keep my 120 unit project known as Tamerlane Apartments and located in Sicklerville, NJ in the Rural Housing Program.

I hereby acknowledge that no other offers, either expressed or implied, have or will be made by Rural Development. I hereby declare that I have the authority to accept or reject this incentive package on behalf of all individuals and entities who have an ownership interest in this project.

I further declare that I have read each of the incentives being offered and understand the financial and legal obligations of each of these incentives, both individually and as a whole. Based on these statements and my review of the incentives, I have made the following determination.

CHECK ONLY ONE OPTION

☐ I WILL ACCEPT THE INCENTIVES AS OFFERED BY RURAL DEVELOPMENT.

☐ I AM REJECTING THE INCENTIVES OFFERED BY RURAL DEVELOPMENT.

SIGNED BY: ______________________ DATE: ____________

SIGNED BY: ______________________ DATE: ____________

Rural Development is an Equal Opportunity Lender
Complaints of Discrimination should be sent to:
Secretary of Agriculture, Washington, DC 20250

# LIST OF DEFERRED MAINTENANCE ITEMS FOR Tamerlane Apartments

| No. | Deferred Maintenance Task | Estimated Cost |
|---|---|---|
| 1. | Rough Carpentry | 13,989 |
| 2. | Doors/Windows/Glass | 99,623 |
| 3. | Siding | 120,766 |
| 4. | Roofing | 12,283 |
| 5. | *Sheet Metal Work* | 5,525 |
| 6. | Demolition | 46,462 |
| | **Total Estimated Cost:** | 298,648 |

Rural Development is an Equal Opportunity Lender
Complaints of Discrimination should be sent to:
Secretary of Agriculture, Washington, DC 20250

SD, RHPD, (MFHC)
(original attachments to MFHC)

RECEIVED
MAR 14 2002
STATE OFFICE
NEW JERSEY

**TAMERLANE LIMITED**
**704-G East Main Street**
**Moorestown, NJ 07057**
**Telephone (856) 866-0600**

March 11, 2002

Mr. Andrew M.G. Law
State Director
USDA Rural Development
790 Woodlane Road
Mt. Holly, NJ 08060

RECEIVED
MAR 14 2002
By________

Re: Incentive Offer.

Dear Mr. Law:

I would like to take this opportunity to congratulate you on your promotion to State Director.

I have enclosed signed Incentive Offers for Tamerlane Apartments 01-4 and Tamerlane Apartments 02-6.

If you have any questions, please feel free to contact me.

Sincerely,

D. Mark Griffin

DMG/rw
Certified Mail



TAGA0121379

RECEIVED
FEB 27 2002
By

# ACKNOWLEDGEMENT OF INCENTIVE OFFER AND RESPONSE

Tamerlane Apartments 01-4

I am in receipt of an Incentive Package from Rural Development dated January 31, 2002. I understand that the incentives offered in that letter are being made to induce me to keep my 40 unit project known as Tamerlane Apartments and located in Sicklerville, NJ in the Rural Housing Program.

I hereby acknowledge that no other offers, either expressed or implied, have or will be made by Rural Development. I hereby declare that I have the authority to accept or reject this incentive package on behalf of all individuals and entities who have an ownership interest in this project.

I further declare that I have read each of the incentives being offered and understand the financial and legal obligations of each of these incentives, both individually and as a whole. Based on these statements and my review of the incentives, I have made the following determination.

CHECK ONLY ONE OPTION

[X] I WILL ACCEPT THE INCENTIVES AS OFFERED BY RURAL DEVELOPMENT.

[ ] I AM REJECTING THE INCENTIVES OFFERED BY RURAL DEVELOPMENT.

SIGNED BY: [signature] DATE: February 24, 2002

SIGNED BY: [signature] DATE: March 8, 2002

Rural Development is an Equal Opportunity Lender
Complaints of Discrimination should be sent to:
Secretary of Agriculture, Washington, DC 20250

RECEIVED
FEB 27 2002
By

# ACKNOWLEDGEMENT OF INCENTIVE OFFER AND RESPONSE

Tamerlane Apartments 02-6

I am in receipt of an Incentive Package from Rural Development dated January 31, 2002. I understand that the incentives offered in that letter are being made to induce me to keep my 120 unit project known as Tamerlane Apartments and located in Sicklerville, NJ in the Rural Housing Program.

I hereby acknowledge that no other offers, either expressed or implied, have or will be made by Rural Development. I hereby declare that I have the authority to accept or reject this incentive package on behalf of all individuals and entities who have an ownership interest in this project. ______________

I further declare that I have read each of the incentives being offered and understand the financial and legal obligations of each of these incentives, both individually and as a whole. Based on these statements and my review of the incentives, I have made the following determination.

CHECK ONLY ONE OPTION

[X] I WILL ACCEPT THE INCENTIVES AS OFFERED BY RURAL DEVELOPMENT.

[ ] I AM REJECTING THE INCENTIVES OFFERED BY RURAL DEVELOPMENT.

SIGNED BY: [signature] DATE: February 24, 2002

SIGNED BY: [signature] DATE: March 8, 2002

Rural Development is an Equal Opportunity Lender
Complaints of Discrimination should be sent to:
Secretary of Agriculture, Washington, DC 20250



TAGA0121381

A. Settlement Statement

U.S. Department of Housing and Urban Development

OMB No. 2502-0265

| B. Type of Loan | | | |
|---|---|---|---|
| 1. ☐FHA 2. ☐FmHA 3. ☐Conv. Unins.<br>4. ☐VA 5. ☐Conv. Ins. | 6. File Number<br>ST02-33814 | 7. Loan Number | 8. Mortgage Insurance Case Number |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U. S. Code Section 1001 and Section 1010.

D. NAME OF BORROWER: TAMERLANE LIMITED, a limited partnership
ADDRESS:

E. NAME OF SELLER:
ADDRESS:

F. NAME OF LENDER: ALLEGIANCE BANK OF NORTH AMERICA
ADDRESS: ONE BELMONT AVENUE-STE 105, BALA CYNWYD, PA 19004

G. PROPERTY ADDRESS: CHEWS LANDING ROAD, WINSLOW TWP., NJ
TOWNSHIP OF WINSLOW

☐ Principal Residence ☐ Other Real Estate

H. SETTLEMENT AGENT: Settlers Title Agency, Inc., Telephone: 856-983-1880 Fax: 856-985-3568
PLACE OF SETTLEMENT: The Pavilions at Greentree, Suite 302, Route 73, Marlton, NJ 08053

I. SETTLEMENT DATE: 05/10/2002

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 545,430.13 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. C.C.M.U.A. | | 408. C.C.M.U.A. | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 545,430.13 | 420. GROSS AMOUNT DUE TO SELLER: | |
| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loans * | 1,849,725.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. * | | 504. Payoff of First Mortgage Loan | |
| 205. Funds to be held in | | 505. Payoff of Second Mortgage Loan | |
| 206. Escrow by Allegiance | | 506. | |
| 207. Pursuant to Escrow | | 507. | |
| 208. Agreement, | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. C.C.M.U.A. | | 512. C.C.M.U.A. | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 1,849,725.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 545,430.13 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 1849,725.00 | 602. Less reduction amount due seller (line 520) | |
| 303. CASH ( FROM ✓TO ) BORROWER | 1,304,294.87 | 603. CASH ( FROM TO ) SELLER | |

Proceeds – 10% – Ralph Griffin – $130,429.49
90% – Tamerlane Investors – $1,173,865.38

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide the settlement agent (Fed. Tax ID No: ______________) with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN: ______________ / ______________ SELLER(S) SIGNATURE(S): ______________________ / ______________________

SELLER(S) NEW MAILING ADDRESS: ____________________________________________

TitleExpress Settlement System Printed 05/08/2002 at 11:07

REV. HUD-1 (3/86)



TAGA0130011

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT

File Number: ST02-33814
PAGE

| L. SETTLEMENT CHARGES | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ @ 0.000 = | | |
| Division of commission (line 700) as follows: | | |
| 701. $ to | | |
| 702. $ to | | |
| 703. Commission paid at Settlement | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | |
| 801. Loan Origination Fee 1.000 % ALLEGIANCE BANK OF NORTH AMER(PD.C.) 4,000.00 Buyer | 14,497.25 | |
| 802. Loan Discount % | | |
| 803. Appraisal Fee to EDWARD S. SNYDER R/E INC. | 1,500.00 | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Application Fee | | |
| 807. Assumption Fee | | |
| 808. FLOOD CERT to ALLEGIANCE BANK OF NORTH AMERICA | 25.00 | |
| 809. | | |
| 810. "Tamerlane Limited-Supervised Reserve Acct | 400,000.00 | |
| 811. | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | |
| 901. Interest From to @$ /day | | |
| 902. Mortgage Insurance Premium for to | | |
| 903. Hazard Insurance Premium for to | | |
| 904. | | |
| 905. | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | |
| 1001. Hazard Insurance mo. @ $ /mo | | |
| 1002. Mortgage Insurance mo. @ $ /mo | | |
| 1003. City Property Taxes 1 mo. @ $ 7,744.00 /mo | 7,744.00 | |
| 1004. County Property Taxes mo. @ $ /mo | | |
| 1005. Annual Assessments mo. @ $ /mo | | |
| 1009. Aggregate Analysis Adjustment | | |
| 1100. TITLE CHARGES | | |
| 1101. Settlement or closing fee to SETTLERS TITLE AGENCY, INC. | 325.00 | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title insurance binder | | |
| 1105. ~~Document Preparation~~ -Legal- Nixon Peabody LLP | 25,000.00 | |
| 1106. ~~Notary Fees~~ -Legal- John Scott Boyer, Esq. | 2975.00 | |
| 1107. Attorney's fees to OBERMAYER, REBMANN, MAXWELL | 12,675.00 | |
| (includes above items No: ) | | |
| 1108. Title Insurance to SETTLERS TITLE AGENCY, INC. | 5000.00 | |
| (includes above items No: ) | | |
| 1109. Lender's Coverage $ 1,849,725.00 - $835.00 | | |
| 1110. Owner's Coverage $ | | |
| 1111. Alta 8.1-EPL Alta 9-Ins. Clsp to SETTLERS TITLE AGENCY, INC. | 75.00 | |
| 1112. | | |
| 1113. | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | |
| 1201. Recording Fees Deed $ ; Mortgage $ ; ~~Releases~~ Coll Assig / ARL / UCC'S | 360.00 | |
| 1202. City/County tax/stamps Deed $ ; Mortgage $ | | |
| 1203. State Tax/stamps Deed $ ; Mortgage $ | | |
| 1204. RECORD SUBORDINATIONS | 50.00 | |
| 1205. | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | |
| 1301. Survey | | |
| 1302. Pest Inspection | | |
| 1303. | | |
| 1304. Bala Realty Investors | 22,158.88 | |
| 1305. Griffin Construction CO - | 950.00 | |
| 1306. John Meyers - | 52,095.00 | |
| 1307. | | |
| 1308. | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 502, Section K) | 545,430.13 | |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

TAMERLANE LIMITED, a limited partnership

[signature]

[signature]

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

By: [signature] DATE 5/10/02

TitleExpress Settlement System Printed 05/09/2002 at 15:00

REV. HUD-1 (3/86)



TAGA0130012

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TAMERLANE, LIMITED, et al., Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | : | No. 05-677C (Judge Christine O.C. Miller) |

**PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26, 33 and 34 of the Rules of the United States Court of Federal claims ("RCFC"), Plaintiffs, Tamerlane, Limited ("Tamerlane") and Park Terrace East Limited ("Park Terrace East") (collectively "Plaintiffs"), hereby respond to the Interrogatories and Request for Production of Documents of Defendant, the United States of America (sometimes referred to as the "FmHA" or the "Government").

**GENERAL OBJECTIONS**

The following general objections are incorporated by reference in the responses set forth below:

1. Plaintiffs object to the request for identification and production of documents previously generated and submitted to Defendant pursuant to administrative regulation, and therefore already in the possession of Defendant, as unduly burdensome.

2. Plaintiffs object to the extent the Instructions and Definitions impose requirements which exceed the requirements of the Rules of the Untied States Court of Federal Claims.

As to Tamerlane, to the extent the equity loan with respect to that project conferred a benefit, the benefit will be calculated by Lukens as an offset to its damages. A report conforming to RCFC 26 will be timely provided to Defendant.

INTERROGATORY NO. 12:

Identify all persons whom possesses knowledge of each factual assertion made in your complaint. For each person, explain in detail the knowledge possessed in reference to each allegation raised in your complaint.

RESPONSE:

Objection is made to this interrogatory to the extent it seeks information subject to the attorney-client privilege or the work product doctrine. Bart Axelrod and/or the attorneys for Plaintiffs have knowledge of the allegations insofar as they relate to Plaintiffs. Insofar as the complaint was based on circumstances considered and adjudicated in Franconia, the Court, attorneys and parties to that proceeding may have such knowledge.

INTERROGATORY NO. 13:

With regard to the allegation, contained in paragraph 41 of the complaint, that "[t]he Government has in every instance refused to accept prepayment from plaintiffs pursuant to the provisions of their contracts," please (a) identify all documents embodying, expressing, or otherwise evidencing the alleged refusal, all persons by whom and to whom the alleged refusal was communicated, and all plaintiffs from whom you contend the Government refused to accept prepayment; and (b) state the date when each of the alleged refusals occurred.

RESPONSE:

The language referred to in interrogatory 13 was intended to refer generally to the circumstances described in Franconia.

INTERROGATORY NO. 14:

Identify the individuals who "met with, or otherwise made inquiries of, FmHA officials regarding prepayment of their loans," as alleged in paragraph 42 of the complaint, the FmHA officials with whom they met or of whom they made inquiries, and the "Government officials" referenced in the second sentence of that paragraph, and state the date(s) of the meetings and inquiries referenced in the first sentence of that paragraph and the "representations" referenced in the second sentence of that paragraph.

RESPONSE:

Previous appraisals in the possession of the respective Plaintiffs, as well as letters received by lenders indicating willingness to provide financing, will be provided separately. The expert reports of Lukens will also be timely provided by the respective Plaintiffs.

REQUEST FOR PRODUCTION NO. 4:

All market surveys/studies, appraisals, other financial documents, and related correspondence between the plaintiffs and third parties relating to its alleged damages incurred in this case.

RESPONSE:

To the extent created in connection with this case, objection is made to this request since the documents sought constitute work product and are protected from discovery under the work product doctrine. Previous appraisals in the possession of the respective Plaintiffs, as well as letters received by lenders indicating willingness to provide financing, will be provided separately. The expert reports of Lukens will also be timely provided by the respective Plaintiffs.

COZEN O'CONNOR

David M. Doret /BK

H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Plaintiffs, Tamerlane, Limited and Park Terrace East Limited

Dated: September 6, 2007

**VERIFICATION**

I, Bart Axelrod, do hereby depose and state that I am authorized, on behalf of Plaintiff Park Lane East Limited to make this Verification; that I have reviewed the foregoing Plaintiffs' Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents; and that the facts contained therein are true and correct to the best of my information and belief. I understand that the statements made herein are made subject to the penalties of 28 U.S.C. § 1746 relating to unsworn falsification to authorities.

BART AXELROD

Dated: September 6, 2007

**VERIFICATION**

I, Bart Axelrod, do hereby depose and state that I am authorized, on behalf of Plaintiff Tamerlane, Limited, to make this Verification; that I have reviewed the foregoing Plaintiffs' Responses to Defendant's First Set of Interrogatories; and that the facts contained therein are true and correct to the best of my information and belief. I understand that the statements made herein are made subject to the penalties of 28 U.S.C. § 1746 relating to unsworn falsification to authorities.

BART AXELROD

Dated: September 6, 2007

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

\- - -

| | |
|---|---|
| TAMERLANE, LIMITED, et al., | CIVIL ACTION NO. 05-677C |
| v. | |
| UNITED STATES OF AMERICA | |

\- - -

November 14, 2007

\- - -

Oral deposition of BART J. AXELROD taken pursuant to notice, was held at the law offices of COZEN O'CONNOR, 1900 Market Street, Philadelphia, Pennsylvania beginning at 1:40 p.m., on the above date, before Terri L. Ochipinti, a Professional Reporter and Notary Public in the Commonwealth of Pennsylvania.

\- - -

ESQUIRE DEPOSITION SERVICES
Four Penn Center
1600 John F. Kennedy Boulevard
12th Floor
Philadelphia, Pennsylvania 19103
(215) 988-9191

you're referring to the case of Franconia Apartments vs. United States.

A. Yes, it is.

Q. When you say that was intended to refer generally to the circumstances described in Franconia, do you mean that paragraph 41 of the Complaint was not referring to the plaintiffs in this case?

A. I'll not sure I understand the question.

Q. Well, let me break it down, okay? One of the things that the interrogatory's asking for is after referring to the allegation in paragraph 41 ever the Complaint about the government refusing to accept prepayment from plaintiffs, one of the things that that interrogatory asks for is the date when each of the alleged refusals occurred and it also asks other questions about the refusals. Did the government refuse to accept prepayment from Tamerlane?

A. I don't know if that's the right word.

Q. Which?

MR. FIEBACH: Hold on. Let him finish.

THE WITNESS: I don't know if refusal is the right word, but personnel, management personnel at what was then Farmers Home Administration made it clear that we had no choice, based on legislation that had been -- had come into existence that we really had no choice as to what we were going to be able to do in the future with these properties. So I don't know -- I don't even know if the word refusal is the correct word.

BY MR. BRILLIANT:

Q. Okay. Well, I'm using the word refusal to mean whatever it means in the Complaint. The Complaint says the government has in every instance refused

to accept prepayment.

MR. FIEBACH: The answer says when it's talking in every instance it's talking about Franconia.

MR. BRILLIANT: I'm asking the witness.

MR. FIEBACH: And that's what the answer to the interrogatory says.

MR. BRILLIANT: I can read the answer to the interrogatory, but -- I understand what the interrogatory says.

MR. FIEBACH: If you want to know what happened, ask him what happened, but stop arguing with him about an answer to interrogatories. He started to tell you what his understanding was.

MR. BRILLIANT: No. The witness signed the interrogatory answers. I can ask him anything

about the interrogatory answers.

MR. FIEBACH: The prior response says that insofar as the Complaint was based on circumstances considered and adjudicated in Franconia, the Court, attornies and parties to the proceedings may have such knowledge. Not this witness.

MR. BRILLIANT: No, but I'm not asking anything about the Franconia. I'm asking about the allegations in the Complaint in this case.

MR. FIEBACH: Ask him about the allegations but don't ask him about an answer to interrogatories. That answer -- language was based on Franconia.

MR. BRILLIANT: I understand that. I want to.

MR. FIEBACH: Show him the Complaint and ask him whatever you want to ask him about the

Complaint. You are not showing him the Complaint.

MR. BRILLIANT: I can show him the Complaint, but I don't need to right now.

MR. FIEBACH: Well, ask him whatever you want to ask him.

MR. BRILLIANT: Just so he doesn't have to feel uncomfortable about talking about the Complaint without seeing it.

BY MR. BRILLIANT:

Q. Just to be clear on what you are claiming and not claiming, without getting involved with semantics, the reason I'm using the word refused, the Complaint said, in every instance -- "The government has in every instance refused to accept prepayment from plaintiffs." I understand that answer says that that refers generally to the circumstances described in Franconia. I see that answer. My question is, using the term the government has in every instance

refused to accept prepayment from plaintiffs, there way it's used in the Complaint, my question to you is, did the government refuse to accept prepayment from Tamerlane?

MR. FIEBACH: Objection. You're asking about the way it's used in the Complaint without showing the witness the Complaint, but you can answer the best you can. I'm not instructing the witness not to answer but I wanted the objection on the record.

THE WITNESS: Can you just repeat it one more time.

MR. FIEBACH: Could you just read it back.

(The court reporter read the pertinent part of the record.)

THE WITNESS: I'm trying to figure out how to appropriately answer this. The government -- if we're talking about the government, I will talk about the

local officials of Rural Development, what was then Farmers Home Administration and later Rural Development, made it clear to us very -- at some point, I don't know the precise date, made it very clear to us that there was no way that we were ever going to be able to repay these and that the only options that were going to be available to us were certain incentives that they offered. We just had no choice. They just made that -- put it right out on the line. I can remember like it was yesterday.

BY MR. BRILLIANT:

Q. When was it?

A. It was probably around 1990, '91.

Q. And who were those people who told you that?

A. Howard Henderson, who was then the state director of Farmers Home;



b0d12c4d-7dd5-44b4-8d22-8682d46a2518

Q. Did you, during the period we are talking about, at anytime in 19 -- well, anytime in the 1990's or the early 2000's, did you ever read the agency's regulations concerning prepayment?

A. I don't know whether -- I don't know whether I read their regulations specifically or not.

Q. Do you recall whether the agency sent you copies of the regulations or any instruction? They have publications they have called like RD Instruction so-and-so.

A. I really don't know.

Q. When Tamerlane applied to prepay -- by the way, were you personally involved in the correspondence, the preparing of the prepayment application that was submitted for Tamerlane?

A. Yes.

Q. At the time that that was submitted, did you make known to the agency that your true preference or desire was to actually prepay the loan

and get out of the 515 program -- first of all, was that the case, was it your true desire?

A. Absolutely.

Q. Did you communicate that desire to the agency?

A. I don't recall.

Q. Do you recall whether you communicated that desire to the agency in connection with Park Terrace East?

A. I don't think that I did.

Q. Did you communicate that desire in connection with any Section 515 property?

A. I don't believe so.

Q. Did you ever do or -- you, not necessarily personally, you or under your supervision, -- did you or Bala Realty ever prepare any kind of report for analysis as to the need for subsidized housing in the market that Tamerlane was serving?

A. No, we did not.

Q. What about Park Terrace

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of January, 2008, a copy of the foregoing "DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**s/Shalom Brilliant**