IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TAMERLANE, LIMITED, et. al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05-677C |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h)(1) of the rules of this Court, defendant, the United States, respectfully submits these proposed findings of uncontroverted fact.

1. In 1980, Tamerlane received two 50-year section 515 loans from the Farmers Home Administration, in the amounts of $1,498,000 and $1,875,800. Pl. App. 35, 44, 48, 57. In 1982, Tamerlane received a third 50-year section 515 loan, in the amount of $1,493,000. Pl. App. 78, 85. The loan agreements provided that the loan proceeds were to be used to provide rental housing to tenants eligible under section 515. Pl. App. 35, 48, 78. All of these loans were secured by mortgages containing a provision that restricted the use of the housing to housing people eligible for occupancy pursuant to section 515 for a period of 20 years from the closing of the loan. Pl. App. 66, 98 (¶ 32 of 1980 mortgage and 1982 mortgage).

2. In 1981, Park Terrace East received a 50-year section 515 loan to provide rental housing to eligible tenants, in the amount of $1,287,140. Pl. App. 5, 9. Neither the mortgage securing this loan (Pl. App. 13-21) nor any of the other loan documents contained a provision restricting the use of the Park Terrace East project for any specific period. Pl. App. 4-29.

By letter of December 27, 2000, Tamerlane submitted to the Government a request for approval to prepay its loan by July 1, 2001. Def. App. 1-2.

3. The Government did not refuse to accept prepayment. Def. App. 23, 28-34. Rather, on August 30, 2001, the Government responded with a "General Incentive Offer" pursuant to RD Instruction 1965-E, paragraph 1965.213, outlining the kinds of incentives that were available to avert prepayment. Def. App. 4-6.

4. By letter of September 6, 2001, Tamerlane accepted the August 30, 2001 "General Incentive Offer," and specified the kinds of incentives it was interested in obtaining. Def. App. 7-8.

5. On January 31, 2002, the Government made a specific incentive offer, Def. App. 9-16, "to consent to a junior lien or subordination that will allow for an equity loan from a third party . . . ." Def. App. 9, 13. The offer was made in two separate letters dated January 31, 2002, one with respect to a 40-unit portion of the project, and one with respect to the remaining 120 units. The letters set the maximum amount of the third-party loans at $326,425 and $1,578,470, respectively. Def. App. 9, 13. The offer included various details and conditions, including reamortization of the existing loans, Def. App. 9, 13, and a requirement to "execute a 'Restrictive Use Agreement' that will obligate you and any successors in title to restricting the use of the project to very-low, low, and moderate income tenants for a period of 20 years from the date the incentives are closed." Def. App. 10, 14.

6. Tamerlane transmitted its acceptance of the January 31, 2002 incentive offer in March 2002. Def. App. 17-19.

7. Pursuant to the terms of the January 31, 2002 incentive offer, Tamerlane obtained a third-party equity loan from Allegiance Bank of North America on May 10, 2002, in the principal amount of $1,849,725. Def. App. 20-21. On the same date, Tamerlane and the Government signed mortgage modification agreements reflecting the reamortization of the outstanding balances of Tamerlane's section 515 loans in accordance with the incentive package,

Pl. App. 115-122, and, on June 1, 2002, Tamerlane and the Government entered into a new loan agreement concerning these loan balances, Pl. App. 110.

8. The mortgage modification agreements modified the mortgages on the section 515 loans to provide:

> The borrower and any successors in interest agree to use the housing for the purpose of housing people eligible for occupancy as provided in Section 514 or Section 515 of Title V of the Housing Act of 1949, as amended, and FmHA regulations then extant during this 20 year period beginning June 1, 2002 . Until June 1, 2022 [sic]. No eligible person occupying the housing shall be required to vacate, or any eligible person wishing to occupy shall be denied occupancy without cause. The borrower will be released from these obligations before that date only when the Government determines that there is no longer a need for such housing, or that such other financial assistance provided to the residents of such housing will no longer be provided due to no fault, action or lack of action on the part of the borrower. A tenant or individual wishing to occupy the housing may seek enforcement of this provision, as well as the Government.

Pl. App. 115, 120.

9. The June 1, 2002 loan agreement provided that the loan was to "be administered subject to the limitations of the authorizing act of Congress and related regulations," and that "[t]his loan agreement shall be subject to the present regulations of the Government and to its future regulations and provisions thereof." Pl. App. 112.

10. Park Terrace East did not apply to prepay its section 515 loan or communicate to the Government its desire to prepay the loan. Def. App. 35-36. Nor did Park Terrace East request or obtain an equity loan or other incentive to avert prepayment. Pl. App. 3.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

**s/Jeanne E. Davidson**
JEANNE E. DAVIDSON
Director

**Filed electronically**

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643

Attorneys for Defendant

January 16, 2008

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of January, 2008, a copy of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**s/Shalom Brilliant**