**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TAMERLANE, LIMITED, et al., Plaintiffs, | : | No. 05-677C (Judge Christine O.C. Miller) |
| v. | : | |
| UNITED STATES OF AMERICA, Defendant. | : | |

# REPLY MEMORANDUM OF MOVING PLAINTIFFS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

COZEN O'CONNOR
H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Plaintiffs Tamerlane Limited and
Park Terrace East Limited

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... iii

COUNTER-STATEMENT OF THE ISSUE PRESENTED ..... 1

COUNTER-STATEMENT OF THE CASE ..... 1

Procedural Background ..... 1

Defendant's Arguments ..... 2

Recent Developments ..... 3

ARGUMENT ..... 4

I. ELIHPA'S PREPAYMENT RESTRICTIONS ACTED TO REPUDIATE DEFENDANT'S AGREEMENTS. ..... 4

A. Defendant Seeks To Reargue Settled Law That Moving Plaintiffs' Contract Rights Were Repudiated. ..... 5

B. There Exists No Inconsistency In The Positions Of Claimants. ..... 7

II. ACCEPTING INCENTIVES TO REVERT PREPAYMENT NEITHER CREATED A BILATERAL MODIFICATION OF THE AGREEMENT NOR AN ACCORD AND SATISFACTION ..... 9

A. The Incentive Transaction Did Not Involve A Bilateral Modification Of The Agreement Which Precludes Tamerlane's Claim. ..... 10

(1) Bilateral Modification Was Not Raised As An Affirmative Defense In The Government's Answer ..... 11

(2) The Government Assumes Tamerlane's Claims Had Accrued When They Had Not. ..... 12

(3) Under Fundamental Contract Law, No Rights Were Relinquished By Tamerlane Because The Transaction Documents, Which Were The Government's Own Printed Forms, Did Not Provide For Extinguishment. ..... 12

B. The Incentive Transaction Did Not Create An Accord And Satisfaction Such As To Bar Tamerlane's Claims. ..... 14

(1) The Absence Of A Meeting Of The Minds To Relinquish Rights Precludes An Accord And Satisfaction. ............................14

(2) The Government Has Not Carried Its Burden To Sustain The Defense. ..........................................................................16

III. TAMERLANE'S RECEIPT OF AN INCENTIVE DOES NOT PRECLUDE ITS CLAIMS FOR ANTICIPATORY BREACH AS TO THE POST-INCENTIVE EXTENDED PERIOD. ..........................................................17

CONCLUSION..........................................................................................................18

## TABLE OF AUTHORITIES


Page

**CASES**

Allegre Villa Ltd. P'ship v. United States,
60 Fed. Cl. 11 (2004) ........................................ 5, 17

Chesapeake & Potomac Tel. Co. v. United States,
228 Ct. Cl. 101, 654 F.2d 711 (1981) ........................................ 15

Cienega Gardens v. United States, 503 F.3d 1266 (Fed. Cir. 2007) ........................................ 6

Franconia Assoc. v. United States,
536 U.S. 129 (2002) ........................................ *Passim*

Gemini Elecs., Inc. v. United States,
65 Fed. Cl. 55 (2005) ........................................ 13

Grass Valley Terrace v. United States,
69 Fed. Cl. 341 (2005) ........................................ 8-9

Interstate Gen. Gov't Contractors, Inc. v. Stone,
980 F.2d 1433 (Fed. Cir. 1992) ........................................ 13

Nat'l Steel and Shipbuilding Co. v. United States,
49 Fed. Cl. 579 (2001) ........................................ 10, 15

O'Conner v. United States,
60 Fed. Cl. 164 (2004) ........................................ 10

PDR, Inc. v. United States,
78 Fed. Cl. 201 (2007) ........................................ 10

Starflight Boats v. United States,
48 Fed. Cl. 592 (2001) ........................................ 14

Travelers Cas. & Sur. Co. of Am. v. United States,
75 Fed. Cl. 696 (2007) ........................................ 13

Westerhold v. United States,
28 Fed. Cl. 172 (1993) ........................................ 14

Yankee Atomic Elec. Co. v. United States,
73 Fed. Cl. 249, 302 (2006) ........................................ 13

**STATUTES**

ELIPHA ....................................................................................................................4

HCDA .......................................................................................................................4

R.C.F.C. 8(c).............................................................................................................11

R.C.F.C. 56 ...............................................................................................................1

R.C.F.C. 56(e)...........................................................................................................2, 17

**OTHER AUTHORITIES**

*Corbin on Contracts* (revised edition, 1993) § 67.9(1)(c) .......................................12, 15

*Williston, A Treatise on the Law of Contracts* (4th edition, 1990) § 3-4(c) ........................13

This reply memorandum, and opposition, is respectfully submitted by Tamerlane, Limited and Park Terrace East Limited (collectively "Moving Plaintiffs") in reply to the Government's opposition to the motion of Moving Plaintiffs for partial summary judgment and in opposition to Defendant's motion for partial summary judgment.

## COUNTER-STATEMENT OF THE ISSUE PRESENTED

1. Whether the Government, as to either of the Moving Plaintiffs, has demonstrated a basis to oppose the motion for summary judgment by Moving Plaintiffs, or entitlement to summary judgment in its own right, based upon legally sufficient theories.

2. Where the Government relies on affirmative defenses to Tamerlane's claim:

(a) Whether the Government is entitled as a procedural matter to assert the defense.

(b) Whether as a matter of law the defense has legal validity and is legally sufficient.

(c) Whether the Government has placed of record sufficient facts on which it may be deemed to have carried its burden of proof to defeat the claim, let alone to receive summary judgment as to liability.

## COUNTER-STATEMENT OF THE CASE

### Procedural Background

Moving Plaintiffs have moved the Court, pursuant to R.C.F.C. 56, for partial summary judgment as to liability. The Government has opposed that motion, and filed a cross motion for summary judgment.

The Government quibbles with, but does not raise any substantive dispute concerning, Moving Plaintiffs' proposed uncontested facts. Rather, the Government offers as proposed uncontested facts transaction details essentially irrelevant to the real pending issues.

At the same time, the Government has raised affirmative defenses. As to these affirmative defenses, the Government has the burden of proof. However, the Government fails in its obligation, pursuant to R.C.F.C. 56(e), to provide competent evidence, by affidavit or otherwise, to properly support those defenses. Nor does the Government contest the evidence contained in the Axelrod Tamerlane Declaration ("Axelrod Tamerlane Decl."), which avers facts on personal knowledge to negate those affirmative defenses. Pl. App. 30-33.[1]

The effect of these failures is that, while the affirmative defenses are largely if not entirely fact-dependent, the Government has left the summary judgment record bereft of the facts needed to support them.

**Defendant's Arguments**

Defendant raises three arguments both to defeat the motion of Moving Plaintiffs for partial summary judgment and on which it seeks to secure partial summary judgment in its favor:

1. The prepayment restrictions created by ELIHPA did not constitute a repudiation of the prepayment right contained in Moving Plaintiffs' loan documents. This argument is strictly legal in nature, and applies to both claimants. The argument is legally flawed, so it creates neither an affirmative defense to their claims nor a basis for the Government's receipt of summary judgment.

---

[1] Axelrod also submitted a Declaration with respect to Park Terrace East ("Axelrod Park Terrace East Decl."). Pl. App. 1-3.

2. Tamerlane's acceptance of an incentive to avert prepayment involved a bilateral modification of the contract or, alternatively, an accord and satisfaction, precluding recovery for breach of contract. These arguments, limited to Tamerlane, raise affirmative defenses as to which the Government has the burden of proof. As to the first, the Government fails because the terms of the transaction documents, on the Government's own boilerplate forms, do not in any way provide for the relinquishment of claims or rights. As to the second, the Government fails to allege any facts, let alone facts sufficient to carry its burden, that a meeting of the minds existed to create an accord and satisfaction.

3. Tamerlane's receipt of an incentive to avert prepayment precludes it from recovering for anticipatory breach. This argument, limited to Tamerlane, is strictly legal in nature. The argument is legally flawed, so it neither creates an affirmative defense to their claims nor a basis for the Government's receipt of summary judgment.

**Recent Developments**

Since Moving Plaintiffs' motion for partial summary judgment was filed, there have been two material developments. First, the Government has produced an expert who has disputed the expert of Moving Plaintiffs concerning the ability of both partnerships to secure financing in 2005. As to Tamerlane, however, the Government contends that its claim accrued in 2000. Should the resolution of pending motion practice as to Mullica and Park Terrace Limited in the context of claim accrual for limitations purposes result in a determination that the claim accrued during the incentives process, the issue is moot at least as to Tamerlane since the Government, in awarding incentives, determined at the time of the incentive transaction that Tamerlane had the ability to prepay and take the project private. See Appendix to Government Cross Motion and Opposition ("Govt. App.") at 9, 13, where the Government states "Since you have . . . demonstrated the ability to prepay, we are offering you the following incentives. . . ."

Nothing is meant to suggest that the Government's accrual argument has any merit in the first place. However, the issue leads directly to the second recent development. In its summary judgment briefing, the Government confirms the validity of the argument being made by the plaintiffs litigating the statute of limitations issue, Mullica West Limited and Park Terrace Limited. It does so by repeatedly characterizing the incentive process as designed to "avert prepayment." See Government's Brief on Cross Motion and Opposition ("Govt. Br.") at 5, 18. This all but concedes that the application for incentives did not accrue a claim since it was not geared to rejection of a demand to prepay.

For the reasons which follow, the motion for partial summary judgment of Moving Parties should be granted, and the Government's cross motion denied.

## ARGUMENT

### I. ELIHPA'S PREPAYMENT RESTRICTIONS ACTED TO REPUDIATE DEFENDANT'S AGREEMENTS.

The Government attempts to avoid summary judgment by a specious argument that ELIPHA and HCDA did not repudiate the contract. First, in the face of unbroken authority that the statutes effected a repudiation, the Government tries to rewrite the law by arguing the statutes provide avenues by which an owner (in theory) could accomplish prepayment and leave the § 515 program. In the same breath, recognizing the highly theoretical nature of those avenues, the Government seeks to have the Court view those restrictions as more "benign" than they actually are.[2] Second, the Government seeks to neutralize its breach by setting up a spurious inconsistency in the positions of the four claimants, so as to claim that no repudiation occurred.

The arguments are totally unmeritorious.

---

2 "Benign" is the Government's term. See Govt. Br. at 13.

### A. Defendant Seeks To Reargue Settled Law That Moving Plaintiffs' Contract Rights Were Repudiated.

The Government's repudiation argument has been rejected by the Court of Claims in Franconia, as well as this Court in Allegre Villa Ltd. P'ship v. United States, 60 Fed. Cl. 11 (2004) -- authority to which the Court has stated it intends to adhere. See Appendix of Moving Plaintiffs ("Pl. App.") 180-83. The breach of contract issue was decided by the Court of Claims in Franconia, which held that some theoretical right to prepay did not defeat what it found were across-the-board obstacles to prepayment. As Franconia held, Congress had so burdened the process of prepayment by imposing restrictions that it effectively made it impossible to prepay at all:

> In sum, not even a microscopic reading of the contract documents can escape the conclusion that plaintiffs had an unfettered right to prepay their mortgages. It follows that the passage of ELIHPA and HCDA repudiated that right. Those statutes "conveyed an announcement by the Government that it would not perform as represented in the promissory notes if and when, at some point in the future, petitioners attempted to prepay their mortgages." Franconia, 536 U.S. at 143, 122 S.Ct. 1993; see also Restatement (Second) of Contracts (hereinafter "Restatement") § 250, Comment b (1981) ("[A] statement of intention not to perform except on conditions which go beyond the contract constitutes a repudiation"). "[W]hereas under the old scheme FmHA had to accept prepayment from borrowers . . . at any time," the Eighth Circuit observed in Parkridge, 13 F.3d at 1196, "under [ELIHPA], FmHA may accept prepayment only, at the end of an intricate six-month long (or longer) procedure. . . ."

61 Fed. Cl. at 732-33.

The Franconia court specifically examined the avenues to prepay available under the statute, and rejected them as meaningful:

> Plaintiffs presented evidence that the entire process could take several years and the court finds that estimate to be more consistent with the record than defendant's alternative of six months. Indeed, Mr. Anderson admitted that the prepayment process is "burdensome," "difficult to go through" and "not the easiest thing in the world." And, it should not be overlooked that

> the end result of this cumbersome process, far more often than not, is that the prepayment request is rejected.

Id. at 733.

Despite the fact that this Court has already said it regards Franconia as persuasive, and that it intends to adhere to its authority, the Government's argument requires the Court to overturn existing law. This should be the end of the matter. But were the Court to consider the Government's argument, it is thoroughly unpersuasive.

The Government is reduced to asserting an argument that the restrictions really were not too bad after all, even though the proof of the pudding is that the Government would never let Moving Plaintiffs out of the § 515 program.[3] The Government cites Cienega Gardens v. United States, 503 F.3d 1266 (Fed. Cir. 2007), while it acknowledges (Govt. Br. at 13) that Cienega is a takings (not a contract) case. As such, it is totally inapposite and presents no support for the Government's position against the argument of Moving Plaintiffs based on contract repudiation. The issue is not whether the rights were so completely confiscated as to amount to a taking. Rather, the issue is whether an unrestricted right to prepay was infringed. Clearly it was. Whether the restrictions may be characterized as more "benign" than onerous or a severe curtailment, the restrictions change the deal and it is the deal change which measures the breach. The fact that there may be a theoretical way out of the program does not affect the

---

[3] Indeed, during the deposition of Mr. Axelrod taken after the close of discovery due to Mr. Brilliant's schedule, Mr. Brilliant questioned Mr. Axelrod as to whether or not he had attempted prepayment. When faced with this line of inquiry, plaintiffs that day promulgated interrogatories inquiring as to whether or not the Government contended that it would have permitted the prepayment. The Government objected to the interrogatories as untimely. In a conference held to try to resolve the objection, Mr. Brilliant assured plaintiffs' counsel that the Government would not be relying on that defense. In view of that representation, no motion to compel was filed. In view of the position now taken by the Government, which is inconsistent with Mr. Brilliant's representation, a motion to compel is being made. It would be highly prejudicial to allow the Government to sandbag plaintiff this way and to allow it to make this argument if, as expected, the Government refuses to concede it never would permit prepayment.

existence of unwelcome encumbrances (having to go through hoops to prepay is without question a modification) and therefore does not affect the existence of the breach, i.e. the repudiation.

Not only does the Government reargue settled law, it takes a totally disingenuous position. The Government at once says there is a meaningful right to prepayment, while it refuses to allow prepayment. In fact, while trying to characterize Tamerlane as having made a demand for prepayment in 2000, the Government shies away from acknowledging that if Tamerlane had made such a demand, it was the Government's refusal to allow Tamerlane out of the program that led to the award of incentives. See Axelrod Tamerlane Decl., ¶ 5, Pl. App. 32.[4] The 2002 incentive to Tamerlane was predicated on a finding that the Government needed Tamerlane in the program. The Government should be estopped from talking out of both sides of its mouth.[5]

**B. There Exists No Inconsistency In The Positions Of Claimants.**

The Government then attempts to derive an inconsistency based on the position taken by Mullica West and Park Terrace Limited in litigating the Government's limitations defense against their claims. We put to one side that the Government's positions in § 515

---

4 Of course, Moving Plaintiffs deny any such "demand" occurred and assert the whole process was window dressing, a conclusion strongly supported by the Government's concession that the incentive process was orchestrated and designed not to review demands to prepay but dole out palliative relief to owners who had no other option by virtue of the Government's repudiation.

5 The Axelrod Tamerlane Decl. and the Axelrod Park Terrace East Decl. both aver that the Government told each owner that it would never allow prepayment. Axelrod Tamerlane Decl., ¶ 5, Pl. App. at 32; Alexrod Park Terrace East Decl. ¶ 6, Pl. App. 3. The Government has submitted no facts to respond to these contentions via an opposing affidavit or otherwise. Indeed, as to Tamerlane, Tamerlane's receipt of an incentive in 2002 was predicated upon the Government's determination that it needed to keep the project in the § 515 program. See Pl. App. 115, 120 and the Government's proposed finding of fact no. 8 (quoting the 2002 incentive agreements to the effect that the restrictive use provision obligates borrower until "the Government determines that there is no longer a need for [low income] housing."

litigation have been the very epitome of inconsistency. These claimants argued that application for prepayment was pro forma, not a demand rejected by the Government, and therefore their claims did not accrue until the filing of suit. Claimants have no inconsistency here.

The Supreme Court in Franconia Assoc. v. United States, 536 U.S. 129 (2002) held that a "breach would occur, and the six-year limitations period would commence to run, when a borrower tenders prepayment and the government then dishonors its obligation to accept the tender and release its control over use of the property that secured the loan." Id. The Supreme Court explained that ELIHPA functioned as an anticipatory repudiation, not an immediate breach triggering the accrual of the claim for statute of limitations purposes. Id. at 143. Instead, the repudiation ripens into a breach only when the plaintiffs attempt to prepay their loans and the prepayments are rejected, or, in the alternative, when the plaintiffs elect to treat the repudiation as a breach by bringing suit. Franconia, 536 U.S. at 143-44, 148.

In Grass Valley Terrace v. United States, 69 Fed. Cl. 341 (2005) (Damich, C.J.), the Court of Claims further elaborated on Franconia. The property owners filed suit complaining of the inability to prepay their loans. Referring to the Supreme Court's holding in Franconia, the Grass Valley Terrace Court held that a "breach would occur, and the six-year limitations period would commence to run, when a borrower tenders prepayment and the Government then dishonors its obligation to accept the tender and release its control over use of the property that secured the loan." Grass Valley Terrace, 69 Fed. Cl. at 344 (emphasis in original).[6] The Court denied summary judgment, holding that the claims accrued, for purposes of the six-year statute

---

[6] The Grass Valley Terrace Court also characterized the Supreme Court's holding in Franconia as follows:

> [A] breach did not occur with the passage of the legislation itself, but rather with the government's refusal in each specific instance to accept prepayment.

69 Fed. Cl. at 353, citing 536 U.S. at 143-44.

of limitations, on the date that the owners elected to treat passage of legislation restricting prepayment as a breach by filing suit against the Government. Id. at 354.

In short, the Supreme Court in Franconia held that there must be both a demand as well as a rejection of the demand to cause accrual. Otherwise, the claim accrues when suit is filed. The Government conveniently forgets the demand part of the equation, and that in the absence of demand and rejection the repudiation ripens into a breach upon the filing of suit. Neither Mullica nor Park Terrace Limited intended to make a demand. In fact, what is really remarkable about the Government's position is that it now readily acknowledges the true nature of the incentive process, which was not predicated on a meaningful demand for prepayment that would lead to a meaningful rejection, but a pro forma process whereby those left high and dry by the Government's repudiation could receive the only relief available in the form of a palliative "incentive." While Tamerlane is an independent juridical entity, its position nevertheless is entirely consistent with that of Mullica and Park Terrace Limited. The effort by the Government to neutralize its unquestioned breach deserves little notice except as a backdrop to the credibility of its remaining arguments.

## II. ACCEPTING INCENTIVES TO REVERT PREPAYMENT NEITHER CREATED A BILATERAL MODIFICATION OF THE AGREEMENT NOR AN ACCORD AND SATISFACTION.

The Government next seeks to have the Court accept two theories of claim relinquishment as affirmative defenses to the Tamerlane claims.[7] The first is based on an alleged bilateral modification of the agreement between the parties, relying on putative language in the incentive transaction documents to create the relinquishment of rights. The second is based on the doctrine of accord and satisfaction, relying on the transaction itself (rather than contract

[7] These putative defenses apply to Tamerlane only, since Park Terrace East did not attempt to secure incentives.

language) to create that relinquishment. These are affirmative defense as to which the Government has the burden of proof. PDR, Inc. v. United States, 78 Fed. Cl. 201, 207 (2007), citing O'Conner v. United States, 60 Fed. Cl. 164, 168 (2004); Nat'l Steel and Shipbuilding Co. v. United States, 49 Fed. Cl. 579, 589 (2001). Neither theory flies.

### A. The Incentive Transaction Did Not Involve A Bilateral Modification Of The Agreement Which Precludes Tamerlane's Claim.

The Government first contends that the documents which embody the incentive transaction have terms which provide for relinquishment of claims. The Government contends that by accepting an incentive to forego prepayment and remain in the § 515 program, Tamerlane entered into a new, superseding agreement[8] which contained language to the effect that the loan was to "be administered subject to the limitations of the authorizing act of Congress and related regulations" and that "the present regulations of the Government and . . . its future regulations and [their] provisions" were applicable to the incentives transaction. According to the Government, since these regulations governed (and conditioned) prepayment, Tamerlane relinquished its right to sue for the breach which by then had occurred by virtue of the 2000 prepayment request.

The Government's argument must be understood against the factual background of the transaction. The Government relies on its own boilerplate forms, which in no way provided for the relinquishment of claims, to argue they had that effect.[9] These were form documents prepared by the Government which, as admitted by the Government, were designed

---

8 This is incorrect. The new agreement did not displace the old agreement, but was an add-on agreement since the old note, loan agreement and mortgage stayed in place. There was no supercession language in the new agreement or recital to that effect.

9 See Exhibit K, Pl. App. 110 ff. In fact, the Loan Agreement implementing the incentive transaction was a pre-printed Department of Agriculture form numbered "Form RD 1944-34" and approved by the Office of Management and Budget (approval no. 0575-0047.). Pl. App. 110.

to implement a statutory mandate to offer incentives "to avert prepayment" to owners who otherwise would have had the right to prepay. Govt. Br. at 5, 18. The idea that there could be negotiation with the Government in that context is fanciful, and of course the parties were hardly in an equal bargaining position. The Government also does not aver that it disclosed to Tamerlane that, by receiving the incentive, it would be relinquishing any claims.

The gestation of the transaction is also important. The Government had unilaterally repudiated its contract. It then told Tamerlane that incentives were its only option. See Axelrod Tamerlane Decl., ¶ 5, Pl. App. 32. In short, it put a gun to Tamerlane's head. Even the options offered by the Government were of minimal value; they were described in Franconia as "unfunded and dysfunctional options that were foisted upon plaintiffs here." 61 Fed. Cl. at 757.

Finally, there is the curious history of the Government's litigation position concerning the effect of the incentives. In the prior Franconia litigation, the Government attempted to argue that accepting incentives transactions was all but mandatory to mitigate losses. See 61 Fed. Cl. at 742 ("Defendant claims that it was unreasonable for plaintiffs not to pursue at least one of these courses to lessen the damages owed on the breach of their original contracts."). Now, having lost that argument, the Government shifts ground to assert that the incentive transaction resulted in the extinguishment of the claims, a position directly inconsistent with its prior position that an owner was required to take incentives to mitigate damages.

The bilateral modification theory fails.

**(1) Bilateral Modification Was Not Raised As An Affirmative Defense In The Government's Answer.**

Bilateral modification, a basis set up by the Government to avoid liability, was never raised as an affirmative defense in the Government's answer. For that reason, it should not be entertained as a defense. See R.C.F.C. 8(c).

**(2) The Government Assumes Tamerlane's Claims Had Accrued When They Had Not.**

A claim does not accrue until a demand is made and rejected; otherwise the claim accrues upon filing of suit. Here, no claim had accrued, because the Axelrod Tamerlane Decl. disclaims the intention to make a demand. Axelrod Tamerlane Decl., ¶ 5, Pl. App. at 32. Given that the Government has now candidly characterized the incentives as designed to "avert prepayment," it effectively concedes that the transaction is not properly seen as a demand which was rejected; rather, the Government was implementing a statutory directive, a request for prepayment was a pro forma requirement, and there had been no demand which was needed to accrue the claims. The bilateral modification argument, which is otherwise flawed for the remaining reasons discussed below, rests on the flawed assumption that claims had by then accrued.

**(3) Under Fundamental Contract Law, No Rights Were Relinquished By Tamerlane Because The Transaction Documents, Which Were The Government's Own Printed Forms, Did Not Provide For Extinguishment.**

This was an adhesion contract on the Government's documented on the Government's own boilerplate forms. One searches in vain for any contract term which supports a release of rights. The Government offers only language in the 2002 Loan Agreement (Pl. App. 112) which stated that the loan was to "be administered subject to the limitations of the authorizing act of Congress and related regulations" and that "[t]his loan agreement shall be subject to the present regulations of the Government and to its future regulations and provisions thereof." Govt. Br. at 14.

Relinquishment of rights is not lightly inferred, but must be clearly explicit. *Corbin on Contracts* (revised edition, 1993) § 67.9(1)(c) (A release must contain "words that manifest a present intention to discharge" a claim.) One searches in vain for any such provision. Instead, the Government tries to fashion a release out of non-existent language in its own

boilerplate forms, asserting that by making the administration of the transaction subject to statute and regulation, and by making "applicable" the present and future regulations of the Government, there exists language which has the effect of foreclosing Tamerlane's claims. This position is unsupportable, since the language relied on by the Government merely states the obvious in the context of a transaction with a Government agency which heavily regulates its transactions. In no way can the language be read to provide for extinguishment of rights. Nor does the Government even contend that its statute or regulations address the release of claims, much less provide for their release. The Government therefore relies on language so oblique that it proves only the weakness of the Government's position.

Alternatively, were there to be ambiguity, under the doctrine of *contra proferentum*, it would be resolved against the Government as the draftsperson of the contract. Travelers Cas. & Sur. Co. of Am. v. United States, 75 Fed. Cl. 696 (2007), citing Interstate Gen. Gov't Contractors, Inc. v. Stone, 980 F.2d 1433, 1435 (Fed. Cir. 1992).[10]

Finally, § 7(d), a provision of the Loan Agreement the Government conveniently overlooks, provides that any "agreement must be in writing." The parole evidence rule therefore precludes the Government importing new understandings whose terms are not expressly provided for within the four corners of the document or any other later signed writing. See Yankee Atomic Elec. Co. v. United States, 73 Fed. Cl. 249, 302 (2006); Gemini Elecs., Inc. v. United States, 65 Fed. Cl. 55, 63 (2005) ("When a document is completely integrated, no additional terms may be added whether consistent or inconsistent through parol evidence."); see also *Williston, A Treatise on the Law of Contracts* (4th edition, 1990) § 3-4(c).

---

10 Any ambiguity in the documents is clearly not patent, as demonstrated by the fact that the Government did not raise this issue in its prior pleadings. See Travelers Cas. and Sur. Co. of Am., 75 Fed. Cl. at 717, n.40 ("The protracted delay between the onset of the dispute and the raising of the patent ambiguity argument is evidence that the ambiguity is not patent.").

**B. The Incentive Transaction Did Not Create An Accord And Satisfaction Such As To Bar Tamerlane's Claims.**

Recognizing that the language in the transaction documents provides no support for the bilateral modification theory, the Government next argues that the very incentive transaction itself resulted in an accord and satisfaction with respect to Tamerlane's claims for breach of contract. As the Government's own cases hold, to effect an accord and satisfaction, five things must be shown to be present:

> A party claiming an accord and satisfaction must prove: (1) proper subject matter; (2) competent minds; (3) a meeting of the minds; (4) consideration; and (5) the acceptance of payment or performance in satisfaction of a claim or demand which is a bona fide dispute. See Westerhold v. United States, 28 Fed. Cl. 172, 174-75 (1993) (citing Brock & Blevins Co., 170 Ct. Cl. 52, 59, 343 F.2d 951 (1965)).

Starflight Boats v. United States, 48 Fed. Cl. 592, 601 (2001).

The Government has the burden of proof on this affirmative defense. As the Government's own cases further hold, "The defense fails if the defendant is unable to establish any of the above elements." Id. (citing Westerhold, 28 Fed. Cl. at 175).

**(1) The Absence Of A Meeting Of The Minds To Relinquish Rights Precludes An Accord And Satisfaction.**

The requirements which must exist to create an accord and satisfaction are undisputed:

> The process of making an accord, of interpreting the words and acts of the parties, and of determining the legal effect thereof, is the same as in the case of other contracts. In order that a performance rendered by an obligor shall operate as a satisfaction of the claim against him, it must be offered as such to the creditor. There must be accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise. If it is not so rendered, there is no accord, either executory or executed, for the reason that there are no operative expressions of agreement – no sufficient offer and acceptance.

*Corbin on Contracts* (revised edition, 1993) § 1277 at 117-121 (emphasis added).

Likewise, in National Steel & Shipbuilding Co. v. United States, 49 Fed. Cl. 579, (2001), the Court, examining whether a meeting of the minds occurred so as to give rise to an accord and satisfaction, stated:

> A meeting of the minds occurs when there are 'accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise.'

Id. at 589. The court refused to find a valid accord and satisfaction, where the government failed to prove that the parties intended to include the cost of delays resulting from actual lack of government-furnished property. Id. (citing Chesapeake & Potomac Tel. Co. v. United States, 228 Ct. Cl. 101, 654 F.2d 711 (1981) and *6 Corbin on Contracts* § 1277).

The incentive transaction documents are the Government's boilerplate forms. One is even pre-printed. The documents do not provide for the relinquishment of any rights. The Government has not even submitted any evidence to aver that the relinquishment of rights was discussed or that the Government advised Tamerlane that by entering into the incentive transaction it would be relinquishing its rights. The idea that the Government derives an accord and satisfaction which it neither asked for, nor drafted, but which arises out of thin air is preposterous.[11]

The thrust of the Government's argument is to place the onus on Tamerlane to preserve its rights, rather than on the Government to bargain for and secure terms that resulted in their extinguishment. The language in the cases cited by the Government purports to support that result. Govt. Br. at 15. However, upon close reading, the cases do no such thing. First, the cases squarely require that there exist, among other things, a meeting of the minds as to the

---

[11] Indeed, in Franconia, the Court expressly allowed owners who had accepted incentives (presumably with the same Government form documents) to proceed with their claims.

accord and satisfaction. Indeed, they cite the seminal authorities which recite the requirements for creating an accord and satisfaction discussed above, including a meeting of the minds. Moreover, the context in which the cases arose -- change order disputes where there had been prior disputes and releases – makes clear that the second agreement clearly was in the context of addressing and compromising what had come before.

Finally, the Government, ipse dixit, states that "the incentives offered were consideration for the borrower's foregoing prepayment without the Government's incurring liability for breach." Govt. Br. at 18. This contention, bereft of any support, amounts to the Government posing the question: why would the Government have any reason to offer incentives without getting a release? The answer is self-evident. ELIHPA and HCDA required the Government to offer incentives to qualified owners. The incentives, at least for some owners, may have amounted to very little benefit, but the quantum of benefit for other owners might postpone or avoid litigation by offering enough palliative to the economic harm to induce those owners not to choose to assert their rights. The real question is the inverse: why didn't the Government provide a release in its own forms if a relinquishment of rights was intended?[12]

**(2) The Government Has Not Carried Its Burden To Sustain The Defense.**

As an affirmative defense, the Government bears the burden of proving each of the elements of an accord and satisfaction, which it has not done. On the one hand, the Axelrod Declaration negates a meeting of the minds by stating expressly there was no intent to give up any rights. See Axelrod Tamerlane Decl., ¶ 9, Pl. App. 33. On the other hand, the Government never submits an opposing affidavit which would contain facts from which a meeting of the minds could be inferred, let alone concluded. Thus, for example, the Government never submits

[12] Of course, the coercive context of the transaction further erodes any conclusion that a meeting of the minds had taken place.

evidence to aver that the subject of the relinquishment of claims was discussed, or that the partnerships were warned that the Government believed that by entering into the incentive transaction, claims would be lost.

Accordingly, the Government simply has not met its burden to create an accord and satisfaction, nor has it discharged its obligation pursuant to R.C.F.C. 56(e) to controvert the facts offered by Tamerlane that would negate the defense. The defense should be overruled as a basis to deny summary judgment, let alone as a basis to grant the Government's cross motion.

## III. TAMERLANE'S RECEIPT OF AN INCENTIVE DOES NOT PRECLUDE ITS CLAIMS FOR ANTICIPATORY BREACH AS TO THE POST-INCENTIVE EXTENDED PERIOD.

Finally, the Government argues that Tamerlane's receipt of an incentive "to avert prepayment" (Govt. Br. at 18) precludes it from recovering for an anticipatory breach because Tamerlane "continues to enjoy the benefit of the equity loan, which it obtained by virtue of the prepayment right." Id. This being the case, the Government asserts that by foregoing or "postponing" the exercise of its prepayment right in return for an incentive to avert prepayment, Tamerlane affectively invoked its prepayment right by trading its exercise for an alternative benefit available only to borrowers who posses such a right. Therefore, the Government reasons, Tamerlane should be precluded from asserting a claim for future damages (as to the extended period once the restrictions expire until the end of the life of the loan) based upon a theory of anticipatory breach.

The acceptance of incentives should not preclude the existence of an anticipatory breach with respect to the future post-incentive period. In fact, Allegre Villa, supra, supports the ability to make this claim. There, as to contracts for which the right to prepayment had not yet vested, the Court allowed future claims to go forward, stating:

> Contracts with plaintiffs for which the right to prepayment has not yet vested were breached on the date this lawsuit was filed,

> because those plaintiffs have chosen to treat the Government's repudiation as a breach.

60 Fed. Cl. at 17. The Court again adjudicated the issue in Mullica and Park Terrace Limited, and found an anticipatory breach, although a definitive ruling remains sub judice.

In this suit, Tamerlane seeks damages for all periods, that is what has previously been termed the primary period as well as the extended period. While the Government says that a plaintiff must treat the repudiation as a total breach, and the contract right must be treated as terminated and replaced with a claim of breach of contract damages, the jurisprudence relied on by the Government (putting aside whether the position has merit) is inapplicable because regardless of when the Tamerlane claim accrued, it has sued for breach for all years.

The idea that Tamerlane relies on something less than a single complete breach is a figment of the Government's imagination. Tamerlane's theory is that the claim accrued on the filing of suit, and that this served to ripen the repudiation into a breach for all purposes. While Mullica West Limited and Park Terrace Limited share this theory, whatever the outcome of the claim accrual controversy before the Court, Tamerlane would not be affected since either the Court will see things as Mullica West Limited and Park Terrace Limited (as well as Tamerlane) see them, or an adverse ruling will simply mean all of Tamerlane's claims accrued in the approximate 2002 time frame at the time of the incentive transaction.

For this reason, Tamerlane clearly may maintain an action for the Government's anticipatory breach on account of the future years.

## CONCLUSION

The Government's effort to defeat summary judgment fails. Where it raises legal theories, its legal theories do not hold water. Where it raises factual defenses, it relies on uncontested documents which do not support its position and offers no facts to make out the

defenses. Since the Government has the burden of proof, those defenses may be rejected. A fortiori, its cross motion for summary judgment cannot be granted.

For these reasons, (a) partial summary judgment as to liability[13] should be granted in favor of Tamerlane; (b) partial summary judgment as to liability[14] should be granted in favor of Park Terrace East, and (c) the Government's cross motion for summary judgment should be denied.

Respectfully submitted,

COZEN O'CONNOR

**s/ H. Robert Fiebach**
H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Plaintiffs Tamerlane Limited and Park Terrace East Limited

**Filed Electronically**

Dated: February 1, 2008

---

13 Should the Court determine that Tamerlane's claim accrued at the time of the incentives process, the Court may award partial summary judgment on liability as to Tamerlane since the Government determined at that time, and admitted in writing, that Tamerlane could have prepaid. Govt. App. 9, 13. If Tamerlane's claim accrued with the filing of suit, the ability to prepay appears to be disputed by the Government's expert and should be reserved for trial, although given the proximity in time Tamerlane questions whether the Government's position is disingenuous.

14 The issue of whether Park Terrace East could pre-pay appears to be disputed by the Government's expert and should be reserved for trial.

**CERTIFICATE OF SERVICE**

I, David M. Doret, hereby certify that a true and correct copy of the foregoing Reply Memorandum of Moving Plaintiffs in Support of Motion for Partial Summary Judgment and Memorandum of Law in Opposition to Defendant's Cross Motion for Partial Summary Judgment was filed with the Court and served upon counsel via the ECF system on the 1st day of February, 2008.

**s/ David M. Doret**
David M. Doret