IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

TAMERLANE, LIMITED, et al.,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 05-677C
(Judge Christine O.C. Miller)

**MOVING PLAINTIFFS' RESPONSE TO**
**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Rules of this Court, Moving Plaintiffs, Tamerlane Limited ("Tamerlane") and Park Terrace East ("Park Terrace East"), respectfully respond to defendant's proposed findings of uncontroverted fact as the proposed findings apply to each Moving Plaintiff respectively, and as applicable propose additional proposed findings of fact as follows:

1. In 1980, Tamerlane received two 50-year section 515 loans from the Farmers Home Administration, in the amounts of $1,498,000 and $1,875,800. Pl. App. 35, 44, 48, 57. In 1982, Tamerlane received a third 50-year section 515 loan, in the amount of $1,493,000. Pl. App. 78, 85. The loan agreements provided that the loan proceeds were to be used to provide rental housing to tenants eligible under section 515. Pl App. 35, 48, 78. All of these loans were secured by mortgages containing a provision that restricted the use of the housing to housing people eligible for occupancy pursuant to section 515 for a period of 20 years from the closing of the loan. Pl. App. 66, 98 (¶ 32 of 1980 mortgage and 1982 mortgage).

**RESPONSE:**

The proposed finding is disputed, although Tamerlane does not dispute that the referenced events took place or that the referenced documents are true and correct copies of documents relating to the Tamerlane transactions. Tamerlane objects to the characterization of the contents of those documents as legal conclusions; the referenced documents are in writing and speak for themselves.

2. In 1981, Park Terrace East received a 50-year section 515 loan to provide rental housing to eligible tenants, in the amount of $1,287,140. Pl. App. 5, 9. Neither the mortgage securing this loan (Pl. App. 13-21) nor any of the other loan documents contained a provision restricting the use of the Park Terrace Fast project for any specific period. Pl. App. 4-29. By letter of December 27, 2000, Tamerlane submitted to the Government a request for approval to prepay its loan by July 1, 2001. Def. App. 1-2.

**RESPONSE:**

Moving Plaintiffs object to this proposed finding as internally contradictory. The first two sentences relate to Park Terrace East. The third sentence relates to Tamerlane.

As to the first two sentences of the proposed finding, they are disputed although Park Terrace East does not dispute that the referenced events took place or that the referenced documents are true and correct copies of documents relating to the Park Terrace East transactions. Park Terrace East objects to the characterization of the contents of those documents as legal conclusions; the referenced documents are in writing and speak for themselves.

As to the third sentence of the proposed finding, Tamerlane disputes that proposed finding on the grounds that it was only Tamerlane's intention to secure incentives under the circumstances set forth in the Axelrod Declaration. See Axelrod Decl., Pl. App. 30-33.

Since the Government now admits in its brief in support of its cross motion for summary judgment and in opposition to the motion of Moving Plaintiffs for summary judgment ("Govt. Br.") that the incentive program was designed to "avert prepayment," at 5, 18, Tamerlane submits pursuant to R.C.F.C. 56(h)(2) the following additional proposed findings of fact:

(1) The process for applying for incentives was designed to "avert prepayment." As such, it did not trigger the accrual of a claim for repudiation, because (a) what the Government has characterized as prepayment request was a pro forma document required by the Government to secure incentives; (b) that document did not represent a meaningful demand for performance; and (c) absent a meaningful demand for performance, there could be no meaningful rejection of that demand by the Government. See Govt. Br. at 5, 18; supplementary brief of Mullica West Limited and Park Terrace Limited in opposition to the Government's motion for judgment on the pleadings, and the exhibits submitted therewith.

3. The Government did not refuse to accept prepayment. Def. App. 23, 28-34. Rather, on August 30, 2001, the Government responded with a "General Incentive Offer" pursuant to RD Instruction 1965-E, paragraph 1965.213, outlining the kinds of incentives that were available to avert prepayment. Def. App. 4-6.

**RESPONSE:**

The proposed finding is objected to as indefinite in its reference. Assuming it refers to Tamerlane, the proposed finding is disputed, although Tamerlane does not dispute that the referenced events took place or that the referenced documents are true and correct copies of documents relating to the Tamerlane transactions. Tamerlane objects to the characterization of the contents of those documents as legal conclusions; the referenced documents are in writing and speak for themselves.

Tamerlane disputes that proposed finding on the grounds that it was only Tamerlane's intention to secure incentives under the circumstances set forth in the Axelrod Declaration. See Axelrod Decl., App. 30-33.

Tamerlane further incorporates by reference the additional proposed findings of fact set forth in response to paragraph 2.

4. By letter of September 6, 2001, Tamerlane accepted the August 30, 2001 "General Incentive Offer," and specified the kinds of incentives it was interested in obtaining. Def. App. 7-8.

**RESPONSE:**

The proposed finding is disputed, although Tamerlane does not dispute that the referenced events took place or that the referenced documents are true and correct copies of documents relating to the Tamerlane transactions. Tamerlane objects to the characterization of the contents of those documents as legal conclusions; the referenced documents are in writing and speak for themselves.

Tamerlane disputes that proposed finding on the grounds that it was only Tamerlane's intention to secure incentives under the circumstances set forth in the Axelrod Declaration. See Axelrod Decl., App. 30-33.

Tamerlane further incorporates by reference the additional proposed findings of fact set forth in response to paragraph 2.

5. On January 31, 2002, the Government made a specific incentive offer, Def App. 9-16, "to consent to a junior lien or subordination that will allow for an equity loan from a third party . . . ." Def. App. 9, 13. The offer was made in two separate letters dated January 31, 2002, one with respect to a 40-unit portion of the project, and one with respect to the remaining 120 units. The letters set the maximum amount of the third-party loans at $326,425 and $1,578,470,

respectively. Def. App. 9, 13. The offer included various details and conditions, including reamortization of the existing loans, Def. App. 9, 13, and a requirement to "execute a 'Restrictive Use Agreement' that will obligate you and any successors in title to restricting the use of the project to very-low, low, and moderate income tenants for a period of 20 years from the date the incentives are closed." Def. App. 10, 14.

**RESPONSE:**

The proposed finding is objected to as indefinite in its reference. Assuming it refers to Tamerlane, the proposed finding is disputed, although Tamerlane does not dispute that the referenced events took place or that the referenced documents are true and correct copies of documents relating to the Tamerlane transactions. Tamerlane objects to the characterization of the contents of those documents as legal conclusions; the referenced documents are in writing and speak for themselves.

Tamerlane disputes that proposed finding on the grounds that it was only Tamerlane's intention to secure incentives under the circumstances set forth in the Axelrod Declaration. See Axelrod Decl., App. 30-33.

Tamerlane further incorporates by reference the additional proposed findings of fact set forth in response to paragraph 2.

6. Tamerlane transmitted its acceptance of the January 31, 2002 incentive offer in March 2002. Def. App. 17-19.

**RESPONSE:**

The proposed finding is disputed, although Tamerlane does not dispute that the referenced events took place or that the referenced documents are true and correct copies of documents relating to the Tamerlane transactions. Tamerlane objects to the characterization of

the contents of those documents as legal conclusions; the referenced documents are in writing and speak for themselves.

Tamerlane disputes that proposed finding on the grounds that it was only Tamerlane's intention to secure incentives under the circumstances set forth in the Axelrod Declaration. See Axelrod Decl., App. 30-33.

Tamerlane further incorporates by reference the additional proposed findings of fact set forth in response to paragraph 2.

7. Pursuant to the terms of the January 31, 2002 incentive offer, Tamerlane obtained a third-party equity loan from Allegiance Rank of North America on May 10, 2002, in the principal amount of $1,849,725. Def. App. 20-21. On the same date, Tamerlane and the Government signed mortgage modification agreements reflecting the reamortization of the outstanding balances of Tamerlane's section 515 loans in accordance with the incentive package, PI. App. 115-122, and, on June 1, 2002, Tamerlane and the Government entered into a new loan agreement concerning these loan balances, Pl. App. 110.

**RESPONSE:**

The proposed finding is disputed, although Tamerlane does not dispute that the referenced events took place or that the referenced documents are true and correct copies of documents relating to the Tamerlane transactions. Tamerlane objects to the characterization of the contents of those documents as legal conclusions; the referenced documents are in writing and speak for themselves.

Tamerlane disputes that proposed finding on the grounds that it was only Tamerlane's intention to secure incentives under the circumstances set forth in the Axelrod Declaration. See Axelrod Decl., App. 30-33.

Tamerlane further incorporates by reference the additional proposed findings of fact set forth in response to paragraph 2.

8. The mortgage modification agreements modified the mortgages on the section 515 loans to provide:

> The borrower and any successors in interest agree to use the housing for the purpose of housing people eligible for occupancy as provided in Section 514 or Section 515 of Title V of the Housing Act of 1949, as amended, and FmHA regulations then extant during this 20 year period beginning June 1, 2002 . Until June 1, 2022 [sic]. No eligible person occupying the housing shall be required to vacate, or any eligible person wishing to occupy shall be denied occupancy without cause. The borrower will be released from these obligations before that date only when the Government determines that there is no longer a need for such housing, or that such other financial assistance provided to the residents of such housing will no longer be provided due to no fault, action or lack of action on the part of the borrower. A tenant or individual wishing to occupy the housing may seek enforcement of this provision, as well as the Government.

Pl. App. 115, 120.

**RESPONSE:**

The proposed finding is objected to as indefinite in its reference. Assuming it refers to Tamerlane, the proposed finding is disputed, although Tamerlane does not dispute that the referenced events took place or that the referenced documents are true and correct copies of documents relating to the Tamerlane transactions. Tamerlane objects to the characterization of the contents of those documents as legal conclusions; the referenced documents are in writing and speak for themselves.

Tamerlane disputes that proposed finding on the grounds that it was only Tamerlane's intention to secure incentives under the circumstances set forth in the Axelrod Declaration. See Axelrod Decl., App. 30-33.

Tamerlane further incorporates by reference the additional proposed findings of fact set forth in response to paragraph 2.

9. The June 1, 2002 loan agreement provided that the loan was to "be administered subject to the limitations of the authorizing act of Congress and related regulations," and that "[t]his loan agreement shall be subject to the present regulations of the Government and to its future regulations and provisions thereof." Pl. App. 112.

**RESPONSE:**

The proposed finding is objected to as indefinite in its reference. Assuming it refers to Tamerlane, the proposed finding is disputed, although Tamerlane does not dispute that the referenced events took place or that the referenced documents are true and correct copies of documents relating to the Tamerlane transactions. Tamerlane objects to the characterization of the contents of those documents as legal conclusions; the referenced documents are in writing and speak for themselves.

Tamerlane disputes that proposed finding on the grounds that it was only Tamerlane's intention to secure incentives under the circumstances set forth in the Axelrod Declaration. See Axelrod Decl., App. 30-33.

Tamerlane further incorporates by reference the additional proposed findings of fact set forth in response to paragraph 2.

10. Park Terrace Past did not apply to prepay its section 515 loan or communicate to the Government its desire to prepay the loan. Def. App. 35-36. Nor did Park Terrace East request or obtain an equity loan or other incentive to avert prepayment. Pl. App. 3.

**RESPONSE:**

Park Terrace East does not dispute this proposed finding.

Respectfully submitted,

COZEN O'CONNOR

**s/ H. Robert Fiebach**

H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Plaintiffs Tamerlane Limited and Park Terrace East Limited

**Filed Electronically**

Dated: February 1, 2008

## CERTIFICATE OF SERVICE

I, David M. Doret, hereby certify that a true and correct copy of the foregoing Moving Plaintiffs' Response To Defendant's Proposed Findings Of Uncontroverted Fact was filed with the Court and served upon counsel for Defendant, United States of America via the ECF system on the 1st day of February, 2008.

**s/ David M. Doret**
David M. Doret

PHILADELPHIA\3517575\1 164980.000