No. 05-677C
(Judge Christine O.C. Miller)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

TAMERLANE, LIMITED, et. al,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

---

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643

Attorneys for Defendant

**Filed electronically**

February 8, 2008

# TABLE OF CONTENTS

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. ELIHPA's Prepayment Restrictions Did Not Repudiate The Agreements In Question . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. Tamerlane's Acceptance Of An Incentive To Avert Prepayment Involved A Bilateral Modification Of the Contract Or, Alternatively, An Accord And Satisfaction, Precluding Recovery For Breach Of Contract . . . . . . . . . . . . 7

III. Tamerlane's Receipt Of An Incentive To Avert Prepayment Precludes It From Recovering For Anticipatory Breach . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## TABLE OF AUTHORITIES

### CASES

Allegre Villa v. United States, Fed. Cl. 11 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Central Trust Co. v. Chicago Auditorium Association,
240 U.S. 581 (1916) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cienega Gardens v. United States,
503 F.3d 1266 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Cities Serv. Helex, Inc. v. United States,
211 Ct. Cl. 222, 543 F.2d 1306 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Franconia Associates v. United States,
536 U.S. 129 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

Franconia Assocs. v. United States,
61 Fed. Cl. 718 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Indiana Michigan Power Co. v. United States,
60 Fed. Cl. 639 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Roehm v. Horst, 178 U.S. 1 (1900) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

### STATUTES

42 U.S.C. § 1472(c)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. § 1472(c)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. § 1472(c)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6

42 U.S.C. § 1472(c)(5)(G)(ii)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. § 1472(c)(5)(G)(ii)(II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6

Emergency Low Income Housing Preservation Act,
Pub. L. No. 100-242, 101 Stat. 1877 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

### MISCELLANEOUS

Restatement (Second) of Contracts § 250 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TAMERLANE, LIMITED, et. al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05-677C |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY

Defendant, the United States, respectfully submits this reply in support of our cross-motion for partial summary judgment as to liability.

INTRODUCTION

In our moving brief, we demonstrated that the loan prepayment provisions contained in the Emergency Low Income Housing Preservation Act, Pub. L. No. 100-242, 101 Stat. 1877 (1988) ("ELIHPA") did not constitute a repudiation of the prepayment right contained in plaintiffs' loan documents. These provisions do not prohibit prepayment, but require the Government to attempt to reach agreements with borrowers seeking to prepay, so that the housing built with these loans continue to serve the purpose for which the loans were made under sections 515 of the Housing Act of 1949: to provide rental housing for low- and moderate-income persons. Plaintiffs themselves have argued (although for different purposes) that resort to the statutorily prescribed tools for reaching such agreements – such as offering borrowers financial incentives to remain in the section 515 program – does not in itself constitute a breach of the prepayment right.

We further demonstrated that one of the plaintiffs – Tamerlane, Limited ("Tamerlane") – accepted and received such an incentive, and, under the terms of the agreement into which Tamerlane and the Government entered in conjunction with this incentive, Tamerlane gave up the right to be released from the section 515 program through prepayment of its section 515 loan. Finally, we demonstrated that Tamerlane gave up any right to treat the prepayment right as abrogated and to sue for anticipatory breach, because Tamerlane continues to enjoy the benefit of the incentive, which it obtained by virtue of the prepayment right.

With respect to whether ELIHPA repudiated the alleged prepayment right, plaintiffs respond that we seek to reargue what plaintiffs characterize as "settled law." Plaintiffs proceed upon the premise that this issue was definitively resolved in their favor by the decisions of this Court in Franconia Associates v. United States, 61 Fed. Cl. 718 (2004), and Allegre Villa v. United States, 60 Fed. Cl. 11 (2004). As we demonstrated in our moving brief, however, these cases are not binding. And, plaintiffs rely upon a theory of what constitutes a breach of the contract's prepayment clause that is different from the theory advanced in Franconia and Allegre Villa, and that is inconsistent with the basis upon which a repudiation was found in those cases. Indeed, in their attempt to define a theory of the contract right in question that states a claim without leaving some plaintiffs' claims time-barred, plaintiffs have avoided coherently articulating exactly what conduct required by ELIHPA would constitute an actual breach.

With respect to the effect of the incentive agreement between Tamerlane and the Government upon the prepayment right underlying Tamerlane's claim, plaintiffs essentially dismiss the terms of the agreement that they find inconvenient as mere boilerplate. These terms are no more boilerplate, and are of no less force, than the terms upon which Tamerlane's contract

claim is based. With respect to the effect of the receipt of incentives upon the availability of a claim for anticipatory breach, plaintiffs simply miss the point, and, in effect, fail to respond at all.

## ARGUMENT

### I. ELIHPA's Prepayment Restrictions Did Not Repudiate The Agreements In Question

As we demonstrated in our moving brief, ELIHPA did not constitute repudiation of the prepayment right at issue here, because it did not involve "a statement or 'voluntary affirmative act' indicating that the promisor 'will commit a breach' when performance becomes due." Franconia Associates v. United States, 536 U.S. 129, 143 (2002), quoting Restatement (Second) of Contracts § 250 (1979). ELIHPA does not state that the Government must refuse to allow prepayment of section 515 loans; rather, it requires the Secretary of Agriculture to take certain steps before accepting an offer to prepay, in order to preserve the affordability of the housing for which the loan was given. Rather than expressing an intent to abrogate borrowers' contract rights in order to achieve this goal, the statute provides that this goal is to be achieved principally through efforts to obtain the borrower's agreement. ELIHPA authorizes incentive offers to borrowers who offer to prepay and are able to do so, 42 U.S.C. § 1472(c)(4)(A), (B), and permits prepayment in certain circumstances, either subject to certain restrictions, section 1472(c)(5)(G)(ii)(I), or without restrictions, sections 1472(c)(5)(A), (c)(5)(G)(ii)(II), depending upon the circumstances. Abrogation of borrowers' right to prepay their loans would have made these measures superfluous.

Plaintiffs respond to this point by repeating that it is against "settled law." They base this assertion upon this Court's decisions in Franconia and Allegre Villa, but, as we demonstrated in our moving brief, these cases are not dispositive. Plaintiffs cite Franconia as holding that

"Congress had so burdened the process of prepayment by imposing restrictions that it effectively made it impossible to prepay at all," Plaintiffs' Response 5, but, as we established in our moving brief, this characterization of ELIHPA is at odds with tat contained in Cienega Gardens v. United States, 503 F.3d 1266, 1282-87 (Fed. Cir. 2007). Plaintiffs argue that, since Cienega Gardens is a takings case rather than a contract case, it is "totally inapposite." Plaintiffs' Response 6. It is not inapposite, however, concerning the point for which we have cited it. We do not contend that Cienega Gardens is direct authority establishing that ELIHPA did not repudiate the prepayment right. We have demonstrated, rather, that Cienega Gardens supports viewing the measures required by ELIHPA as a genuine means of encouraging borrowers to keep their projects in the section 515 program voluntarily, and, viewed in this manner, ELIHPA cannot be characterized as a repudiation of plaintiffs' prepayment right.

Despite the avenues for prepayment set forth in ELIHPA, plaintiffs assert that "the proof of the pudding is that the Government would never let Moving Plaintiffs out of the § 515 program." Plaintiffs' Response 6. This is unsupported speculation.[1] We do not dispute plaintiffs' assertion that "[t]he 2002 incentive to Tamerlane was predicated on a finding that the Government needed Tamerlane in the program." Plaintiffs' Response 7. And, given this finding, we agree that when Tamerlane sought to remove its project from the section 515 program through prepayment, it would not have been able to invoke 42 U.S.C. § 1472(c)(5)(G)(ii)(II), which

---

[1] Plaintiffs also argue that "while trying to characterize Tamerlane as having made a demand for prepayment in 2000, the Government shies away from acknowledging that if Tamerlane had made such a demand, it was he Government's refusal to allow Tamerlane out of the program that led to the award of incentives." Plaintiffs' Response 7 (emphasis in original). This puts the causal sequence backwards. It was Tamerlane's request to prepay its loan that triggered the Government's offer of incentives to avert prepayment, and it was Tamerlane's acceptance of these incentives that assured Tamerlane's remaining in the program.

permits prepayment without restrictions upon a finding that housing opportunities for minorities would not be materially affected by prepayment and that the tenants either would not be displaced by prepayment or there is an adequate supply of affordable housing in the market area available to displaced tenants. Plaintiff Park Terrace East, Limited ("Park Terrace East"), however, never submitted a request to prepay its loan. Consequently, there was never an occasion for the Government to make any determination whether the circumstances that would permit prepayment under section 1472(c)(5)(G)(ii)(II) existed with respect to Park Terrace East. Therefore, whether ELIHPA would have prevented Park Terrace East from prepaying when it wished to do so is matter of conjecture.[2]

Further, ELIHPA left both Tamerlane and Park Terrace East another means of exiting the section 515 program: section 1472(c)(5)(A). This section allows any borrower to leave the program by offering to sell its section 515 property to a public or nonprofit organization for fair market value, and to prepay its loan if there is no qualified offer to purchase within 180 days. As the Federal Circuit has observed, this option "conferred considerable benefits on the owners." Cienega Gardens, 503 F.3d at 1286 (discussing the effect of ELIHPA's prepayment restrictions

[2] Plaintiffs' misunderstanding of our position concerning this matter appears to be the basis of a footnote in which plaintiffs accuse Government counsel of attempting to "sandbag" plaintiffs. Plaintiffs' Response 6, n.5. In this footnote, plaintiffs state that Government counsel informed plaintiffs' counsel in a telephone conversation that the Government would not be raising a defense that plaintiffs suggest we are now raising. (The conversation concerned plaintiffs' intent to file a motion to compel regarding the Government's objection to plaintiffs' November 14, 2007 interrogatories as untimely. The motion to compel, which was filed on February 1, 2008, will be addressed in our separate response to that motion.) In that conversation, Government counsel stated that the Government was not contending that circumstances permitting prepayment under section 1472(c)(5)(G)(ii)(II) existed with respect to plaintiffs. Nothing in our moving brief or in this brief is inconsistent with that representation.

upon loans insured by the Department of Housing and Urban Development). Neither plaintiff exercised this option.

Plaintiffs further argue that "[t]he fact that there may be a theoretical way out of the program does not affect the existence of unwelcome encumbrances (having to go through hoops to prepay is without question a modification) and therefore does not affect the existence of a breach, i.e., the repudiation." Plaintiffs' Response 6-7 (emphasis in original). However, the ways out of the program are not "theoretical"; and, although exiting the program based upon section 1472(c)(5)(G)(ii)(II) is possible only when the circumstances described in that section exist, exiting the program based upon section 1472(c)(5)(A) requires no special circumstances. Nor can plaintiffs argue that "unwelcome encumbrances" or "having to go through hoops to prepay" turns ELIHPA into a repudiation. In opposing the statute of limitations defense against the claims of Park Terrace Limited ("Park Terrace") and Mullica West Limited ("Mullica"), plaintiffs argue that the Government's responses to the prepayment requests of those plaintiffs did not constitute an actual breach of their prepayment rights, even though the Government required these plaintiffs to go through various "hoops," and despite the time interval between the prepayment request and the offer of incentives to these plaintiffs. A breach, under the theory advanced by plaintiffs in connection with the statute of limitations, occurs only when the Government finally refuses to accept prepayment.

Plaintiffs attempt to reconcile their positions here and in connection with the statute of limitations by arguing that for there to be an actual breach that triggers the statute of limitations, there must be a "demand" to prepay and a rejection of that demand. To the extent that plaintiffs' argument with respect to Park Terrace and Mullica is based upon their contention that the prepayment requests of those plaintiffs were merely pro forma exercises and not true demands,

we have fully addressed this argument in our previous briefs relating to the statute of limitations issue, and will not repeat the same points here. We note here only that if, as plaintiffs assert, a the prepayment right is breached only if the Government actually rejects a prepayment request, then ELIHPA cannot be said to require a breach, because ELIHPA does not require the Government to reject prepayment requests. And, if ELIHPA does not require an actual breach of the prepayment provision at issue, then it does not constitute a repudiation of tat provision.

## II. Tamerlane's Acceptance Of An Incentive To Avert Prepayment Involved A Bilateral Modification Of The Contract Or, Alternatively, An Accord And Satisfaction, Precluding Recovery For Breach Of Contract

We established in our moving brief that, under the terms of an agreement into which Tamerlane entered in conjunction with the incentive it received to avert prepayment in 2002, Tamerlane gave up the right to be released from the section 515 program through prepayment of its section 515 loan. The 2002 agreement was a new loan agreement concerning the outstanding balances of Tamerlane's section 515 loans, and expressly provided that the loans were to "be administered subject to the limitations of the authorizing act of Congress and related regulations," and that "[t]his loan agreement shall be subject to the present regulations of the Government and to its future regulations and provisions thereof." Pl. App. 112. By this agreement, the loans became subject to ELIHPA and its implementing regulations.

Plaintiffs respond, first, that bilateral modification was never raised as an affirmative defense in the Government's answer. However, unlike the defense of accord and satisfaction (which was pleaded in the answer), the contractual change effected by 2002 loan agreement is not a matter of an affirmative defense, but a matter that goes to very content of the contractual obligation upon which Tamerlane's claim is based. Tamerlane's anticipatory breach claim

depends entirely upon the premise that when it commenced this suit, it possessed a contractual prepayment right that was repudiated by ELIHPA. This premise rests upon a misconception of the contract terms governing Tamerlane's loan at that time. At that time, by virtue of the 2002 loan agreement, the loan was subject to ELIHPA.[3]

Second, plaintiffs argue that "the bilateral modification argument . . . rests on the flawed assumption that the claims had by then accrued." Plaintiffs' Response 12. This is simply not so. Rather, the effect of the 2002 agreement upon Tamerlane's contract rights – and upon its purported right to sue for anticipatory breach – is that it is too late for a claim to accrue based upon an anticipatory breach theory, because, as a result of that agreement, Tamerlane could no longer claim that it's loan carried contract rights with which ELIHPA was inconsistent.

Third, plaintiffs argue that the 2002 loan agreement was an "adhesion contract" on "the Government's own boilerplate forms," Plaintiffs' Response 12, containing no express relinquishment of rights. This loan agreement was no more of an adhesion contract than the original contract upon which Tamerlane relies, and the terms that subjected the loan to ELIHPA were no more boilerplate than the prepayment clause upon which Tamerlane relies. Nor can Tamerlane claim that the terms subjecting the section 515 loan to ELIHPA were obscure or a surprise. Tamerlane could not reasonably have expected that, as part of an incentive package to

[3] Implicit in the principle that "repudiation 'give[s] the promisee the right of electing either to . . . wait till the time for [the promisor's] performance has arrived, or to act upon [the renunciation] and treat it as a final assertion by the promisor that he is no longer bound by the contract,'" Franconia, 536 U.S. at 143, quoting Roehm v. Horst, 178 U.S. 1, 13(1900), is the requirement that, when such an election is made, the allegedly repudiated obligation exists. Just as a borrower plainly cannot sue for an anticipatory breach of the prepayment provision at a time when there is no longer a loan to prepay (such as if the loan term expired or if prepayment actually occurred), so a borrower cannot sue for an anticipatory breach of that provision after having entered an agreement that subjects that provision to the very legislation that is alleged to have effected the repudiation.

avert prepayment in accordance with ELIHPA, the Government would subordinate Tamerlane's section 515 loan to a new third-party equity loan and enter into a new loan agreement covering the section 515 loan that was inconsistent with ELIHPA. Nor is there merit to Tamerlane's contention that the referenced provisions of the 2002 loan agreement cannot be construed to subject the section 515 loan to ELIHPA and its implementing regulations. Indeed, plaintiffs fail to explain how else these provisions can be construed.

With respect to our alternative argument that the incentive package constituted an accord and satisfaction, plaintiffs respond that the documents in the record relating to the incentive transaction are insufficient to prove a meeting of the minds concerning whether Tamerlane would continue to possess a right to prepay enforceable in a suit for breach of contract. It is true that these documents do not speak explicitly of a relinquishment of such a right. As we have demonstrated, however, the incentive transaction makes no sense if is construed as leaving the borrower free to sue for breach of the prepayment clause. If the Government's objective was to keep the borrower in the section 515 program while remaining subject to liability for breach of contract, it would have had no need to offer incentives; it could simply have refused to accept prepayment. Plaintiff responds that ELIHPA "required the Government to offer incentives to qualified owners." Plaintiffs' Response 16 (emphasis in original). This is not true. ELIHPA authorized the Government to offer owners whose loan contracts permitted prepayment, and who sought to prepay their loans, incentives to forego prepayment, thus resolving the conflict between the claimed prepayment right and the housing preservation objectives of ELIHPA.

However, given the fact that the agreements involved in the incentive package preceded Tamerlane's assertion of a claim for breach of contract and concerned the resolution of the

asserted contract right underlying the breach claim rather than the breach claim itself, we believe that these agreements are more properly viewed as a modification of the underlying right than as an accord and satisfaction. As a modification of the underlying contract right, the incentive agreements may not have precluded Tamerlane from suing to recover past damages resulting from a breach of the prepayment right if, prior to the agreements, Tamerlane had demanded that the Government accept prepayment and the Government had refused to do so. Tamerlane insists, however, that this did not occur. And, even if the incentives would not have precluded Tamerlane from continuing to pursue an already pending suit, the fact is that Tamerlane did not bring such a suit. Tamerlane maintains that it elected to treat ELIHPA as a breach when it filed suit, but, by that time, the allegedly-breached right was contractually circumscribed by the terms of the incentive agreement.

## III. Tamerlane's Receipt Of An Incentive To Avert Prepayment Precludes It From Recovering For Anticipatory Breach

As we demonstrated in our moving brief, the maintenance of a suit for anticipatory breach of the prepayment clause and the acceptance of incentives to forego prepayment are mutually exclusive. To assert a claim for anticipatory breach of a contract, a plaintiff must treat the contract as terminated and replaced with a claim for breach damages. If the injured party elects to treat the contract as remaining in force, that party retains only a claim for past damages resulting from any partial breach that may have occurred, but cannot recover for future damages for anticipated non-performance. Central Trust Co. v. Chicago Auditorium Association, 240 U.S. 581, 589 (1916); Cities Serv. Helex, Inc. v. United States, 211 Ct. Cl. 222, 234, 543 F.2d 1306, 1313 (1976); Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639, 641 (2004). Tamerlane, however, has not treated the contract – or the particular contract right at issue in this

case – as at an end, and as having been replaced with a claim for damages. Instead, it has traded the exercise for an alternative benefit available only to borrowers who claim such a right, and continues to enjoy that benefit.

In its response, plaintiffs completely miss the point. They do not attempt to refute the proposition that a party who elects to treat a repudiated contract as remaining in force retains only a claim for past damages resulting from any partial breach that may have occurred; nor do they address the authorities we cited in support of this proposition; nor do they dispute that Tamerlane obtained incentives based upon its invocation of a prepayment right that it considered to be still in force. Instead, plaintiffs simply assume that despite having obtained incentives upon this basis, they nevertheless retain a right to treat the contract as no longer in force for purposes of maintaining an anticipatory breach claim. Begging the question whether they are entitled to sue for future damages at all under these circumstances, they argue that the authorities we have cited are "inapplicable because regardless of when Tamerlane's claim accrued, it has sued for breach for all years." Plaintiffs' Response 18 (emphasis in original). Indeed it has; under the cited authorities, however, it was not entitled to do so.

Tamerlane obtained an incentive not to prepay, as if it possessed a contractual right to prepay that had not been abrogated. It then sued for total breach, as if this right had been abrogated. Having done the former, it was not entitled to also do the latter.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in our moving brief, summary judgment should be entered in favor of the Government, dismissing the claims of Tamerlane and Park Terrace East.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

**s/Jeanne E. Davidson**
JEANNE E. DAVIDSON
Director

**Filed electronically**

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643

Attorneys for Defendant

February 8, 2008

CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of February, 2008, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**s/Shalom Brilliant**