# In the United States Court of Federal Claims

No. 05-677C
(Filed February 29, 2008)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * | Contracts; breach of contracts; anticipatory repudiation; Franconia Assocs. v. United States, 536 U.S. 129 (2002); Housing Act of 1949, Pub. L. No. 81-171, 63 Stat. 413 (codified as amended at 42 U.S.C. §§ 1485, 1490a (2000)); Emergency Low Income Housing Preservation Act of 1987, Pub. L. No. 100-242, 101 Stat. 1815 (1988) ("ELIHPA"); Housing and Community Development Act of 1992, Pub. L. No. 102-550, 106 Stat. 3672 (codified in relevant part at 42 U.S.C. § 1472(c) (2000)); jurisdiction; statute of limitations; 28 U.S.C. § 2501 (2000); continuing claims doctrine; taking; failure to state a claim. |
| **TAMERLANE, LIMITED, PARK TERRACE LIMITED, PARK TERRACE EAST LIMITED, and MULLICA WEST LIMITED,** | |
| Plaintiffs, | |
| v. | |
| **THE UNITED STATES,** | |
| Defendant. | |
| * * * * * * * * * * * * * * * * * * * * * * * | |

H. Robert Fiebach, Philadelphia, PA, for plaintiffs. David M. Doret, Cozen O'Connor, of counsel.

Shalom Brilliant, Washington, DC, with whom was Acting Assistant Attorney General Jeffrey S. Bucholtz, for defendant.

**SUPPLEMENTAL OPINION AND ORDER ON MOTION FOR JUDGMENT ON PLEADINGS TO DISMISS FOR LACK OF JURISDICTION AND PLENARY OPINION ON MOTION TO DISMISS ON MERITS**

**MILLER,** Judge.

Issues involving the timeliness of the complaint in this case have been bandied about for over two years. Although plaintiffs were not invited to join the omnibus settlement of several hundred cases for which liability had been determined, see Franconia Assocs. v. United States, 536 U.S. 129 (2002) (holding that enactment of Emergency Low Income Housing Preservation Act of 1987 was repudiation of loan agreements rather than present breach and that claims therefore accrue upon election by borrowers or upon tender and rejection of prepayment), the case has been the subject of two protracted stays for settlement.

Pending before the court after argument are defendant's supplemental briefs in support of dismissal of the takings claims set forth in Count II of plaintiffs' complaint for failure to state a claim upon which relief can be granted. During supplemental briefing, both parties also availed themselves of the opportunity to reargue the jurisdictional statute of limitations issue raised in defendant's first dispositive motion filed on November 16, 2006, and addressed in the court's May 18, 2007 opinion, Tamerlane, Ltd. v. United States, 76 Fed. Cl. 512 (2007) (the "May 18, 2007 opinion"), but not finally determined by the court. See RCFC 54(b) (providing that decision addressing fewer than all claims and/or parties in action "shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties," absent express statement directing entry of judgment). As no final judgment has entered as to any claims or parties, the court now considers all arguments related to the statute of limitations on the contract claims of plaintiffs Park Terrace Limited and Mullica West Limited, in addition to those arguments presented in the parties' supplemental briefs regarding the motion to dismiss Count II, which affects all four plaintiffs. 1/

**BACKGROUND**

A detailed recitation of the procedural history of this case is set forth in light of the complicated arguments (and re-argument) affecting all four plaintiffs, each presenting unique factual contexts. Familiarity with the background and facts described in the May 18, 2007 opinion is presumed; discussion of facts relevant to the pending issues follows. 2/

---

1/ Accordingly, Park Terrace Limited and Mullica West Limited's June 6, 2007 motion to strike, in part, defendant's supplemental brief for improper re-argument of issues decided by the May 18, 2007 opinion is denied.

2/ In addition to the facts found in Tamerlane, 76 Fed. Cl. at 512-24, which are incorporated by reference, the facts set forth in this section and any included in the discussion section represent the court's findings with respect to all facts. See Monsanto Co. v. Bayer Bioscience N.V., No. 07-1109, 2008 WL 200027, at *7 n.13 (Fed. Cir. Jan. 25, 2008) (questioning whether factual findings must be restated in trial court opinion's legal discussion).

On June 22, 2005, plaintiffs Park Terrace Limited ("Park Terrace"), Park Terrace East Limited ("Park Terrace East"), Mullica West Limited ("Mullica"), and Tamerlane, Limited ("Tamerlane") (collectively, "plaintiffs") filed a complaint asserting breach of contract and takings claims. The complaint recites that all four plaintiffs entered into loan contracts with the Government through the Farmers Home Administration ("FmHA") to provide low- to moderate-income housing. These loans were entered into pursuant to sections 515 and 521 of the Housing Act of 1949, Pub. L. No. 81-171, 63 Stat. 413 (codified as amended at 42 U.S.C. §§ 1485, 1490a (2000)) ("Section 515 loan" and "Section 521 loan"), which obligated borrowers to operate the properties according to FmHA regulations in exchange for favorable loan terms. The loans at issue consist of those entered into prior to December 21, 1979 ("pre-1979 loans"), which contained contractual provisions allowing borrower termination by prepayment at any time, and loans entered into after December 21, 1979 ("post-1979 loans"), which allow prepayment at any time, but restrict the property to use as low-income housing for a minimum period of twenty years from the date of loan origination.

Plaintiffs' complaint alleges that enactment and implementation of the Emergency Low Income Housing Preservation Act of 1987, Pub. L. No. 100-242, 101 Stat. 1815, 1877 (1988) (amending section 502(c) of the Housing Act of 1949) ("ELIHPA"), and the Housing and Community Development Act of 1992, Pub. L. No. 102-550, 106 Stat. 3672, 3681, 3841 (codified in relevant part at 42 U.S.C. § 1472(c) (2000)), 3/ constituted an anticipatory repudiation of plaintiffs' contractual prepayment rights and a taking of plaintiffs' property. 4/ Id. ¶¶ 39, 40, 50, 53. Together these statutes undertook to forestall the borrowers' exercise of their prepayment rights on Section 515 and Section 521 loans and

---

3/ A detailed recitation of the enactment and legislative history of these statutes can be found in Franconia, 536 U.S. at 135-37, and in the May 18, 2007 opinion, Tamerlane, 76 Fed. Cl. at 514-15.

4/ > [B]y requiring the plaintiffs to house low-income tenants and to accept new low-income tenants, the Government has (i) conscripted plaintiffs' properties for public use; (ii) physically invaded or authorized others to physically invade plaintiffs' properties; and (iii) deprived plaintiffs of their distinct investment-backed expectations with regard to their properties, all without providing any just compensation.

Compl. filed June 22, 2005, ¶ 40.

prevent removal of the properties from the low-income housing program. ELIHPA provides that, before FmHA can accept the prepayment of a Section 515 loan, FmHA

> shall make reasonable efforts to enter into an agreement with the borrower under which the borrower will make a binding commitment to extend the low income use of the assisted housing and related facilities involved for not less than the 20-year period beginning on the date on which the agreement is executed.

42 U.S.C. § 1472(c)(4)(A); see also Franconia, 536 U.S. at 136. ELIHPA provides incentives for borrowers that agree to extend the low-income use of their housing including, *inter alia*: (1) reduction in the interest rate on the loan; (2) increase in the rate of return; and (3) additional loans to the borrower. 42 U.S.C. § 1472(c)(4)(B). With certain limited exceptions, if FmHA and the borrower cannot reach an agreement "after a reasonable period[,] . . . [FmHA] shall require the borrower . . . to offer to sell the assisted housing and related facilities involved to any qualified nonprofit organization or public agency at a fair market value." 42 U.S.C. § 1472(c)(5)(A)(i).

Plaintiffs' complaint represents that Tamerlane entered into a post-1979 loan contract for rental housing with FmHA and made a "formal request to prepay . . . in December 2000, after the twenty-year use restriction period expired. Thereafter, in the face of actual or constructive denial of the request to prepay, Tamerlane accepted 'incentives' in the form of government approval to get 41 million in conventional financing . . . ." Compl. filed June 22, 2005, ¶ 11.1.

Park Terrace East entered into a post-1979 loan contract with FmHA as to which the twenty-year restriction on prepayment expired in 2000. Id. ¶ 11.3. The record does not contain any showing that Park Terrace East sought to prepay, accepted incentives, or obligated itself to any additional use-restriction period.

Park Terrace entered into pre-1979 unrestricted fifty-year loan contracts for rental housing with FmHA and, in or about 1992, upon being informed that "FmHA would never approve prepayment," accepted "incentives" and obligated itself to a twenty-year use-restriction period to keep the property within the program. Id. ¶ 11.2.

Mullica entered into pre-1979 unrestricted loan contracts and, in 1991, upon being informed that "FmHA would never approve the prepayment," accepted "incentives" and obligated itself to a twenty-year use-restriction period to keep the property within the program. Id. ¶ 11.4.

Defendant's answer, filed on September 21, 2005, asserted that the contract claims of Park Terrace and Mullica (also, "responding plaintiffs") are time-barred by the applicable statute of limitations and that the contract claims of Park Terrace, Tamerlane, and Mullica are subject to the defense of accord and satisfaction. Defendant also argued that all four plaintiffs' takings claims in Count II fail to state a claim upon which relief can be granted.

On November 9, 2005, the parties filed a Joint Preliminary Status Report wherein plaintiffs sought commencement of settlement negotiations on all issues, and defendant stated that, prior to entering settlement negotiations, it expected to file a dispositive motion regarding the statute of limitations, plaintiffs' Count II takings claims, and its defense of accord and satisfaction. By order entered on November 17, 2005, the parties were directed to file a Joint Status Report by January 31, 2006, proposing a schedule for the filing of dispositive motions or seeking a stay pending settlement discussions.

On December 28, 2005, the parties filed a Joint Motion To Stay Proceedings pending settlement negotiations, which was granted on January 3, 2006. On March 15, 2006, the parties filed a Joint Status Report seeking to continue the stay of proceedings and indicating that, although not a part of the omnibus settlement proceedings before another judge of the court, a pattern or template for settlement may emerge from those discussions that would prove helpful to the settlement of plaintiffs' claims.

The parties submitted a Joint Status Report on August 17, 2006, detailing problems with the advancement of settlement discussions. Plaintiffs requested that the court refer the case to the omnibus judge. Defendant acquiesced in this request as to damages calculations, but requested that the jurisdictional statute of limitations issue affecting Park Terrace and Mullica preliminarily be resolved by motion. Defendant intended to file such a motion on or before September 25, 2006. Plaintiffs expressed that any delay in referring the case to the omnibus judge would serve no useful purpose, as they anticipated that the statute of limitations defense would turn on disputed issues of fact that could not be resolved on motion, but would be suitable for discussion in ADR proceedings. Alternatively, plaintiffs requested that the court establish a pre-trial schedule for the entire case.

On October 10, 2006, defendant filed a motion to the lift the stay for the limited purpose of allowing the filing of a dispositive motion. Defendant advised that "the motion would seek dismissal of the claims of plaintiffs Park Terrace Limited and Mullica West Limited based upon the statute of limitations." Def.'s Mot. filed Oct. 10, 2006, at 2. Defendant noted that "[t]he motion would also seek dismissal of Count Two of the complaint (alleging [a] taking of property without just compensation) as to all plaintiffs, for failure to state a claim upon which relief can be granted." Id. In their October 26, 2006 response, plaintiffs opposed defendant's motion to lift the stay on this limited issue as

"unfair" and requested that the court either submit the entire case to the omnibus proceeding or lift the stay fully to allow discovery to proceed under a case management order, thereby avoiding "fragmentation" and "duplicative" efforts. Pls.' Br. filed Oct. 26, 2006, at 2. In its reply filed on November 9, 2006, defendant eluded the charge of "unfairness" by pointing out that plaintiffs are free to request a full lifting of the stay to file their own dispositive motions. Defendant also rejoined that fragmentation and duplication could be avoided by severing plaintiffs' claims, as it considered that the four plaintiffs had been joined improperly. Defendant reiterated its intention to file a dispositive motion and demurred regarding settlement, representing that it would not be a willing party to settlement negotiations. See Def.'s Br. filed Nov. 9, 2006, at 2 ("[U]nder the rules of this Court, 'ADR is voluntary. A party's good-faith determination that ADR is not appropriate in a particular case should be respected by other parties and by the court.'" (quoting RCFC Appendix H, ¶ 3(a))). An order entered on November 15, 2006, stating that "[a]fter review of the briefs, the court deems that the jurisdictional issues only should be addressed." Order entered Nov. 15, 2006. The court further ordered that "[t]he stay in this matter is lifted for all purposes, and defendant shall file its dispositive motion by November 30, 2006." Id.

On November 16, 2006, defendant filed Defendant's Motion for Judgment on the Pleadings[] Dismissing the Claims of Park Terrace Limited and Mullica West Limited, arguing that both Park Terrace's and Mullica's claims accrued upon their requests to prepay their loans in 1992 and 1991, respectively, beyond the six-year statute of limitations for filing suit. 5/ On December 18, 2006, plaintiffs Park Terrace and Mullica opposed defendant's motion, arguing both that the requests to prepay were merely "pro forma," and

---

5/ In a footnote, defendant observed:

> In our Motion to Lift Stay for Purpose of Allowing Filing and Adjudication of Dispositive Motion, we stated that we would also seek dismissal of Count Two of the complaint (alleging a taking of property without just compensation) as to all plaintiffs, for failure to state a claim upon which relief can be granted. In its November 15, 2006 Order, the Court lifted the stay for all purposes, but also stated that the Court "deem[ed] that the jurisdictional issues only should be addressed." For this reason, the present motion is limited to the statute of limitations issue, which is jurisdictional. We reserve the right to file a separate dispositive motion concerning the merits of Count Two, and any other non-jurisdictional issues, at a later time.

Def.'s Br. filed Nov. 16, 2006, at 1 n.1.

thus accrual did not occur as to plaintiffs' contract breach claims (the "primary-period" claims) and, alternatively, that Park Terrace and Mullica could maintain a suit for "unvested" claims for the prepayment rights in the unexpired loan terms following the twenty-year use-restriction periods agreed upon pursuant to their incentive loans (the "extended-period" claims). Defendant's January 3, 2007 reply rebuked Park Terrace and Mullica for characterizing the requests to prepay as merely pro forma and arguing that claims with respect to unexpired loan periods exist, as belied by plaintiffs' own complaint. During argument held on January 25, 2007, the parties requested that the court delay issuance of an opinion on defendant's dispositive motion so that the parties could explore further settlement discussions. See Order entered Apr. 25, 2007. However, by April 25, 2007, the parties had informed the court that settlement discussions had not proved fruitful and requested the court to issue its opinion as soon as possible. Id.

The court issued its order and opinion on defendant's dispositive motion on May 18, 2007. Tamerlane, 76 Fed. Cl. 512. The court elected to treat defendant's motion for judgment on the pleadings as one for summary judgment, because matters outside of the pleadings were presented by defendant and not excluded by the court. See RCFC 12(c). The court determined that Park Terrace's and Mullica's prepayment requests were denied finally and unequivocally and were not merely "pro forma" and that FmHA's actions in not honoring those requests thus constituted a breach and accrual for statute of limitations purposes. The statute of limitations effected a jurisdictional bar to Park Terrace's and Mullica's primary-period claims that had accrued in 1992 and 1991, respectively. Confronting Park Terrace and Mullica's alternative argument for the extended-period claims, the court ruled that an anticipatory repudiation and breach claim still would stand unaccrued as to any "unvested" prepayment rights. See id. at 523. As the documents detailing the contractual dealings between responding plaintiffs and the Government were not in the record, the court directed the parties to file copies of the transactional documents with the Clerk of the Court. The parties were further directed to submit supplemental briefs on defendant's alternative ground for dismissal for failure to state a claim upon which relief can be granted. Id. (citing Def.'s Br. filed Nov. 16, 2006, at 1 n.1 (reserving right to seek dismissal of plaintiffs' Count II takings claims for failure to state claim upon which relief can be granted)).

On June 5, 2007, defendant filed its supplemental brief in support of dismissal for failure to state a claim upon which relief can be granted. Defendant submitted that the court had "analyzed, but did not expressly decide, whether the claims of plaintiffs [Park Terrace] and [Mullica] were barred by the statute of limitations." Def.'s Br. filed June 5, 2007, at 1. Defendant disputed the existence of any viable claims that could be maintained beyond the accrual of the breaches, which the court determined to have occurred in 1992 and 1991. Regarding all four plaintiffs' Count II takings claims, defendant urged that, because

plaintiffs' rights to prepay arise solely out of their contracts with the Government, their complaint fails to state takings claims upon which relief can be granted.

On June 6, 2007, Park Terrace and Mullica filed a motion to strike a portion of defendant's supplemental brief filed June 5, 2007, asserting that defendant's brief "improperly re-argues issues already decided and which were not permitted to be briefed under the Order [dated May 18, 2007]." Pls.' Br. filed June 6, 2007, at 2. Responding plaintiffs maintained that the court's order restricted supplemental briefing to defendant's motion to dismiss for failure to state a claim as to plaintiffs' Count II takings claims and requested that the court redress defendant's attempt to reargue whether claims with respect to the extended period exist by striking defendant's brief as it pertains to issues other than plaintiffs' takings claims. On June 7, 2007, by order, the court committed to address the issue raised by responding plaintiffs in its supplemental opinion. This motion is denied. RCFC 54(b) contemplates that such rulings are interim and can be revised. Moreover, responding plaintiffs availed themselves of the opportunity in this round of supplemental briefs to resuscitate the timeliness of their primary-period claims.

Park Terrace and Mullica, on June 15, 2007, submitted their supplemental brief responding to defendant's putatively improper re-argument and requesting that the court "re-examine its position concerning that portion of the Order to the extent it decided the issue unfavorably to Responding Plaintiffs." Pls.' Br. filed June 15, 2007, at 1 & n.2. Park Terrace and Mullica reiterated a plea for discovery if the court were inclined to consider matters beyond the pleadings in making its ruling. Park Terrace and Mullica advanced that discovery could vindicate their position on the jurisdictional bar to their primary-period claims by confirming that the prepayment requests merely were formalistic. The brief also argued that takings claims could be maintained concurrently with plaintiffs' contract claims.

The court requested on June 15, 2007, a response from defendant regarding Park Terrace and Mullica's request for discovery in aid of opposing summary judgment. See Order entered June 15, 2007. On June 20, 2007, defendant opposed any discovery, chiding responding plaintiffs for delaying until their supplemental brief any request for discovery on the jurisdictional issue. On June 25, 2007, the court ordered limited discovery, to be completed by August 20, 2007.

On August 15, 2007, the parties filed a Joint Status Report. Park Terrace and Mullica contended that documents produced in discovery supported their arguments – rejected by the May 18, 2007 opinion – that the statute of limitations did not begin to run on their primary-period claims until the lawsuit was filed. Responding plaintiffs requested that the court set a further briefing schedule on the jurisdictional issue. On October 23, 2007, after a status conference covering all parties, an order entered setting a supplemental briefing

schedule on both the jurisdictional issue and the motion to dismiss Count II, as well as a date for argument. 6/

On November 15, 2007, in accordance with the briefing schedule set in the October 24, 2007 order, Park Terrace and Mullica filed their supplemental jurisdictional brief responding to defendant's first dispositive motion on the statute of limitations issue, addressed in the May 18, 2007 opinion; this brief also responded on behalf of all four plaintiffs to defendant's motion to dismiss plaintiffs' Count II takings claims. On December 6, 2007, defendant filed its supplemental responsive brief, addressing all of Park Terrace and Mullica's arguments regarding accrual of their primary-period claims, alternative claims as to the extended period, and the takings claims of all four plaintiffs. The argument held on December 14, 2007, was open to all issues that counsel wanted to discuss.

**DISCUSSION**

The parties have availed themselves of the opportunity to re-address arguments that the court ruled on in the May 18, 2007 opinion. See Tamerlane, 76 Fed. Cl. at 519-24 (making initial findings as to primary-period claims but reserving entry of final decision until a development of fuller record). The May 18, 2007 opinion did not direct entry of final judgment as to any of the claims pending or parties before the court. See RCFC 54(b). With the benefit of a full record documenting the contractual dealings of the parties, see id. at 515 n.3 & 524 (ordering parties to file transactional documents with Clerk of Court), along with the arguments that the parties have raised in their initial and supplemental briefs, the court considers in this opinion whether the incentive-loan transactions impacted claim accrual and the running of the statute of limitations. The court arrives at the same conclusion reached in the May 18, 2007 opinion with respect to the primary-period claims. However, defendant has persuaded the court that the result should apply equally to the extended-period claims, as the incentive-loan transactions have only limited bearing on the accrual of responding

---

6/ As to Tamerlane and Park Terrace East, the plaintiffs not affected by defendant's jurisdictional dispositive motion, the court ordered defendant (after agreement by counsel at the status conference) to make available the methodology employed in the omnibus settlement. Tamerlane and Park Terrace East were ordered to notify the court by November 30, 2007, whether the cases would proceed to settlement or, alternatively, whether Tamerlane and Park Terrace East would file a motion for partial summary judgment on liability. The order also set a briefing schedule in the event that plaintiffs filed a motion for partial summary judgment. Cross-motions for summary judgment on the issue of liability pertaining to plaintiffs Tamerlane and Park Terrace East currently are pending and will be resolved by a separate opinion.

plaintiffs' primary-period claims and do not create or result in claims as to "unvested" rights. 7/

I. Standard of review

1. Motion for judgment on pleadings

Defendant's November 16, 2006 dispositive motion seeks judgment on the pleadings in its favor pursuant to RCFC 12(c). RCFC 12(c) provides: "After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." Matters outside the pleadings are presented by defendant. Thus, because "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in RCFC 56, and all parties shall be given reasonable opportunity to present all material made pertinent." RCFC 12(c); see also Colvin Cattle Co. v. United States, 468 F.3d 803, 806 (Fed. Cir. 2006); Brubaker Amusement Co. v. United States, 304 F.3d 1349, 1355-56 (Fed. Cir. 2002). Discovery on the matters under consideration by this court concluded on August 20, 2007, and the parties have presented all material pertinent to the pending motion.

---

7/ Defendant succinctly stated the relevance of the incentive-loan transactions on responding plaintiffs' claims in one of its post-May 18, 2007 briefs:

> This is not to say that the equity loans are entirely irrelevant. The significance of the equity loans is this: The Government's offer of equity loans was an acknowledgment of receipt of plaintiffs' prepayment requests and an indication that the Government was not allowing plaintiffs to prepay. Plaintiffs' acceptance of equity loans was an indication that their prepayment requests were neither withdrawn prior to denial nor intended as mere tentative inquiries. The restrictive use provisions of the equity loans preclude plaintiffs from arguing that they were still awaiting acceptance of their prepayment requests after receiving the equity loans, since prepayment would only terminate the restrictions under their Section 515 loans, not the independent restrictions under their equity loans. Nothing about the equity loans, however, made the denial of plaintiffs' prepayment requests any more limited than if there had been no equity loans at all.

Def.'s Br. filed Dec. 6, 2007, at 11 n.3.

Under Rule 56(c) "[s]ummary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Brubaker Amusement Co., 304 F.3d at 1356 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). No genuine issue of material fact exists when a rational trier of fact could only arrive at one reasonable conclusion. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). In such cases the need for a trial is not present, and the motion for summary judgment must be granted. Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir. 2001); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999).

If the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, the motion for summary judgment should be denied. "The moving party in a summary judgment motion has the burden to show 'that there is an absence of evidence to support the non-moving party's case[.]'" Crown Operations Int'l v. Solutia Inc., 289 F.3d 1367, 1377 (Fed. Cir. 2002) (quoting Celotex Corp., 477 U.S. at 322-23). The benefit of all reasonable presumptions and inferences runs to the party opposing summary judgment. Matsushita Elec. Indus., 475 U.S. at 587-88; Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); H.F. Allen Orchards v. United States, 749 F.2d 1571, 1574 (Fed. Cir. 1984) (noting that non-moving party shall "receive the benefit of all applicable presumptions, inferences, and intendments").

2. Motion to dismiss for failure to state a claim

Defendant seeks dismissal of all four plaintiffs' Count II takings claims for failure to state a claim upon which relief can be granted. The court's task is not to determine whether a plaintiff will ultimately prevail, but "'whether the claimant is entitled to offer evidence to support the claims.'" Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007), the United States Supreme Court clarified the standard enunciated in Conley v. Gibson, 355 U.S. 41 (1957), with respect to what a plaintiff must plead to survive a motion to dismiss for failure to state a claim. 8/ The Supreme Court circumscribed the standard, stating: "'[A]ny statement

---

8/ The Conley standard, abrogated by Bell Atlantic, stated "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings.'" McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1356 n.4 (Fed. Cir. 2007) (quoting Bell Atl. Corp., 127 S. Ct. at 1968). Accordingly, the court must assess whether plaintiffs adequately have stated a takings claim and whether plaintiffs can allege any facts that, if proven, would entitle them to the relief sought. See Bell Atl. Corp., 127 S. Ct. at 1968-69; McZeal, 501 F.3d at 1361-62. Although plaintiffs' factual allegations need not be "detailed," they "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp., 127 S. Ct. at 1964-65 (internal citation omitted). The court thus "'accept[s] as true all factual allegations in the complaint, and . . . indulge[s] all reasonable inferences in favor of the non-movant,'" to evaluate whether plaintiffs have stated a takings claim upon which relief can be granted. Chapman Law Firm, 490 F.3d at 938 (omission in original) (quoting Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001)).

3. Statute of limitations as a jurisdictional requirement

Prior to the Supreme Court's recent confirmation in John R. Sand & Gravel v. United States, ___ U.S. ___, 128 S. Ct. 750 (2008), some decisions of the United States Court of Appeals for the Federal Circuit and Court of Federal Claims questioned the nature of a motion to dismiss a complaint as time-barred in holding that claims falling outside of the six-year statute of limitations prescribed in 28 U.S.C. § 2501 (2000), should be dismissed for failure to state a claim rather than for lack of subject matter jurisdiction. See, e.g., Venture Coal Sales Co. v. United States, 370 F.3d 1102, 1105 n.2 (Fed. Cir. 2004) ("The most precise ground for the trial court's decision here . . . would seem to be that [plaintiff] failed to make its claim within the required limitations period—that is not a question of subject matter jurisdiction of the court."); Ariadne Fin. Servs. Pty. Ltd. v. United States, 133 F.3d 874, 878 (Fed. Cir. 1998) ("As a threshold matter, this statutory language confirms that the question of a time bar on [plaintiff's] claim does not affect the subject matter jurisdiction of the Court of Federal Claims. The Court of Federal Claims has subject matter jurisdiction to adjudicate cases arising under the Tucker Act regardless of the timeliness of [plaintiff's] actions. [Plaintiff's] untimeliness can, however, bar its eligibility to invoke that

---

8/ (Cont'd from page 11.)

can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. Bell Atlantic retired the literal interpretation of Conley's "no set of facts" language "as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp., 127 S. Ct. at 1969.

jurisdiction."). It is now not subject to question that filing a claim within the six-year statute of limitations prescribed in 28 U.S.C. § 2501 is a prerequisite to the court's exercise of jurisdiction over a claim. John R. Sand & Gravel, 128 S.Ct. at 757 (reaffirming prior precedent under principles of *stare decisis* that Tucker Act's statute of limitations is "jurisdictional"). See generally Tamerlane, 76 Fed. Cl. at 518-19 (discussing statute of limitations as jurisdictional requirement).

II. Park Terrace and Mullica's primary-period claims 9/

The May 18, 2007 opinion determined that Park Terrace's and Mullica's claims for breach of contract pursuant to the anticipatory repudiation effected by ELIHPA were barred by the six-year statute of limitations. See Tamerlane, 76 Fed. Cl. at 523. Park Terrace and Mullica now ask the court to revisit these findings in light of evidence disclosed in discovery that, they contend, proves that both parties treated the prepayment applications as a "charade." Pls.' Br. filed Nov. 15, 2007, at 5. Park Terrace and Mullica assert that the incentive program initiated pursuant to ELIHPA was aimed at "incentivizing the borrower not to insist on prepayment," "getting the borrower to accept an equity loan in lieu of prepayment," and "avert[ing] prepayment." Id. at 6 (emphases omitted) (internal quotation marks omitted). This deflection of prepayment rights does not correlate to "Franconia's requirement of a meaningful tender of performance and dishonor, which is necessary to

---

9/ While not argued in any of Park Terrace or Mullica's post-May 18, 2007 supplemental briefs, nor their earlier briefs in response to defendant's dispositive motion, responding plaintiffs, at the December 14, 2007 oral argument, implored the court to address whether the Government's response to Park Terrace's prepayment application constituted a "final denial." See Transcript of Proceedings, Tamerlane, Ltd. v. United States, No. 05-677C, at 22-23 (Fed. Cl. Dec. 14, 2007). The May 18, 2007 opinion discussed in detail the Government's denial of Mullica's prepayment application in addressing responding plaintiffs' assertion that no final and unequivocal denial occurred as to Mullica. See Tamerlane, 76 Fed. Cl. at 519-21. Responding plaintiffs mirror their earlier arguments raised as to Mullica in arguing that Park Terrace never received a final denial from FmHA on its prepayment application. See Letter from Jack E. Kauffman, Assistant District Director of FmHA to Andrea McMurtie, Bala Realty (June 23, 1991) (App. to Def.'s Mot. for J. on Pleadings, filed Nov. 16, 2006, at 3) ("In conjunction with your prepayment request, we are making you, as General Partner for Park Terrace Limited, a one-time offer of an equity loan . . . ."). As more fully explained in the following discussion, see infra at p.17, that the conditioning of Park Terrace's absolute prepayment right came by way of an offer of incentives, rather than an outright and complete rejection of prepayment, is immaterial to the determination of when the breach accrued.

cause the Government's repudiation to ripen into an actual breach triggering accrual of the claim." Id. at 7. Essentially, Park Terrace and Mullica reargue that their breach of contract claims did not accrue until the filing of this lawsuit, because their submission of prepayment applications was merely "pro forma" and did not constitute a meaningful tender; furthermore they characterize the Government's offer of incentives in lieu of prepayment as a "foreordained" "avoidance measure" that did not constitute a meaningful dishonor and failure to perform. Id. at 5, 6 (emphasis omitted).

Park Terrace and Mullica ignore the court's caveat in its May 18, 2007 opinion: "That plaintiffs now claim that the letters were not intended as prepayment requests is immaterial." Tamerlane, 76 Fed. Cl. at 522. It is likewise immaterial that both responding plaintiffs and the Government considered the prepayment applications as a "charade" designed merely to facilitate the incentive-loan transactions. An examination of the Supreme Court's Franconia decision illuminates why this is so.

Franconia construed the right that borrowers possessed as an "absolute prepayment right" guaranteed by the loan contracts. Franconia, 536 U.S. at 133; see also id. at 141 ("[P]etitioners obtained precisely the promise they allege – a promise that permits them an *unfettered right to prepay* their mortgages any time over the life of the loans, thereby gaining release from federal restrictions on the use of their property." (emphasis added)). The Supreme Court ruled that whether petitioner's claims were filed within the six-year statute of limitations was a function of "when the Government breached the prepayment undertaking stated in the promissory notes," because a cause of action for breach of contract accrues, and accordingly the statute of limitations begins to run, at the time of the breach. Id. at 141. The Court characterized the Government's performance duty as one "to accept prepayment and execute the appropriate releases," id. at 142, reasoning that "[f]ailure by the promisor [the Government] to perform at the time indicated for performance in the contract establishes an immediate breach." Id. at 142-43. The Supreme Court concluded that ELIHPA more properly is characterized as a "renunciation of a contractual duty *before* the time fixed in the contract for . . . performance," – a repudiation – because the time for the Government's performance had yet to arrive. Id. at 143 (internal quotation marks omitted) ("Viewed in this light, ELIHPA effected a repudiation of the FmHA loan contracts, not an immediate breach.").

The Supreme Court judged the impact of ELIHPA "[as conveying] an announcement by the Government that it would not perform as represented in the promissory notes if and when, at some point in the future petitioners attempted to prepay their mortgages;" as such, the statute constituted a repudiation rather than an immediate breach. Implicit in, and necessary to, this conclusion is the corresponding understanding that the provisions of ELIHPA constitute a repudiation of borrowers' unfettered and absolute rights to prepayment

because the statute is a "'statement [by the Government] of intention not to perform except on conditions which go beyond the contract.'" Id. at 143 (quoting Restatement (Second) of Contracts § 250 cmt. b (1981)); see also 23 Richard A. Lord, Williston on Contracts § 63:47 (4th ed. 2007) ("[A] party does commit an anticipatory breach by making an express demand for a performance to which he or she is not entitled, as by, for example, a statement that the party will not perform except on conditions that go beyond the contract, or on terms different from the original contract." (footnote omitted)). It is worth reminding that "'[a]n anticipatory repudiation occurs . . . when an obligor communicates to an obligee that he will commit a breach in the future." Franconia, 536 U.S. at 139 (quoting Franconia v. United States, 240 F.3d 1358, 1363 (Fed. Cir. 2001) (quoting Kinsey v. United States, 852 F.2d 556, 558 (Fed. Cir. 1988)), rev'd, 536 U.S. 129 (2002)). Thus, necessary to the Supreme Court's characterization of ELIHPA as a repudiation, is the following: the Government's actions pursuant to ELIHPA at some point in the future (including the procedures by which the Government offers incentive loans) will operate as a present and immediate breach.

Given the Supreme Court's carefully delineated assessment of ELIHPA's effect, responding plaintiffs argue inconsistently that ELIHPA repudiated their contractual prepayment rights, while the Government's implementation of the provisions of ELIHPA in 1992 and 1991 by offering Park Terrace and Mullica incentive loans is not a breach and accrual. As the Supreme Court explained,

> ELIHPA's implementing regulations establish a process by which the FmHA addresses prepayment requests. Under those procedures, the FmHA first "develo[ps] an incentive offer," making a "reasonable effort . . . to enter into an agreement with the borrower to maintain the housing for low-income use that takes into consideration the economic loss the borrower may suffer by foregoing *[sic]* prepayment." 7 C.F.R. § 1965.210 (2002).

Franconia, 536 U.S. at 137 (alterations in original).

Plaintiffs Park Terrace and Mullica have pleaded that, upon submission of prepayment letters to FmHA and notifications from FmHA that prepayment rights would not be honored, they accepted incentive loans pursuant to the provisions of ELIHPA, in exchange for agreeing to twenty-year use-restriction periods on their properties. See Compl. filed June 22, 2005, ¶¶ 11.2, 11.4. If ELIHPA's enactment served as an anticipatory repudiation of responding plaintiffs' unfettered and absolute rights to prepayment by conditioning the Government's performance upon the borrowers' agreement to additional restrictions and conditions, the Government's offer of incentives in exchange for agreement by borrowers to extend the restrictions on their properties constitutes precisely the breach and accrual that Franconia contemplated. As Williston on Contracts aptly notes, "An

anticipatory breach can hardly be greater than an actual one." 23 Richard A. Lord, Williston on Contracts § 63:60 (4th ed. 2007).

Because FmHA responded to Park Terrace's and Mullica's requests to prepay by acting upon ELIHPA's mandate to offer incentives in the face of Park Terrace's and Mullica's absolute and unfettered rights to prepay, the Government dishonored its performance obligation to accept prepayment and thus committed a breach. As these actions were the dishonor that ELIHPA – as a repudiation – contemplated, Park Terrace's and Mullica's breach claims accrued at least by 1992 and 1991 when FmHA and responding plaintiffs entered into incentive-loan transactions. "In these circumstances the statute of limitations began to run on Mullica's claims as to the twenty-year restrictions period on or before June 18, 1991, when Mullica entered into an equity loan with FmHA. The statute of limitations began to run for Park Terrace as to the twenty-year restriction period on or before July 16, 1992, when Park Terrace entered into its equity loan with FmHA." Tamerlane, 76 Fed. Cl. at 523. Consequently, Park Terrace's and Mullica's breach of contract claims as to the primary period are time-barred as filed beyond the applicable six-year statute of limitations.

## III. Park Terrace's and Mullica's alternative claims for the extended period

The May 18, 2007 opinion contemplated that Park Terrace and Mullica may maintain claims for "unvested" prepayment rights for the extended period following the incentive-loan use-restriction periods, despite the bar to their primary-period claims. Id. at 523. Challenging this characterization of the prepayment rights as contrary to the holding of Franconia, defendant was allowed to reopen this issue in supplemental briefing. The court addresses all the parties' arguments.

Park Terrace and Mullica's contention that claims may be asserted for the extended period disputes defendant's characterization that the statute of limitations was triggered for all time. Park Terrace and Mullica thus assert: "[A]ssuming arguendo there was a meaningful demand and the claim accrued by virtue thereof, the bar of the statute should only extend to the end of the restriction period because demand for prepayment was putatively "refused" only to the extent that the owner accepted a restriction on the use of the property as part of the equity loan transaction." Pls.' Br. filed June 15, 2007, at 7. Park Terrace and Mullica's argument distills to an assertion that, if a breach accrued at all, it was only a breach for the twenty-year use-restriction period agreed to as part of the incentive-loan transactions, and thus the statute of limitations should only apply to bar their claims for that twenty-year use-restriction period, and not beyond. Responding plaintiffs' argument relies on the proposition that "it is the imposition of the restriction which acts as the denial." Id. at 8.

Defendant disagrees with responding plaintiffs' characterization of the "non-performance" that triggered accrual of plaintiffs' claims:

> [I]t was the refusal to allow prepayment at the time of the requests to prepay – not the imposition of the 20-year restrictive use provisions of the equity loans – that constituted the denial [of] plaintiffs' prepayment requests and the non-performance upon which the plaintiffs' claim of liability is based. . . . The Government's refusal to accept prepayment and the parties' transaction of the equity loans were separate events.

Def.'s Br. filed Dec. 6, 2007, at 10-11. Defendant also highlights Franconia's holding that "the statute of limitations governing claims for breach of the right to prepay a Section 515 loan begins to run either at the time of an actual breach, such as a rejection of an actual attempt to prepay, or earlier, if the borrower elects to treat Congress' alleged repudiation of this right as a present breach." Def.'s Br. filed June 5, 2007, at 4. Thus, defendant asserts, "[t]he right of election does not extend past an actual breach." Id. Defendant also argues that Park Terrace's and Mullica's claims do not qualify as "continuing claim[s] for accrual purposes," id. (citing Ariadne, 133 F.3d at 879), so responding plaintiffs may not treat the Government's continuing to preclude them from prepaying after the initial rejection as an opportunity to assert additional claims.

Defendant's characterization of the denial as constituting a refusal to perform the Government's obligation is correct. The court holds that the Government committed a breach – and, consequently, that the claims accrued – when FmHA refused to accept prepayment in the face of the borrowers' unfettered and absolute right to prepay. It is of no moment whether the refusal came by means of an outright denial accompanied by no offer of incentives or by an offer of incentives to induce an agreement to further restrict the use of the property. Because the right to prepay was absolute, any conditioning of the corresponding obligation to accept prepayment, unfettered, constituted a breach by the Government of its obligation and duty to perform. The imposition of the use-restriction period as part of the incentive-loan transaction did not constitute the Government's denial and breach; rather, any compromise of the absolute right to prepay, such as the offer of incentives as an "in lieu of" prepayment transaction, caused the breach to accrue.

If Park Terrace and Mullica are to argue successfully that claims survive beyond the breach accrual and subsequent running of the six-year statute of limitations, they must do so pursuant to the continuing claims doctrine. The Federal Circuit has allowed the "continuing claims doctrine . . . to save later arising claims even if the statute of limitations has lapsed for earlier events." Ariadne, 133 F.3d at 879. However, "[i]n order for the continuing claims doctrine to apply, the plaintiff's claim must be inherently susceptible to

being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1456 (Fed. Cir. 1997).

In Ariadne the Federal Circuit addressed the applicability of the continuing claims doctrine in the context of a case coming under the rule of United States v. Winstar Corp., 518 U.S. 839 (1996). A breach of contract claim was predicated on Congress' enactment of the Financial Institutions Reform, Recovery, and Enforcement Act, 12 U.S.C. §§ 1464(t)(1)-(2) (1994) ("FIRREA"), which directed federal regulatory agencies to limit a bank's use of its contractual right, in connection with its acquisition of failing thrifts, to special accounting treatment. Finding its claim barred by the applicable statute of limitations, plaintiff invoked the continuing claims doctrine to support separate claims for each year in which it sought performance of its contractual rights. The Federal Circuit rejected the applicability of the continuing claims doctrine to the facts presented:

> Here, Ariadne seeks compensation for repudiation of a contract that promised continuing performance into the future. There was a single repudiation by which the government made clear its intent to reject the terms of the contracts. Each subsequent denial of the use of supervisory goodwill does not give rise to a separate cause of action. Rather, the government's continued refusal to allow the use of supervisory goodwill flows from its original repudiation. Because Ariadne's claim does not involve a series of distinct events, each giving rise to an independent cause of action, the continuing claims doctrine does not act to preserve its claim.

Ariadne, 133 F.3d at 879. The court reaffirmed the law that a claim accrues when all the events have occurred that fix the Government's liability and entitle plaintiff to institute an action. Id. Because the Government had breached its contractual duty to permit plaintiff to use special accounting treatment upon the enactment of FIRREA, the Federal Circuit ruled that all the events that would fix the Government's liability and entitle plaintiff to relief occurred beyond the applicable statute of limitations.

Park Terrace and Mullica similarly are unable to invoke the continuing claims doctrine to postpone the accrual of their claims. While Park Terrace and Mullica seek compensation for a contractual right that promised performance into the future (the honor of their absolute right to prepay their loans at any time), a single repudiation made clear the Government's intent to dishonor the terms of the contract. Any subsequent or continuing denial by the Government of responding plaintiffs' rights to prepay their loans and exit the program pursuant to ELIHPA does not give rise to a new cause of action, but flows from the Government's original repudiation and later breach occurring in 1992 and 1991. As these

subsequent and/or continuing refusals are not distinct events, they cannot come within the continuing claims doctrine. The Government's liability was fixed upon its failure to perform in the face of responding plaintiffs' unfettered and absolute rights to prepay their loans. This accrual occurred no later than 1992 and 1991, more than six years prior to the filing of this suit. Park Terrace and Mullica therefore cannot assert claims for the extended period beyond which the breach claims accrued.

IV. Plaintiffs' takings claims

Defendant seeks dismissal of the takings claims of all four plaintiffs pleaded in Count II of the complaint. Disputing plaintiffs' characterization of the rights at issue as a taking of their housing projects, defendant argues that plaintiffs' prepayment rights were "based strictly upon the terms of the promissory notes, and [are] thus [] contract right[s]." Def.'s Br. filed June 5, 2007, at 7. The Government's refusal to accept prepayment and honor plaintiffs' contract rights, according to defendant, constituted a breach, not a taking. Defendant cites the decisions of the Court of Federal Claims in the remand of Franconia, 61 Fed. Cl. 718, 739-40 (2004), and in Allegre Villa v. United States, 60 Fed. Cl. 11, 18-19 (2004), for the proposition that Congress, in enacting ELIHPA, acted not in a sovereign capacity, but in its proprietary capacity, with the result that the takings claims must be rejected. See Def.'s Br. filed June 5, 2007, at 8.

Plaintiffs counter that "[a] claim under the takings clause may be available when alternative contract rights are not." Pls.' Br. filed June 15, 2007, at 10. Plaintiffs submit that the Government was not acting in its proprietary capacity in enacting ELIHPA, as Congress sought "to ensure an adequate supply of low income housing for the public benefit – the very essence of the exercise of sovereign powers of eminent domain for public use." Id. Ultimately, plaintiffs submit that they may maintain

> an alternative takings claim . . . based, not on the refusal to allow prepayment, but on the transaction in which the Government sought to extinguish the rights of Responding Plaintiffs to vindicate their harm by bootstrapping on to the equity loan process a set of "application" documents which would later be relied on to foreclose the unborn breach of contract claims.

Id. at 11. Plaintiffs' position distills to the following proposition: the Government effected a taking of plaintiffs' choses in action by requiring, as part of the incentive-loan application process, the selfsame acts that would constitute an accrual of the breach claims now foreclosed by application of the statute of limitations.

The court evaluates whether a takings claim has been stated under a two-part test. First, the court must determine whether plaintiffs have established a property interest for purposes of the Fifth Amendment. Colvin Cattle Co., 468 F.3d at 806. Second, once a property interest is identified, the court must determine whether the governmental action at issue amounts to a compensable taking of that property. Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir. 2005). "A takings claim has limited application when a claimant has a viable breach remedy." Detroit Edison Co. v. United States, 56 Fed. Cl. 299, 301 (2003). Although rights existing independently of a contract may be brought pursuant to a takings claim, see Integrated Logistics Support Sys. Int'l, Inc. v. United States, 42 Fed. Cl. 30, 34-35 (1998), when a contract between a private party and the Government creates the property right subject to a Fifth Amendment claim, the proper remedy for infringement lies in contract, not taking. Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 656 (2003); see also Sun Oil Co. v. United States, 572 F.2d 786, 818 (Ct. Cl. 1978).

Plaintiffs undeniably possess a contract right that constitutes an established property interest. See Cienega Gardens v. United States, 331 F.3d 1319, 1329 (Fed. Cir. 2003) ("[T]here is also ample precedent for acknowledging a property interest in contract rights under the Fifth Amendment."). However, plaintiffs have not alleged any facts to suggest that the property rights underlying their claims exist independently of their contracts with the Government. Because plaintiffs' contractual rights arise from and were created by the bilateral contracts that plaintiffs entered into with the Government, plaintiffs' remedies lie in breach of contract claims.

The argument that Congress acted in a sovereign capacity in enacting ELIHPA, rather than in a proprietary capacity, has not been upheld. See, e.g., Franconia, 61 Fed. Cl. at 739-40; Allegre Villa, 60 Fed. Cl. at 18-19. Moreover, plaintiffs' position in the case at bar is distinguishable from those in which the Federal Circuit has allowed takings claims to proceed. See Cienega Gardens, 331 F.3d 1319; Chancellor Manor v. United States, 331 F.3d 891 (Fed. Cir. 2003). In Cienega Gardens and Chancellor Manor, plaintiffs entered into loan agreements with private lenders that were insured by the Department of Housing and Urban Development. Congress' enactment of ELIHPA was held not to effect a repudiation or subsequent breach of contract as to these plaintiffs because plaintiffs' contracts were with private lenders, so they were not in privity with the Government. The present action, in contrast, involves plaintiffs that entered into contracts directly with the Government through FmHA. Given that plaintiffs are in privity with the Government, the contracts provide the remedy for the prepayment restrictions and ensuing breach.

Regarding plaintiffs' novel assertion of an "alternative takings claim," defendant correctly notes that, even if such claim could be based on these facts, it would be barred as beyond the six-year statute of limitations. The accrual of any such claims would have

occurred at the time of the equity loan transactions in 1992 and 1991. 10/ Moreover, the bilateral nature of the equity loan transactions undercuts plaintiffs' position. It is not the Government's action that "foreclose[d] the unborn breach of contract claims." Pls.' Br. filed June 15, 2007, at 11. The breach of contract claims were born of plaintiffs' actions in seeking to prepay and the Government's corresponding failure to honor its performance obligation to accept prepayment in the face of plaintiffs' unfettered and absolute prepayment rights. It was plaintiffs' inaction in failing to sue on their claims for breach of contract any time within six years after these events took place that extinguished plaintiffs' breach of contract claims. No taking lies upon these facts.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's Motion for Judgment on the Pleadings[] Dismissing the Claims of Park Terrace Limited and Mullica West Limited is granted based on this opinion and the May 18, 2007 opinion insofar as it is relied upon herein. Pursuant to RCFC 54(b), there being no just reason for delay, the Clerk of the Court shall enter judgment dismissing the complaint as to plaintiffs Park Terrace Limited and Mullica West Limited without prejudice for lack of subject matter jurisdiction.

2. The takings claims set forth in Count II by plaintiffs Park Terrace Limited, Mullica West Limited, Park Terrace East Limited, and Tamerlane, Limited are dismissed for failure to state a claim upon which relief can be granted. Pursuant to RCFC 54(b), there being no just reason for delay, the Clerk of the Court shall enter judgment for defendant dismissing Count II of the complaint as to all four plaintiffs.

---

10/ Furthermore, even if plaintiffs are arguing that the extinguishment of their breach of contract claims constitutes the accrual of their alternative takings claims, that accrual would have occurred at least by June 18, 1997, and July 16, 1998, six years from the date of the respective incentive-loan transactions. A timely complaint presenting such claims must have been filed by June 18, 2003, and July 16, 2004, respectively. The present complaint was filed on June 22, 2005.

3. The Motion of Plaintiffs, Park Terrace Limited and Mullica West Limited, To Strike, in Part, Defendant's Supplemental Brief in Support of Dismissal for Violation of Order Dated May 18, 2007, is denied.

No costs.

s/ Christine O.C. Miller

**Christine Odell Cook Miller**
Judge