**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TAMERLANE, LIMITED, et al., Plaintiffs, | : | No. 05-677C (Judge Christine O.C. Miller) |
| v. | : | |
| UNITED STATES OF AMERICA, Defendant. | : | |

**MOTION TO AMEND JUDGMENT, PURSUANT TO RCFC 59, OF MOVING PLAINTIFFS, PARK TERRACE LIMITED AND MULLICA WEST LIMITED**

Pursuant to Rule 59 of the Rules of the Court of Federal Claims, plaintiffs Park Terrace Limited ("Park Terrace") and Mullica West Limited ("Mullica") (collectively, "Moving Plaintiffs"), respectfully move the Court to amend the judgment entered on March 3, 2008, based on the Memorandum Opinion and Order dated February 29, 2008, insofar as it determined it lacked subject mater jurisdiction to adjudicate, and dismissed, the claims of each of Park Terrace and Mullica as to what the Court referred to as the "extended period."

Respectfully submitted,

COZEN O'CONNOR

**s/ H. Robert Fiebach**
H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Plaintiffs Park Terrace Limited and Mullica West Limited

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TAMERLANE, LIMITED, et al., | : | |
| Plaintiffs, | : | No. 05-677C (Judge Christine O.C. Miller) |
| v. | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AMEND JUDGMENT, PURSUANT TO RCFC 59, OF MOVING PLAINTIFFS, PARK TERRACE LIMITED AND MULLICA WEST LIMITED**

Pursuant to Rule 59 of the Rules of the Court of Federal Claims, plaintiffs Park Terrace Limited ("Park Terrace") and Mullica West Limited ("Mullica") (collectively, "Moving Plaintiffs"), have respectfully moved the Court to amend the judgment entered on March 3, 2008, based on the Memorandum Opinion and Order dated February 29, 2008 (the "Op."), insofar as it determined it lacked subject matter jurisdiction to adjudicate, and dismissed, the claims of each of Park Terrace and Mullica as to what the Court referred to as the "extended period." This memorandum is submitted in support of that motion.

## STATEMENT OF FACTS

**Background**

In 1988, ELIHPA was enacted. ELIHPA provided that before the FmHA can accept the prepayment of a Section 515 loan, FmHA

> shall make reasonable efforts to enter into an agreement with the borrower under which the borrower will make a binding commitment to extend the low income use of the assisted housing and related facilities involved for not less than the 20-year period beginning on the date on which the agreement is executed.

42 U.S.C. § 1472(c)(5)(A)(i).

On November 18, 1991, Park Terrace submitted what the Government has argued to be a demand for prepayment of its pre-1979 loan, which had no restriction on prepayment. Appendix to Government's Nov. 16, 2006 Motion for Judgment on the Pleadings (the "Mot. Judg. Pldgs. App.") at 1. (The motion itself shall be referred to as the "Mot. Judg. Pldgs.") The Government refused to agree to prepayment on June 23, 1992. Mot. Judg. Pldgs. App. at 3. The Government contended the June 23, 1992 letter acted to reject the alleged prepayment demand and trigger accrual of the statute. Mot. Judg. Pldgs. at 7, 8. The Court held that the statute as to what has been called the "primary period" claims of Park Terrace began to run in 1992. Op. at 7, 9, 18.

But there ensued a second Park Terrace transaction, involving the award of "incentives" in the form of an "equity loan." An application process followed the alleged prepayment letter and alleged denial. After roughly a year, an equity (incentive) loan was made to Park Terrace on July 16, 1993.[1]

The original Park Terrace loan was scheduled to mature in 2028. The incentive loan, which restricted use of the property until 2013, matures in 2043. The thirty (30) year period after the expiration of the restriction period under the incentive loan has been called the "extended period." Op. at 7. The term of the incentive loan extends 15 years beyond the term of the original loan.

On October 11, 1998, Mullica submitted what the Government has argued to be a demand for prepayment of its pre-1979 loan, which had no restriction on prepayment. Mot. Judg. Pldgs. App. at 6. The Government initially but non-definitively refused to agree to prepayment on March 30, 1989. See Appendix of Responding Plaintiffs to Brief in Opposition

---

1 The Court's May 18, 2007 ruling stated that Park Terrace entered into the equity loan on July 16, 1992. 76 Fed. Cl. 512, 523. The Park Terrace equity loan was in fact entered into on July 16, 1993.

to Mot. Judg. Pldgs. dated December 18, 2006, at 9-10. The Government finally refused to accept prepayment on March 14, 1991. Mot. Judg. Pldgs. App. at 7. The Government contended the March 14, 1991 letter acted to reject the alleged prepayment demand and trigger the statute. Mot. Judg. Pldgs., at 7, 8. The Court held the statute on what has been called the "primary period" claims of Mullica began to run in 1991. Op. at 7, 9, 18.

There also ensued a second Mullica transaction, again involving an equity loan. An application process followed the alleged prepayment letter and alleged denial. After several months, an equity (incentive) loan was made to Mullica on June 18, 1991.

The original Mullica loan was scheduled to mature in 2017. The incentive loan, which restricted use of the property until 2011, matures in 2036. The twenty-five (25) year period after the expiration of the restrictions has been called the "extended period." Op. at 7. The term of the incentive loan extends 19 years beyond the term of the original loan.

This suit was brought on June 22, 2005. At the time suit was brought, based on the nearly 15 years which had elapsed since the incentive loan transactions, it had become apparent to these plaintiffs that the properties would not be released when the respective restrictions expired in 2013 and 2011. See, e.g., Franconia Assocs. v. United States, 61 Fed. Cl. 718 (2004), noting that under existing loans at the end of the restriction period "the owners must reapply for prepayment, with no assurance they will be allowed out of the program." 61 Fed. Cl. at 726 (and otherwise detailing in sweeping terms the history of the Government's refusal to honor prepayment requests).

**The Present Motion**

At oral argument held on December 14, 2007, counsel for claimants argued that it was illogical to consider that there had been a breach of the extended period through the prepayment letter demand, when the contract which gave rise to the extended period had yet to

be formed. N.T. 25-26, included in the Appendix attached hereto ("App.") at 1-2. While the Court sought to address all of the arguments on this issue, Op. at 2, 16, it failed to address this argument, ruling that the only avenue available to pursue was a theory of "continuing breach." Op. at 17.

This motion to amend judgment is filed because the claims – as to the extended period for Mullica between 2011 and 2036 and for Park Terrace between 2013 and 2043 -- should not have been dismissed. The extended period arose under contracts which did not exist at the time of the Government's denial, but rather arose after the denial, which the Government claims was a predicate to the contracts. Accordingly, the claims for the extended period arose after the denial, and accrued at the time this suit was filed. The judgment should be modified to allow this suit to proceed on those claims.[2]

## ARGUMENT

ELIHPA required the Government to attempt to secure the extension of the project as low income housing. By undertaking the incentive loans, claimants agreed to a period of restriction in exchange for receipt of an equity loan – one of the forms of "incentives" the FmHA could offer to keep projects in the program.

Under the equity loans, the period of restriction expired midway during the period in which the loan was to be amortized and therefore was in effect. At the time suit was filed in 2005, it was clear to Responding Plaintiffs that the Government would require that their projects remain restricted, notwithstanding the expiration of the restrictions under the equity loans. In other words, when Responding Plaintiffs brought suit, they found that the Government would not permit prepayment in 2013 and 2011, but that their projects would remain restricted until the

---

[2] Moving Plaintiffs do not seek reconsideration of the dismissal of the claims with respect to what the Court referred to as their "primary period." Rather, Moving Plaintiffs reserve all appeal rights as to these claims.

respective loans matured in 2043 and 2036 – an additional 30 years and 25 years of restriction respectively. It is these years that are in controversy.

Under the Court's theory, the denial of the prepayment demand accrued the claims, which triggered the statute and required that Moving Plaintiffs timely initiate suit. See Op. at 15 ("the Government's offer of incentives in exchange for agreement by borrowers to extend the restrictions on their properties constitutes precisely the breach and accrual that Franconia contemplated"); Op. at 17 ("the Government committed a breach -- and, consequently, that the claims accrued – when FmHA refused to accept prepayment in the face of the borrower's unfettered and absolute right to prepay.").

However, if the Court declined to view accrual of the limitations period in terms of the extent that the claimant's rights were abridged by reason of the incentive loans, Op. at 16-17, the Court nevertheless should have taken into account their alternative theory, that the incentive loans had yet to come into being at the time it held the claims accrued. There occurred a long interval after the Government initially "refused" to allow prepayment before the equity loan transaction took place.[3] Consequently, no contract was then in existence for the extended period as to which a breach could occur by reason of the alleged denials of prepayment. The claims on account of the extended period seek relief for the breach of the right to prepay the incentive loans after the 20 year restriction period expires. The incentive loans were new contracts, giving rise to new rights, and the contracts and rights arose after the alleged demands for prepayment and what the Court has ruled were the Government's refusal to honor them. Since the rights existing under the incentive loans did not exist at the time of the Government's refusals, the statute of limitations with respect to those new rights could not begin to run until the

---

[3] During this interval, Moving Plaintiffs completed the application process, the Government processed the applications, the equity loans were funded and the loan transactions closed.

institution of this suit – because there was no prior request for prepayment as to those rights. Franconia Assocs. v. United States, 536 .S. 129, 149 (2002).

Under the incentive loans, Moving Plaintiffs undertook 20 years of restrictions -- but not restriction in perpetuity. The Court's ruling puts claimants in an anomalous position: putting aside issues about the genesis of the incentive transactions, as to which plaintiffs reserve their appeal rights, they acceded in extending the period of restriction for 20 years, as ELIHPA sought to have them do, by entering into the incentive loans. However, the dismissal of the claims for the extended period deprives Moving Plaintiffs of a remedy for the breach of the second contract which came into existence only after the putative demand and refusal to perform had accrued the rights to sue for the breach of the first. Depriving Moving Plaintiffs of their remedy would be especially unfair given that the Government approached Moving Plaintiffs, which merely sought to palliate their losses as the result of the repudiation.

It is axiomatic that a contract may be breached only after the contract has come into existence; as a corollary, a claim for breach of contract cannot accrue until the contract exists. As Williston states:

> As a contract consists of a binding promise or set of promises, a breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract.

Williston on Contracts, § 63:1 (4th Ed.) (emphasis added). Likewise, an anticipatory breach occurs once a contract is in existence, when the promisor upon demand refuses to perform. As stated by Williston:

> An anticipatory repudiation "consists of an outright refusal by a party to perform a contract or its conditions, or at least of some manifestation by one party to the other that the first cannot or will not perform some of its obligations under the contract.

Williston on Contracts, 63:29, citing Dow Chem. Co. v. United States, 226 F.3d 1334 (Fed. Cir. 2000) (emphasis added), reh'g and reh'g en banc denied (Dec. 14, 2000). Where the contract

breaches at issue are of separate and independent contracts, each breach carried its own limitations. See United States v. Pan-American Petroleum Co., 55 F.2d 753, 777 (9th Cir. 1932) (three oil leases were separate contracts, giving rise to separate and distinct primary rights); Stickel v. Steel, 41 Mich. 350, 1 N.W. 1046 (1879) (two bills of goods bought separately on the same day with different periods of credit); Loyless v. Roberts, 212 Mo. App. 55, 253 S.W. 207 (1923) (advertisements for five separate commodities, charged separately on five separate accounts); Alkire Grocer Co. v. Tagart, 60 Mo. App. 389 (1895) (two sales by a traveling salesman on the same day, evidenced by separate bills payable at different times and on different terms); Lozier Auto Exch. v. Interstate Cas. Co., 197 Iowa 935, 195 N.W. 885 (1923). A repudiation can attach to each independent contract, which represents a separate bundle of contract rights. See Pan American Petroleum, supra. at 777.

That the incentive loan can be regarded as a separate and independent contract transaction receives ample support from the record. The Government has alluded to Moving Plaintiffs' claim as based on a "theory that [they involve] two separate sets of rights." Government's Supplemental Brief in Support of Dismissal dated June 5, 2007, at 6. Indeed, at the December 14, 2007 hearing, the Government effectively conceded the present argument:

> Now they have two restrictions. They have the ELIHPA restrictions and they have the equity loan restrictions, but this isn't about the equity loan restrictions, and the equity loan restrictions were not in effect yet when they applied to prepay so they have no bearing on the statute of limitations. It's the same as if there had been no equity loan.

N.T. at 49 (App. 5). The Court stated at the January 25, 2007 oral argument:

> You mean, if they lost that cause of action, but I think that the government may have taken actions that created another one.

N.T. at 21 (App. 7). Clearly, the incentive loan did not exist when the putative demand and the refusal to perform, on which the Government relies, took place. The Government has argued

that the demand and refusal were preconditions to even seeking an equity loan. See Mot. Judg. Pldgs, at 6-7. The Government has argued that claimants chose to pursue the equity loan process, but were not required to do so.

The independence of the transactions also applies to their repudiation. Under Franconia Assocs. v. United States, 536 U.S. 129, 149 (2002), the property owners had an election to convert a repudiation into an actual breach either by demanding performance or by suing. There, the property owners had received low interest loans from the FmHA, in exchange for providing low-income rental housing in rural areas, brought suit alleging that provisions of ELIHPA, which imposed permanent restrictions on FmHA's ability to allow prepayments by borrowers, breached their loan agreements. The Supreme Court held that enactment of ELIHPA was merely a repudiation of the loan agreements rather than a present breach, and therefore the property owners' claims accrued when prepayment was tendered and rejected.

The Supreme Court held that a "breach would occur, and the six-year limitations period would commence to run, when a borrower tenders prepayment and the government then dishonors its obligation to accept the tender and release its control over use of the property that secured the loan." Id. The Supreme Court explained that ELIHPA functioned as an anticipatory repudiation, not an immediate breach triggering the accrual of the claim for statute of limitations purposes. Id. at 143. Instead, the repudiation ripens into a breach only when the plaintiffs attempt to prepay their loans and the prepayments are rejected, or, in the alternative, when the plaintiffs elect to treat the repudiation as a breach by bringing suit. Id. at 143-44, 148. On remand, the Court of Claims in Franconia Assocs. v. United States, 61 Fed. Cl. 718 (2004), reiterated that the statutory repudiation of the bargain does not translate into a breach (and the accrual of a cause of action) until performance is demanded and the agency, applying the

restrictions in the statute, refused performance and thereby breached the agreement. 61 Fed. Cl. at 755.

The demand with respect to the original rights could not accrue some future set of rights, yet to be established. Nevertheless, the Government has relied on the operation of ELIHPA to create a basis to deny prepayment as to future rights. As to those rights, the filing of this suit acted as a trigger of the breach of the right of prepayment in 2013 and 2011.

The conclusion that the accrual of rights subject to a new limitations period can stem only from a "continuing breach," Op. at 17, is therefore flawed. An anticipatory breach can occur with respect to each separate set of rights, one of which is the set of rights under the equity loans.[4] The judgment should be modified to retain jurisdiction as to the claims for the extended period, and those claims should be allowed to proceed.

## CONCLUSION

Obviously, Moving Plaintiffs believe in their original position. But if the Government is to win on a theory that the restriction in our freedom of movement was enough to accrue our claims, it can do so only to the extent those claims then existed. If there existed a new contract, then there was a new opportunity for breach as to which the statute did not run. Accordingly, the judgment should be modified, and the claims of Moving Plaintiffs for the extended period restored.

---

4 The Government has asserted that a theory of separate sets of rights and separate breaches is inconsistent with the allegations in the Complaint. While Moving Plaintiffs deny that amendment would be required, they have at all relevant junctures been willing to (and remain willing to) amend the Complaint. See e.g. the December 18, 2006 Brief of Responding Plaintiffs to Defendant's Motion for Judgment on the Pleadings, at note 6, page 11; June 15, 2007 Supplemental Brief of Moving Plaintiffs, at 9; December 14, 2007 hearing, N.T. at 34-5 (App. 3-4). Indeed, at the January 25, 2007 oral argument on the motion, the Court adverted to the possibility of amendment. N.T. at 20, 46 (App. 6, 8). Once again, Responding Plaintiffs expressly seek leave to amend, should the Court deem it necessary. For limitations purposes, any amended claims should properly "relate back" to the inception of suit.

Respectfully submitted,

COZEN O'CONNOR

**s/ H. Robert Fiebach**
H. ROBERT FIEBACH, ESQUIRE
DAVID M. DORET, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-4166
Fax: (215) 665-2013

Attorneys for Plaintiffs Park Terrace
Limited and Mullica West Limited

**Filed Electronically**

Dated: March 14, 2008

## CERTIFICATE OF SERVICE

I, David M. Doret, hereby certify that a true and correct copy of the foregoing Motion to Amend Judgment, Pursuant to RCFC 59, of Moving Plaintiffs Park Terrace Limited and Mullica West Limited and Memorandum in Support thereof was filed with the Court and served upon counsel for Defendant, United States of America via the ECF system on the 14th day of March, 2008.

**s/ David M. Doret**
David M. Doret

PHILADELPHIA\3577815\1 164980.000

# Appendix

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TAMERLANE LTD., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Docket No.: 05-677C |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Courtroom 5, Room 505
National Courts Building
717 Madison Place, NW.

Washington, D.C.

Friday,
December 14, 2007

The parties met, pursuant to notice of the Court, at 11:01 a.m.

BEFORE: HONORABLE CHRISTINE O.C. MILLER
Judge

APPEARANCES:

For the Plaintiffs:

H. ROBERT FIEBACH, Esquire
DAVID DORET, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, Pennsylvania 19103-3508
(215) 665-4166

For the Defendant:

some day in the future, but at the end of six years after a given act the Department of Justice is able to render a count on a litigative basis with respect to all liabilities and they don't become free floating, or at least that's how Mr. Brilliant would like us to view it.

MR. FIEBACH: Well, I think, Your Honor, and I don't want to belabor this, but I think if you take his argument to its logical conclusion he's saying this Court has no jurisdiction to consider a request to prepay or the consequences of a refusal to permit prepayment even with regard to the period of time after the incentive loan restrictions are up.

Because that's what he's saying to you. If you don't have jurisdiction today to hear that you don't have jurisdiction in 2011 to hear that. If what Your Honor is saying is if Congress changes the playing field I think that's exactly the point I'm making because at the time this alleged prepayment was made this additional 20-year restrictive period didn't exist. It only came into existence as a result of

accepting the incentive loans.

I mean, let's assume that in 2011 Park Terrace came to the government and said okay, now we want to prepay the incentive loan. When we prepay the incentive loan -- we're taking Mr. Brilliant's argument that it's two separate transactions. The theory is once we prepay the incentive loan we no longer are subject to any restriction with respect to any contractual restriction with respect to keeping this in the program.

If we went to Court over that, Mr. Brilliant would say no, you're out under the statute of limitations, but we would be out on a right that didn't even exist when we made a request for prepayment. This 20-year period didn't exist at that time, so how could a request for prepayment made in 1991 before the incentive loan is made, how could that affect your rights with respect to when the restriction, which comes into play when the incentive loan is made and expires when the restriction period is up?

And, as we said, with respect to Park Terrace there wasn't even a rejection of the offer. There was an offer of an incentive loan in order to avert the prepayment request.

With regard to the second issue, which of course you don't reach unless you find that the statute has run with respect to the initial claims. With regard to the government's argument that we haven't pleaded it, I would offer two things.

First, I think that paragraph 50 of the complaint, to the extent that it seeks a determination of a breach with respect to up through the expiration of the loans, does include it. We don't break it down into two because we don't think it's properly broken down into two because we think that we're within the statute on the entire claim.

But if the Court thinks it's not clearly pleaded I think before the Court should throw us out of Court for not having pleaded it under the federal pleading rules we should be allowed a right to amend, or perhaps the Court could consider it amended based

on all the briefing and argument that have already been made to conform to the positions asserted in these various hearings.

I think that essentially the government's argument is that once the government rejected prepayment that they rejected it for all time per loan. I won't repeat the point that some of these loans didn't even exist at the time. The incentive loans didn't exist and the 20-year period didn't exist at the time.

I think now, Your Honor, you have to take another look in light of that argument at the Mullica letter. We cannot offer prepayment at this time. Those words taken in the context of the later period of time I think clearly leaves open that at some future time we might consider it and flies squarely in the face of the argument advanced by Mr. Brilliant.

Then when you look at the Park Terrace and there wasn't even a response, there wasn't even a rejection, how could that then operate as a rejection of a period of a right that hadn't even been formed at

20-year period started. The 20-year period of the equity loan simply has nothing to do with it. I mean, it has a practical implication that once they agree to the equity loan they can't during that time say now I want to get out of the program.

Now they have two restrictions. They have the ELIHPA restrictions and they have the equity loan restrictions, but this isn't about the equity loan restrictions, and the equity loan restrictions were not in effect yet when they applied to prepay so they have no bearing on the statute of limitations. It's the same as if there had been no equity loan.

I think I've responded to the points. Well, just one other point I wanted to raise is that Mr. Fiebach noted in connection with Mullica that in the case of Mullica the letter from the Agency in response to the prepayment application said we cannot accept prepayment at this time.

He was suggesting that that was not a denial of the prepayment except for a limited period of time and so it only triggered the statute of limitations

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TAMERLANE LTD., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Docket No. 05-677C |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Courtroom 7, Room 508,
National Courts Building
717 Madison Place NW
Washington, D.C.

Thursday,
January 25, 2007

The parties met, pursuant to notice of the Court, at 3:05 p.m.

BEFORE: HONORABLE CHRISTINE O.C. MILLER
Judge

APPEARANCES:

<u>For the Plaintiff</u>:

H. ROBERT FIEBACH, Esquire
DAVID M. DORET, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, Pennsylvania 19103
(215) 665-4166/3716
(215) 665-3716

<u>For the Defendant</u>:

SHALOM BRILLIANT, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 616-8275



bb

anything. They wouldn't have gotten an equity loan or whatever it was that they wanted to get, but that was a new agreement. So, if the Plaintiffs want to sue later for breach of the, some term of the equity loan they got, that's another suit. But what their suing on is a breach of the section 515 loan. the section 515 loan had no prepayment restriction, and the Plaintiff was under no obligation to take on any new restrictions if it didn't want to.

THE COURT: What if Plaintiff wanted to amend his complaint to make clear that he was suing on the basis of the expiration of the period of the restrictions and elected to sue prematurely which is what is being allowed, or is allowed under Franconia? I don't know what your problem would be.

MR. BRILLIANT: Well, because it wasn't premature to begin with. I mean, they had a right to sue back in the early '90s. In other words, they had a right to sue if, when they accepted, before they accepted, under their theory, they had a right to prepay before, and to get out of the program, before they accepted the incentive. Instead, they chose to accept the incentive, but under their theory they had a right to prepay and get out of the program before that. And if that right was not honored, and that was

a breach, then that was the breach. And they had a cause of action starting from that point.

THE COURT: You mean, if they may have lost that cause of action, but I think the government may have taken actions that created another one.

MR. BRILLIANT: Well, I'm not going to argue now that there might not be some other cause of action that hasn't ripened yet that they might be able to bring at some future date. If they bring that suit we'll deal with it. But that will be a different suit, because it wouldn't be a suit for breaching the contractual right under their 515 loan. Because the 515 loan, the only contractual right involved there is the right to prepay without restrictions whenever they want to. And that's the right that they say was not honored and it was not honored when they tried to enforce it. And that was well over six years ago. It was about -- what is it now? Almost sixteen years ago.

THE COURT: You're a brunette. You were a brunette then.

MR. BRILLIANT: I -- and more of it.

(Laughter.)

THE COURT: I call this, in my whole career I call it, the greying of the Department of Justice.

THE COURT: But you can't make repayment. You can't do the act that would trigger everything because the government stepped in and said, here's our block to the very act that would start the statute of limitations running, but it's enough of a block to start the statute of limitations running --

MR. BRILLIANT: Because they accepted it. I mean, they could have said, we don't want this incentive, we want to prepay. They could have even, I suppose, they could have tendered checks.

THE COURT: Yes, and they could have gone bankrupt, too. There are a lot of "could haves" that hopefully we won't have to get into. Because what we will be resolving here is not the merits, just jurisdiction. But I think, unless the parties can agree on accommodation that takes account of the relative strengths of the weaknesses of your case on jurisdiction, that it's entitled to go one more round, if Plaintiff wants to press it under the rules of pleading. Because we are in a summary judgment mode, even though the decision in this case would be, if you prevail, a dismissal, an entry of judgment dismissing the case for one of jurisdiction not present.

MR. BRILLIANT: The only other point I wanted to make is specifically referenced to the