# In the United States Court of Federal Claims

No. 05-677C
(Filed May 8, 2008)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * | * | Contracts; breach of contract; |
| | * | anticipatory repudiation; |
| **TAMERLANE, LIMITED, PARK** | * | bilateral modification; accord |
| **TERRACE, LIMITED, PARK** | * | and satisfaction; Franconia |
| **TERRACE EAST, LIMITED, and** | * | Assocs. v. United States, 536 |
| **MULLICA WEST, LIMITED,** | * | U.S. 129 (2002); Housing Act of |
| | * | 1949, Pub. L. No. 81-171, 63 |
| Plaintiffs, | * | Stat. 413 (codified as amended |
| | * | at 42 U.S.C. §§ 1485, 1490a |
| v. | * | (2000)); Emergency Low |
| | * | Income Housing Preservation |
| **THE UNITED STATES,** | * | Act of 1987, Pub. L. No. 100- |
| | * | 242, 101 Stat. 1815 (1988) |
| Defendant. | * | ("ELIHPA"); Housing and |
| | * | Community Development Act of |
| | * | 1992, Pub. L. No. 102-550, 106 |
| | * | Stat. 3672 (codified in relevant |
| | * | part at 42 U.S.C. § 1472(c) |
| | * | (2000)); RCFC 56 cross-motions |
| * * * * * * * * * * * * * * * * * * * * * * * | * | for partial summary judgment |

H. Robert Fiebach, Philadelphia, PA, for plaintiffs. David M. Doret, Cozen O'Connor, of counsel.

Shalom Brilliant, Washington, DC, with whom was Assistant Attorney General Jeffrey S. Bucholtz, for defendant.

## MEMORANDUM OPINION AND ORDER

**MILLER,** Judge.

Pending before the court is the motion for partial summary judgment as to liability of Tamerlane, Limited ("Tamerlane"), and Park Terrace East, Limited ("Park Terrace East") (collectively, "plaintiffs"), and defendant's cross-motion for partial summary judgment as

to liability with respect to these two plaintiffs. 1/ Plaintiffs seek a determination as to the Government's liability for breach of contractual prepayment rights in connection with loan transactions that they entered into with the Farmer's Home Administration ("FmHA") pursuant to Section 515 of the Housing Act of 1949, later codified at 42 U.S.C. § 1485 (2000) ("Section 515"). Plaintiffs contend that the enactment of the Emergency Low Income Housing Preservation Act of 1987, Pub. L. No. 100-242, 101 Stat. 1815, 1877 (1988) (codified as amended at 42 U.S.C. § 1472(c) (2000), and 12 U.S.C. § 1715*l* (2000)) ("ELIHPA"), subsequently applied to plaintiffs' post-1979 loans by the Housing and Community Development Act of 1992, Pub. L. No. 102-550, 106 Stat. 3672, 3681, 3841 (codified in relevant part at 42 U.S.C. § 1472(c) (2000)) ("HCDA"), repudiated plaintiffs' contractual prepayment rights, for which they now seek to recover on claims of breach. Defendant moves for summary judgment in its favor, arguing that ELIHPA does not act as a repudiation of plaintiffs' rights. In addition, with respect to plaintiff Tamerlane, defendant asserts that a bilateral modification took place or, alternatively, an accord and satisfaction exists that would preclude Tamerlane from asserting its breach of contract claim. Further, defendant maintains that Tamerlane may not assert its breach of contract claim while simultaneously enjoying the benefit of the equity loan that it obtained as an incentive pursuant to the provisions of ELIHPA. Argument is deemed unnecessary.

---

1/ Previous rulings of this court have dismissed as time-barred the breach of contract claims of plaintiffs Park Terrace, Limited, and Mullica West, Limited, Tamerlane, Ltd. v. United States, 76 Fed. Cl. 512 (2007) ("Tamerlane I") (dismissing Park Terrace, Limited's and Mullica West, Limited's breach of contract claims as to "primary period," but reserving decision on remaining "extended period" claims), supplemented by Tamerlane, Ltd. v. United States, 80 Fed. Cl. 618 (2008) ("Tamerlane II") (supplementing May 18, 2007 opinion to enter judgment dismissing breach of contract claims of Park Terrace, Limited, and Mullica West, Limited, as time-barred), motion to amend denied by __ Fed.Cl. ___, 2008 WL 928287 (Fed. Cl. Apr. 3, 2008), appeal docketed, No. 08-5071 (Fed. Cir. Apr. 29, 2008), and have dismissed the takings claims of all four plaintiffs. Tamerlane II, 80 Fed. Cl. at 631-32.

Defendant framed its cross-motion as one for partial summary judgment. When defendant filed its motion on January 16, 2008, pending before the court was defendant's motion for judgment on the pleadings to dismiss the claims of the two other named plaintiffs joined in this suit, Park Terrace, Limited, and Mullica West, Limited. As the claims of Park Terrace, Limited, and Mullica West, Limited, have been dismissed in total in the February 29, 2008 opinion, and a motion for reconsideration filed by those plaintiffs was denied on April 3, 2008, defendant's pending cross-motion for summary judgment, in effect, seeks judgment on all pending claims of the two remaining plaintiffs.

## FACTS

The parties agree on the material facts contained in this opinion. 2/ On March 15, 1981, Park Terrace East entered into a fifty-year term loan agreement with FmHA, pursuant to Section 515 of Title V of the Housing Act of 1949, in the amount of $1,287,140.00. President of Bala Realty Advisors, Inc., and general partner to Park Terrace East, Bart J. Axelrod, states in his declaration that the loan has a "twenty (20) year restriction on prepayment." [First] Decl. of Bart J. Axelrod, Nov. 30, 2007, ¶ 2. However, a review of the loan agreement, promissory note, mortgage, and security agreement contained in plaintiffs' appendix does not reveal a twenty-year restriction on Park Terrace East's property. The loan agreement provides: "So long as the loan obligations remain unsatisfied, the Partnership shall comply with all appropriate FmHA regulations . . . ." Pls.' Br. filed Nov. 30, 2007, App. at 6. The promissory note, executed on May 14, 1981, provides for Park Terrace East to pay monthly installments of principal and interest in the amount of $9,770.00, and contains a prepayment provision which states: "Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower." Id. App. at 10. Park Terrace

---

2/ A material issue of fact that remains to be determined is whether plaintiffs can meet the proximate-cause requirement for recovery of lost profits by demonstrating the ability to prepay their mortgages at the time of the Government's alleged breach of the prepayment rights. See Franconia Assocs. v. United States, 61 Fed. Cl. 718, 747-48 (2004) (determining property owners who could demonstrate that they "had the ready means or a reasonable prospect of financially accomplishing prepayment and, in fact, would have prepaid their mortgages and converted their properties to commercial use, had they been allowed to do so without restriction," met proximate-cause requirement for recovery of lost profits damages). Plaintiffs inform the court that the Government has produced an expert to challenge the ability of both plaintiffs to secure financing in 2005, at the time this suit was filed, and thus state that disputed issues of material fact potentially exist:

> Should the Court determine that Tamerlane's claim accrued at the time of the incentives process, the Court may award partial summary judgment on liability as to Tamerlane since the Government determined at that time, and admitted in writing, that Tamerlane could have prepaid. If Tamerlane's claim accrued with the filing of suit, the ability to prepay appears to be disputed by the Government's expert and should be reserved for trial . . . .

Pls.' Br. filed Feb. 1, 2008, at 19 n.13. Plaintiffs also state that "[t]he issue of whether Park Terrace East could pre-pay appears to be disputed by the Government's expert and should be reserved for trial." Id. at 19 n.14.

East has never made any demand to prepay its outstanding loan and has not executed any new or additional loans with the Government pursuant to ELIHPA provisions governing incentive equity loans or otherwise.

On January 11, 1980, Tamerlane entered into two loan agreements with FmHA, one in the amount of $1,498,000.00, payable over fifty years, 3/ and one in the amount of $1,875,800.00, to be paid over a term of fifty years. These loans were secured by a single mortgage, executed on April 25, 1980, that contained a restriction on the use of the property for a period of twenty years from the date that the loan is closed to "housing people eligible for occupancy as provided in Section 515 of Title V of the Housing Act of 1949." Id. App. at 66, ¶ 32. This restrictive-use provision expired in 2000. Each loan agreement states that, "[s]o long as the loan obligations remain unsatisfied, the Partnership shall" comply with all of the enumerated "Regulatory Covenants" restricting the property's use in accordance with the requirements of the Housing Act of 1949. Id. App. at 39-42, 52-54. Each of the promissory notes executed on April 25, 1980, provides for the payment of principal and interest on the loans in monthly installments over a fifty-year period and contains prepayment provisions which read: "Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower." Id. App. at 44-45, 57-58.

On December 22, 1981, Tamerlane entered into another loan agreement with FmHA in the amount of $1,493,000.00 for a term of fifty years. The third loan was secured by a mortgage dated December 28, 1981, that restricts the use of the property for twenty years from the date that the loan is closed to "housing people eligible for occupancy as provided in Section 515 of Title V of the Housing Act of 1949." Id. App. at 98, ¶ 32. This restrictive-use provision expired in 2001. The loan agreement states that "[s]o long as the loan obligations remain unsatisfied, the Partnership shall" comply with the enumerated "Regulatory Covenants" restricting the property's use in accordance with the Housing Act of 1949. Id. App. at 80. The Promissory Note, executed on December 28, 1981, provides for the payment of principal and interest on the loan in monthly installments over a fifty-year period and contains a prepayment provision: "Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower." Id. App. at 85-86.

In 1987 Congress enacted ELIHPA, which amended the Section 515 housing program to impose restrictions on the prepayment of mortgages entered into prior to December 21,

---

3/ The loan agreement for the January 11, 1980 loan in the amount of $1,498,000.00 indicates that installment payments are to be made over a term of forty years. Pls.' Br. filed Nov. 30, 2007, App. at 35. However, the promissory note for the same loan, executed on April 25, 1980, calls for installment payments over a fifty-year term. Id. App. at 44.

1979. Subsequently, Congress extended the reach of ELIHPA by enacting HCDA, which applied ELIHPA's restrictions on the prepayment of mortgages to loans made after December 21, 1979. 4/ According to plaintiffs, the provisions of ELIHPA, and regulations enacted pursuant thereto, as applied to plaintiffs' loans through HCDA, repudiated plaintiffs' prepayment rights in their loan contracts.

In a letter dated December 26, 2000, Mr. Axelrod, on behalf of the two Tamerlane projects, requested "approval to prepay the subject project loans in full by July 1, 2001." Def.'s Br. filed Jan 16, 2008, App. at 1. On August 30, 2001, the Government sent Tamerlane two "General Incentive Offer" letters to which a "Specific Incentive Offer" would follow upon indication by the two Tamerlane projects to accept the general incentive offer. By letter dated September 6, 2001, Mr. Axelrod accepted, on behalf of the two Tamerlane projects, the "General Incentive Offer" and invited a specific offer of an equity loan, increased annual return on investment, and additional Rental Assistance. On January 31, 2002, the Government issued Tamerlane two "Specific Incentive Offer" letters offering to provide Government "consent to a junior lien or subordination that will allow for an equity loan from a third party," because Tamerlane had "submitted a complete application and *demonstrated the ability to prepay*." Id. App. at 9, 13 (emphasis added). The "Specific Incentive Offer" letters also stated that upon acceptance of the incentive, Tamerlane would "be required to execute a 'Restrictive Use Agreement' that will obligate you and any successors in title to restricting the use of the project to very-low, low and moderate income tenants for a period of 20 years from the date the incentives are closed." Id. App. at 10, 14. On March 11, 2002, the acceptances of incentive offers, signed by Mr. Axelrod on behalf of the two Tamerlane projects, were transmitted to the Government. Pursuant to the terms of the "Specific Incentive Offer," Tamerlane obtained a third-party equity loan for $1,849,725.00 from Allegiance Bank of North America on May 10, 2002. On that date Tamerlane and the Government signed mortgage modification agreements to reamortize the outstanding balances of Tamerlane's Section 515 loans, and on June 1, 2002, Tamerlane and the Government executed a new loan agreement for the balance. See Pls.' Br. filed Nov. 30, 2007, App. at 110, 115-122.

---

4/ A detailed recitation of the enactment and legislative history of these statutes can be found in Franconia Associates v. United States, 536 U.S. 129, 135-37 (2002), and in this court's May 18, 2007 opinion, Tamerlane I, 76 Fed. Cl. at 514-15.

## DISCUSSION

The parties have cross-moved for partial summary judgment, each asserting that no genuine issues of material fact are present and that each is respectively entitled to judgment as a matter of law.

I. Standard of review

Summary judgment is warranted when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Am. Sav. Bank, F.A. v. United States, 519 F.3d 1316, 1320 (Fed. Cir. 2008). "'The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other. . . . Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the court must evaluate each motion on its own merits, taking care in each instance to view the evidence in favor of the nonmoving party.'" Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1302 (Fed. Cir. 2005) (alteration in original) (quoting Bubble Room, Inc. v. United States, 159 F.3d 553, 561 (Fed. Cir. 1998) (internal citation omitted)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no genuine issues of material fact are in dispute, the duty of the court is to "grant judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Lima Surgical Assocs. v. United States, 944 F.2d 885, 888 (Fed. Cir. 1991) (internal quotations omitted). However, summary judgment will not be granted if a "dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir. 2001); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999).

II. Government's liability for breach of contract

Plaintiffs assert that they are entitled to judgment as a matter of law because prior decisional law of the United States Court of Federal Claims supports a finding that the Government is in breach of plaintiffs' contracts. Plaintiffs cite to Allegre Villa v. United States, 60 Fed. Cl. 11, 17-18 (2004), which granted summary judgment on liability to three groups of plaintiffs: those who sought to prepay their loans after the enactment of ELIHPA, those who never sought to prepay their loans, and those who had not yet reached the expiration of the twenty-year restrictive-use provision. Plaintiffs also cite the Court of Federal Claims decision in Franconia Associates v. United States, 61 Fed. Cl. 718, 729-34

(2004), holding that ELIHPA and HCDA acted as a repudiation of plaintiffs' loan agreements, which ripened into a breach of contract either at the time that a request for prepayment was made and not honored or when the property owners brought suit. Plaintiffs take the position that liability under the holding in Franconia is established because Mr. Axelrod, as owner of both Park Terrace East and Tamerlane, declares that he selected and purchased each property with an eye toward conversion of the properties to market rents in the future upon the expiration of any restrictions. See [First] Axelrod Decl., Nov. 30, 2007, ¶ 3; [Second] Decl. of Bart J. Axelrod, Nov. 30, 2007, ¶ 3. Furthermore, plaintiffs proffer the declarations of Mr. Axelrod and the expert report of Bruce Coin to establish the ability of both Park Terrace East and Tamerlane to prepay their loans at the time of filing suit in 2005. 5/

Defendant opposes plaintiffs motion for partial summary judgment and cross-moves for summary judgment on liability in its favor. 6/ Principally, defendant asserts that the restrictions created in ELIHPA, and imposed upon plaintiffs loans through HCDA, did not repudiate the prepayment rights contained in plaintiffs' contracts. Defendant rests this contention on the following ground:

> If a breach of plaintiffs' prepayment right would consist of a refusal to allow prepayment of section 515 loans at the request of the borrower, then ELIHPA cannot be characterized as a repudiation of that right. ELIHPA does not state that the Government must refuse to allow prepayment of such loans. Rather, it requires the Secretary of Agriculture to take certain steps before accepting an offer to prepay, in order to preserve the affordability of the housing for which the loan was given. And, far from expressing an intent to abrogate borrowers' contract rights in order to achieve this goal, the statute provides that this goal is to be achieved principally through efforts to obtain the borrower's agreement.

Def.'s Br. filed Jan. 16, 2008, at 7-8; see also id. at 9 ("In sum, the prepayment provisions of ELIHPA do not preclude prepayment. They require Government efforts to avert

---

5/ The expert report of Mr. Coin is offered to demonstrate Tamerlane's ability to prepay in 2005 only in the event that the court deems that the breach accrued at the time of this lawsuit's inception. Tamerlane, which received an equity loan in 2002, was required to demonstrate, and did so demonstrate to the Government's satisfaction, its ability to prepay its loan as part of the equity loan application process. Def.'s Br. filed Jan 16, 2008, App. at 9, 13; see also supra note 2.

6/ See supra note 1.

prepayment by agreement, and, among the possible results that can flow from these efforts is acceptance of prepayment. Therefore, neither the enactment of ELIHPA nor the 1992 Act's extension of ELIHPA's prepayment restrictions to post-December 21, 1979 loans constituted an indication by Congress that the Government 'will commit a breach' of the right to prepay."); Def.'s Br. filed Feb. 8, 2008, at 3.

Defendant emphasizes that plaintiffs' reliance on prior decisions issued by the Court of Federal Claims is not dispositive of the issue before this court, because the "'the decisions of one judge of this Court have no binding effect on the other judges.'" Def.'s Br. filed Jan 16, 2008, at 9 (quoting Vessels v. Sec'y of Dep't of Health & Human Servs., 65 Fed. Cl. 563, 569 (2005)); Def.'s Br. filed Feb. 8, 2008, at 2. Furthermore, defendant postulates that the decisions rendered by the Court of Federal Claims in Allegre Villa and Franconia should not be followed as persuasive because they rely on dicta contained in the United States Supreme Court's decision in Franconia Associates v. United States, 536 U.S. 129 (2002), concerning the nature of the prepayment right as "absolute" and "unfettered." Def.'s Br. filed Jan. 16, 2008, at 10 & n.5. Defendant contends that these characterizations of the prepayment right at issue before the Supreme Court in Franconia, were not made in the context of deciding the merits, but in deciding whether the action was barred by the statute of limitations and thus do not constitute a binding holding of the Supreme Court. See id. at 10 n.5 (citing Franconia, 536 U.S. at 133, 141, 142).

Defendant bolsters its argument that ELIHPA does not constitute a repudiation by contrasting the proposition against plaintiffs' theory of their claim:

> [A]ccording to the theory that plaintiffs advance in opposition to the statute of limitation defense against the claims of Mullica and Park Terrace, responding to a prepayment request with an incentive offer is not an actual breach, even though such a response differs from a simple acceptance of prepayment. An actual breach, according to this theory, occurs not when the Government takes the measures required by ELIHPA, but only when the Government finally refuses to accept prepayment.

Id. at 10-11. Defendant rejoins with its summary of plaintiffs' argument: "Plaintiffs cannot have it both ways; they cannot urge the Court to define a breach one way for statute of limitations purposes, and another way in deciding the merits." Id. at 11.

Citing to a takings case addressing similar prepayment restrictions applicable to loans insured by the Department of Housing and Urban Development, see Cienega Gardens v. United States, 503 F.3d 1266, 1282-87 (Fed. Cir. 2007), defendant argues for "a far more benign characterization of the provisions involved . . . than that underlying this Court's

rulings in Franconia and Allegre Villa." Def.'s Br. filed Jan. 16, 2008, at 13; see also Def.'s Br. filed Feb. 8, 2008, at 4. Defendant asks the court "to characterize the measures required by ELIHPA as a genuine means of encouraging borrowers to keep their projects in the section 515 program voluntarily. . . . [and not as] a repudiation of plaintiffs' prepayment right." Def.'s Br. filed Jan 16, 2008, at 13. Furthermore, while admitting that Tamerlane would not have been able to invoke the statute under which it could have sought to prepay unhindered by the restrictions imposed under ELIHPA, see Def.'s Br. filed Feb. 8, 2008, at 4-5 (citing 42 U.S.C. § 1472(c)(5)(G)(ii)(II)), defendant contends that "whether ELIHPA would have prevented Park Terrace East from prepaying when it wished to do so is a matter of conjecture," and, consequently, whether ELIHPA constitutes a repudiation as to Park Terrace East's contract rights has not been established. See id. at 5. Defendant also trumpets 42 U.S.C. § 1472(c)(5)(A), the provision of ELIHPA that allows a borrower to leave the program by offering up for sale the subject Section 515 property, as further evidence that ELIHPA does not require a complete abrogation of prepayment rights.

As to defendant's arguments that ELIHPA did not act as a repudiation of plaintiffs' contract rights, plaintiffs point out that Cienega Gardens, a case evaluating whether provisions not the same as those at issue here constituted a taking, is completely inapposite, because "[t]he issue is not whether the rights were so completely confiscated as to amount to a taking. Rather the issue is whether an unrestricted right to prepay was infringed." Pls.' Br. filed Feb. 1, 2008, at 6. Plaintiffs reject defendant's characterization of their arguments as inconsistent, stating that nothing is inconsistent about arguing that a meaningful demand to prepay and refusal has not occurred and that accrual of the breach claim only occurs upon the filing of suit. Plaintiffs retort that whether the Government characterizes the restrictions imposed by ELIHPA as "benign" is irrelevant to whether the restrictions effected a repudiation or anticipatory breach of the contract rights at issue.

1. ELIHPA as repudiation

Defendant's argument that ELIHPA does not constitute a repudiation of plaintiffs' contractual prepayment rights because the provisions of ELIHPA do not call for an outright refusal to allow prepayment rings hollow in light of its arguments made in the earlier proceedings regarding the statute of limitations. Compare Def.'s Br. filed Jan. 16, 2008, at 5 ("Tamerlane submitted to the Government a request for approval to prepay its loan . . . . *The Government did not refuse to accept prepayment*. Rather, . . . the Government responded with a 'General Incentive Offer' . . . outlining the kinds of incentives that were available to avert prepayment." (emphasis added) (citations omitted)), with Tamerlane, Ltd. v. United States, 80 Fed. Cl. 618, 625 n.7 (2008) ("Tamerlane II") ("'The Government's offer of equity loans was an acknowledgment of receipt of plaintiffs' prepayment requests and *an indication that the Government was not allowing plaintiffs to prepay*.'" (emphasis

added) (quoting Def.'s Br. filed Dec. 6, 2007, at 11 n. 3)), motion to amend denied by __ Fed. Cl. __, 2008 WL 928287 (Fed. Cl. Apr. 3, 2008), appeal docketed, No. 08-5071 (Fed. Cir. Apr. 29, 2008). 7/

Although defendant is correct that decisions of one judge (or the same judge) on the Court of Federal Claims do not serve to bind another judge of the court, such decisions may be informative or persuasive, particularly when the facts at issue are substantially similar. See Kerr-McGee Corp. v. United States, 77 Fed. Cl. 309, 317 n.10 (2007) ("[P]rior decisions of the Court of Federal Claims, '*while persuasive*, do not set binding precedent for separate and distinct cases' in the Court of Federal Claims." (emphasis added) (quoting W. Coast Gen. Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994))). Defendant implores the court not to follow the prior decisions in Allegre Villa and Franconia as persuasive, because they "rely, in part, upon dicta contained in the Supreme Court's opinion in Franconia concerning the nature of the prepayment right." Def.'s Br. filed Jan. 16, 2008, at 10 n.5. Specifically, defendant quarrels with application in this case of the Supreme Court's holding in Franconia that "ELIHPA effected a repudiation of the FmHA loan contracts." 536 U.S. at 143. In defendant's view the Supreme Court's conclusion rested on its assumption that petitioners' allegations were true – that petitioners possessed "a promise that permits them an unfettered right to prepay their mortgages any time over the life of the loans." Id. at 141. Defendant avoids the onus of precedent contending that "[n]one of these observations constitute holdings concerning whether t[h]e plaintiffs possessed the contract right they alleged, whether the Government repudiated or breached that right, or any other issue on the merits." Def.'s Br. filed Jan. 16, 2008, at 10 n.5.

Putting aside whether such statements made by the Supreme Court constitute "dicta," defendant has failed to substantiate any allegation that plaintiffs do not possess the contractual prepayment rights that they assert. Plaintiffs, in the appendix to their motion for partial summary judgment, have submitted the loan transaction documents, including the promissory notes, which recite: "Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower." Pls.' Br. filed Nov. 30, 2007, App. at 10, 45, 58, 86. In determining what contract rights exist or are conferred, a court begins with the plain meaning of the contract's language. Ace Constructors, Inc. v. United States, 499 F.3d 1357, 1361 (Fed. Cir. 2007) ("In contract interpretation, the plain meaning of the contract's text controls unless it is apparent that some other meaning was intended and

---

7/ Adding another layer of meaning to defendant's exhortation that "[p]laintiffs cannot have it both ways; they cannot urge the Court to define a breach one way for statute of limitations purposes, and another way in deciding the merits," Def.'s Br. filed Jan. 16, 2008, at 11, the court agrees and only would add: neither can defendant.

mutually understood.”). The plain meaning of this language could not any more clearly confer on plaintiffs the right to prepay “at any time” and at their option. Accord Franconia, 61 Fed. Cl. at 730 & n.13; Allegre Villa, 60 Fed. Cl. at 15-16. 8/ In turn, a corresponding obligation on the part of the Government exists to accept prepayment and release the borrowers from the restrictions under the housing program when the borrower exercises its option to prepay. See Franconia, 536 U.S. at 142 (“If petitioners enjoyed a ‘right to prepay their loans at any time,’ then necessarily the Government had a corresponding obligation to accept prepayment and execute the appropriate releases. Absent an obligation on the lender to accept prepayment, the obligation ‘to allow’ borrowers to prepay would be meaningless. A loan contract of such incomplete design would be illusory.” (citations omitted)).

Defendant’s attempt to cast the provisions of ELIHPA as “far more benign” than the characterizations adopted by the Court of Federal Claims in Allegre Villa and Franconia is similarly unpersuasive. See Def.’s Br. filed Jan. 16, 2008, at 13; Def.’s Br. filed Feb. 8, 2008, at 4. 9/ Once it is established that plaintiffs possess an absolute and unfettered contractual right to prepay at any time, and that the Government is under a corresponding duty to accept prepayment, the Supreme Court’s characterization of ELIHPA in Franconia unquestionably applies: “[ELIHPA] conveyed an announcement by the Government that it would not perform as represented in the promissory notes if and when, at some point in the future, petitioners attempted to prepay their mortgages. . . . [and therefore] ELIHPA is most sensibly characterized as a repudiation.” 536 U.S. at 143-44. “There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, [the Federal Circuit], and [the Federal Circuit’s] predecessor court, the Court of Claims.” Coltec Indus., Inc. v. United States, 454 F.3d 1340, 1353 (Fed. Cir. 2006).

---

8/ Defendant’s argument that these cases should not be followed as persuasive, because they “rely, in part, upon dicta contained in the Supreme Court’s opinion in Franconia concerning the nature of the prepayment right,” Def.’s Br. filed Jan. 16, 2008, at 10 n.5, neglects the analyses both cases employed in determining what contract rights, if any, plaintiffs before them possessed. See Franconia, 61 Fed. Cl. at 730 & n.13 (determining that plain meaning of contract language “gave plaintiffs the unfettered right to prepay their loans at any time”); Allegre Villa, 60 Fed. Cl. at 15-16 (stating that prepayment clause in contracts “grants the right to prepay the mortgages without restriction”).

9/ The court agrees with plaintiffs that defendant cannot rely on Cienega Gardens, 503 F.3d at 1282-87 – a takings case addressing prepayment provisions not identical to the ones at issue – to make this point. “The issue is not whether the rights were so completely confiscated as to amount to a taking. Rather the issue is whether an unrestricted right to prepay was infringed.” Pls.’ Br. filed Feb. 1, 2008, at 6.

The provisions of ELIHPA, whether termed "benign," onerous, or severe and whether viewed as setting up potential or actual avenues by which some owners could qualify to prepay or could exit the program by selling the subject property, nonetheless, in total, have been held to be "a repudiation of the parties' bargain," Franconia, 536 U.S. at 133, and this court is in no position to revisit this decision. Furthermore, that Park Terrace East never applied to prepay and thus never tested whether the provisions of ELIHPA would have prevented it from prepaying its loan, see Def.'s Br. filed Feb. 8, 2008, at 5, is immaterial to the threshold question of whether the provisions of ELIHPA themselves constituted a repudiation of the bargain struck between Park Terrace East and the Government. Accordingly, this court concludes that ELIHPA effected a repudiation of Park Terrace East's and Tamerlane's contractual prepayment rights.

2. Claim accrual

The next issue is if, and when, ELIHPA ripened from a repudiation into a breach of plaintiffs' contract rights. The Supreme Court enumerated in Franconia two instances in which a breach of contract claim accrues under the repudiation effected by ELIHPA: (1) "[B]reach would occur, and the six-year limitations period would commence to run, when a borrower tenders prepayment and the Government then dishonors its obligation to accept the tender and release its control over use of the property that secured the loan," Franconia, 536 U.S. at 133, or (2) "[A] repudiation ripens into a breach prior to the time for performance only if the promisee 'elects to treat it as such'" by "filing suit prior to the date indicated for performance." Id. at 143 (quoting Roehm v. Horst, 178 U.S. 1, 13 (1900)). Each of the two plaintiffs, Park Terrace East and Tamerlane, present with different accrual situations: Tamerlane sought to prepay its loan in or around December 2000 and subsequently, on May 10, 2002, received an incentive equity loan pursuant to the provisions of ELIHPA; Park Terrace East, on the other hand, never sought to prepay and never received an incentive equity loan. Plaintiffs filed this suit on June 22, 2005.

This court has had the opportunity in its previous opinions in this case to address the accrual of claims for plaintiffs that sought to prepay their Section 515 loans after the passage of ELIHPA and received incentives in the form of equity loans. See Tamerlane, Ltd. v. United States, 76 Fed. Cl. 512, 512-24 (2007) ("Tamerlane I"); Tamerlane II, 80 Fed. Cl. at 618-33. When "FmHA respond[s] to [a borrower's] requests to prepay by acting upon ELIHPA's mandate to offer incentives in the face of [the borrower's] absolute and unfettered rights to prepay, the Government dishonor[s] its performance obligation to accept prepayment and thus committ[s] a breach." Tamerlane II, 80 Fed. Cl. at 629. At the latest, by the time that a borrower enters into an incentive equity loan transaction with the Government pursuant to the provisions of ELIHPA, a breach of the borrower's contractual prepayment right is established. See id. Tamerlane's ability to prepay its loan at the date of

the breach is established by the Government's party admission. See Def.'s Br. filed Jan 19, 2008, App. at 9, 13 ("Since you have submitted a complete application and *demonstrated the ability to prepay*, we are offering you the following incentives to remain in the program." (emphasis added)). As to plaintiff Tamerlane, this court concludes that the Government committed a breach of the contractual prepayment right, at the latest by May 10, 2002, when Tamerlane entered into an incentive equity loan.

Plaintiff Park Terrace East never sought to prepay its Section 515 loan after the passage of ELIHPA and has never received an equity loan or other incentive pursuant to the provisions of ELIHPA. Park Terrace East therefore falls into the latter category of breach accrual recognized in Franconia. Because Park Terrace East never sought to prepay, and performance on the part of the Government has never become due, the Government's repudiation effected by the passage of ELIHPA would not ripen into a breach until the borrower elects to treat it as such. Franconia, 536 U.S. at 143 ("[R]epudiation ripens into a breach prior to the time for performance only if the promisee 'elects to treat it as such.'" (quoting Roehm, 178 U.S. at 13)). By filing suit in this court on June 22, 2005, Park Terrace East manifested its election to declare the Government in breach of the contractual prepayment right. See id. (noting that borrower's filing of suit prior to time of performance (borrower's attempt to prepay) would ripen repudiation effected by ELIHPA into breach).

III. Defenses asserted against Tamerlane

Defendant next levels its defenses specific to plaintiff Tamerlane, targeting Tamerlane's acceptance of an incentive equity loan pursuant to the provisions of ELIHPA as constituting a bilateral modification, an accord and satisfaction, or other action that precludes Tamerlane's ability to recover for breach of contract.

1. Bilateral modification

Defendant contends that a bilateral modification took place between Tamerlane and the Government that released the Government from liability for breaching Tamerlane's right to prepay. After Tamerlane accepted an incentive equity loan, Tamerlane and the Government executed a new loan agreement concerning the outstanding balances of Tamerlane's Section 515 loans on June 1, 2002. The new loan agreement states that the loan is to "'be administered subject to the limitations of the authorizing act of Congress and related regulations,' and that '[t]his loan agreement shall be subject to the present regulations of the Government and to its future regulations and provisions thereof.'" Def.'s Br. filed Jan 16, 2008, at 14 (alteration in original) (quoting Pls.' Br. filed Nov. 30, 2007, App. at 112). Under the new loan agreement, defendant maintains, the original Section 515 loans became subject to ELIHPA and its implementing regulations. Def.'s Br. filed Feb. 8, 2008, at 7.

Consequently, defendant argues, "by the time this suit was filed, the allegedly repudiated prepayment right had been modified by agreement of the parties." Def.'s Br. filed Jan 16, 2008, at 14; see also Def.'s Br. filed Feb. 8, 2008, at 7-8 & n.3.

As a threshold matter, plaintiffs contend that the Government may not raise the defense of bilateral modification at this stage in litigation because it is an affirmative defense that was not raised in its answer. Defendant responds that, "unlike the defense of accord and satisfaction (which was pleaded in the answer), the contractual change effected by [the] 2002 loan agreement is not a matter of an affirmative defense, but a matter that goes to the very content of the contractual obligation upon which Tamerlane's claim is based." Def.'s Br. filed Feb. 8, 2008, at 7. Plaintiffs insist that the defense must fail because the new loan agreement was not a superseding agreement, but, rather, "was an add-on agreement because the old note, loan agreement and mortgage stayed in place." Pls.' Br. filed Feb. 1, 2008, at 10 n.8. The Government's "boilerplate" forms did not provide for the release of any claims and do not have the effect of relinquishing any claims, plaintiffs' point out, particularly given that no negotiation or discussion occurred regarding the relinquishment of claims. Id. at 10-11, 12-13. Defendant admits that nothing in the documents calls for an explicit relinquishment of claims. Def.'s Br. filed Feb. 8, 2008, at 9.

The provisions that conferred upon Tamerlane the contractual rights to prepay its Section 515 loans at any time were the promissory notes executed on April 25, 1980, and December 28, 1981. These promissory notes remain in place and have not been supplanted by the loan agreement executed on June 1, 2002, for the outstanding balances of the original Section 515 loans. Defendant's theory that a modification took place rests on the premise that "Tamerlane gave up the right to be released from the section 515 program through prepayment of its section 515 loan," when it executed the new June 1, 2002 loan agreement. Id. at 7. 10/ Defendant admits that the incentive transaction documents do not "speak explicitly of a relinquishment of such right," id. at 9; yet, relying on language in the June 1, 2002 loan agreement, defendant posits that the Section 515 loans "became subject to ELIHPA and its implementing regulations." Id. at 7. This is a fallacy. The Section 515 loans were "subject to" ELIHPA the moment that Congress passed HCDA in 1992. No question is present that borrowers under Section 515 would be "subject to" any future acts of Congress and regulations passed by the Government.

---

10/ Defendant fails to explain why, if this is the case, the need arose to execute a separate twenty-year "Restrictive Use Agreement" as a condition of the incentive equity loan. See Def.'s Br. filed Jan. 16, 2008, App. at 10. This fact undercuts defendant's proposed interpretation of the effect of the loan agreement as a modification by which Tamerlane relinquished its rights to be released from the Section 515 program through prepayment.

A contract between the Government and a private party cannot prevent Congress from enacting legislation and promulgating regulations pursuant thereto. The question becomes whether the Government will be held liable for breach in the event that such legislation or regulations infringe upon established contract rights.

> The issue is not whether Congress can enact legislation that abrogates or modifies existing government contracts; the issue is whether the government is liable for the consequences of such action. While a contract does not prevent Congress from enacting legislation, the government may incur liability for damages when the legislation materially affects performance of the contract. [United States v.] Winstar [Corp.], 518 U.S. [839,] 870 [(1996)]; see Mobil Oil Exploration [& Producing Se., Inc. v. United States,] 530 U.S. [604,] 619-20 [(2000)] ( "the fact that Interior's repudiation rested upon the enactment of a new statute makes no significant difference"). When the government as contracting party makes a promise in exchange for a benefit, it is bound by mutual obligations, as any party to a contract is bound.

First Nationwide Bank v. United States, 431 F.3d 1342, 1350-51 (Fed. Cir. 2005).

The "subject to" language in the June 1, 2002 loan agreement highlighted by defendant, therefore, cannot be construed to have the effect of modifying Tamerlane's contractual right to prepayment so as to release the Government from liability for breach of contract. Because defendant has failed to point to any other language in the June 1, 2002 loan agreement that purports to release any claims that Tamerlane may assert against the Government, defendant has failed to carry its burden of showing that a modification took place under which Tamerlane gave up its right to prepay its Section 515 loans or to maintain a claim based on breach of that right.

2. Accord and satisfaction

Defendant has argued, alternatively, that the incentive equity loan constitutes an accord and satisfaction. 11/ Plaintiffs fault defendant for not carrying its burden to prove

---

11/ Defendant later retreats from its assertion of accord and satisfaction as a defense when it states:

> [G]iven the fact that the agreements involved in the incentive package preceded Tamerlane's assertion of a claim for breach of contract and concerned the resolution of the asserted contract right underlying the breach

the elements of an accord and satisfaction, particularly, that a meeting of the minds occurred such that Tamerlane would understand that the performance is offered in full satisfaction of the claim released. Plaintiffs counter that Tamerlane's acceptance of the incentive equity loan was not voluntary, but "coerced by the lack of an alternative brought about by the government's repudiation of its bargain." Pls.' Br. filed Nov. 30, 2007, at 9. Plaintiffs rely on the Court of Federal Claims's decision in Franconia and the earlier decision of this court. Defendant contests plaintiffs' characterization of the incentive transaction as coerced, pointing out that Park Terrace East never requested or obtained incentives through ELIHPA, thereby proving that Tamerlane remained at all times free to forego the incentive equity loan as Park Terrace East did.

Plaintiffs also argue that the Government did not obtain a relinquishment or waiver from plaintiffs of the right to sue or a release of any claims as part of the incentive equity loan contracts; absent an agreement to relinquish, no rights were relinquished. Defendant responds that

> the incentive transaction makes no sense if [it] is construed as leaving the borrower free to sue for breach of the prepayment clause. If the Government's objective was to keep the borrower in the section 515 program while remaining subject to liability for breach of contract, it would have had no need to offer incentives; it could simply have refused to accept prepayment.

Def.'s Br. filed Feb. 8, 2008, at 9. Plaintiffs challenge defendant's argument that the Government would not have offered incentives except to extinguish borrower's claims: "ELIHPA and HCDA required the Government to offer incentives to qualified owners." Pls.' Br. filed Feb. 1, 2008, at 16.

"[T]he release of a claim by accord and satisfaction occurs when performance different from that which was claimed is rendered and accepted by the claimant as full satisfaction of his claim." England v. Sherman R. Smoot Corp., 388 F.3d 844, 849 (Fed. Cir. 2004). "A valid accord and satisfaction requires four elements: (1) proper subject matter; (2)

---

11/ (Cont'd from page 15.)

> claim rather than the breach claim itself, we believe that these agreements are more properly viewed as a modification of the underlying right than as an accord and satisfaction.

Def.'s Br. filed Feb. 8, 2008, at 9-10.

competent parties; (3) a meeting of the minds of the parties; and (4) consideration." O'Connor v. United States, 308 F.3d 1233, 1240 (Fed. Cir. 2002). "In its most common form, an accord and satisfaction exists as 'a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim or demand which is a bona fide dispute.'" Id. (quoting Nev. Half Moon Mining Co. v. Combined Metals Reduction Co., 176 F.2d 73, 76 (10th Cir. 1949)) . A meeting of the minds occurs when there are "accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise." Chesapeake & Potomac Tel. Co. of Va. v. United States, 654 F.2d 711, 716 (Ct. Cl. 1981).

Tamerlane, through its owner, Mr. Axelrod, declares that there was no meeting of the minds regarding the relinquishment of rights through the execution of the incentive equity loan transaction. See [Second] Axelrod Decl., Nov. 30, 2007, ¶ 9. Defendant has failed to produce any affidavits or other evidence to support its assertion that a meeting of the minds took place sufficient to establish an accord and satisfaction. While defendant admits that the transaction documents fail to provide explicitly for the release or relinquishment of any claims by Tamerlane, it contends that the transaction does not make sense under any other interpretation, *i.e.*, why would the Government offer incentives to borrowers without obtaining a release of breach claims when it had already repudiated its bargain and could refuse absolutely to accept prepayment? Even if this argument were sufficient to establish the Government's defense, it is thoroughly unpersuasive. As defendant is well aware from having made the argument in related cases, see, e.g., Franconia, 61 Fed. Cl. at 745, the acceptance of incentives by borrowers can serve to mitigate the damages owed to those individuals to the extent that the incentive lessens the amount of actual loss occasioned by the Government's breach. Defendant has failed to carry its burden of proving that an accord and satisfaction of Tamerlane's breach of contract claim took place.

3. Acceptance of incentive to preclude recovery

Finally, defendant asserts that Tamerlane is precluded from recovering on its claims

> because Tamerlane continues to enjoy the benefit of the equity loan, which it obtained by virtue of the prepayment right. By foregoing or postponing the exercise of its prepayment right in return for an incentive to avert prepayment, Tamerlane in effect invoked its prepayment right, by trading its exercise for an alternative benefit available only to borrowers who possessed such a right.

Def.'s Br. filed Jan. 16, 2008, at 18. Defendant counsels that, in order to assert future damages for an anticipatory breach, a claimant must treat the repudiation as a total breach

and may not retain a claim for recovery of future damages having elected to treat the contract as remaining in force. Id. at 18-19 (citing Central Trust Co. v. Chicago Auditorium Assoc., 240 U.S. 581, 589 (1916); Cities Serv. Helex, Inc. v. United States, 543 F.2d 1306, 1313 (1976); Ind. Mich. Power Co. v. United States, 60 Fed. Cl. 639, 641 (2004)); see also Def.'s Br. filed Feb. 8, 2008, at 10. Because Tamerlane did not treat the contract right as having been terminated and replaced with a claim for damages, rather "trad[ing]" that right in "for an alternative benefit available only to borrowers who claim such a right," defendant argues that Tamerlane cannot maintain an action for anticipatory breach or repudiation while "continu[ing] to enjoy that benefit." Def.'s Br. filed Feb 8, 2008, at 11; see also Def.'s Br. filed Jan 16, 2008, at 18-19. Defendant summarizes its argument: "Tamerlane obtained an incentive not to prepay, as if it possessed a contractual right to prepay that had not been abrogated. It then sued for total breach, as if this right had been abrogated. Having done the former, it was not entitled to also do the latter." Def.'s Br. filed Feb. 8, 2008, at 11. Plaintiffs dismiss defendant's final argument because, "regardless of when the Tamerlane claim accrued it has sued for breach for all years. . . . Tamerlane's theory is that the claim accrued on the filing of suit, and that this served to ripen the repudiation into a breach for all purposes." Pls.' Br. filed Feb 1, 2008, at 18.

The theory that defendant advances in this defense approaches the issue backwards. Defendant reasons that, because the contract remains in existence and both parties continue to perform, plaintiffs have not treated the contract as at an end, so a total breach has not been declared by plaintiffs and does not exist. If a total breach cannot be claimed by plaintiffs because they have continued to perform under the contracts, defendant concludes that plaintiffs are only entitled to raise a claim for damages for partial breach and may not recover future damages – they have made an election of remedies, so to speak. However, the starting point for this issue is the Supreme Court's decision in Franconia, which held that "ELIHPA's enactment . . . qualified as a repudiation of the parties' bargain." 536 U.S. at 133. A repudiation, by definition, is a "'statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee *a claim for damages for total breach*.'" Mobil Oil Exploration, 530 U.S. at 608 (emphasis added) (quoting Restatement (Second) of Contracts § 250 (1981)). Consequently, the issue of what type of breach flows from the repudiation effected by ELIHPA already has been resolved by the Supreme Court and is binding upon this court. Plaintiffs thus may properly maintain a claim for damages for total breach, at least concerning the contractual prepayment right.

The cases relied on by defendant to support this defense are distinguishable from the case at hand. Central Trust, states: "[W]here a party bound by an executory contract repudiates his obligations . . . before the time for performance, the promisee has the *option to treat the contract as ended*, so far as further performance is concerned, and maintain an action at once for the damages occasioned by such anticipatory breach." 240 U.S. at 589.

The situation captured by this statement is distinguishable from Tamerlane's situation because the Government committed an actual breach of Tamerlane's contractual prepayment right when, in the face of Tamerlane's absolute and unfettered prepayment right, the Government sought to curtail prepayment through the offer of incentives. Tamerlane is not electing to treat the repudiation as ripened into a breach, *i.e.*, exercising its "option to treat the contract as ended"; rather, Tamerlane is suing for the Government's actual breach that accrued at the latest by May 10, 2002.

In Cities Service Helex, 543 F.2d at 1313, the United States Court of Claims held that plaintiffs could not maintain an action for material breach, and thereby treat their contracts as at an end, because plaintiffs had continued to perform under the contracts after the material breach, had received benefits in the Government's continued performance, and had elected to pursue other legal remedies to challenge the breaching conduct. Only in a footnote does Cities Service Helex address repudiation, stating that it was doubtful that the conduct at issue could be labeled a repudiation, that the Government's continued performance following the conduct should be deemed a withdrawal of the repudiation, and that "*the right to act on the repudiation* may be lost, . . . if as here both parties continue performance." Id. at 1319 n.34 (emphasis added). Again, as Tamerlane is suing on the Government's actual breaching conduct and not under an election to treat the repudiation as a breach – the "right to act on the repudiation"– the case is distinguishable.

Indiana Michigan Power, 60 Fed. Cl. at 641, concerned an action by plaintiff to recover damages for the Government's partial breach of a contract to accept deliveries of spent nuclear fuel. The court held: "Plaintiff cannot claim future damages in a partial breach case . . . ." Id. But, as the trial court's discussion and the Federal Circuit decision affirming the trial court explain, see Ind. Mich. Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), this is so because the award of future costs for anticipated future non-performance would depend on speculative events and therefore could not serve as a proper basis for award of contractual damages. See id. at 1376 ("Because of its highly speculative nature, a claimant may not recover, at the time of the first suit for partial breach, prospective damages for anticipated future nonperformance resulting from the same partial breach."); Ind. Mich. Power, 60 Fed. Cl. at 642 (stating that "[a]ward of future costs in this case depends on speculative events"). Whether or not damages sought by a party are speculative is an issue properly reserved for the damages stage of these proceedings.

Defendant has not shown that Tamerlane is precluded from asserting a repudiation and recovering for breach by the Government because it accepted incentives pursuant to ELIHPA. The Government was in actual breach of Tamerlane's prepayment rights at least by May 10, 2002. As a result, Tamerlane has properly sued on its claim for breach of contract for all damages owing.

## CONCLUSION

Because defendant has not established a defense to Park Terrace East's or Tamerlane's breach of contract claims, defendant is not entitled to partial summary judgment on liability. Plaintiffs have carried their burden of showing that the Government is in breach of the contractual prepayment rights contained in their promissory notes as of the dates stated in this opinion. Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. The Motion of Plaintiffs, Tamerlane[,] Limited[,] and Park Terrace East[,] Limited, Pursuant to RCFC 56 for Partial Summary Judgment as to Liability is granted.

2. Defendant's Cross-Motion for Partial Summary Judgment and Opposition to Plaintiff[s'] Motion for Partial Summary Judgment as to Liability is denied.

3. The parties shall submit a Joint Status Report by May 23, 2008, proposing a deadline for discovery on damages and a schedule for all pretrial proceedings and trial, not to exceed five days, beginning no later than October 6, 2008.

s/ Christine O.C. Miller

______________________________

**Christine Odell Cook Miller**

Judge